IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

NATIONAL COALITION ON BLACK
CIVIC PARTICIPATION, MARY WINTER,
GENE STEINBERG, NANCY HART,
SARAH WOLFF, KAREN SLAVEN, KATE
KENNEDY, EDA DANIEL, and ANDREA
SFERES,

              Plaintiffs,

    v.

JACOB WOHL, JACK BURKMAN, J.M.
BURKMAN & ASSOCIATES, LLC,
PROJECT 1599, and JOHN and JANE DOES
1-10,

              Defendants.

Civil Action No. 20-cv-8668

**COMPLAINT**

Plaintiffs, for their Complaint against Defendants, allege as follows:

<u>**NATURE OF THE CASE**</u>

1.      Plaintiffs seek to protect their right to vote safely and without fear.  Defendants sent robocalls to Plaintiffs and other voters for the purpose of intimidating them, or attempting to intimidate them, from voting by mail.  Defendants sent an as-yet-unknown number of robocalls to multiple states and used false information to scare recipients that they will experience negative consequences if they choose to vote by mail.  Voters were told, "Stay home safe and beware of vote by mail."  Voters deceived by these messages face a harmful choice: expose yourself and your family to increased risk of contracting COVID-19 by voting in person, or do not vote.

2.      This is an action pursuant to Section 11(b) of the Voting Rights Act (52 U.S.C. § 10307(b)) and Section 2 of the Ku Klux Klan Act (42 U.S.C. § 1985(3)) to secure relief for the unlawful infringement of voting rights secured by the Constitution and the laws of the United

States.  Plaintiffs are United States citizens and residents of New York, Ohio, and Pennsylvania.

3.      Plaintiffs have filed this action to respectfully move this Court for immediate injunctive relief to halt the irreparable pattern of intimidation, threats, and/or coercion being engaged in by Defendants and others acting in concert with them that has the purpose and the effect of unlawfully interfering with the voting rights of lawfully registered voters, and to obtain redress.

4.      As described below, upon information and belief, Defendants and those acting in concert with them have orchestrated and funded a large-scale robocall campaign aimed at suppressing votes through intimidation and falsehoods.  As set forth below, the robocall campaign targets voters in areas with significant Black populations and seeks to exploit racially charged stereotypes and false information intended to dissuade recipients from voting in the November 3, 2020 election.

5.      The circumstances demonstrate that Defendants' actions are intended to intimidate, threaten and/or coerce voters, or attempt to intimidate, threaten, and/or coerce voters, and thereby interfere with the free exercise of their right to vote, including on the basis of race. Indeed, Defendants Burkman and Wohl are currently facing felony charges brought by the Michigan Attorney General for voter intimidation, conspiracy to violate election law, and related charges stemming from this robocall campaign.

6.      Plaintiffs request that this Court grant relief in the form of, *inter alia*, declaratory and injunctive relief preventing Defendants from disseminating any additional robocalls prior to the conclusion of the election.  Without this Court's intervention, Defendants will continue to inflict irreparable injury on Plaintiffs and potentially many other lawfully registered voters. Plaintiffs intend to file a motion for a temporary restraining order and preliminary injunction as

soon as possible.

## PARTIES

7.      Plaintiff National Coalition on Black Civic Participation ("NCBCP") is a 501(c)(3) nonprofit, nonpartisan civil rights and racial justice organization founded in 1976 and headquartered in Washington, DC. NCBCP is dedicated to increasing civic engagement and voter participation in Black and underserved communities.  It strives to create an enlightened community by engaging people in all aspects of public life through service, volunteerism, advocacy, leadership development, and voting.  NCBCP works to address the disenfranchisement of underserved and other marginalized communities through various forms of civic engagement, including nonpartisan voter empowerment organizing and training; young adult civic leadership development; grassroots organizing and issue education; and convening a diverse coalition of members and state-based affiliates nationwide.  NCBCP works to expand, strengthen, and empower communities, particularly Black communities, to make voting and civic participation a cultural responsibility and tradition.  One of NCBCP's programs is the Black Women's Roundtable ("BWR"), which has numerous state-based networks, including Metro Detroit.  BWR brings together Black women from varying backgrounds and across generations to strategize and organize to strengthen the power of Black women's leadership and to advance a policy agenda focused on the needs of Black women, including the promotion of voting, Census participation, and other civic participation.

8.      Plaintiff Mary Winter is a lawfully registered voter residing in Rockland County, New York.

9.      Plaintiff Gene Steinberg is a lawfully registered voter residing in Rockland County, New York.

10.    Plaintiff Nancy Hart is a lawfully registered voter residing in Allegheny County, Pennsylvania.

11.    Plaintiff Sarah Wolff is a lawfully registered voter residing in New York County, New York.

12.    Plaintiff Kate Kennedy is a lawfully registered voter residing in Cuyahoga County, Ohio.

13.    Plaintiff Karen Slaven is a lawfully registered voter residing in Cuyahoga County, Ohio.

14.    Plaintiff Eda Daniel is a lawfully registered voter residing in Cuyahoga County, Ohio.

15.    Plaintiff Andrea Sferes is a lawfully registered voter residing in Westchester County, New York.

16.    Defendant Jacob Wohl is a resident of Los Angeles, California.  Wohl is a political scam artist, conspiracy theorist, and known fraudster.  Wohl, both on his own and working in cohort with Burkman, has spread odious and false conspiracy theories about numerous government and elected officials (discussed more below).  Wohl has also been previously investigated for securities fraud by several authorities, including the National Futures Association, the Arizona Corporation Commission, and the Riverside County District Attorney's Office.  Wohl's criminal case for securities fraud in Riverside County is ongoing, and Wohl has failed to pay the restitution required by the Arizona Corporation Commission for securities laws violations after it concluded that Wohl defrauded investors.  The National Futures Association banned Wohl for life.

17.    Defendant Jack Burkman is a resident of Arlington, Virginia.  Burkman is a

lobbyist, political scam artist, conspiracy theorist, and known fraudster.  He collaborated with

Wohl to spread odious and false conspiracy theories, including many discussed below.

18.     Defendant Project 1599 is a political organization founded by Burkman and

Wohl, with headquarters at 1599 N. Colonial Terrace, Arlington, Virginia.

19.     Defendant J.M. Burkman & Associates, LLC is a lobbyist firm founded by

Burkman, with headquarters at 1530 Key Blvd., Apt. 1222, Arlington, Virginia.  The phone

number listed as the sender for the robocalls is associated with this lobbyist firm.

20.     Defendants have engaged in a disinformation campaign by bombarding lawfully

registered voters with robocalls containing blatant lies about mail-in voting in order to intimidate

those voters into not exercising their right to vote in the November 3, 2020 election.

## JURISDICTION & VENUE

21.     This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1331,

as this case arises under federal law, specifically Section 11(b) of the Voting Rights Act of 1965,

52 U.S.C. § 10307(b) and Section 2 of the Ku Klux Klan Act of 1871, 42 U.S.C. § 1985(3).

22.     Venue in this Court is proper under 28 U.S.C. § 1391(b) because a substantial

portion of the events giving rise to the Plaintiffs' claims has occurred in this judicial district.

## GENERAL ALLEGATIONS

23.     "[S]ince the right to exercise the franchise [of voting] in a free and unimpaired

manner is preservative of other basic civil and political rights, any alleged infringement of the

right of citizens to vote must be carefully and meticulously scrutinized." *Reynolds v. Sims*, 377

U.S. 533, 562 (1964).  Thus, the right to vote is inherently the right to vote unimpeded by

deception and intimidation.  *See McCutcheon v. Fed. Election Comm'n*, 572 U.S. 185, 191

(2014) ("There is no right more basic in our democracy than the right to participate in electing

our political leaders.").  Throughout history, however, bad actors have sought to employ

deceptive election practices, intimidation, coercion and threats in an effort to infringe on the

rights of citizens to vote.  Defendants here have orchestrated one such scheme: the use of widely-

disseminated robocalls—i.e., automated telephone calls with a recorded message—spreading

fraudulent information and preying on deep-rooted fears and racial stereotypes to suppress votes.

As explained below, Defendants' actions have intimidated voters, and they must be stopped.

**Defendants Have Stated Their Intent to Interfere in Voters' Rights.**

24.     Defendants have repeatedly and publicly expressed their intentions to interfere

with voters' rights in the 2020 presidential election.  For example, on February 26, 2019, Wohl

revealed to USA Today that the Defendants planned to interfere with the 2020 presidential

election.  Specifically, Wohl stated "that he's already plotting ways to discredit Democrats in the

2020 election with lies and other disinformation, using his large following on social media to

cause disarray similar to what Russians did during the 2016 election."[1]

25.     These are not merely words; Defendants have taken concrete steps toward this

goal.  Last year, Wohl sought investors in a scheme to use fraudulent news stories to suppress

voter turnout and manipulate political betting markets.  Wohl's fundraising documents for the

entity, to be called the "Arlington Center for Political Intelligence," described how the entity

would "aim to ultimately suppress turnout," "have a devastating impact on Democratic

candidates," target "important Demographics of Democrat voters in swing districts," and employ

a "voter-suppression effort."[2]  Indeed, the document specifically states Wohl's intention to

---

[1] Christal Hayes and Gus Garcia-Roberts, This is How Jacob Wohl Created a Sexual Harassment Accusation
Against Robert Mueller, USA TODAY (Feb. 26, 2019), *available at*
https://www.usatoday.com/story/news/politics/2019/02/26/robert-mueller-hoax-how-jacob-wohl-created-sexual-
harassment-plot/2993799002/.

[2] Manuel Roig-Franzia and Beth Reinhard, Meet the GOP Operatives Who Aim To Smear the 2020 Democrats –
But Keep Bungling It, WASHINGTON POST (June 4, 2019), *available at*

"make s\*\*t up" for these purposes.[3]

### Defendants Launched a Campaign to Bombard Voters With
### Fraudulent and Deceptive Robocalls.

26.     Consistent with their stated intentions, Defendants are engaged in a coordinated

and calculated effort to interfere with the voting rights of lawfully registered voters in violation

of numerous federal statutes.  Specifically, Defendants have orchestrated and funded a large-

scale robocall campaign that is designed to dissuade individuals from voting by mail.  This

robocall was first sent on August 26, 2020, to thousands of voters in multiple states, including

New York, Ohio, Michigan, Pennsylvania, and Illinois.

27.     The robocall came from 703-795-5364, which belongs to Jack Burkman.  Here is

a photo of Plaintiff Nancy Hart's caller ID:



28.     The robocall begins with a woman introducing herself as Tamika Taylor from

Project 1599.  The caller falsely states that (1) police will use information from mail-in voting to

---

https://www.washingtonpost.com/lifestyle/style/meet-the-gop-operatives-who-aim-to-smear-the-2020-democrats--
but-keep-bungling-it/2019/06/04/5b70f000-7691-11e9-bd25-c989555e7766_story.html.

[3] *Id.*

track down old arrest warrants,  (2) credit card companies will collect outstanding debts with the information provided, and  (3) the Centers for Disease Control and Prevention (the "CDC") will use the information to administer mandatory vaccines.

29.     Below is the complete transcript of the robocall:

> Hi, this is Tamika Taylor from Project 1599, the civil rights organization founded by Jack Burkman and Jacob Wohl. Mail-in voting sounds great, but did you know that if you vote by mail, your personal information will be part of a public database that will be used by police departments to track down old warrants and be used by credit card companies to collect outstanding debts? The CDC is even pushing to use records for mail-in voting to track people for mandatory vaccines. Don't be finessed into giving your private information to the man, stay home safe and beware of vote by mail.

30.     As an initial matter, unlawful robocalls are inherently injurious.  The mere receipt of an unwanted robocall is a nuisance, an invasion of privacy, a waste of the recipient's time, and, in some cases, a drain on the recipient's phone battery.  But the danger caused far surpasses the everyday nuisance caused by Defendants' robocalls.  Each of the statements in the robocall regarding these potential uses of voters' personal information is false and is designed to scare the listener.

31.     Moreover, the tone, tenor, language, and content of the call is designed to deceive and intimidate Black voters in particular.  It is currently unknown who "Tamika Taylor" is, but this name is similar to Breonna Taylor's mother, Tamika Palmer, who the press has sometimes misidentified as Tamika Taylor.  Breonna Taylor was a Black woman killed by police in Louisville, KY, earlier this year.  Her story is a key part of the movement for Black lives and racial justice.

32.     "Project 1599" is also not a civil rights organization.  While "Project 1599" conveniently sounds very similar to the New York Times' "1619 Project," which documents the history of slavery and racism, the title likely only relates to Defendant Burkman's street address.

33.     Stating that voting by mail information will be used by police intimidates voters if they or their family members fear attention from law enforcement.  Due to a long history of injustice and systemic racism, including the risk of unwarranted violence, many Black voters have legitimate fears of any interaction with law enforcement.

34.     Stating that voting by mail information will be used by debt collectors is likely to intimidate voters with debts.  Due to a long history of discriminatory redlining and predatory lending practices, Black populations are disproportionately indebted and have fewer resources to seek recourse from abusive and invasive debt collection practices.

35.     Stating that the CDC will use vote by mail information to conduct mandatory vaccination efforts is likely to intimidate voters who do not trust government medical programs. Such trust is especially low in the Black community due to a history of racist experimentation and discriminatory practices in such programs, like the Tuskegee Syphilis Study.

36.     Viewed in the totality of the circumstances and in the context of the historical inequities they connote, the language and content of the robocall was designed to resonate with Black voters.

37.     The Defendants also specifically targeted their robocalls to areas with large Black populations.  For example, in a news release dated October 1, 2020, the Michigan Department of Attorney General reported that nearly 12,000 robocalls were made to residents with phone numbers from the 313 area code, which services Detroit, Michigan and surrounding areas. According to the U.S. census data, Detroit, Michigan's population is 76.8 % black.

38.     Similarly, Attorneys General offices in New York, Pennsylvania, Ohio, and Illinois reported that the same robocall reached residents in their states who live in urban areas with significant minority populations, including but not limited to, New York City.

39.     Based on information reported to date, it is believed that Defendants' illegal robocall campaign has reached approximately 85,000 potential voters, including Plaintiffs.

**Defendants' Robocall Campaign Has Diverted NCBCP's Resources.**

40.     Plaintiff NCBCP expends significant resources and effort both to promote Black participation in the Census and to promote voting and other civic participation by the Black community.  These issues are priorities of NCBCP's BWR program and its state-based networks, such as BWR Metro Detroit.  BWR has been organizing and working on the ground in Black communities, including in Detroit, to encourage both Black participation in the Census and in elections.

41.     When Defendants' began making their robocalls on August 26, 2020, BWR Metro Detroit learned that members of their community were receiving the calls.  BWR Metro Detroit was immediately and seriously concerned that Defendants' lies and disinformation would intimidate and suppress Black voters, whom BWR Metro Detroit works hard to support.  They feared Black voters would not vote at all out of fear.

42.     They were also concerned that the false information would cause more voters to lose trust in mail in voting and instead vote in person.  COVID-19 has hit the Black community particularly hard, so BWR Metro Detroit was concerned that if more Black voters were tricked into voting in person, they were in danger.

43.     BWR Metro Detroit diverted staff and resources that were allocated toward encouraging Census participation to respond to the threat of Defendants' voter intimidation.  For example, its co-chair stopped her usual work—helping people fill out their Census forms—so that she could respond to the disinformation.  As a result, BWR Metro Detroit's efforts to promote Census participation were impaired and fewer people completed the Census.  As the

Census has concluded, this harm is irreparable.  The diversion of resources harms not only the mission of the NCBCP, but also its constituents in Detroit who risk being undercounted in the Census and consequently losing their fair share of funding and representation associated with the Census count.

44.     NCBCP anticipates that if Defendants continue to disseminate voter intimidation robocalls, they will need to divert additional resources to protect the communities they serve.

### Defendants' Robocall Campaign Has Intimidated Plaintiffs.

45.     Plaintiff Mary Winter is resident of Rockland County, New York, where she is registered to vote.  She voted in the primary election by mail-in ballot and intended to vote in the November 3, 2020 general election by mail-in ballot.  Because of the COVID-19 outbreak for which there is currently no cure or vaccine, Ms. Winter does not think it is safe for her to vote in person.  During the course of the pandemic, she has been very careful in her virus precautions (particularly given that she lives in a County currently experiencing a high volume of COVID-19 cases), has remained socially distant from almost everyone, and does not even go to the grocery store anymore.  In addition, prior to receiving the robocall, Ms. Winter had doubts about the integrity of voting through the mail-in ballot process due to reports she had seen in the media but was still planning to vote by mail-in ballot.  Ms. Winter's receipt of Defendants' robocall has intimidated her into changing plans.

46.     Ms. Winter received the robocall on August 26, 2020, and was so immediately distressed by it, that she shared it with her partner, Plaintiff Gene Steinberg.  At first, she thought the robocall might originate from a legitimate source but soon realized the nefarious intentions behind the call when the speaker's allegations turned to mandatory vaccines.  Even though she knows that the robocall is fraudulent, the robocall has exacerbated her fears that someone will

tamper with her mail-in ballot or violate its secrecy.  As Ms. Winters describes it, "[i]f someone is willing to go to the lengths of creating a false robocall to lie and scare people from voting by mail, . . . what else might they be willing to do to block my mail-in ballot[?]"  The robocall has intimidated Ms. Winter to the point where she is no longer planning to vote by mail and instead has decided to vote in person, despite the increased risks of contracting COVID-19 and spreading it to her partner.

47.     Plaintiff Gene Steinberg is resident of Rockland County, New York, where he is registered to vote.  He voted in the primary election by mail-in ballot and intended to vote in the November 3, 2020 general election by mail-in ballot.  Mr. Steinberg is Ms. Winter's partner and lives with her.  Like Ms. Winter, Mr. Steinberg has been vigilant in avoiding exposure to COVID-19 and was planning to vote via mail-in ballot to avoid any unnecessary risk.  Because of the robocall, Mr. Winter is now planning to vote in person.

48.     Mr. Steinberg heard the robocall because Ms. Winter played it for him immediately after she received it.  Mr. Steinberg has many of the same concerns that Ms. Winter does with regards to mail-in ballots, and the robocall further undermined any confidence in that method that remained.  In addition, Mr. Steinberg found the robocall to be "traumatic" for him due to his personal history.  He has a nonviolent criminal conviction from more than 18 years ago.  Given his history with law enforcement, Mr. Steinberg was particularly fearful after hearing the robocall's threat that law enforcement would use mail-in ballots to track voters.  In fact, this threat has so "profoundly scared [him]," Mr. Steinberg now has "great anxiety" and is reliving earlier traumas as a result.  Mr. Steinberg has been intimidated by the robocall to the point where he is no longer planning to vote by mail and instead has decided to vote in person, despite the increased risks of contracting COVID-19 and spreading it to his partner.

49.     Plaintiff Nancy Hart is resident of New York County, New York where she is registered to vote.  Ms. Hart received the robocall on August 26, 2020 (even though her phone number is registered with the Do Not Call registry).  Ms. Hart was "irate" upon listening to the robocall because she understood the call to be a voter suppression tactic.  Ms. Hart was also angry at the fact that the robocalls specifically targeted Black voters by preying upon real fears that exist within the Black community about the police, predatory debt collectors, and government-mandated medical programs.  Ms. Hart's concerns about the robocall have only grown deeper since receiving the robocall because she has observed others on social medial repeating the false information disseminated by the robocall.  Ms. Hart is so fearful that Defendants might be successful in their efforts to intimidate voters that she called the Pennsylvania State Attorney General Office and Secretary of State.

50.     Plaintiff Sara Wolff is resident of New York County, New York where she is registered to vote.  Ms. Wolff received the robocall on August 26, 2020 (even though her phone number is registered with the Do Not Call registry).  Because Ms. Wolff knew that the robocall's information was a lie and that the purpose of the robocall was to intimidate her, the robocall infuriated her.  Ms. Wolff likewise found the call to be "disgusting" because it was a clear effort to intimidate voters from exercising their right to vote and because she understood the robocall's contents to be targeting Black voters in particular.

51.     Plaintiff Kate Kennedy is resident of Cuyahoga County, Ohio where she is registered to vote.  Ms. Kennedy is married to Plaintiff Karen Slaven and they received the robocall at their home where they live together on August 26, 2020.  The robocall angered Ms. Kennedy because she understood this call to be an attempt to scare her into not voting by mail.  She is also worried that other voters will be scared by the call.

52.     Plaintiff Karen Slaven is resident of Cuyahoga County, Ohio where she is registered to vote.  Ms. Slaven is married to Ms. Kennedy and they received the robocall at their home where they live together on August 26, 2020.  Ms. Slaven understood this call to be an attempt to scare her into not voting by mail, and she is worried that other voters will be scared by the false information in the robocall.

53.     Plaintiff Eda Daniel is resident of Cuyahoga County, Ohio where she is registered to vote.  Ms. Daniel received the robocall in late August or early September, 2020 (even though her phone number is registered with the Do Not Call Registry).  Ms. Daniel was understandably disconcerted, and also scared, by the robocall.  Ms. Daniel is well-familiar with the processes of voting as she serves as a precinct official for her county, and she believes that this robocall is an attempt to harass voters and intimidate them—and her—from voting.  The robocall also left her feeling powerless and vulnerable; she felt as if a stranger had just invaded her home with pernicious lies in order to intimidate her.  Ms. Daniel was so concerned that Defendants might be successful in their efforts to intimidate voters that she called her congresswoman, U.S. senator and mayor to report them.

54.     Plaintiff Andrea Sferes is resident of Westchester County, New York where she is registered to vote. Ms. Sferes received the robocall on August 26, 2020 and also on or around Labor Day.  Ms. Sferes had never heard of Project 1599, Jacob Wohl, or Jack Burkman.  When she listened to the call, Ms. Sferes was shocked, furious and sickened.  Ms. Sferes understood the call to be an attempt to dissuade people from voting by mail.  Since she has outstanding debt related to medical bills, Ms. Sferes began to worry whether her information would really be shared and tried to convince herself otherwise.  The robocall resulted in emotional distress that lasted multiple days after the call, and led her to voice her dismay to friends.

## Defendants' Robocall Campaign is a Conspiracy to Intimidate Voters From Exercising Their Right to Vote.

55.     Defendants are engaged in a conspiracy to prevent by intimidation and threats citizens who are lawfully entitled to vote from voting and giving their support and advocacy in a legal manner toward and in favor of the election of a lawfully qualified person as an elector for President and Vice President and as a Member of Congress of the United States. The conspiracy consists of, at least, Defendant Burkman, Defendant Wohl, Defendant Project 1599, Defendant J.M. Burkman & Associates, LLC, and the speaker who identified herself on the robocalls as "Tamika Taylor." The purpose of the conspiracy is to send voter intimidation robocalls. Defendants committed numerous overt acts in furtherance of the conspiracy, including each robocall call to the individual Plaintiffs and others. Defendants conspired to create and strategically disseminate the robocalls in an effort to suppress the vote. Intimidating voters into refraining from voting by mail or from voting at all is an interference with those voters' giving of support or advocacy in favor of their preferred candidates in the election.

56.     In the alternative, Defendants' conspiracy, by targeting Black voters and using intimidation to deprive them of their right to vote, seeks to deprive a class of persons of equal protection of the law.

57.     The Defendants know or reasonably should know that their actions have the effect of intimidating, threatening, and/or coercing Plaintiffs, and tens of thousands of other potential voters, in connection with exercising their right to vote by mail in the November 3, 2020 election. Indeed, that Defendants intended for their robocalls to intimidate voters is apparent from the robocall's last statement: "Stay home safe and beware of vote by mail." Defendants do not just want voters, particularly Black voters, to vote by mail—they do not want them to vote at all.

-15-

**Defendants Are Facing Criminal Charges Arising From Their Robocall Campaign.**

58.     Defendants' actions have not escaped the notice of law enforcement authorities. On October 1, 2020, the Michigan Attorney General announced the filing of felony charges against Burkman and Wohl in connection with the robocalls at issue in this case, to the extent they targeted voters in Michigan.  Each was charged with one count of intimidating voters, one count of conspiracy to commit an election law violation, one count of using a computer to commit the crime of intimidating voters, and using a computer to commit the crime of conspiracy, all in violation of Michigan state law.  As a condition of bail, Defendants Burkman and Wohl have been ordered to not "initiate or cause anyone else to initiate any robocalls or other communications directed at multiple recipients" until after the election.[4]  However, these are state law charges from just one state.  Defendants sent their robocalls to many other states outside of the jurisdiction of the Michigan Attorney General, including each of the states in which the Plaintiffs reside.

**Defendants Must be Stopped From Causing Irreparable Harm.**

59.     There is no reason this Court should assume that Defendants—individuals who have turned being liars and fraudsters into full-time jobs—will adhere to the Michigan court's order.  Indeed, Defendants' long-history of disregard for the law and undermining confidence in elected officials whom Defendants deem to be opponents is well-documented.   In the last two years, Defendants have orchestrated elaborate plans—including coercing and/or paying individuals to lie—to bring sexual misconduct allegations against Special Counsel Robert

---

[4] Gregory Lemos and Chandelis Duster, Ring-Wing Political Operatives Arraigned on Felony Voter Intimidation Charges Charges for Robocalls, CNN POLITICS (Oct. 8, 2020), *available at* https://www.cnn.com/2020/10/08/politics/jack-burkman-jacob-wohl-robocall-voter-intimidation-charges/index.html.

Mueller,[5] Minnesota Congresswoman Ilhan Omar, former South Bend, Indiana Mayor and then-Democratic presidential candidate Pete Buttigieg, Massachusetts Senator and then-Democratic presidential candidate Elizabeth Warren, and White House Coronavirus Task Force member Dr. Anthony Fauci.  Although these allegations were debunked, Defendants have been undeterred in their reckless chase of fraudulent schemes.  Just last month, Defendants hired actors on Craigslist to stage an FBI raid on Burkman's home, which he falsely alleged was retaliation by government officials.

60.     In short, Burkman and Wohl have long been engaged in a game of lies and fraud with the goal of undermining fair and free elections.  Indeed, employing robocalls to further their fraud is nothing new:  In 2019, Burkman and Wohl used robocalls in a failed effort to solicit derogatory information about Joe Biden.  Defendants have shown over and over again their intentional disregard for truth and the law.[6]

61.     Defendants must be deterred immediately to prevent irreparable harm to voters, including Plaintiffs.  Being denied the right to vote via intimidation is an irreparable harm; the voter permanently loses that opportunity to vote.  Similarly, a voter suffers an irreparable, and potentially fatal, harm when they feel compelled to expose themselves to heightened COVID-19 risk in order to vote in person because they do not trust vote by mail due to intimidation and deception.

62.     If voters, including Plaintiffs are intimidated, coerced, threatened or otherwise prevented from voting—or are impaired by having to vote in person instead of by mail—in the

---

[5] Andrew Prokop, The incredibly shoddy plot to smear Robert Mueller, explained, Vox (October 30, 2018), *available at* https://www.vox.com/2018/10/30/18044110/robert-mueller-jacob-wohl-jack-burkman-surefire.

[6] Wohl's refusal to pay the restitution imposed by the Arizona Corporation Commission further demonstrates his disregard for lawful authorities.  In addition, Defendants' staging of an FBI raid with actors potentially violates the federal statute making it a crime to aid and abet the false impersonation of federal agents.  *See* 18 U.S.C. § 912.

upcoming November 3, 2020 election because of Defendants' actions, there will be no way to undo or remedy this damage.  If Plaintiffs, or other potential voters, do not vote in the November 3, 2020 election as a result of Defendants' actions, their vote in that election is forever lost. Enough is enough.

## CAUSES OF ACTION

## COUNT 1 (Violation of Section 11(b) of the Voting Rights Act)

63.     Plaintiffs incorporate by reference the preceding paragraphs as if fully set forth herein.

64.     Section 11(b) of the Voting Rights Act provides in relevant part:  "No person, whether acting under color of law or otherwise, shall intimidate, threaten, or coerce, or attempt to intimidate, threaten, or coerce any person for voting or attempting to vote[.]"  52 U.S.C. § 10307(b) (formerly codified at 42 U.S.C. § 1973i(b)).

65.     Defendants have orchestrated a deceptive robocall campaign threatening, falsely, that personal information provided in connection with mail-in voting would be used by (i) the police to make arrests, (ii) credit card companies to collect outstanding debt, and (iii) the CDC to enforce mandatory vaccines.

66.     Defendants' conduct violates Section 11(b) of the Voting Rights Act, which prohibits all actual or attempted "intimidation," "threats," or "coercion" against a person, either "for voting or attempting to vote."

67.     Defendants' actions have the effect of intimidating, threatening, and/or coercing, or attempting to intimidate, threaten, and/or coerce, tens of thousands of lawfully registered voters in connection with voting or attempting to vote in the November 3, 2020 election.

68.     Defendants' actions are undertaken with the purpose of intimidating, threatening,

or coercing lawfully registered voters, so that would be fearful and reluctant to exercise their right to vote by mail in the November 3, 2020 election.

69.     Unless and until enjoined by the Court, Defendants will continue to intimidate, threaten, and/or coerce, or attempt to intimidate, threaten, and/or coerce, lawfully registered voters, such as Plaintiffs, in violation of Section 11(b) of the Voting Rights Act.

## **COUNT 2 (Violation of Section 2 of the Ku Klux Klan Act)**

70.     Plaintiffs incorporate by reference the preceding paragraphs as if fully set forth herein.

71.     Plaintiffs bring a claim under clause 3 of 42 U.S.C. § 1985(3), which as set forth in the underline text below, provides that:

> If two or more persons in any State or Territory conspire or go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws; if two or more persons conspire to prevent by force, intimidation, or threat, any citizen who is lawfully entitled to vote, from giving his support or advocacy in a legal manner, toward or in favor of the election of any lawfully qualified person as an elector for President or Vice President, or as a Member of Congress of the United States; or to injure any citizen in person or property on account of such support or advocacy; in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

(emphases added).

72.     Defendants have violated clause 3 of 42 U.S.C. § 1985(3) because Defendants have conspired  to intimidate and threaten many thousands of eligible voters, including Plaintiffs, through targeted robocalls, with the purpose of dissuading such persons from exercising their

voting rights and to sow distrust in the electoral system in general, and voting by mail in particular.

73.     Defendants have orchestrated a deceptive robocall campaign by falsely threatening that personal information provided in connection with mail-in voting would be used by (i) the police to make arrests, (ii) credit card companies to collect outstanding debt, and (iii) the CDC to enforce mandatory vaccines.

74.     Defendants coordinated in the collection of phone numbers and the development of a strategically designed message.

75.     Defendants sought to prevent Plaintiffs, and thousands of other robocall recipients, from exercising their right to vote.

76.     Defendants' robocall message employed thinly veiled threats, intimidating Plaintiffs and causing Plaintiffs to have doubts and fears about voting through mail-in ballots, and undermined Plaintiffs' confidence in voting by mail in the November 3, 2020 election.

77.     Defendants attempted to intimidate Plaintiffs out of exercising their right to vote by mail; upon information and belief, in the case of some percentage of the thousands of unnamed robocall recipients, Defendants no doubt succeeded in coercing such voters out of voting by any means.

78.     In the alternative, Defendants' conspiracy also sought to deprive Black voters of the equal protection of the laws by targeting the voter intimidation robocalls to Black voters to attempt to deprive them of their right to vote.

79.     The object of the Defendants' conspiracy is to dissuade eligible voters from casting their vote.  Defendants' message not only discourages the recipients from exercising their right to vote by mail, but also undermines their basic trust in the electoral process, all with the

intended effect of reducing voter turnout.  Plaintiff Hart, who spends much of her time as a journalist and activist encouraging others to vote recognized the robocalls as not solely a form of voter suppression but also as a direct attack on the institution of voting itself.

80.    Each robocall is an act in furtherance of the object of Defendant's Section 1985(3) conspiracy.

81.    Plaintiffs experienced distress and fear upon receiving the call.  All Plaintiffs were emotionally disturbed by the receipt of the robocall.  Plaintiffs Winter and Steinberg now intend to vote in person, putting themselves at a higher risk of contracting coronavirus, a direct result of Defendants dissuading them from voting by mail.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiffs respectfully request judgment be entered in its favor and against Defendants as follows:

a)  Declaring that Defendants' actions as described above violate Section 11(b) of the Voting Rights Act, 52 U.S.C. § 10307(b);

b)  Declaring that Defendants' actions as described above violate 42 U.S.C. § 1985(3), the Ku Klux Klan Act;

c)  Enjoining Defendants, their agents, employees, and all persons acting in concert with them, from further undertaking the unlawful actions set forth in the Complaint;

d)  Awarding compensatory and punitive damages under 42 U.S.C. § 1985(3), the Ku Klux Klan Act;

e)  Awarding reasonable attorneys' fees and costs; and

f)  Awarding such other and further relief that the Court deems reasonable and just.

In the near future, Plaintiffs also intend to file a request for a temporary restraining order

prohibiting Defendants, their agents, employees, and all persons acting in concert with them,

from further undertaking the unlawful actions set forth in the Complaint.

Dated: New York, New York          Respectfully submitted,
      October 16, 2020

                                       ORRICK, HERRINGTON & SUTCLIFFE
                                       LLP

                                       By:_____/s/ Rachelle Navarro_____

                                       Amy Walsh
                                       Rene Kathawala
                                       Rachelle Navarro
                                       Julie Gorchkova
                                       Spencer Bruck
                                       Aaron Gold
                                       Michael Maruca *(not admitted in SDNY)*
                                       ORRICK HERRINGTON & SUTCLIFFE LLP
                                       51 West 52nd Street
                                       New York, NY 10019-6142
                                       (212) 506-5000
                                       rkathawala@orrick.com
                                       awalsh@orrick.com
                                       rnavarro@orrick.com
                                       jgorchkova@orrick.com
                                       sbruck@orrick.com
                                       aaron.gold@orrick.com
                                       mmaruca@orrick.com

                                       Jon Greenbaum*
                                       Ezra Rosenberg*
                                       John Libby
                                       David Brody*
                                       LAWYERS' COMMITTEE FOR CIVIL
                                       RIGHTS UNDER LAW
                                       1500 K St. NW, Suite 900
                                       Washington, DC 20005
                                       (202) 662-8600
                                       jgreenbaum@lawyerscommittee.org
                                       erosenberg@lawyerscommittee.org
                                       jlibby@lawyerscommittee.org
                                       dbrody@lawyerscommittee.org

                                     *Application Pro Hac Vice Forthcoming