

**GERSTMAN SCHWARTZ** LLP
ATTORNEYS AT LAW

October 28, 2020

**VIA CM/ECF & EMAIL**
The Honorable Victor Marrero (chambersnysdmarrero@nysd.uscourts.gov)
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, New York 10007-1312

    Re: *National Coalition on Black Civil Participation et al. v. Wohl et al.*, United States District Court, Southern District of New York, Case No. 1:20-cv-08668

Dear Judge Marrero:

    We represent the Defendants Jacob Wohl, Jack Burkman, J.M. Burkman & Associates, LLC, and Project 1599 (collectively, "Defendants") in the above-referenced matter. Pursuant to the Court's Individual Practices, Section II(A), we respectfully submit this letter motion on the basis of a legitimate emergency seeking, 1) reconsideration of the Court's October 28, 2020 Decision and Order (the "Order") pursuant to Federal Rule of Civil Procedure 60(b); and 2) a stay of the instant matter pending Defendants' contemporaneous criminal proceedings. As will be described herein, Defendants face an imminent risk of substantial constitutional and liberty deprivations, which constitute a legitimate emergency.

**Reconsideration is Warranted:** Federal Rule of Civil Procedure 60(b) authorizes reconsideration when "an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Tr.*, 729 F.3d 99, 108 (2d Cir. 2013) (internal citations omitted). Courts must balance the competing imperatives of finality and the need to render just decisions on the basis of all the facts. *See Kolel Beth Yechiel Mechil of Tartikov, Inc.* 729 F.3d at 108. Reconsideration is permissible when there has been "mistake, inadvertence, surprise, or excusable neglect, *see* Fed. R. Civ. P. 60(b)(1); newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b), *id.* 60(b)(2); and any other reason that justifies relief, *id.* 60(b)(6)." *Gibson v. SCE Grp., Inc.*, 2019 WL 5188932 (S.D.N.Y. 2019).

    Defendants face an imminent risk of significant constitutional and liberty deprivations as a result of the Court's Order insofar as it requires them to issue an incriminating statement before the conclusion of the instant matter and before the conclusion of two pending criminal matters. As a threshold matter, on October 25, 2020, Defendants apprised your Honor's clerk via e-mail that they were seeking to retain counsel and were therefore seeking an adjournment of the hearing scheduled on October 26, 2020. Given the pending criminal action in Michigan arising from the same nucleus of operative facts underlying the instant matter, Defendants' Fifth and Sixth Amendment rights were immediately invoked.

    On October 25, 2020, our offices were contacted, and we discussed with Defendants being hired. We subsequently transmitted a retainer late in the evening to Defendants. We did in our

consult advise Defendants to confer with their criminal counsel given the pending criminal action in the State of Michigan with plans to confer on the ramifications of a civil suit with directly overlapping charges against Defendants. Defendants advised that they would provide us with the signed retainer in the late afternoon of October 26, and wire payment shortly thereafter. Defendants advised that they would email the Court seeking an adjournment and that if they were unable to secure an adjournment by email, they would apprise the Court on the October 26 conference call that, insofar as they were in the process of retaining counsel, an adjournment was necessary. Defendants also advised us that the Court expected our opposition to the TRO by 3:00 p.m., which was filed accordingly. Today, this Court rendered a decision precluding a stay and deciding, among other things, that the robocall statement was false.

With regard to the *pro se* Defendant's request for a stay, there is new information that must be provided to this Court. First and foremost, your Honor's Order requiring Defendants to issue a robocall directly *countermands a Michigan State Court's Order that Defendant not issue any robocalls*. This is *new information* that was not proffered before this Court at the conference call hearing by the *pro se* Defendants. Additionally, your Honor's Order not only prejudges this civil case and would cause the Defendants to be in violation of a condition of bail, it also violates the Defendants Fifth Amendment right against self-incrimination and Sixth Amendment right to counsel. Simply stated, Defendants believe that the statement is true. Your honor has ruled it is not. Defendants were not represented by counsel and were unable to bring before this Court facts that would have likely made the court determine otherwise.

Your honor held, in pertinent part, that, "[t]he robocall message contains various *false statements*. Order at p. 6 (emphasis added).[1] As part of the Court's analysis, Your Honor noted that, "the publication of information about voters in public records is a function of voter registration, and unrelated to whether a voter chooses to vote by mail or in person. The Court finds that Defendants' contention that voting by mail increases the likelihood of dissemination of a voter's personal information is baseless." *Id.* at p. 9. Respectfully, there is a notable and important difference between mail in voting and in person voting, which really does impact on *Skip Tracing* the whereabouts of a person. For example, in New York State, voters are assigned a voting location (*i.e.*, a polling site) based on both the Assembly District (AD) and the Election District (ED) that he/she resides in. As a generalization, judicial notice can be taken that these polling sites do not move that often. Thus, a voter who moves within a few blocks may actually still reside within the same ED and therefore vote in the same place as he/she always did. The net effect would be that the State or City Board of Elections ("BOE") will never correct or purge that record if that person, from time-to-time, votes in person and never records the fact he/she has moved within that ED. Whether it is a warrant squad or creditor accessing public records, "in person" voting against the old address would tend to confirm the old address as accurate because that record will be deemed active by the BOE. If, however, one avails oneself of Voting by Mail by requesting a Mail in Ballot, receiving one and then voting, these interactions inadvertently confirm that the voter lives where she says she does or is at least in a position to retrieve mail at that address. There is,

---

[1] These purportedly "false statements" include, "1) claim that police will use vote-by-mail information to track persons with outstanding warrants; (2) the assertion that vote-by-mail information will be used by debt collectors; and (3) the claim that the Centers for Disease Control and Prevention ("CDC") is seeking access to vote-by-mail information to conduct mandatory vaccination efforts." Order at p. 6.

therefore, a material distinction when it comes to *Skip Tracing* a person's actual whereabouts.[2] This is neither baseless nor immaterial.[3] Judicial notice can be taken that with merely a name and date of birth, one can access many public records (including BOE records) and that as described above, logically, a Mailed in Vote provides a more reliable address than an In Person Vote.

Your honor also noted that "Defendants provide no credible evidence, and the Court finds none in the record of this proceeding, to support a claim that publicly available voter-registration lists are used by law enforcement, debt collectors, and the CDC[4] in the manner the robocall alleges." Order at p. 9. The *pro se* litigants who were instructed by their criminal counsel to attempt to adjourn the conference hearing may not have had the evidence at the ready but the *Skip Tracing* tools referenced above make it clear that updated voter registration data is part of the initial *Skip Tracing* utilized by debt collectors and investigators. Respectfully, investigators, debt collectors and police are known to use public records, including voter registration data, to locate persons and, as described above, a Mailed in Vote is a better, more reliable record than an In Person Vote.

Findlaw, in pertinent part, notes, "[w]ho can request voting record information? State statutes define who can request a voter list, what information can be publicly shared and with whom, and how that information can be used. Depending upon your state (and sometimes your county), your voting record may be requested by and shared with political parties and candidates, *law enforcement, government officials, businesses*, scholars, journalists, and even members of the general public." Can my voting record be kept private?" https://www.findlaw.com/voting/how-u-s--elections-work/what-information-is-public-from-your-voting-record.html. Law enforcement and government are the main busines of debt collectors. Findlaw also notes that, "[y]our state may have programs that allow you to keep confidential at least some part of your voter record." On information and belief, none of the states that are alleged to have received calls provide for any confidential treatment of a generic voter. Some states allow for such treatment for folks in witness protection or victims of domestic violence. *Id*.

Your Honor did "take[] judicial notice of the varied procedural requirements for obtaining voter-registration information across different states, as well as the diverse types of voter information publicly available, which, for example, does not always include voters' addresses." Order at p. 9, fn. 8. In New York State, for instance, (*see* https://voterlookup.elections.ny.gov/), one needs only a county, last name, first name, date of birth, and zip code to access this

---

[2] *Skip Tracing* is the process of locating a person's whereabouts who does not want to be found. Search-Net Management, a company specializing in *Skip Tracing*, states "We specialize in finding information…We will find your debtor, for as little as $25." http://www.searchnetmgt.com/. They provide a *Skip Tracing* checklist that includes, 1) Traffic Records, 2) Circuit Civil Records, 3) County Civil Records 4) Circuit Criminal Records 5) County Criminal Records and 6) **Voter Registration**. *Id*; *see also* **Exhibit A**.

[3] Indeed, publicly available on the internet is the Ultimate *Skip Trace* List, which lists voter records as the fifth resource on a list that includes 42 items. *See* https://medium.com/skipvue/the-ultimate-skip-trace-list-is-the-backbone-of-every-successful-skip-tracer-88419364a573; *see also* **Exhibit B**.

[4] The Defendants opinion that the CDC might order mandatory vaccines has also been widely discussed. *See The Hill* article dated May 20, 2020 (https://thehill.com/opinion/healthcare/498641-will-government-mandate-covid-19-vaccinations), annexed hereto as **Exhibit C**.

information.[5] A creditor or warrant squad would typically have these indicators, as well as a last known address, and if the person in question was still living in the same general area, a BOE record that memorializes receipt of a Mailed in Ballot would serve as a reliable indicator that the person in question lived at that address (or has access to mail at that address).

Your honor also held that, "[n]or have Defendants identified compelling evidence to corroborate the claim that law enforcement will use voter-registration lists to execute arrest warrants. Hence, the Court finds that these statements are false and misleading and that as a consequence, in the minds of reasonable voters, would produce a substantial intimidating effect." Order at p. 9. We respectfully request that this determination be left to a jury. Testimony can be provided from licensed private investigators and former police that would affirm the foregoing. Additionally, respectfully, intimidation has been defined as including the threat of force and clearly nothing in the Project 1599 group call even remotely suggests that the Project 1599, described as a civil rights organization, was making any threat of use of force itself. There is no threat of force or retaliation by Project 1599, but rather an advisory, which as we describe above, is neither false nor misleading nor inaccurate; even if it is unsettling to some.

If the state legislatures in question wish to change the laws in their states to prohibit warrant squads and creditors from accessing verified public information to track down criminals, they certainly should (and can). As to certain Plaintiffs finding these facts unsettling, this is unfortunate because the truth is the truth. Additionally, commonly bandied about opinions that are part of the public domain and public debate can also be unsettling. But they are not constitutionally proscribed. For example, as to the plaintiff who has an 18-year-old nonviolent criminal conviction finding it "particularly traumatic" (cited by Your Honor in his opinion), unless this individual has pending warrants, his reaction is uncalled for. If he does, and his address of record is accurate, factual information should not be traumatic. And if he always votes in person at a set polling site but has moved, he certainly has not been hurt by this truthful statement. As another instance, the journalist who was supposedly offended, but made it clear she was going to vote anyway, cannot be said to be intimidated. Moreover, as a journalist, she is certainly aware of the roiling and ongoing debate in this county about the pros and cons of mail in ballots and, among other things, their susceptibility to fraud. In fact, all Plaintiffs, in sum and substance, have indicated that they are undeterred and either have already voted or will be voting soon. The Court also misses Plaintiffs' attestations that they read/watched media reports stating much the same thing regarding the unreliability of mail in voting being conducive to fraud. A robocall repeating this opinion cannot reasonably be found to be improper.[6] Even if many wholly disagree with this sentiment, it is widely stated, restated, and believed at least by a significant plurality. Thus, the Court's holding that it is a falsehood, rather than an opinion on a key question of fact, is at the very least premature.[7]

**A Stay is Warranted:** "[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort

---

[5] Indeed, this is true for all states relevant to the instant matter (*i.e.*, Ohio, Pennsylvania, Illinois and Michigan), some of which require even less information.

[6] *See, e.g.*, https://www.centralwinews.com/opinion/2020/09/08/mail-in-voting-ripe-for-fraud/?destination=star-news; https://www.jdnews.com/opinion/20200524/letter-all-mail-elections-ripe-for-fraud; *see also* **Exhibit D**.

[7] We will not reiterate our position that NCBCP has no standing at this stage reserving it respectfully for later.

for itself, for counsel, and for litigants." *Doe v City of NY*, 2018 US Dist LEXIS 209704, at *8-9 (E.D.N.Y. 2018) (internal citations omitted). The Second Circuit has held that a court "may decide in its discretion to stay civil proceedings…when the interests of justice seem…to require such action." *Kashi v. Gratsos*, 790 F.2d 1050, 1057 (2d Cir. 1986) (internal quotations omitted). When a defendant is facing parallel criminal and civil actions, courts have often found that a stay is warranted in order to protect the civil defendant against being forced to face "the difficult choice between being prejudiced in the civil litigation, if the defendant asserts his or her Fifth Amendment privilege, or from being prejudiced in the criminal litigation if he or she waives that privilege in the civil litigation."

Your Honor is evidently cognizant that "Burkman and Wohl are facing felony charges arising from the robocalls. Each is charged in Michigan with one count of intimidating voters, one count of conspiracy to commit an election law violation, one count of using a computer to commit the crime of intimidating voters, and using a computer to commit the crime of conspiracy…[and that] [o]ne condition of Burkman's and Wohl's bail is that they must not initiate, or cause anyone else to initiate, any robocalls or other communications directed at multiple recipients until November 4." Order at p. 13. Yet, Your Honor has ordered that Defendants issue a robocall in contravention of that Order, which would, at best, amount to an admission against interest. Defendants have now been indicted in Ohio, apparently on even more serious charges. Given that Defendants apprised the Court that they were in the process of securing counsel and already had a pending indictment, respectfully, the October 26 hearing should have been adjourned. As laymen, they did not know to assert their Fifth and/or Sixth Amendment rights or expressly request a stay, though Your Honor appears to have ruled against one anyway.

Your Honor noted that, "[d]uring the hearing, Defendants represented to the Court that they had obtained counsel who would enter an appearance on October 27, 2020. In light of this statement, at the conclusion of the hearing, the Court granted Defendants until October 27, 2020 at 3:00 p.m. to enter any written submission on Defendants' behalf. Defense counsel filed the Opposition to Plaintiffs' Motion on October 27, 2020 in accordance with that Order." Order at p.4. Respectfully, we filed that opposition completely unaware that Defendants, despite alerting the Court that they were presently going to be represented by counsel, were allowed to provide extensive testimony and without the benefit of having the transcript of that testimony. Your Honor also noted that at "the October 26 hearing, Defendants suggested that the Court should stay this action pending the conclusion of state." Order at p. 22. However, the *pro se* Defendants' "*suggestion*" is not a proper motion or a legal brief. We therefore respectfully request a reasonable time period to develop and submit one, as the Defendants' constitutional and liberty interests are at stake.

This Court has acknowledged that the Defendants are barred by a State Order, and now by this Court, from making any further robocalls. Thus, no party will be prejudged by allowing us time to brief a proper request for a stay.

Respectfully Submitted,
/s/ *David M. Schwartz*
/s/ *Randy E. Kleinman*

cc:     All counsel of record (via ECF)