```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X
NATIONAL COALITION ON BLACK CIVIC  :
PARTICIPATION, et al.              :
                                   :
                  Plaintiffs,      :
                                   :
       - against -                 :
                                   :
JACOB WOHL, et al.                 :
                                   :
                  Defendants.      :
------------------------------------X
```

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:_October 29, 2020_
```

20 Civ. 8668 (VM)

**DECISION AND ORDER**

**VICTOR MARRERO, United States District Judge.**

Plaintiffs National Coalition on Black Civic Participation ("NCBCP"), Mary Winter, Gene Steinberg, Nancy Hart, Sarah Wolff, Karen Slaven, Kate Kennedy, Eda Daniel, and Andrea Sferes (collectively, "Plaintiffs") filed this action against defendants Jacob Wohl ("Wohl"), Jack Burkman ("Burkman"), J.M. Burkman & Associates, LLC ("J.M. Burkman & Associates"), Project 1599, and John and Jane Does 1 through 10 (collectively, "Defendants"). Plaintiffs allege that Defendants sent robocalls containing false information intended to scare recipients from voting by mail in violation of Section 11(b) of the Voting Rights Act, 52 U.S.C. § 10307(b), and Section 2 of the Ku Klux Klan Act, 42 U.S.C. § 1985(3). On October 28, 2020 this Court granted Plaintiffs' motion for a temporary restraining order. (See "TRO Decision," Dkt. No. 38.) Now before the Court is a motion by Defendants for reconsideration of this Court's TRO Decision. (See "Reconsideration Motion," Dkt. No. 40.) For the reasons

1

set forth below, the Court DENIES the Reconsideration
Motion.

## I.   **LEGAL STANDARD**

Local Rule 6.3 governs reconsideration, which is
"intended to 'ensure the finality of decisions and to prevent
the practice of a losing party examining a decision and then
plugging the gaps of a lost motion with additional
matters.'" SEC v. Ashbury Capital Partners, L.P., No. 00 Civ.
7898, 2001 WL 604044, at *1 (S.D.N.Y. May 31, 2001)
(quoting Carolco Pictures, Inc. v. Sirota, 700 F. Supp. 169,
170 (S.D.N.Y. 1988)). When assessing a motion for
reconsideration, a district court must "narrowly construe and
strictly apply" Local Rule 6.3 in order to "avoid duplicative
rulings on previously considered issues" and to prevent the
rule from being used to advance theories not previously argued
or as "a substitute for appealing a final
judgment." Montanile v. Nat'l Broad. Co., 216 F. Supp. 2d
341, 342 (S.D.N.Y. 2002); see also Shamis v. Ambassador
Factors Corp., 187 F.R.D. 148, 151 (S.D.N.Y. 1999).

Reconsideration is "an extraordinary remedy to be
employed sparingly in the interests of finality and
conservation of scarce judicial resources." In re Health
Mgmt. Sys., Inc. Sec. Litig., 113 F. Supp. 2d 613, 614
(S.D.N.Y. 2000). Accordingly, the Second Circuit has held

that the standard for granting a motion to reconsider "is
strict, and reconsideration will generally be denied unless
the moving party can point to controlling decisions or data
that the court overlooked -- matters, in other words, that
might reasonably be expected to alter the conclusion reached
by the court." Shrader v. CSX Transp., Inc., 70 F.3d 255, 257
(2d Cir. 1995). "The major grounds justifying reconsideration
are 'an intervening change of controlling law, the
availability of new evidence, or the need to correct a clear
error or prevent manifest injustice.'" Virgin Atl. Airways,
Ltd. v. Nat'l Mediation Bd., 956 F.2d 1245, 1255 (2d Cir.
1992) (quoting 18 Charles Alan Wright, Arthur R. Miller &
Edward H. Cooper, Federal Practice & Procedure § 4478 at 790
(2d ed.)); accord Kolel Beth Yechiel Mechil of Tartikov, Inc.
v. YLL Irrevocable Tr., 729 F.3d 99, 104 (2d Cir. 2013). "[A]
motion to reconsider should not be granted where the moving
party seeks solely to relitigate an issue already
decided." Shrader, 70 F.3d at 257; see also Analytical
Surveys, Inc. v. Tonga Partners, L.P., 684 F.3d 36, 52 (2d
Cir. 2012) (noting that reconsideration "is not a vehicle for
relitigating old issues, presenting the case under new
theories, securing a rehearing on the merits, or otherwise
taking a second bite at the apple" (internal quotation marks
omitted)).

The decision to grant or deny a motion for reconsideration rests within "the sound discretion of the district court." Aczel v. Labonia, 584 F.3d 52, 61 (2d Cir. 2009) (quoting Nemaizer v. Baker, 793 F.2d 58, 61-62 (2d Cir. 1986)).

## II.  DISCUSSION

Defendants suggest that the Court proceeded hastily in a manner that undermined Defendants' ability to prepare a defense. A brief review of the timeline of this case is therefore appropriate. Defendant Burkman and the entity defendants were served in the morning on Wednesday, October 21, 2020 and defendant Wohl was served in the evening the same day. On Thursday, October 22, 2020, Plaintiffs moved for a temporary restraining order. Shortly after Plaintiffs' motion was filed, Burkman emailed the Court and stated that Defendants were attempting to seek counsel and "would deeply appreciate just a few days." Wohl also emailed the Court with the substantially same request. Accordingly, the Court issued a scheduling order setting the hearing date for Monday, October 26, 2020 at 9:00 a.m. and instructing Defendants to respond to Plaintiffs' motion by Friday, October 23 at 5:00 p.m. On Sunday, October 25, 2020, the Court emailed the parties to confirm the hearing scheduled for October 26. The

4

Court received no response or adjournment request of any kind from Defendants. Defendants appeared pro se at the hearing on October 26 (the "October 26 Hearing") and indicated that counsel had been obtained but was unavailable to appear before the Court until the following day. The Court thus allowed Defendants until October 27 at 3:00 p.m. to submit a written response to Plaintiffs' request. Defendants, through counsel, submitted their response by the deadline. The Court subsequently issued its decision on October 28, 2020. Defendants then filed the Reconsideration Motion currently before the Court.

In the Reconsideration Motion, Defendants raise various arguments, none of which are availing under the standard set forth above.

First, Defendants claim that the temporary restraining order requires them to make an incriminating statement before the conclusion of this civil case and while their criminal cases remain pending. This argument is, at best, reflective of a misreading of the Court's prior order and, at worst, a disingenuous attempt to stall compliance.  The order directs Defendants to convey the following message to those who received their prior robocall:

> At the direction of a United States district court, this
> call is intended to inform you that a federal court has
> found that the message you previously received regarding

mail-in voting from Project 1599, a political organization founded by Jack Burkman and Jacob Wohl, contained false information that has had the effect of intimidating voters, and thus interfering with the upcoming presidential election, in violation of federal voting-rights laws.

(TRO Decision at 65.) By communicating this message, Defendants will merely be announcing this Court's findings. The Court carefully scripted the message so as to avoid requiring Defendants to endorse this Court's findings or express any personal views regarding their own liability. Such a message cannot plausibly be construed as containing self-incriminating material, because it contains no expression of the Defendants' own views.

Second, the fact that a Michigan state court order prohibits Defendants from issuing any robocalls is not new information that would provide a basis for reconsideration. In its TRO Decision, the Court explicitly considered this fact and explained why it did not warrant limiting the scope of relief in this case, stating:

> The Court is aware that defendants Wohl and Burkman face the following bail condition in their pending Michigan case: "Neither defendant is to initiate, or cause anyone else to initiate, any robocalls or other communications directed at multiple recipients until November 4,2020." See CTRM 134 36th District Court, 36thDC134, YouTube (Oct. 8, 2020), https://www.youtube.com/watch?v=X8KUAWLGbZA. The Court is not persuaded that this condition was intended to prohibit the type of remedial messaging envisioned by the present Order. To the extent there is a conflict

between the bail condition and this Court's Order, however, it is the Court's understanding that when "[f]aced with conflicting orders -- one issued by a federal court to implement the Constitution, and the other issued by a state court as a matter of state practice," the federal court order takes precedence under "the priority prescribed by the Constitution" through the Supremacy Clause. See Madej v. Briley, 370 F.3d 665, 667 (7th Cir. 2004).

(See TRO Decision at 64 n.33.) Because this issue was already considered and decided, it does not warrant reconsideration.

Nor is the Court persuaded that the factual information Defendants present in their Reconsideration Motion provides any new, relevant facts that warrant reconsideration. In Defendants view, the new evidence supports their contention that the claims in the robocall message are true. Had this evidence been before the Court at the October 26 Hearing, Defendants argue, a different conclusion would have been reached. The Court disagrees. The factual assertions Defendants make here were neither "overlooked" at the October 26 Hearing, nor would they be "expected to alter the conclusion reached by the court." Shrader, 70 F.3d at 257.

To begin, Defendants allege that "there is a notable and important difference between mail in voting and in person voting." (Reconsideration Motion at 2.) Defendants' conclusion is based on the fact that a voter must provide an accurate address to receive an absentee ballot, whereas a voter who votes in person might maintain an active voter

7

registration despite minor address changes or inaccuracies, which would not impact her assigned polling place. In other words, Defendants allege that a voter can more easily cast her ballot despite registering with an inaccurate address if she votes in person rather than by mail. This, however, is neither persuasive nor relevant to the Court's finding of falsity. Whether voting by mail or in person, voters are required to update their voter registration information when they move, regardless of whether their polling place remains the same. That it is theoretically possible for a voter to move, fail to change her address, and nonetheless vote in person at her prior polling place does not mean that this actually occurs in practice. Defendants make no attempt to quantify how often voters remain registered with outdated addresses. There is no basis in the record for the Court to conclude that this alleged practice occurs so frequently as to create a meaningful distinction between the reliability of registration information for mail-in and in-person voters. Moreover, even if a substantial number of in-person voters were registered with outdated addresses, that fact would not alter the Court's finding that -- whether voting by mail or in person -- the public availability of a voter's address results from the voter's decision to register herself, not her decision about whether to vote in person or by mail.

Defendants next argue that the evidence they provide regarding "Skip Tracing" proves that investigators, debt collectors, and police "are known to use public records, including voter registration data." (Reconsideration Motion at 3.) Defendants' Exhibits A and B both relate to "Skip Tracing," a method used to locate people relying on, among other available information, a person's voter registration. However, as Defendants' also point out, at the October 26 Hearing, the Court was aware and indeed considered that voter-registration information is publicly available. (See TRO Decision at 9 n.8) (taking judicial notice of "the varied procedural requirements for obtaining voter-registration information across different states, as well as the diverse types of voter information publicly available")). What Defendants had not, and still have not, established, is *how* this publicly available information is used, the *likelihood* of it being so used,[1] or that the probability of its use *increases* when a voter votes by mail. As a reminder, Defendants' robocall message stated that mail-in voters' records "*will* be used" for law-enforcement and debt-

---

[1] In support of the argument that voter-registration information can be used by Skip Tracers to track people, Defendants submit a lengthy list of the means by which Skip Tracers can locate a given individual. If anything, this lengthy list calls into question the notion that voter-registration status makes a meaningful difference in a Skip Tracer's ability to locate any given person.

collection purposes. (TRO Decision at 6 (emphasis added).) While Skip Tracers may use the voter-registration information to locate people, this does not support the conclusion that debt collectors, law enforcement, or the CDC will use the information in the manner the robocall claims.

Likewise, the article in Exhibit C does not support Defendants' argument that the CDC will use voter-registration information to track individuals for mandatory vaccines. As an initial matter, the article is an opinion piece, expressing the personal views of its authors, not evidence-based fact. Moreover, even if the opinions expressed in the article were true -- that a COVID-19 vaccine might become mandatory -- this point is, again, irrelevant. Defendants have provided no support for the robocall message's claim that the CDC will use voter-registration information to identify individuals for mandatory vaccines.[2]

---

[2] At one point in Defendants' submission, defense counsel appears to suggest that the Court should have refrained from making factual determinations when deciding Plaintiffs' motion for a temporary restraining order and should have left those questions for a jury. But judges, not juries, decide when a temporary restraining order is warranted and, in doing so, judges are permitted to make factual determinations. See Victorio v. Sammy's Fishbox Realty Co., No. 14 Civ. 8678, 2014 WL 7180220, at *4 (S.D.N.Y. Dec. 12, 2014) ("When considering a motion for a preliminary injunction, unlike a motion to dismiss, the Court need not accept as true the well-pleaded allegations in Plaintiff['s] complaint.") (citing Incantalupo v. Lawrence Union Free Sch. Dist. No. 15, 652 F. Supp. 2d 314, 317 n.1 (E.D.N.Y. 2009)).

Relatedly, although Defendants argue that the Court's TRO Decision prejudges this civil case, the Court reiterates that it is required to conduct a preliminary analysis of the merits in order to decide whether injunctive relief is available. N. Am. Soccer League, LLC v. U.S. Soccer

Fourth, Defendants attempt to argue that "intimidation" within the context of the Voting Rights Act and Ku Klux Klan Act refers only to threats to use force. The Court thoroughly considered and rejected this argument, having considered the arguments defense counsel previously raised on this point. (See TRO Decision, at 34 – 56 & n.22.) The Court will not permit Defendants to relitigate this issue.

Defendants next contend that their Fifth and Sixth Amendment rights compel staying their civil case until the conclusion of the criminal prosecutions. Defendants seek "an extraordinary remedy." Louis Vuitton Malletier S.A. v. LY USA, Inc., 676 F.3d 83, 98 (2d Cir. 2012) (internal quotation marks and citation omitted). "[T]he Constitution rarely, if ever, *requires* such a stay." Id. "A defendant has no absolute right not to be forced to choose between testifying in a civil matter and asserting his Fifth Amendment privilege." Id. (internal quotation marks and citation omitted). Instead, whether to grant a stay is firmly in this Court's discretion. See id. at 99-100. In coming to its decision, the Court may consider factors such as:

> 1) the extent to which the issues in the criminal case overlap with those presented in the civil case; 2) the status of the case, including whether the

---

Fed'n, 883 F.3d 32, 37 (2d Cir. 2018). The Court fails to see how following the appropriate legal standards is cause for reconsideration.

defendants have been indicted; 3) the private interests of the plaintiffs in proceeding expeditiously weighed against the prejudice to plaintiffs caused by the delay; 4) the private interests of and burden on the defendants; 5) the interests of the courts; and 6) the public interest.

Id. at 99 (citation omitted). Ultimately, the Court's decision "must rest upon a particularized inquiry into the circumstances of, and the competing interests in, the case." Id. (internal quotation marks and citation omitted).

Here, the Court finds that a stay based on Fifth Amendment considerations is not warranted at this stage. Although there may be overlap between the factual bases of the civil and criminal cases, and although Defendants have been indicted already, this civil case is still in the earliest of stages. Thus far, Defendants have only been temporarily enjoined from certain conduct and required to notify robocall recipients of the Court's findings. As discussed above, that requirement in no way plausibly transgresses Defendants' Fifth Amendment rights and places only the most minimal of burdens on Defendants.

Other considerations weigh against a stay at this stage. For instance, Plaintiffs have a significant interest in expeditiously enjoining the conduct to prevent further electoral intimidation and interference in light of the upcoming November 3 election. The Court has addressed

12

Plaintiffs' interest at length in the TRO Decision. (See TRO Decision at 26-29 (discussing irreparable and imminent harm).) In addition, the public interest weighs heavily in favor of granting swift and effective injunctive relief, as the Court has previously explained. (See id. at 61-62.) In short, the impending election and the fundamental nature of the right at issue -- a right which, as the Court has discussed throughout its TRO Decision, underpins the democratic society upon which this nation is built -- strongly discourage entering a stay.

Insofar as Defendants argue that a stay is warranted under the Sixth Amendment because Defendants appeared at the October 26 Hearing pro se, "the Sixth Amendment does not govern civil cases." See, e.g., Turner v. Rogers, 564 U.S. 431, 441 (2011). Defendants' claim on this ground must fail.

Accordingly, the Court denies Defendants' request for a stay. This denial does not leave Defendants without any recourse in the future. The Court notes that "if there is imposition involved, the court can deal with such matters as and when there is threat of imposition." Louis Vuitton, 676 F.3d at 102. The Court is "open to considering further requests from defendants for alternative forms of relief, such as tailored stays, protective orders, quashing or modifying subpoenas, sealing confidential materials, or even

13

a renewed motion for a stay if specific impositions present[]

themselves" once the case has progressed further and

circumstances change. See id.


Dated:    New York, New York
          29 October 2020

                                        Victor Marrero
                                        U.S.D.J.