

November 25, 2020

**BY ECF & EMAIL**
The Honorable Victor Marrero (chambersnysdmarrero@nysd.uscourts.gov)
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, New York 10007-1312

    Re: *National Coalition on Black Civil Participation et al. v. Wohl et al.*, United States District Court, Southern District of New York, Case No. 1:20-cv-08668

Dear Judge Marrero:

    Pursuant to Your Honor's Individual Rule of Practice II.B.2, we write on behalf of Defendants Jacob Wohl, Jack Burkman, J.M., Burkman & Associates, LLC, and Project 1599 (collectively, "Defendants") to request a pre-motion conference and to explain why a motion to dismiss remains necessary following the required exchange of correspondence, attached as Exhibits 1 and 2.

    *First*, the Complaint fails to state a claim under either Section 11(b) of the Voting Rights Act (52 U.S.C. § 10307(b)) or Section 2 of the Ku Klux Klan Act (42 U.S.C. § 1985(3)). The complete text and history of these statutes demonstrate that intimidation, threats, force and/or coercion are prerequisites to their applicability. Although Your Honor granted Plaintiffs' request for injunctive relief in an abundance of caution given the impending election, it is undisputed that Plaintiffs ultimately bear the burden of proving Defendants' robocall statement (the "Statement") met the statutory prerequisites (*i.e.*, threat of force). Not only have Plaintiffs failed to meet their burden, but Plaintiff's own pleadings, though heavy with invective, demonstrate that Defendants' were simply exercising their First Amendment right to political speech.

    That Plaintiffs find the Statement offensive is absolutely their right. Notwithstanding same, it contains no discernible threat and is merely an expression of a political opinion that mail-in ballots are less trustworthy than voting in person. *See Virginia v. Black*, 538 U.S. 343, 359 (2003) (holding that a "true threat" is one "where the speaker means to communicate a serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals."). While one can envision a robocall that meets this requirement, the Statement at issue, without more, does not meet this standard and the Complaint is conspicuously devoid of any allegation

that Defendants used force, intimidation, threats or coercion to effectuate their message[1]. *See id.*, at 347 ("Intimidation in the constitutionally proscribable sense of the word is a type of true threat, where a speaker directs a threat to a person or group of persons with the intent of placing the victim in fear of bodily harm or death."); *see also Watts v. United States*, 394 U.S. 705 (1969) (mere rhetoric and political hyperbole do not constitute a true threat).

Moreover, while there is a plethora of evidence supporting the veracity of the Statement, the mere fact that a statement *could* ultimately be proven false does not deprive it of constitutional protection, as the Supreme Court recently clarified in *United States v. Alvarez*, 132 S. Ct. 2537 (2012) (finding that falsity alone is insufficient to put speech outside the protection of the First Amendment); *see also Garrison v. La.*, 379 U.S. 64, 73 (1964) ("[E]ven when the utterance is false, the great principles of the Constitution which secure freedom of expression…preclude attaching adverse consequences to any except the knowing or reckless false-hood"); *Illinois ex re. Madigan v. Telemarketing Associates, Inc.*, 538 U.S. 600, 620 (2003) ("False statement alone does not subject a fundraiser to fraud liability"). This is true regardless of whether Defendants expressed their opinion in a public square, an op-ed piece or through a robocall. *See Citizens United v FEC*, 558 U.S. 310, 326-327 (2010) (finding that courts "must decline to draw, and then redraw, constitutional lines based on the particular media or technology used to disseminate political speech from a particular speaker…First Amendment standards must give the benefit of any doubt to protecting rather than stifling speech." (citations omitted).

*Second*, Plaintiffs' attempt to impute a malevolent motive to Defendants' conduct is irrelevant, even if their views are unpopular or somehow offended Plaintiffs' sensibilities. *See United States v. Playboy Entertainment Group, Inc.*, 529 U. S. 803, 813 (2000) ("Where the designed benefit of a content-based speech restriction is to shield the sensibilities of listeners, the general rule is that the right of expression prevails"). The Statement is quintessential First Amendment speech and neither the medium nor the message may be proscribed. *See Citizens United*, 558 U.S. at 326-327; *see also Snyder v. Phelps*, 562 U.S. 443, 444 (2011) ("…speech is of public concern when it can be fairly considered as relating to any matter of political, social, or other concern to the community…A statement's arguably inappropriate or controversial character is irrelevant to the question whether it deals with a matter of public concern.") (internal quotation marks omitted). Indeed, holding unpopular or minority views in this country and expressing them far and wide is not yet a crime, and Plaintiff's attempt to twist and mangle these two acts in order to stifle free speech and punish dissenting views is both unsound and ill-advised. *See Matal v. Tam*, 137 S. Ct. 1744 (2017) ("[A] speech burden based on audience reactions is simply government hostility…in a different guise.")

---

[1] Moreover, although the Complaint purported to provide an accurate transcript of the Statement, Plaintiffs later corrected the record to make clear that the Statement actually stated, "stay safe and beware of vote by mail," not "stay home safe and beware of vote by mail" as Plaintiffs had initially and *erroneously* plead.



*Third*, New York's Anti-SLAPP statute applies and authorizes an award of Defendants' fees and costs.[2]

Because these deficiencies are not curable through amendment and because Plaintiffs are unwilling to withdraw their Complaint, Defendants respectfully submit that a motion to dismiss is necessary and request that the Court schedule a pre-motion conference.

*Finally*, in light of the foregoing and pursuant to Your Honor's Individual Practices Rule I.F, on consent of all parties, Defendants respectfully request an extension of Defendants' time to file a motion to dismiss. This is Defendants' second request for such an extension. Defendants' current deadline to file a motion to dismiss is December 3, 2020. Due to the complicated nature of this proceeding and current time constraints, we respectfully request that the parties each be afforded an additional seven days to file their respective papers as follows: 1) Defendants be afforded until and including December 10, 2020 to file a motion to dismiss; 2) Plaintiffs be afforded until January 14, 2021 to file their opposition to a motion to dismiss; and 3) Defendants be afforded until January 28, 2021.

Thank you for your consideration of this matter.

Respectfully Submitted,
/s/

David M. Schwartz
Randy E. Kleinman

Enclosures

cc:   All counsel of record (via ECF)

---

[2] *See* N.Y. Civ. Rights Law §§ 70-a and 76-a; *see also* N.Y. C.P.L.R. §§ 3211(g) 3212(h).