# EXHIBIT 1
# Defendants' Initial Letter



November 17, 2020

**VIA CM/ECF & EMAIL**
Rachelle Navarro (rnavarro@orrick.com)
Orrick, Herrington & Sutcliffe LLP
51 West 52nd Street
New York, New York 10019

      Re: *National Coalition on Black Civil Participation et al. v. Wohl et al.*, United States District Court, Southern District of New York, Case No. 1:20-cv-08668

Dear Ms. Novarro:

    We write on behalf of Jacob Wohl, Jack Burkman, J.M., Burkman & Associates, LLC, and Project 1599 (collectively, "Defendants"), pursuant to Judge Marrero's Individual Practice Rule II.B.1, to explain why your client's Complaint fails to state a claim.

**I.    Defendants' Robocall Statement is Protected First Amendment Speech.**

    "The freedom of speech... guaranteed by the Constitution embraces at the least the liberty to discuss publicly and truthfully all matters of public concern without previous restraint or fear of subsequent punishment." *First Nat. Bank of Boston v. Bellotti*, 435 U.S. 765, 776 (1978) (internal quotation marks omitted). Where it is found that a "restriction is viewpoint discriminatory, the Court need not decide whether it is unreasonable in light of the forum's purpose." *Good News Club v. Milford Central School*, 533 U.S. 98, 99 (2001). Challenges to speech "must be objective, focusing on the communication's *substance* rather than on amorphous considerations of intent and effect." *Fed. Election Comm'n v. Wisconsin Right to Life, Inc.*, 551 U.S. 449, 451 (2007) (citations omitted) (emphasis added). A restriction must not discriminate against speech on the basis of viewpoint. *Good News Club*, 533 U.S. at 106-107. This is true regardless how speech is disseminated because courts "must decline to draw, and then redraw, constitutional lines based on the particular media or technology used to disseminate political speech from a particular speaker…First Amendment standards must give the benefit of any doubt to protecting rather than stifling speech." *Citizens United v FEC*, 558 US 310, 326-327 (2010) (citations omitted).

    Notwithstanding the Court's preliminary Order, Plaintiffs' claims under both Section 11(b) of the Voting Rights Act (52 U.S.C. § 10307(b)) and Section 2 of the Ku Klux Klan Act (42 U.S.C. § 1985(3)) to secure relief for the putatively unlawful infringement of voting rights secured by the Constitution and the laws of the United States fail to state an actionable claim. These statutes were clearly not intended to curtail free speech such as the expression of a political opinion as to which method of voting was most trustworthy, let alone speech devoid of any attempt to intimidate, threaten, or coerce any person from actually voting or attempting to vote.

    While your complaint purported to provide an accurate transcript of the robocall (the "Statement"), you later corrected the record to make clear that the Statement actually stated, "stay safe and beware of vote by mail," not "stay home safe and beware of vote by mail" as you had

# GERSTMAN SCHWARTZ LLP
ATTORNEYS AT LAW

initially and *erroneously* plead. You argue that this does not change the meaning. We obviously disagree because the originally pleaded version arguably attempts to persuade voters not to vote, whereas the *actual statement* merely outlines a litany of reasons why mail-in voting is untrustworthy/problematic. As you know, the court exercised its discretion—evidently in an abundance of caution given the looming election—and granted injunctive relief over and beyond that requested, not only halting Defendants' participation in electoral politics, but requiring that Defendants issue a "curative" robocall, which was indeed issued pre-election.

Far too much emphasis has been placed on the particular arguments employed by Defendants in support of their *political opinion and belief* that voting in person is more reliable and more trustworthy than mail-in voting[1] and concerns about mail-in voting have been advanced by advocates on both sides of the political aisle.[2] Defendants are well within their First Amendment rights to champion this opinion regardless of whether their statement is ultimately proven true (this is not a defamation suit) and irrespective of whether they did so in a public square, an op-ed piece or through a robocall. *Id.* Your attempt to impute a malevolent motive to Defendants' conduct is irrelevant, even if their view is unpopular or somehow offended your clients' sensibilities. The Statement is quintessential First Amendment speech and neither the medium nor the message may be proscribed. *See id.*; *see also Snyder v. Phelps*, 562 U.S. 443, 444 (2011) ("…speech is of public concern when it can be fairly considered as relating to any matter of political, social, or other concern to the community…A statement's arguably inappropriate or controversial character is irrelevant to the question whether it deals with a matter of public concern.") (internal quotation marks omitted).

The complete text and history of both 52 U.S.C. § 10307(b)) and 42 U.S.C. § 1985(3) demonstrate that intimidation, threats, force and/or coercion are prerequisites to their applicability. A "true threat" is one "where the speaker means to communicate a serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals." *Virginia v. Black*, 538 U.S. 343, 359 (2003). While one can envision a robocall that meets this requirement[3],

---

[1] The National Conference of State Legislatures outlines advantages and disadvantages of mail-in voting including financial consideration, an increase in voter "errors" or "residual votes" including overvotes and undervotes, tradition and, notably, "[d]isparate effect on some populations. Mail delivery is not uniform across the nation. Native Americans on reservations in particular may have difficulty with all-mail elections. Many do not have street addresses, and their P.O. boxes may be shared. Low-income citizens move more frequently and keeping addresses current can pose problems. Literacy can be an issue for some voters, as well, since election materials are often written at a college level. (Literacy can be a problem for voters at traditional polling place locations, too.). Opportunities for coercion. If a voter is marking a ballot at home, and not in the presence of election officials, there may be more opportunity for coercion by family members or others. Slower result reporting." https://www.ncsl.org/research/elections-and-campaigns/absentee-and-early-voting.aspx

[2] The decidedly progressive and quite readable Derek Thompson at The Atlantic on September 30, 2020 wrote "How Voting by Mail Could Cost Biden the Election - While in-person voting looks safer than expected, mail-in voting looks more dangerous—not because of fraud, but because of human error and partisan politics." https://www.theatlantic.com/ideas/archive/2020/09/the-democrats-vote-by-mail-conundrum/616535/; Other topical examples include the fact that 21% of New York's mail-in ballots (approximately 84,000) during June's primary election were rejected (*see* https://www.nbcnews.com/politics/elections/one-five-mail-ballots-rejected-botched-nyc-primary-n1236143), and that the New York State Bar Association recently passed a mandatory COVID-19 vaccination resolution[2] (https://www.law.com/newyorklawjournal/2020/11/07/state-bar-passes-mandatory-covid-19-vaccination-recommendation/?slreturn=20201016103002).

[3] *e.g.*, "Hello, I am the Grand Wizard of the Imperial Knights and we are calling all voters in your area to let you know we are surveilling all the voting stations and we will absolutely be taking names and you will be sorry if you vote. Stay home and stay safe."

that is not what happened here. The statement "stay safe and beware of vote by mail" without more, does not meet this standard and Plaintiffs' Complaint is conspicuously devoid of any claim that Defendants used force, intimidation, threats or coercion to effectuate their message. *See id.*, at 347 (2003) ("Intimidation in the constitutionally proscribable sense of the word is a type of true threat, where a speaker directs a threat to a person or group of persons with the intent of placing the victim in fear of bodily harm or death."); *see also Watts v. United States*, 394 U.S. 705 (1969) (mere rhetoric and political hyperbole do not constitute a true threat).

Clearly, the Statement that Plaintiffs found offensive contains no discernible threat and is merely an expression of political opinion that mail-in ballots are less trustworthy than voting in person. Moreover, in the ultimate slight Mr. Berkman and Mr. Wohl are both American Jews. Besides your inaccurate and unkind characterizations of them, the idea of branding these gentlemen with the blazing firebrand of the KKK is unseemly and preposterous. The cacophony of pejoratives used to describe our clients and malign their motives do not make this a cause of action. Holding unpopular or minority views in this country and expressing them far and wide is not yet a crime, and your attempt to twist and mangle these two acts in order to stifle free speech and punish dissenting views is both unsound and ill-advised. *See Matal v. Tam*, 137 S. Ct. 1744 (2017) ("[A] speech burden based on audience reactions is simply government hostility…in a different guise."); *see also United States v. Playboy Entertainment Group, Inc.*, 529 U.S. 803, 813 (2000) ("Where the designed benefit of a content-based speech restriction is to shield the sensibilities of listeners, the general rule is that the right of expression prevails").

## II. Defendants Are Entitled to An Award of Their Attorneys' Fees and Costs.

New York's "Anti-SLAPP" statute authorizes defendants to seek dismissal of claims that are without merit and brought because the defendant "exercised the constitutional right of free speech in connection with a public issue." N.Y. Civ. Rights Law § 76-a. On November 10, 2020, Governor Andrew Cuomo signed legislation that expanded First Amendment protections under New York's anti-SLAPP law intended to thwart frivolous lawsuits aimed at chilling free speech. The law amends and extends New York's current statutes[4] addressing strategic lawsuits intended to tamp down on free speech and provides that attorneys' fees and costs are recoverable for defending claims that both Plaintiffs and you as their counsel should know are not supported by either fact or law. To avoid owing fees and costs, Plaintiffs should promptly dismiss their Complaint with prejudice.

Very truly yours,
/s/
David M. Schwartz
Randy E. Kleinman

cc:     The Honorable Victor Marrero (via ECF)
        All counsel of record (via ECF)

---

[4] *See* N.Y. Civ. Rights Law §§ 70-a and 76-a; *see also* N.Y. C.P.L.R. §§ 3211(g) 3212(h).