# EXHIBIT 2
# Plaintiff's Response



November 24, 2020

**BY EMAIL**

David M. Schwartz
Randy K. Kleinman
Gerstman Schwartz LLP
1399 Franklin Avenue, Suite 200
Garden City, NY 11530

Orrick, Herrington & Sutcliffe LLP
51 West 52nd Street
New York, NY 10019-6142

+1 212 506 5000

**orrick.com**

**Aaron J. Gold**

E   aaron.gold@orrick.com
D   +1 212 506 5179
F   +1 212 506 5151

Re:   *National Coalition on Black Civic Participation et al. v. Wohl et al.*, No. 20-cv-8668

Dear Messrs. Schwartz and Kleinman:

On behalf of Plaintiffs in the above-referenced action and pursuant to Rule II.B.1 of the Court's Individual Practices, we write in response to your November 17, 2020 pre-motion letter (the "Letter") asserting that the Complaint fails to state a claim for relief. Defendants' arguments are meritless and would waste the Court's time, as well as the parties' resources, given that the Court has already considered—and rejected—most of the arguments in the Letter. The other arguments raised are irrelevant at this stage.

***The First Amendment Is Not A Defense in This Case***. The Court has twice ruled that Defendants' robocalls are not protected speech. *See* ECF No. 38 at 4, 36–56 & n.22; ECF No. 41 at 11. This is now the law of the case,[1] and your Letter offers no "compelling reasons" for the Court to reverse itself. *See MF Glob. Holdings Ltd. v. PricewaterhouseCoopers LLP*, 232 F. Supp. 3d 558, 571 (S.D.N.Y. 2017) (noting that "mere disagreement with the Court's analysis" is not a "compelling reason" to depart from the law of the case). In fact, your Letter simply rehashes arguments already rejected by the Court. This argument is meritless and, consistent with its prior decision, the Court will likely rule against Defendants again.

As the Complaint states, Defendants' actions—sending, amidst a pandemic, false robocalls telling people that voting by mail could lead to debt collection, arrests, or forced vaccination—are violations of Section 11(b) of the Voting Rights Act, 52 U.S.C. § 10307(b), and Section 2 of the Ku Klux Klan Act ("KKK Act"), 42 U.S.C. § 1985(3). (Comp. ¶¶ 63–81). The plain text of both statutes proscribes voter "intimidation" and "threats." 42 U.S.C. § 1985(3); 52 U.S.C. § 10307(b). Consistent with these statutes, the First Amendment does not protect "true threats" or unlawful intimidation. *See Virginia v. Black*, 538 U.S. 343, 359 (2003). Defendants' argument that their

---

[1] We recognize that the Court's prior rulings were decided in the context of a temporary restraining order.

robocalls are not a true threat or unlawful intimidation because both require a contemplation of immediate violence is not the law, as the Court has already ruled. ECF No. 38 at 41–43.

A "true threat" does not, as you suggest, require a threat of immediate violence—it merely "encompass[es]" such expression. ECF No. 38 at 40 (quoting *Black*, 538 U.S. at 359). It is well established that non-violent threats can equally instill fear, and the purpose of prohibiting true threats is to stop "the disruption that fear engenders." *Id*. (quoting *Black*, 538 U.S. at 360). Plaintiffs need only allege that a reasonable person "would interpret [the message] as a threat of injury," not necessarily a threat of physical injury. *See United States v. Turner*, 720 F.3d 411, 420 (2d Cir. 2013) (true threats include "threaten[ing] a specific legal wrong grave enough to be likely either to cause substantial emotional disturbance in the person threatened or to require the employment of substantial resources for investigation or prevention"). Likewise, "intimidation" goes beyond threats of physical violence and, in fact, encompasses *any* means of "putting a person in fear for the purpose of compelling or deterring his or her conduct." ECF No. 38 at 43 (quoting *Damon v. Hukowitz*, 964 F. Supp. 2d 120, 149 (D. Mass. 2013)).

In the context of illegal interference with voting rights, it is well established that "threats" and "intimidation" need not be explicitly violent. *See, e.g.*, *League of United Latin Am. Citizens - Richmond Region Council 4614 v. Pub. Interest Legal Found.*, 2018 WL 3848404, at *4 (E.D. Va. Aug. 13, 2018) ("Intimidation" under Section 11(b) reaches all conduct that is capable of engendering "fear of harassment and interference with their right to vote."). In particular, the Ninth Circuit has found that warnings that personal information will be collected and used against voters—just as Defendants threaten will occur here—may constitute a threat and intimidation. *See United States v. Nguyen*, 673 F.3d 1259, 1265 (9th Cir. 2012) (ruling there was "sufficient" basis for a jury to conclude that a letter distributed among Latino immigrants warning "that if they voted in the upcoming election their personal information would be collected" and "could be provided to organizations who are 'against immigration'" constituted unlawful "intimidation" under California law). Other examples are numerous. *See, e.g.*, *United States v. McLeod*, 385 F.2d 734 (5th Cir. 1967) (interpreting 1957 Civil Rights Act to find that certain arrests and prosecution constituted unlawful voter intimidation); *United States v. Beaty*, 288 F.2d 653, 654–57 (6th Cir. 1961) (recognizing that economic pressure—eviction of sharecroppers as punishment for registering to vote—constitutes unlawful intimidation); *Daschle v. Thune*, No 4:04-cv-4177, ECF No. 6 at 2 (D.S.D. Nov. 1, 2004) (concluding that following Native American voters within and outside polling places, discussing Native Americans who were prosecuted for illegally voting, and recording their license plate numbers was intimidation"). The Court recognized that these principles applied when it ordered injunctive relief.[2] *See* ECF No. 38 at 43–47.

---

[2] Even if actionable threats require expression of physical harm (which they do not), the robocalls at issue *did include* threats of such harm. Given the present widespread uncertainty concerning COVID-19, and historic distrust in the Black community of nonconsensual government vaccination programs, ECF No. 1 ¶ 35, threats of mandatory vaccinations is "reasonably perceived as a threat of bodily harm" to voters who vote by mail, ECF No. 38 at 50. Also, the threat of arrest in relation to old warrants could "fairly be perceived as threatening arrest or legal action against those with criminal records," which could involve a bodily seizure. *Id.*

***Defendants' Other Arguments Are Irrelevant at the Motion to Dismiss Stage***.  In the Letter, Defendants also (1) improperly attempt to recast the declarative statements in the robocalls as "political opinion and belief," (2) disingenuously mischaracterize the content of the robocalls as a public service warning that mail-in voting is less reliable than in-person voting, and (3) complain about Plaintiffs' characterization of Defendants' "malevolent motive."  These arguments dispute the facts, not the law.  "[T]he Court, at the motion to dismiss stage, must accept the factual allegations as true."  *Sotheby's, Inc. v. Stone*, 388 F. Supp. 3d 265, 276 (S.D.N.Y. 2019).  Plaintiffs plead all necessary elements to support their claims, and Defendants raise no legal arguments to the contrary that are rooted in the record before the Court.[3]  Defendants will have the opportunity to present their evidence later in the case.

***New York's "Anti-SLAPP" Statute Is Inapplicable***.  Likewise, Defendants' invocation of New York's "Anti-SLAPP" statute is misplaced.  Under New York's "Anti-SLAPP" statute, a motion to dismiss will not be granted if the plaintiff demonstrates "that the cause of action has *a substantial basis in law*."  N.Y. C.P.L.R. § 3211(g) (emphasis added).  Plaintiffs clearly meet that standard, as the Court found that Plaintiffs established the likelihood of success on the merits.  *See* ECF No. 38 at 30.[4]

\*   \*   \*

For these reasons, we believe that a motion to dismiss based on the reasons outlined in your Letter is improper and would fail as a matter of law.  It is therefore our position that Defendants' proposed motion to dismiss is without merit and submitting briefs concerning such a motion would waste both time and precious judicial resources.[5]

Sincerely,

/s/ *Aaron J. Gold*
Aaron J. Gold

cc:   The Honorable Victor Marrero (via email)
      All counsel of record (via email)

---

[3] Defendants may bristle at being branded as defendants to a KKK Act claim; however, indignation is not a defense, and, as your Letter recognizes, mere "offended . . . sensibilities" are not relevant here.  *See* Letter at 2.

[4] Defendants have not demonstrated that, procedurally, they can even assert New York's "Anti-SLAPP" statute during a pending federal court action.  Recently, the Second Circuit held that "federal courts may [not] entertain the various state iterations of the anti-SLAPP special motion."  *La Liberte v. Reid*, 966 F.3d 79, 85–88 (2d Cir. 2020) (discussing California's "Anti-SLAPP" statute).

[5] As such, should the Court indicate agreement with our position and Defendants still proceed with filing a motion to dismiss, Plaintiffs will seek recovery of related attorney's fees and costs in accordance with Rule II.B.3 of the Court's Individual Practices.