USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: February 22, 2021

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

NATIONAL COALITION ON BLACK CIVIC PARTICIPATION, et al.,

Plaintiffs,

- against -

JACOB WOHL, et al.,

Defendants.

20 Civ. 8668 (VM)

**DECISION AND ORDER**

**VICTOR MARRERO, United States District Judge.**

Plaintiffs National Coalition on Black Civic Participation ("NCBCP"), Mary Winter, Gene Steinberg, Nancy Hart, Sarah Wolff, Karen Slaven, Kate Kennedy, Eda Daniel, and Andrea Sferes (collectively, "Plaintiffs") filed this action against defendants Jacob Wohl ("Wohl"), Jack Burkman ("Burkman"), J.M. Burkman & Associates, LLC ("J.M. Burkman & Associates"), Project 1599, and John and Jane Does 1 through 10 (collectively, "Defendants"). Plaintiffs allege that Defendants sent robocalls containing false information intended to scare recipients from voting by mail in violation of Section 11(b) of the Voting Rights Act ("VRA"), 52 U.S.C. § 10307(b), and Section 2 of the Ku Klux Klan Act ("KKK Act"), 42 U.S.C. § 1985(3). (See Complaint, Dkt. No. 1.)

Now before the Court is Defendants' second motion for a stay pending resolution of the criminal proceedings against them. (See "Renewed Motion for Stay," Dkt. No. 67.) For the

reasons set forth below, the Court DENIES the Renewed Motion for Stay.

## I. BACKGROUND

### A. PROCEDURAL HISTORY

Plaintiffs brought suit against Defendants on October 16, 2020. (Dkt. No. 1.) On October 22, 2020, Plaintiffs moved for a temporary restraining order ("TRO") to enjoin Defendants from disseminating additional robocalls ahead of the November 2020 election. (Dkt. No. 12.) On October 26, 2020, the Court held a hearing (the "October 26 Hearing") on Plaintiffs' motion for a TRO at which Wohl and Burkman appeared pro se, as their secured counsel was not yet available. (See Dkt. No. 53, at 3.) The Court provided time for Burkman and Wohl to present their case pro se and gave them an opportunity to supplement their case through a submission by their counsel the following day. (Id. at 4.) At the October 26 Hearing, Burkman and Wohl made certain admissions, such as acknowledging that they had caused the robocalls to be issued. (Id. at 12.) On October 28, 2020, after reviewing Defendants' supplemental submission, this Court granted Plaintiffs' motion for a TRO. (See "TRO Decision," Dkt. No. 38.)

Defendants subsequently moved for reconsideration of the TRO Decision. (Dkt. No. 40.) As part of that motion, Defendants sought a stay pending resolution of the criminal proceedings against Burkman and Wohl pending in Michigan. (See id.)

On October 1, 2020, the Michigan Attorney General filed charges against Burkman and Wohl for one count of intimidating voters; one count of conspiracy to commit an election law violation; one count of using a computer to commit the crime of election law; and using a computer to commit the crime of conspiracy. See Press Release, Dep't of Attorney Gen., AG Nessel Files Felony Charges Against Jack Burkman, Jacob Wohl in Voter-Suppression Robocalls Investigation (Oct. 1, 2020), available at https://www.michigan.gov/ag/0,4534,7-359-92297_99936-541052--,00.html. These charges stemmed from the dissemination of the robocalls at issue here. See id.

On October 27, 2020, Burkman and Wohl were indicted in Ohio on eight counts of telecommunications fraud and seven counts of bribery, which is defined under Ohio law as "[a]ttempt[ing] by intimidation, coercion, or other unlawful means to induce such delegate or elector to register or refrain from registering or to vote or refrain from voting at a primary, convention, or election for a particular person, question, or issue." Press Release, Cuyahoga Cty. Office of

the Prosecutor, Virginia and California Duo Indicted as Part of Voter Intimidation Robocall Scam that Targeted Midwestern Minority Communities (Oct. 27, 2020), available at http://prosecutor.cuyahogacounty.us/en-US/duo-indicted-voter-intimidation-scam-targeted-minority-communities.aspx (citation omitted). Like the charges in Michigan, those charges arose from the dissemination of the robocalls at issue in the instant action.[1] See id.

On October 29, 2020, the Court denied both requests. (See "Reconsideration Order," Dkt. No. 41.) Defendants then moved to dismiss the Complaint, and the Court denied that motion as well.[2] (See Dkt. Nos. 62, 66.) On January 15, 2021, Defendants filed the Renewed Motion for Stay. (Dkt. No. 67.

B. THE PARTIES' ARGUMENTS

Defendants argue that a stay is warranted to protect their Fifth Amendment rights. Because the criminal and instant civil matters arise from the same facts, Defendants argue that "there is a significant likelihood that if this matter is not deferred, it will undermine Mr. Wohl and Mr.

---

[1] For unknown reasons, Defendants did not rely on the Ohio charges in their first motion for a stay.

[2] Defendants have appealed the denial of their motion to dismiss. (Dkt. No. 72.) However, it is well established that a denial of a motion to dismiss is a non-appealable interlocutory order. Edrie v. Maguire, 892 F.3d 525, 532 (2d Cir. 2018). That appeal therefore does not divest this Court of jurisdiction. U.S. Sec. & Exch. Comm'n v. Citigroup Glob. Mkts. Inc., 827 F. Supp. 2d 336, 337 (noting that the filing of a "plainly unauthorized notice of [interlocutory] appeal does not divest the district court of jurisdiction" (internal quotation marks and citation omitted)).

Burkman's Fifth Amendment privilege against self-incrimination, unfairly expand the rights of criminal discovery, and expose the basis of their respective defenses to the prosecution in advance of criminal trial." (Renewed Motion for Stay at 2.) Defendants also argue that "a prior determination in either of the pending criminal matters could have collateral estoppel effect in this action, thereby simplifying the issues." (Id. at 3 (internal quotation marks and citation omitted).)

Plaintiffs respond that Defendants have waived their Fifth Amendment privilege for much of the alleged conduct by admitting to it during the October 26 Hearing. Plaintiffs also argue that Defendants have failed to specify why a stay is needed in the case. Plaintiffs explain that they intend to seek documents from Defendants, and the Fifth Amendment is inapplicable to the contents of documents. Plaintiffs contend that Defendants' concern of expanding criminal discovery is misplaced and that protective orders can alleviate such a concern. Plaintiffs further argue that they will be prejudiced by a delay because a delay could limit or eliminate any recovery of damages. As to Defendants' argument on collateral estoppel, Plaintiffs note that any potential efficiencies of waiting for the state judgments are at most negligible.

In reply, Defendants argue that any admissions made at the October 26 Hearing cannot constitute knowing and voluntary waivers of their Fifth Amendment rights. Defendants also argue that there will be no prejudice to Plaintiffs because they will benefit from the progression of the Michigan and Ohio cases.

## II. **LEGAL STANDARD**

A stay is "an extraordinary remedy." Louis Vuitton Malletier S.A. v. LY USA, Inc., 676 F.3d 83, 98 (2d Cir. 2012) (internal quotation marks and citation omitted). "[T]he Constitution rarely, if ever, *requires* such a stay." Id. "A defendant has no absolute right not to be forced to choose between testifying in a civil matter and asserting his Fifth Amendment privilege." Id. (internal quotation marks and citation omitted). Instead, whether to grant a stay is firmly in this Court's discretion. See id. at 99-100. In coming to its decision, the Court may consider factors such as:

> 1) the extent to which the issues in the criminal case overlap with those presented in the civil case; 2) the status of the case, including whether the defendants have been indicted; 3) the private interests of the plaintiffs in proceeding expeditiously weighed against the prejudice to plaintiffs caused by the delay; 4) the private interests of and burden on the defendants; 5) the interests of the courts; and 6) the public interest.

Id. at 99 (citation omitted). Ultimately, the Court's decision "must rest upon a particularized inquiry into the circumstances of, and the competing interests in, the case." Id. (internal quotation marks and citation omitted).

## II. DISCUSSION

The Court finds that a stay is not warranted at this stage of the case at hand. Although some of the factors listed above weigh in favor of Defendants, the bulk of them do not. Therefore, the Court is not persuaded that the "extraordinary remedy" of a stay is justified here.

### A. FACTORS ONE AND TWO

The first two factors -- the overlap of issues and status of the criminal proceedings -- weigh in favor of a stay. The criminal proceedings as well as the instant suit all "arise from the same facts," that is, issuance of robocalls ahead of the November 2020 general election. The proceedings also raise similar questions of whether Defendants' conduct constituted threats or intimidation. And because Defendants have been indicted in the criminal matters, "prosecution is likely and imminent." Louis Vuitton, 676 F.3d at 100 n.14.

### B. FACTOR THREE

The third factor -- the private interests of Plaintiffs -- weighs against granting a stay for two primary reasons. First, proceeding expeditiously in lawsuits is a matter of

importance given the evidentiary concerns stemming from delay. For instance, a stay could result in witnesses becoming unavailable or suffering from fading memories, which would hamper Plaintiffs' case. Second, Plaintiffs here seek monetary damages, and a delay could jeopardize their ability to recover from Defendants.

These concerns are compounded by the fact that the Court has no way of knowing the timeline of the state criminal proceedings. Defendants' request for a stay pending resolution of their criminal cases is thus essentially a request for an open-ended stay, which could be very costly to Plaintiffs. See Capak v. Epps, No. 18 Civ. 4325, 2018 WL 6726553, at *5 (S.D.N.Y. Dec. 21, 2018) (explaining that the plaintiff "has a strong interest in proceeding with civil discovery" because a seventeen-month stay "could lead to faded memories and/or prevent Plaintiff from recovering on his tort claim for several years after the alleged injury"); cf. Rodriguez v. Gusman, 974 F.3d 108, 112-13 (2d Cir. 2020) (noting that a years-long administrative closure can prejudice plaintiffs by making the acts of "finding witnesses and conducting discovery difficult if not impossible" (internal quotation marks and citation omitted)).

C. FACTOR FOUR

The fourth factor -- the private interests and burden on Defendants -- does not support granting a stay either. At this point, any burden is minimal. Defendants raise three reasons they will be prejudiced: (1) because they will be forced to invoke their Fifth Amendment right against self-incrimination; (2) because the scope of criminal discovery will be expanded; and (3) because the bases of their criminal defenses will be exposed in advance of criminal trial. None of these reasons is persuasive.

As to the Fifth Amendment, it is entirely speculative at this stage for Defendants to argue that they will be forced to choose between self-incrimination and adverse inferences. As yet, there have been no discovery requests presenting any such dilemma for Defendants. See Sterling Nat'l Bank v. A-1 Hotels Int'l, Inc., 175 F. Supp. 2d 573, 578 (S.D.N.Y. 2001) ("[S]ince depositions have not yet taken place, there is no way of measuring with any precision what questions defendants may refuse to answer, or what damage may be done to their position in the civil case by any assertions of privilege they might choose to make."). In addition, Plaintiffs indicate that they plan to serve only document requests on Defendants, and "documents voluntarily prepared prior to the issuance of a summons [are] not compelled testimony, so there [is] no Fifth Amendment protection for the *contents* of these

records." United States v. Fridman, 974 F.3d 163, 174 (2d Cir. 2020). The Court notes that Defendants are free to make specific challenges to particular discovery requests once they have been served, and the Court has ample tools to address any meritorious challenges, including altering subpoenas or even instituting a tailored stay. See Louis Vuitton, 676 F.3d at 102.

As to concerns about expanding the scope of criminal discovery, these concerns are easily assuaged by less drastic means. To the extent any prosecutors would seek access to the evidence gleaned in civil discovery, the Court can mitigate this risk by issuing "protective orders, quashing or modifying subpoenas, [or] sealing confidential materials." See id. Defendants have not indicated why a wholesale stay of the civil matter, rather than tailored approaches such as protective orders, is necessary to protect evidence from falling into the state prosecutors' hands.

Finally, as to the risk of giving state prosecutors insight into the basis of the defense, the Court finds this risk to be overstated at present. Defendants' defense in the instant action has consistently been that the alleged conduct is protected by the First Amendment. Burkman and Wohl have also publicly asserted the First Amendment as a defense to the criminal charges. See CTRM 134 36th District Court,

*36thDC134*, YouTube (Oct. 8, 2020), https://www.youtube.com/watch?v=X8KUAWLGbZA (arraignment); see also Cory Shaffer, Right-wing Hoaxers Jacob Wohl and Jack Burkman Hit with Felony Charges in Cleveland Tied to Multi-state Voter Robocall Campaign, Cleveland.com (Oct. 27, 2020), https://www.cleveland.com/court-justice/2020/10/right-wing-hoaxers-jacob-wohl-and-jack-burkman-hit-with-felony-charges-in-cleveland-tied-to-multi-state-voter-robocall-campaign.html ("William Amadeo, a Michigan attorney who is part of the legal team defending Wohl and Burkman against criminal charges in that state, told cleveland.com Tuesday that they believe that contents of the robocall are protected speech under the First Amendment."). Defendants have not asserted any other defense to either their civil or criminal cases. Consequently, the Court fails to see what new information prosecutors will learn from continuation of this case, at least at this stage in the litigation.

D. FACTOR FIVE

The fifth factor -- the interests of the courts -- likewise weighs against granting a stay. The Court has a "well-recognized interest in disposing of the causes on its docket with economy of time and effort." See Louis Vuitton, 676 F.3d at 104 (internal quotation marks and citation omitted). Although Defendants suggest it will be efficient

for the Court to wait until verdicts have been rendered in the criminal matters due to collateral estoppel, the Court is not persuaded.

Collateral estoppel may be asserted based on a criminal *conviction*. See Gelb v. Royal Globe Ins. Co., 798 F.2d 38, 42 (2d Cir. 1986). But Burkman and Wohl deny engaging in any criminal conduct, and there is no certainty that they will be convicted. Additionally, collateral estoppel would apply only to "any issue determined adversely to [the defendant] in the criminal proceeding, provided that he had a full and fair opportunity to litigate the issue." Id. at 43. But because the statutes at issue in the three proceedings are all different, it is far from clear that Burkman and Wohl will have a full and fair opportunity to litigate the issues relevant to Plaintiffs' VRA and KKK Act claims. In other words, collateral estoppel might apply, at most, only to a subset of issues necessary to resolve the instant suit. As such, the Court does not consider it efficient to wait for the criminal proceedings against Wohl and Burkman to conclude.

E. FACTOR SIX

The last factor -- the public interest -- weighs heavily against a stay. The Court previously explained that the public interest favors granting swift and effective injunctive

relief. That conclusion was not based solely on the upcoming election; it was reached "in light of the fundamental nature of the right at issue -- a right which, as the Court has discussed throughout its TRO Decision, underpins the democratic society upon which this nation is built." (Reconsideration Order at 12-13.) The importance of the right to vote requires that this Court address alleged interference with that right without delay.

It is also important to note that elections occur periodically. By the time Defendants' criminal proceedings have concluded, countless elections may have taken place. Prompt resolution of Plaintiffs' claims will further clarify the acceptable bounds of election-related conduct for activists, voters, and other interested parties, thereby promoting the integrity of future elections.

For these reasons, the Court denies Defendants' request for a stay. As the Court has stated before, "if there is imposition involved, the court can deal with such matters as and when there is threat of imposition." Louis Vuitton, 676 F.3d at 102. But the Court cautions Defendants to refrain from automatically requesting a stay every time one of their motions has been denied.[3] If they wish to prevail, Defendants

[3] The Court emphasizes that this is Defendants' third request to stay the instant suit. Defendants first suggested a stay was necessary at the October 26 Hearing, and the Court rejected that notion in the TRO

must carry their burden of demonstrating prejudice -- they cannot continue to merely rely on speculation. See Capak, 2018 WL 6726553, at *4 ("Where a defendant is seeking the stay and therefore bears the burden of establishing its need, the Court will not base a stay solely on speculative and uncertain risks to Defendant's interests where no showing of possible prejudice has been made." (internal quotation marks, brackets, and citations omitted)).

## III. ORDER

Accordingly, for the reasons stated above, it is hereby

**ORDERED** that the motion so deemed by the Court as filed by defendants Jacob Wohl, Jack Burkman, J.M. Burkman & Associates, LLC, Project 1599, and John and Jane Does 1 through 10 for a stay (Dkt. No. 67) is **DENIED**.

**SO ORDERED**

Dated: New York, New York
22 February 2021

Victor Marrero
U.S.D.J.

---

Decision. (See Dkt. No. 38, at 22-26.) Defendants then formally moved for a stay when they moved for reconsideration of the TRO Decision. (Dkt. No. 40.)