```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X
NATIONAL COALITION ON BLACK CIVIC    :
PARTICIPATION, et al.,               :
                                     :
                     Plaintiffs,     :   20 Civ. 8668 (VM)
                                     :
     - against -                     :   DECISION AND ORDER
                                     :
JACOB WOHL, et al.,                  :
                                     :
                     Defendants.     :
------------------------------------X
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: May 19, 2021

**VICTOR MARRERO, United States District Judge.**

Plaintiffs National Coalition on Black Civic Participation ("NCBCP"), Mary Winter, Gene Steinberg, Nancy Hart, Sarah Wolff, Karen Slaven, Kate Kennedy, Eda Daniel, and Andrea Sferes (collectively, "Plaintiffs") filed this action against defendants Jacob Wohl ("Wohl"), Jack Burkman ("Burkman"), J.M. Burkman & Associates, LLC ("J.M. Burkman & Associates"), Project 1599, and John and Jane Does 1 through 10 (collectively, "Defendants"). Plaintiffs allege that Defendants sent robocalls containing false information intended to scare recipients from voting by mail in violation of Section 11(b) of the Voting Rights Act ("VRA"), 52 U.S.C. § 10307(b), and Section 2 of the Ku Klux Klan Act ("KKK Act"), 42 U.S.C. § 1985(3). (See Complaint, Dkt. No. 1.)

Now before the Court is a letter, submitted by Letitia James, Attorney General of the State of New York ("NY AG") on behalf of the People of the State of New York on May 6, 2021,

requesting a premotion conference regarding her anticipated motion to intervene. (See "May 6 Letter," Dkt. No. 92.) In the alternative, the NY AG asks that the Court construe the May 6 Letter as a motion to intervene pursuant to Federal Rules of Civil Procedure 24(a)(2) and 24(b)(1)(B). The Court will construe the May 6 Letter as a motion to intervene,[1] and for the reasons set forth below, GRANTS the motion.

## I.  BACKGROUND

A.  PROCEDURAL HISTORY

Plaintiffs brought suit against Defendants on October 16, 2020. (Dkt. No. 1.) On October 22, 2020, Plaintiffs moved for a temporary restraining order ("TRO") to enjoin Defendants from disseminating additional robocalls ahead of the November 2020 election. (Dkt. No. 12.) On October 26, 2020, the Court held a hearing (the "October 26 Hearing") on Plaintiffs' motion for a TRO at which Wohl and Burkman appeared pro se, as their secured counsel was not yet available. (See Dkt. No. 53, at 3.) The Court provided time for Burkman and Wohl to present their case pro se and gave them an opportunity to supplement their case through a submission by their counsel the following day. (Id. at 4.) At

---

[1] See Kapitalforeningen Lægernes Invest. v. United Techs. Corp., 779 F. App'x 69, 70 (2d Cir. 2019) (affirming the district court ruling deeming an exchange of letters as a motion).

2

the October 26 Hearing, Burkman and Wohl made certain admissions, such as acknowledging that they had caused the robocalls to be issued. (Id. at 12.) On October 28, 2020, after reviewing Defendants' supplemental submission, this Court granted Plaintiffs' motion for a TRO. (See "TRO Decision," Dkt. No. 38.)

Defendants subsequently moved for reconsideration of the TRO Decision. (Dkt. No. 40.) As part of that motion, Defendants sought a stay pending resolution of the criminal proceedings against Burkman and Wohl in Michigan. (See id.)

On October 1, 2020, the Michigan Attorney General filed charges against Burkman and Wohl for one count of intimidating voters; one count of conspiracy to commit an election law violation; one count of using a computer to commit the crime of election law; and using a computer to commit the crime of conspiracy. See Press Release, Dep't of Attorney Gen., AG Nessel Files Felony Charges Against Jack Burkman, Jacob Wohl in Voter-Suppression Robocalls Investigation (Oct. 1, 2020), available at https://www.michigan.gov/ag/0,4534,7-359-92297_99936-541052--,00.html. These charges stemmed from the dissemination of the robocalls at issue here. See id.

On October 27, 2020, Burkman and Wohl were indicted in Ohio on eight counts of telecommunications fraud and seven counts of bribery, which is defined under Ohio law as

3

"[a]ttempt[ing] by intimidation, coercion, or other unlawful means to induce such delegate or elector to register or refrain from registering or to vote or refrain from voting at a primary, convention, or election for a particular person, question, or issue." Press Release, Cuyahoga Cty. Office of the Prosecutor, Virginia and California Duo Indicted as Part of Voter Intimidation Robocall Scam that Targeted Midwestern Minority Communities (Oct. 27, 2020), available at http://prosecutor.cuyahogacounty.us/en-US/duo-indicted-voter-intimidation-scam-targeted-minority-communities.aspx (citation omitted). Like the charges in Michigan, those charges arose from the dissemination of the robocalls at issue in the instant action.[2] See id.

On October 29, 2020, the Court denied both Defendants' motions for reconsideration and stay. (See "Reconsideration Order," Dkt. No. 41.) Defendants then moved to dismiss the Complaint, and the Court denied that motion as well.[3] (See Dkt. Nos. 62, 66.) On January 15, 2021, Defendants filed a renewed motion for a stay (Dkt. No. 67), which the Court

---

[2] Defendants did not rely on the Ohio charges in their first motion for a stay.

[3] Defendants have appealed the denial of their motion to dismiss. (Dkt. No. 72.) However, it is well established that a denial of a motion to dismiss is a non-appealable interlocutory order. Edrie v. Maguire, 892 F.3d 525, 532 (2d Cir. 2018). That appeal therefore does not divest this Court of jurisdiction. U.S. Sec. & Exch. Comm'n v. Citigroup Glob. Mkts. Inc., 827 F. Supp. 2d 336, 337 (noting that the filing of a "plainly unauthorized notice of [interlocutory] appeal does not divest the district court of jurisdiction" (internal quotation marks and citation omitted)).

4

denied on February 22, 2021 (Dkt. No. 77). Defendants have appealed the denial of the renewed motion for a stay.

The Court subsequently ordered the parties to submit a joint status update and proposed case management plan setting forth deadlines for discovery and any anticipated motions. (Dkt. No. 88.) The parties submitted the status update and proposed case management plan on April 30, 2021 (Dkt. No. 89), and the Court entered the case management plan on May 4, 2021 (Dkt. No. 90).

The May 6 Letter followed.[4] On May 7, 2021, the Court ordered Defendants to respond to the May 6 Letter. (Dkt. No. 97.) Defendants submitted a letter opposing the motion to intervene on May 12, 2021. ("Opposition," Dkt. No. 99.)

B.   THE PARTIES' ARGUMENTS

The NY AG argues that her motion to intervene should be granted, either as of right or as permissive intervention, for the following reasons. First, the NY AG asserts that her motion is timely because no substantive motion practice, discovery, or depositions have occurred and therefore no delay would ensue as a result of intervention. The NY AG further argues that any delay in bringing the instant motion is attributable to her decision to investigate Defendants'

---

[4] According to the May 6 Letter, Plaintiffs consent to the motion to intervene, but Defendants oppose it.

5

conduct independently and Defendants' refusal to comply with that investigation. Second, the NY AG claims that she has a strong interest in protecting the voting rights of New York citizens. The NY AG further notes that she is seeking broader relief than are Plaintiffs in this matter. The NY AG seeks to bring claims against Defendants for conduct beyond the robocalls at issue in the Complaint, and she also seeks to bring claims against the telecommunications provider that disseminated the robocalls on Defendants' behalf. Finally, the NY AG argues that it would be most efficient for all these claims to be addressed in the present litigation to avoid overlapping legal rulings or remedial orders.

Defendants oppose the motion. Defendants argue that the motion is untimely because the NY AG would have been aware of the suit as early as October 2020 if she had exercised reasonable diligence. Defendants also point out that while the NY AG began her investigation in December 2020, the motion to intervene was not filed until months later. Defendants additionally contend that the motion is untimely because the parties have already set a case management plan and engaged in motion practice. Defendants further argue that the NY AG has not expressed an interest in seeking relief against Defendants, and any relief against additional defendants can be achieved in separate litigation. Defendants claim that the

NY AG has failed to articulate how her ability to seek complete relief will be impeded absent intervention.

## II. LEGAL STANDARD

Movants must meet a four-part test in order to intervene successfully under Federal Rule of Civil Procedure 24:

> [T]o intervene either as of right or with permission, an applicant must (1) timely file an application; (2) show an interest in the action; (3) demonstrate that the interest may be impaired by the disposition of the action; and (4) show that the interest is not protected adequately by the parties to the action . . . .

Floyd v. City of New York, 770 F.3d 1051, 1057 (2d Cir. 2014) (internal quotation marks omitted). Ultimately, the Court's decision "must rest upon a particularized inquiry into the circumstances of, and the competing interests in, the case." Id. (internal quotation marks and citation omitted).

In determining whether the application is timely, courts are to consider "(1) how long the applicant had notice of the interest before it made the motion to intervene; (2) prejudice to existing parties resulting from any delay; (3) prejudice to the applicant if the motion is denied; and (4) any unusual circumstances militating for or against a finding of timeliness." United States v. Pitney Bowes, Inc., 25 F.3d 66, 70 (2d Cir. 1994). While these four factors are used to guide a determination of whether a motion to intervene is timely, the determination should be made based on "the totality of

7

the circumstances before the court." D'Amato v. Deutsche Bank, 236 F.3d 78, 84 (2d Cir. 2001) (internal quotation marks and citation omitted).

## III. DISCUSSION

The Court finds that the NY AG has met the four-part test required for a successful motion to intervene. The Court first addresses the timeliness factor before turning to the remaining three factors that pertain to the NY AG's interest in intervening.

A. TIMELINESS

The Court is satisfied that the motion to intervene is timely. Although Defendants argue that the motion should be considered untimely because of the delay between this suit's commencement and the May 6 Letter, the Court is not persuaded. The NY AG represents to the Court that her delay is attributable to an independent investigation conducted into Defendants' conduct. The Court "accept[s] as true" this type of nonconclusory allegation when applying Federal Rule of Civil Procedure 24. See Aristocrat Leisure Ltd. v. Deutsche Bank Tr. Co. Ams., 262 F.R.D. 348, 352 (S.D.N.Y. 2009). Moreover, conducting an independent investigation, besides being within the NY AG's authority, provides a sound justification for the months-long delay between the filing of the action and the instant motion.

8

Nor does the Court find any undue delay between the NY AG's investigation, which was pending as early as December 22, 2020 based on the email Defendants attach to the Opposition, and the May 6 Letter. The NY AG indicates that her office had been serving prefiling subpoenas and spent time effecting proper service through process agents due to Defendants' counsel's refusal to accept service. The NY AG further notes that her office waited for a response, but Defendants ignored the subpoenas that were served through process agents, prompting this intervention request. Again, the Court accepts these allegations as true for purposes of this application and finds that these circumstances render the delay between December 2020 and the May 6 Letter understandable.

As to whether the delay has caused prejudice to any of the existing parties, Defendants have not shown that they have suffered, or would suffer, any prejudice.[5] While a motion to dismiss and motions to stay the proceeding were filed, no

---

[5] The Court does not understand Defendants to be arguing that they are prejudiced by delay. Indeed, given Defendants' multiple attempts to stay this litigation, any argument by Defendants that a delay has prejudiced them would be inconsistent, if not disingenuous.

Instead, the Court interprets Defendants' Opposition as arguing that they would be prejudiced not by delay, but rather by including the NY AG's claims against Defendants' telecommunications provider in the lawsuit because a jury would "inevitably conflat[e] these legal and factual distinctions." (Opposition at 3.) To the extent there is any risk of conflation, the Court is not persuaded that this risk could not be mitigated by adequate jury instructions.

9

other dispositive or substantive motions have been filed, depositions have not been taken, and it is unlikely that significant discovery disclosures have been made in light of the fact that just over two weeks have elapsed since the case management plan was entered. See United States ex rel. Preferred Masonry Restoration, Inc. v. Int'l Fidelity Ins. Co., No. 17 Civ. 1358, 2019 WL 4126473, at *3 (S.D.N.Y. Aug. 30, 2019). Other courts have also found motions to intervene timely under similar circumstances. See, e.g., Pitney Bowes, 25 F.3d at 71 (explaining that courts have found timeliness when the delay was "much longer than" eight months); S.E.C. v. Credit Bancorp, Ltd., No. 99 Civ. 11395, 2000 WL 1170136, at *2 (S.D.N.Y. Aug. 16, 2000) (holding that a motion to intervene was timely despite a five-month delay and the fact that discovery had progressed for "several months").

There would, however, be prejudice to the NY AG were her motion denied. The NY AG attempts to bring various claims against Defendants, not all of which are covered by the Complaint. For instance, the NY AG's Proposed Complaint in Intervention includes a count for violation of Section 131(b) of the Civil Rights Act of 1957 against Defendants, but Plaintiffs have not brought a Section 131(b) claim. In addition, the NY AG brings a count for violation of the New York Civil Rights Law and the New York Executive Law, while

10

Plaintiffs' Complaint alleges claims under only federal statutes. This fact, along with the risk of inconsistent rulings if the NY AG were required to bring her claims in a separate action, weigh in favor of finding the motion timely. See Preferred Masonry Restoration, 2019 WL 4126473, at *3.

Thus, after reviewing the totality of the circumstances, the Court concludes that the application is timely. The first part of the four-part test has been met.

B.   THE NY AG'S INTEREST IN THE ACTION

The remaining factors, all of which relate to the NY AG's interest in this action, have been adequately demonstrated here as well. There is no doubt that the NY AG has a strong interest in stopping Defendants' allegedly discriminatory efforts to impair New York citizens' voting rights. Cf. Greens at Chester LLC v. Town of Chester, No. 19 Civ. 6770, 2020 WL 2306421, at *6 (S.D.N.Y. May 8, 2020) (noting that the NY AG has a strong interest in preventing discrimination in housing).

This strong interest may be impaired or impeded by the disposition of this action. As discussed above, requiring the NY AG to bring a separate suit could result in inconsistent rulings and thereby impair or impede the NY AG's interest. See Oneida Indian Nation v. State of N.Y., 732 F.2d 261, 265 (2d Cir. 1984) (remanding to permit intervention due to the

11

"significant likelihood that the ultimate resolution of this litigation will lead to the conclusions of law on issues of first impression, or mixed findings of fact and law, which will implicate principles of stare decisis").

Additionally, the relief sought by the NY AG is not identical to that sought by Plaintiffs. Not only does the NY AG seek to enforce additional statutes against Defendants, but the NY AG also requests different forms of relief against Defendants, such as disgorgement and penalties.[6] The NY AG further seeks to add the telecommunications provider that Defendants used to disseminate the robocalls as a party and require it to "establish policies and procedures to prevent unlawful, discriminatory, and intimidating robocalls directed at voters." (Proposed Complaint in Intervention, Dkt. No. 98-1, at 26-27.) "As such, the [NY AG] has demonstrated that without intervention, disposition of the Plaintiffs['] action may, as a practical matter, impair or impede their ability to protect her interest in preventing future discriminatory conduct" and conduct that violates citizens' voting rights. See Greens at Chester, 2020 WL 2306421, at *6.

---

[6] Defendants have argued in their Opposition that the NY AG "acknowledges that it does not seek relief against Defendants directly, but rather that it seeks to add additional defendants in order to address purported harms that fall well outside the scope of this litigation." (Opposition at 2.) The Court is puzzled by this assertion, as it is directly belied by the Proposed Complaint in Intervention, which the Court presumes -- perhaps incorrectly -- Defendants reviewed.

Finally, the NY AG has demonstrated that her interest is not protected adequately by the parties to the action because she seeks broader relief. For example, while some Plaintiffs are New York residents, the NY AG's interest is in protecting the civil rights of "all New Yorkers," and not just those named in the Complaint. See id. In addition, the NY AG, unlike Plaintiffs, seeks injunctive relief against the telecommunications provider used by Defendants to prevent other parties from using robocalls to interfere with voting rights. Furthermore, the NY AG brings claims under additional statutes, including state laws.

Therefore, the Court finds that the remaining three parts of the four-part test for a successful motion to intervene have been satisfied. The NY AG has established her ability to intervene as of right pursuant to Federal Rule of Civil Procedure 24(a)(2).[7]

### III. ORDER

Accordingly, for the reasons stated above, it is hereby

**ORDERED** that the motion so deemed by the Court as filed by the People of the State of New York, by Letitia James, Attorney General of the State of New York ("NY AG") to

---

[7] The Court notes further that regardless of intervention as of right, permissive intervention would have been proper given the common questions of law or fact between the NY AG's and Plaintiffs' claims for relief. See Greens at Chester, 2020 WL 2306421, at *6.

13

intervene in this action (Dkt. No. 92) is **GRANTED.** The NY AG shall file and serve her Complaint in Intervention as expeditiously as possible. Defendants shall respond to Complaint in Intervention no later than twenty-one (21) days after being served. The deadlines in the case management plan are stayed until this time, and the Court will instruct the parties to submit a revised case management plan at a later date.

**SO ORDERED.**

Dated:    New York, New York
          19 May 2021

_____
Victor Marrero
U.S.D.J.