

STATE OF NEW YORK
OFFICE OF THE ATTORNEY GENERAL

LETITIA JAMES
ATTORNEY GENERAL

EXECUTIVE DIVISION
212.416.6046

August 2, 2021

*By Electronic Submission*
Russell Morris
11 Broadway
Suite 615
New York, NY 10004

Re:   *National Coalition on Black Civic Participation v. Jacob Wohl*,
SDNY Case No. 20-cv-8668 (VM)(OTW)

Dear Mr. Morris:

We respond to your July 26, 2021 letter, D.E. 126, to decline your request that the People of the State of New York dismiss our complaint against your clients Robert Mahanian and his robocalling firm Message Communications, Inc.

Ignoring the State's allegations, you cast your clients as passive bystanders to their codefendants' campaign of voter intimidation—simple messengers unaware of the explosive contents of their message. But we alleged that Mahanian *actively conspired* with Jack Burkman and Jacob Wohl to target voters with a robocall designed to stop them from voting by mail. Compl. at ¶¶ 29–50, 60–62, 65 (D.E. 102). Mahanian and Burkman held multiple phone calls over the course of several days discussing the content of the robocall. ¶¶ 30, 32. They also discussed the neighborhoods that should be targeted by the robocall, and Mahanian used Message Communications' database to select phone numbers corresponding to the "specific communities," i.e., Black voters, targeted by the campaign. ¶¶ 44, 60–61. Days before Message Communications placed the robocalls, Burkman told Mahanian to "attack" those communities as soon as he received payment. ¶ 35. And immediately after the robocalls went out, Burkman congratulated Mahanian on a "great job." ¶ 47. These facts demonstrate that Mahanian and Message Communications were fully involved coconspirators, not Burkman and Wohl's innocent messengers.[1]

---

[1] Your letter further surmises that "[h]ad Burkman and Wohl sent their messages by next day delivery," the State would not have sued UPS or FedEx. (D.E. 126 at 3). This analogy is inapposite for various reasons; for example, as noted, the State's complaint alleges that your clients were active participants in a conspiracy to violate the civil rights of New Yorkers and worked with their co-defendants to affirmatively target specific voters. In fact, our office routinely pursues enforcement actions against companies—including both UPS and FedEx—for violating New York law by sending harmful products into the State or otherwise interfering with the public rights of its residents. *See New York v. UPS*, 253 F. Supp. 3d 583, 594 (S.D.N.Y. 2017); *see also* New York Attorney General's Office, Attorney General James, NYC Corp. Counsel Announce $35 Million Settlement With FedEx Over Shipping Illegal Cigarettes, Jan. 14, 2019, *available at*: https://ag.ny.gov/press-release/2019/attorney-general-james-nyc-corp-counsel-announce-35-million-settlement-fedex-over.

The facts alleged in the complaint cannot be wished away at this stage, but that is precisely what both of your arguments require. The State does not allege, as you suggest, that Mahanian's liability stems from his violation of 47 U.S.C. § 227(d). Indeed, we have not asserted a claim under that statute. Whether he complied with that statute is immaterial to our claims that he conspired with Burkman and Wohl to deprive New Yorkers of their civil rights in violation of the Voting Rights Act, the Ku Klux Klan Act, and New York's Civil Rights Law. Compl. at ¶¶ 89–106, 112–18 (D.E. 102). Our claim is not that Mahanian failed to "pre-screen" his codefendants' messages, as required by § 227(d), but instead that he *knew* the contents of the message and assisted his codefendants in disseminating it to targeted communities.

The same factual error explains why your clients will not prevail on the argument that they are entitled to immunity under 47 U.S.C. § 230(c)(1). Section 230(c)(1) provides tort immunity to platforms that passively publish others' content over the internet when those platforms have not been involved in the creation of that content. *See FTC v. LeadClick Media, Ltd. Liab. Co.*, 838 F.3d 158, 173 (2d Cir. 2016). Its intent is to protect freedom of speech on the internet. *Zeran v. America Online, Inc.*, 129 F.3d 327, 330 (4th Cir, 1997). While immunity under Section 230 is broad, it does not apply to internet platforms that assist in the creation of offending content. *See Leadclick*, 838 F.3d at 174. And it does not extend to circumstances where the illegal activity is unrelated to the passive publication of content over the internet. *See Fair Hous. Council v. Roomates.com, LLC*, 521 F.3d 1157, 1168 (9th Cir. 2008); *see also Nunes v. Twitter, Inc.*, 194 F. Supp. 3d 959, 967 (N.D. Cal. 2016).

You have not cited a single case establishing that robocalling is even protected by Section 230, and the only court to have directly considered the question ruled that it is not. *See Cunningham v. Montes*, 378 F. Supp. 3d 741, 750 (W.D. Wisc. 2019) (denying Section 230 immunity to a robocaller sued under the TCPA). The cases you do cite make clear that immunity applies "only with regard to third-party information provided *for use on the Internet*" (or similar computer network). *Batzel v. Smith*, 333 F.3d 1018, 1033 (9th Cir. 2003) (italics in original) (superseded by statute on other grounds). The State does not allege that your clients published the robocall on their website—the misconduct we allege consists of making phone calls to a curated set of specific landline phone numbers.

But even if Section 230 did somehow apply to robocalls, it would not protect your clients here. Section 230's broad grant of immunity stops when a defendant "assisted in the development of what made the content unlawful." *Leadclick*, 838 F.3d at 174 (quoting from *FTC v. Accusearch Inc.*, 570 F.3d 1187, 1197 (10th Cir. 2009)). We alleged that your clients actively furthered Burkman and Wohl's scheme by selecting voters' phone numbers for the offending and intimidating content. The offending robocalls were unlawful *because* they targeted voters, and your client's misconduct is what gave the robocalling campaign its teeth. Such discrimination goes far beyond passively publishing content on a website and is not protected by Section 230. *See Roomates.com*, 521 F.3d at 1167-68 (holding that Section 230 immunity did not apply where the defendant was an information content provider due in part to its role in directing emails to users based on discriminatory criteria).

For the foregoing reasons, we believe that any motion to dismiss our claims should be denied.

Honorable Victor Marrero
Page 3 of 3
August 2, 2021

                                             Sincerely,

                                             */s/ Rick Sawyer*
                                             Rick Sawyer
                                             Special Counsel
                                             Richard.Sawyer@ag.ny.gov

Encl.
cc:  Honorable Victor Marrero (via ECF)
     David Felsenthal, Los Angeles, CA (via ECF)