

STATE OF NEW YORK
OFFICE OF THE ATTORNEY GENERAL

LETITIA JAMES
ATTORNEY GENERAL

DIVISION OF SOCIAL JUSTICE
CIVIL RIGHTS BUREAU

September 13, 2021

**By Electronic Submission**
Honorable Victor Marrero
United States District Court
Southern District of New York
500 Pearl Street
New York, NY 10007

    Re:   *National Coalition on Black Civic Participation, et al. v. Jacob Wohl, et al.*,
            SDNY Case No. 20 Civ. 8668 (VM)(OTW)

Dear Judge Marrero:

    Plaintiff-Intervenor People of the State of New York ("State"), by Letitia James, Attorney General of the State of New York, replies to a letter from Defendants Robert Mahanian and Message Communications, Inc. (collectively, "Message Communications" or "Message") regarding their unwarranted—and premature, on a motion to dismiss—claim of immunity under Section 230 of the Communications Decency Act, 47 U.S.C. § 230(c)(1) ("Section 230").

    Message Communications has no immunity here. Section 230 immunity requires the defendant both to be "an interactive computer service" and to have taken no role in creating the offending content. *See La Liberte v. Reid*, 966 F.3d 79, 89 (2d Cir. 2020); *FTC v. LeadClick Media, LLC*, 838 F.3d 158, 173 (2d Cir. 2016). As alleged in the complaint, Message Communications fails both tests. First, Section 230 does not apply to robocalls made through the public-switched telephone network because, in placing such calls, Message was not acting as an "interactive computer service." Second, even if Section 230 applied, Defendants, as alleged in the complaint, were not an innocent intermediary. Instead, the State specifically pleaded that Message Communications actively conspired with Defendants Wohl and Burkman to suppress votes. Their collective misconduct, which specifically targeted Black voters, violated multiple federal and state laws. Compl. at ¶¶ 29–50, 60–62, 65, 89–106, 112–18 (ECF No. 102). At this stage, the complaint, not Defendants' wishful thinking, controls.

    1. <u>Message Communications was not acting as an interactive computer service when it placed the unlawful robocalls.</u>

    Message Communications makes a completely unsupported argument that its robocalling service has immunity under Section 230—an immunity that, as they concede, has never been extended to robocalling (or any other service distributing unlawful content over landline telephones). *See* D.E. 136 at 2 n.1 (conceding no cases have immunized robocalling platforms).

Honorable Victor Marrero
Page 2 of 3
September 13, 2021

Section 230 immunity applies only when a defendant acts as an "interactive computer service" by "provid[ing] or enabl[ing] computer access to multiple users to a computer server." 47 U.S.C. § 230(f)(2); *LeadClick Media.*, 838 F.3d at 173. Message was not acting as an "interactive computer service" when it placed unlawful telephone calls to New Yorkers' landline telephones because it did not provide the call recipients with access to a computer server. ¶¶ 5, 7, 20, 61, 141.

This result does not change simply because Message received the calls' audio over the internet. Section 230 immunity does not extend beyond communications made over an interconnected computer service, even when some aspect of the misconduct involved communication between computers (such as a fraudulent product description on webpage). *See, e.g.*, *Erie Ins. Co. v. Amazon*, 925 F.3d 135, 139–40 (4th Cir. 2019) (denying Amazon Section 230 immunity for its role in shipping faulty products); *Bolger v. Amazon.com, LLC*, 53 Cal. App. 5th 431, 463–64 (Cal. Ct. App. 2020) (same). Once Message took the robocall offline and sent it to voters' telephones, any Section 230 immunity ceased to apply because the recipients' telephones were not computers connected to a server. Just as Amazon may not hide behind Section 230 when sending customers defective products, Message Communications cannot claim immunity when it intimidates voters by calling their home phones. Otherwise, robocallers—or any other tortfeasor—could always avoid liability for unlawful phone calls simply by shifting one part of their operation to the internet. Defendants have not cited a single case supporting such a proposition, nor is there any evidence that Congress intended Section 230 to counteract the many regulations governing robocallers. Section 230 would no more immunize wire fraud simply because the fraudulent wire information was conveyed from one conspirator to another over a website.

Nor does it matter whether Message Communications uses voice over internet protocol ("VOIP")—a fact that is not in the complaint and the State does not concede at this stage. No matter how the calls originated, it is undisputed that Message Communications reached New Yorkers' homes through the traditional telephone service. That ends the inquiry. The New Yorkers who received the calls did not use a computer to interact with a computer server, as required by Section 230; they simply answered their phone and got an unwanted, intimidating message urging them not to vote. Defendants have not and cannot cite a single case extending Section 230 immunity to VOIP. Nor have they given this Court any reason to be the first to take such a drastic step. Such immunity would upend decades of federal regulation. The FCC has long treated VOIP as the functional equivalent of traditional telephony, which is not immune under Section 230, and the FTC routinely enforces the law against unwanted robocalls made through VOIP—Section 230 notwithstanding. *See, e.g.*, *2007 CPNI Order*, 22 FCC Rcd. at 6929, ¶ 3 (FCC applying same rules to VOIP as it does to traditional telephony); *FTC v. Educare Ctr. Servs., Inc.*, No. 3:19-cv-00196-KC (W.D. Tex. Am. Compl. filed Dec. 3, 2019) (FTC enforcement action against robocaller using VOIP).

For those reasons, Message Communications cannot analogize its robocalling operation to a true interactive computer service like Zoom. *See* D.E. 136 at 2 (citing *In re Zoom Video Commc'ns Priv. Litig.*, no. 20-cv-02155, 2021 WL 930623, at *6 (N.D. Cal. Mar. 11, 2021)). In holding Zoom partially immune under Section 230, the district court found that Zoom was an "interactive computer service" because it connected multiple users' computers to a central computer server for videoconferencing. *In re Zoom*, 2021 WL 930623, at *6. Such functionality made Zoom the equivalent of an "online messaging board," where users converse over a computer

server in real time. *Id.* Not so here. Message did not link multiple computers together through a single server allowing real-time communication. It made tens of thousands of discrete, unwanted phone calls to landline telephones that were connected not to a computer server but to the public-switched telephone network. Section 230 immunity has never protected phone calls, and, unlike Zoom conferences, Message's robocalls are not an "interactive computer service."

    2. <u>By conspiring with Wohl and Burkman, Message Communications was responsible for the unlawful robocall's content.</u>

Even if Message were an "interactive computer service"—a showing it can never make—it would not be entitled to immunity at this stage because the State alleged that it took an active role in developing the unlawful voter intimidation campaign. Though immunity under Section 230 is broad, it does not apply to internet platforms that assist in the creation or development of offending content. *See Leadclick*, 838 F.3d at 174 (holding that Section 230's grant of immunity does not shield those who are "responsible, in whole or in part" for the "creation or development of [the] information provided" (quoting from 47 U.S.C. § 230(f)(3))). A service provider who "specifically encouraged development of what was offensive about the content" cannot claim immunity. *Leadclick*, 838 F.3d at 176 (quoting from *Fair Hous. Council v. Roomates.com, LLC*, 521 F.3d 1157, 1168 (9th Cir. 2008)). And immunity is denied even to those who are only partially responsible for developing offending content in the broad sense of the word, meaning to make active, available, or usable. *FTC v. Accusearch Inc.*, 570 F.3d 1187, 1197–98 (10th Cir. 2009). Section 230 also does not encompass circumstances where the illegal activity is unrelated to the passive publication of internet content. *See Roomates.com, LLC*, 521 F.3d at 1168; *see also Nunes v. Twitter, Inc.*, 194 F. Supp. 3d 959, 967 (N.D. Cal. 2016).

Here, the State alleges that Message "specifically encouraged development of what was offensive about the conduct" by working with Wohl and Burkman to provide the means and methods to target specific voters over traditional landline telephones. *Leadclick*, 838 F.3d at 176. *See* Compl. at ¶¶ 29–50, 60–62, 65, 89–106, 112–18. In doing so, Message Communications "developed" the robocall campaign by making it "active" and "usable." *Accusearch*, 570 F.3d at 1197. Because of this, Message Communications may not now claim that it was a passive messenger of that offending content.

In any event, any review of documents or evidence to establish the *factual* basis for CDA immunity, however, is far beyond the four corners of the complaint—which adequately pleaded Message's liability under the Ku Klux Klan Act, the VRA, and New York's Civil Rights Act—and premature at this phase of the litigation.

For the foregoing reasons, Message Communications must not be granted immunity under Section 230.

                                                                            Sincerely,

                                                                         */s/ Colleen K. Faherty*

Cc: ECF Counsel of Record