

# Exhibit A



September 13, 2021

**VIA ECF**

The Honorable Victor Marrero
United States District Court
Southern District of New York
500 Pearl Street
New York, NY 10007-1312

Re:     *National Coalition on Black Civic Participation et al. v. Wohl et al.*, No. 20-cv-8668

Dear Judge Marrero:

Plaintiffs National Coalition on Black Civic Participation, Mary Winter, Gene Steinberg, Nancy Hart, Sarah Wolff, Karen Slaven, Kate Kennedy, Eda Daniel, and Andrea Sferes agree with the arguments of the New York Attorney General that Section 230 of the Communications Decency Act (the "Act" or "CDA 230"), 47 U.S.C. § 230, does not apply in this case. We write separately to highlight some of the precarious policy implications of expanding the scope of CDA 230 immunity to include robocall services provided by Defendants Message Communications, Inc. and Robert Mahanian (collectively, "Message Communications").

**I.   Granting CDA 230 immunity for the alleged conduct would jeopardize enforcement of civil rights statutes, consumer protection statutes, and tort law.**

One of the primary purposes of CDA 230 is to incentivize online platforms, like social media or discussion forums, to self-regulate harmful third-party content. *See* 47 U.S.C. § 230(b)(3), (4); *Domen v. Vimeo, Inc.*, 6 F.4th 245, 250-51 (2d Cir. 2021). The Act does not, and was never meant to, immunize either a tortfeasor's own unlawful acts or vicarious liability for offline acts. That is what is at issue here: whether the fact that Message Communications communicated with Defendants Burkman and Wohl through a website, as opposed to taking their order by phone or in person, immunizes Message Communications for allegedly unlawful conduct that did not occur on the Internet.

Twenty-five years ago, when Congress enacted CDA 230 in the era of dial-up modems, it intended to protect platforms from vicarious liability for defamation and similar torts committed by their users. Congress did not imagine, let alone intend, that this law could undermine the enforcement of bedrock civil rights statutes such as the Voting Rights Act and the Ku Klux Klan Act. "Extending § 230 immunity beyond the natural reading of the text can have serious consequences. Before giving companies immunity from civil claims … for race discrimination, we should be certain that is what the law demands." *Malwarebytes, Inc. v. Enigma Software Group USA, LLC*, 141 S.Ct. 13, 18 (2020) (Thomas, J., statement respecting the denial of certiorari) (cleaned up).

Holding, for the first time, that CDA 230 immunizes a service provider for sending robocalls through the public switched telephone network—which is not an act of publishing

1


through the Internet—would undermine victims' access to justice and redress for myriad nonphysical torts and statutory violations. *See* FCC, *Restoring Internet Freedom*, 33 FCC Rcd 311, 356, para. 76 n. 284 (Jan. 4, 2018) ("[W]e find that the public switched telephone network and the Internet are and will continue to be distinct and separate networks, and cannot be considered a singular, integrated network[.]"). If CDA 230 applies to Message Communications' offline conduct here, would it immunize similar fact patterns giving rise to offline violations of the Fair Housing Act, Title VII of the Civil Rights Act, the Equal Credit Opportunity Act, and other anti-discrimination laws? For example, for almost 50 years it has been settled law that a newspaper can be held liable for publishing sex segregated employment ads. *See Pittsburgh Press Co. v. Pittsburgh Comm'n on Hum. Rels.*, 413 U.S. 376 (1973). Under Defendants' logic, if an advertiser merely submitted their discriminatory ad via a website, then the newspaper company would be immune even for discriminating in its print edition. "Congress … does not alter the fundamental details of a regulatory scheme in vague terms or ancillary provisions—it does not, one might say, hide elephants in mouseholes." *Whitman v. Am. Trucking Ass'n*, 531 U.S. 457, 468 (2001).

## II.     Harmful robocalls are prolific. Immunity would impair enforcement regimes.

In recent years there has been a profound proliferation of illegal, unwanted, deceptive, and harmful robocalls across the United States. These harms include not just voter suppression and election disinformation, like in this case, but also harassment targeting racial and religious minorities, identity theft, fraud, and other scams.

The Federal Communications Commission says robocalls "are the FCC's top consumer complaint and our top consumer protection priority." *Stop Unwanted Robocalls and Texts*, FCC (March 17, 2021).[1] While there are legitimate uses of robocalls, "[t]hose seeking to defraud consumers can do so efficiently and cost-effectively using robocalls, maximizing their ill-gotten gains." FCC, *Report on Robocalls*, CG Docket No. 17-59, at 3-4 (Feb. 2019).[2] Tens of *billions* of robocalls are sent annually in the U.S.—as many as 2,000 robocalls per second. *Id*. at 6. The FCC received over 739,000 consumer complaints about robocalls from 2015 to 2018. *Id*. at 4. The Federal Trade Commission received almost 14 million consumer complaints about robocalls over the same period. *Id.* at 5. The FCC's robocall report cited a private company's projection that "44.6% of calls to mobile phones will be scam calls in 2019." *Id*. at 6.

Congress has repeatedly attempted to reduce the harms from illicit robocalls. The FCC and FTC enforce at least five federal statutes directly related to the regulation of robocalls: the Telephone Robocall Abuse Criminal Enforcement and Deterrence Act, Pub. L. No. 116-105 (2019); the Telephone Consumer Protection Act, *codified at* 47 U.S.C. § 227; the Truth in Caller ID Act, *codified at* 47 U.S.C. § 227(e); the Do Not Call Implementation Act, *codified at* 15 U.S.C. § 6101; and the Telemarking Consumer Fraud and Abuse Prevention Act, *codified at* 15 U.S.C. §§ 6101-6108. These are in addition to the FCC's general authority to enforce against unjust and unreasonable telecommunications practices, 47 U.S.C. §§ 201, 202, and the FTC's general authority to enforce against unfair and deceptive trade practices, 15 U.S.C. § 45.

---

[1] https://www.fcc.gov/consumers/guides/stop-unwanted-robocalls-and-texts.
[2] *Available at* https://docs.fcc.gov/public/attachments/DOC-356196A1.pdf.



In recent years, the FCC has imposed over $450 million in fines for illegal robocalls. *The FCC's Push to Combat Robocalls & Spoofing*, FCC (July 19, 2021).[3] These enforcement actions include a recent $5 million fine proposed against Defendants Burkman and Wohl for the robocall campaign at issue in this case, the largest fine ever for robocalls violating the Telephone Consumer Protection Act. *In re Burkman*, Notice of Apparent Liability for Forfeiture, FCC 21-97, EB-TCD-21-00032652 (Aug. 24, 2021);[4] *FCC Proposes Largest Robocalling Fine Under TCPA*, FCC (Aug. 24, 2021).[5] Earlier this year, the FCC also finalized a $9.9 million fine against a neo-Nazi who sent robocalls violating the Truth in Caller ID Act, including robocalls containing hateful attacks on Black and Jewish political candidates in the 2018 midterm elections. *In re Rhodes*, Forfeiture Order, FCC 21-16, EB-TCD-18-00028178 (Jan. 14, 2021).[6]

An overly broad interpretation of the scope of CDA 230's protections could imperil Congress and the Executive Branch's sustained and committed effort to address a significant harm to the public welfare.

\* \* \*

For the foregoing reasons, the Court should hold that CDA 230 does not apply to the robocall services provided by Defendants Message Communications, Inc. and Robert Mahanian.

Respectfully submitted,

  /s/ *David Brody*  

| | |
|---|---|
| David Brody (admitted *pro hac vice*) | Amy Walsh |
| LAWYERS' COMMITTEE FOR CIVIL RIGHTS UNDER LAW | Rene Kathawala |
| | Julie Gorchkova |
| 1500 K St. NW, Suite 900 | Aaron J. Gold |
| Washington, DC 20005 | ORRICK, HERRINGTON & SUTCLIFFE LLP |
| 202-662-8600 | 51 West 52nd St. |
| dbrody@lawyerscommittee.org | New York, NY 10019 |
| | 212-506-5000 |
| John Libby | awalsh@orrick.com |
| MANATT, PHELPS & PHILLIPS | rkathawala@orrick.com |
| 2049 Century Park East | jgorchkova@orrick.com |
| Suite 1700 | aaron.gold@orrick.com |
| Los Angeles, CA 90067 | |
| 310-312-4342 | |
| jlibby@manatt.com | *Counsel for Plaintiffs* |

CC:   All counsel of record, via ECF

---

[3] https://www.fcc.gov/spoofed-robocalls.
[4] *Available at* https://docs.fcc.gov/public/attachments/FCC-21-97A1.pdf.
[5] https://www.fcc.gov/document/fcc-proposes-largest-robocalling-fine-under-tcpa.
[6] *Available at* https://www.fcc.gov/document/fcc-fines-robocaller-scott-rhodes-nearly-10m-illegal-spoofing.

3