UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

NATIONAL COALITION ON BLACK CIVIC
PARTICIPATION, MARY WINTER, GENE
STEINBERG, NANCY HART, SARAH WOLFF,
KAREN SLAVEN, KATE KENNEDY, EDA
DANIEL, and ANDREA SFERES,

                                    Plaintiffs,

                    -and-

People of the STATE OF NEW YORK, by its
attorney general, LETITIA JAMES, ATTORNEY
GENERAL OF THE STATE OF NEW YORK,

                         Plaintiff-Intervenor,

                    v.

JACOB WOHL, JACK BURKMAN, J.M.
BURKMAN & ASSOCIATES, LLC, PROJECT
1599, MESSAGE COMMUNICATIONS, INC.,
and ROBERT MAHANIAN,

                              Defendants.

CIVIL ACTION NO. 1:20-CV-08668

---

**ANSWER TO THE COMPLAINT IN INTERVENTION BY MESSAGE
COMMUNICATIONS, INC. AND ROBERT MAHANIAN**

THE LAW OFFICE OF
RUSSELL D. MORRIS PLLC

11 Broadway, Suite 615
New York, New York 10004
Tel:  (212) 380-1619

*Attorneys for Defendants*
*Message Communications, Inc.*
*and Robert Mahanian*

Defendants Message Communications Inc. and Robert Mahanian (together,

"Message Communications") answer the Complaint In Intervention (D.E. 102) (the

"Complaint"), filed on May 19, 2021, as follows:

Paragraph 1:

> All eligible voters have the right to vote unimpeded by deception
> or intimidation.  The right to vote "in a free and unimpaired
> manner is preservative of other basic civil and political rights" and
> "any alleged infringement of the right of citizens to vote must be
> carefully and meticulously scrutinized."  *Reynolds v. Sims*,
> 377 U.S. 533, 562 (1964).

> Response to Paragraph 1:

The allegations of paragraph 1 constitute legal conclusions and questions of law

to which no response is required.  To the extent that any response is required, Message

Communications lacks knowledge or information sufficient to form a belief as to the truth of the

allegations in paragraph 1.

Paragraph 2:

> This case is about a targeted, discriminatory effort to infringe on
> the fundamental rights of New Yorkers – and others across the
> country – to vote in a safe, lawful manner.  Jacob Wohl and Jack
> Burkman, through Burkman's lobbying firm, J.M. Burkman &
> Associates, and the purported organization Project 1599
> (collectively "Wohl and Burkman"), concocted a racist campaign
> that trafficked in stereotypes and spread lies and deception all for
> their shared goal of intimidating voters and depressing voter
> turnout to disrupt a presidential election.  In doing so, Wohl and
> Burkman violated several federal and New York laws.

> Response to Paragraph 2:

Message Communications lacks knowledge or information sufficient to form a

belief as to the truth of the allegations in paragraph 2.

Paragraph 3:

> In the summer of 2020, in advance of that November's presidential election, Wohl and Burkman created a robocall recording, i.e. an automated phone call with a pre-recorded message, to discourage voters from voting by mail during a global pandemic in which voting in person posed a significant health risk.  That robocall purported to come from a "Tamika Taylor from Project 1599, the civil rights organization founded by Jack Burman and Jacob Wohl," and falsely claimed that voting by mail would subject the voter to having their personal information used by "police departments to track down old warrants," "credit card companies to collect outstanding debts," and by the Centers for Disease Control ("CDC") to "track people for mandatory vaccines."

> Response to Paragraph 3:

Message Communications lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 3, except admits that the prerecorded message referenced therein speaks for itself.

Paragraph 4:

> Wohl and Burkman hired Message Communications, Inc., which is owned and operated by Robert Mahanian (collectively "Message Communications"), to send the robocall message to voters in New York and across the country.

> Response to Paragraph 4:

Message Communications denies the allegations of paragraph 4, except admits that Message Communications is owned and operated by Robert Mahanian, and further admits that Message Communications was paid $2150 by JM Burkman & Associates LLC to transmit prerecorded messages.

Paragraph 5:

> On August 26, 2020, Message Communications sent the robocall to over 85,000 phone numbers nationwide, including approximately 5,500 phone numbers with New York area codes, and predominantly New York City metropolitan area codes.

<u>Response to Paragraph 5</u>:

Message Communications denies the allegations of paragraph 5, except admits that on or about August 26, 2020, a prerecorded message created by Burkman and/or Wohl was transmitted.

<u>Paragraph 6</u>:

> Wohl and Burkman demonstrated a clear racial animus in carrying out their robocall campaign.  For example, on August 25, 2020, the day before the robocalls were placed, Wohl emailed Burkman attaching the audio file for the call and stating that "[w]e should send it to black neighborhoods…"  The next day, after the calls were sent and received by thousands of voters, Burkman emailed to congratulate Wohl, stating that "i love these robo calls . . . getting angry black call backs . . . win or lose . . . the black robo was a great jw idea."

> <u>Response to Paragraph 6</u>:

Message Communications lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 6.

<u>Paragraph 7</u>:

> The Wohl and Burkman robocall campaign attempted to undermine and interfere with the then-ongoing efforts by the State of New York ("State") to fairly and safely administer its elections and protect its citizens from voter intimidation and harassment.  Indeed, in August 2020, as New York's elections officials were taking steps – in light of the ongoing COVID-19 crisis – to make the application process for absentee ballots more accessible, the Wohl and Burkman robocall successfully reached thousands of New York phone numbers, spreading lies and subjecting those who received the call to intimidating and threatening language about what would happen to them if they decided to vote by absentee ballot during a deadly pandemic.

Response to Paragraph 7:

Message Communications lacks knowledge or information sufficient to form a

belief as to the truth of the allegations in paragraph 7.

Paragraph 8:

> The New York Attorney General ("NYAG") has a substantial
> interest in safeguarding the rights of New Yorkers who are
> threatened by voter intimidation.  The NYAG seeks to intervene in
> this action to enforce the various voting rights and other
> protections provided by 42 U.S.C. § 1985(3) (the Ku Klux Klan
> Act of 1871), 52 U.S.C. § 10307(b) (the Voting Rights Act of
> 1965), 52 U.S.C. 10101(b) (the Civil Rights Act of 1957), New
> York Civil Rights Law §§ 9 and 40-c, otherwise prevent persistent
> illegality pursuant to New York Executive Law § 63(12), and to
> ensure that Defendants are not permitted to repeat their
> discriminatory and harassing conduct in future elections.

Response to Paragraph 8:

The allegations of paragraph 8 constitute legal conclusions and questions of law

to which no response is required.  To the extent that any response is required, Message

Communications lacks knowledge or information sufficient to form a belief as to the truth of the

allegations in paragraph 8.

Paragraph 9:

> The Court has subject matter jurisdiction pursuant to 28 U.S.C. §§
> 1331 and 1343.  This Court may exercise supplemental jurisdiction
> over claims based on New York law pursuant to 28 U.S.C. § 1367.

Response to Paragraph 9:

The allegations of paragraph 9 constitute legal conclusions and questions of law

to which no response is required.  To the extent that any response is required, Message

Communications lacks knowledge or information sufficient to form a belief as to the truth of the

allegations in paragraph 9.

Paragraph 10:

> This Court has jurisdiction to issue the declaratory relief requested
> pursuant to the Declaratory Relief Act, 28 U.S.C. §§ 2201, 2202.
> This Court may also grant injunctive relief pursuant to Federal
> Rule of Civil Procedure 65.

> Response to Paragraph 10:

The allegations of paragraph 10 constitute legal conclusions and questions of law

to which no response is required.  To the extent that any response is required, Message

Communications lacks knowledge or information sufficient to form a belief as to the truth of the

allegations in paragraph 10.

Paragraph 11:

> Venue is proper in this district under 28 U.S.C. §§ 1391(b) because
> a substantial part of the events giving rise to this Complaint
> occurred and continue to occur within the Southern District of
> New York.

> Response to Paragraph 11:

The allegations of paragraph 11 constitute legal conclusions and questions of law

to which no response is required.  To the extent that any response is required, Message

Communications lacks knowledge or information sufficient to form a belief as to the truth of the

allegations in paragraph 11.

Paragraph 12:

> Plaintiff-Intervenor is the People of the State of New York, by its
> attorney, Letitia James, Attorney General of the State of New
> York.  The Attorney General is the State's chief law enforcement
> officer and is authorized to pursue this action pursuant to New
> York Executive Law § 63.

Response to Paragraph 12:

The allegations of paragraph 12 constitute legal conclusions and questions of law to which no response is required.  To the extent that any response is required, Message Communications lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 12.

Paragraph 13:

> The NYAG also brings this action pursuant to her *parens patriae* authority on behalf of the New York voters who have been intimidated by Defendants' unlawful conduct.  Where, as here, the interests, rights, and well-being of a substantial segment of people of the State are implicated, the NYAG possesses *parens patriae* authority to commence legal actions in federal court for violations of federal and state laws.

> Response to Paragraph 13:

The allegations of paragraph 13 constitute legal conclusions and questions of law to which no response is required.  To the extent that any response is required, Message Communications lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 13.

Paragraph 14:

> The NYAG has a "unique status as the representative of the greater public good and [a] concomitant mandate to secure wide-ranging relief that will inure to the direct and indirect benefit of the broader community." *New York v. Utica City Sch. Dist.*, 177 F. Supp. 739, 753-54 (N.D.N.Y. 2016).  As such, the NYAG has a quasi-sovereign interest in the health and well-being of New Yorkers.  A fundamental component of that well-being is New Yorkers' right to vote.  The NYAG's interest in protecting its citizens' fundamental voting rights warrants the employment of the NYAG's *parens patriae* authority.  *See New York v. Cnty. of Del.*, 82 F. Supp. 2d 12, 13 n. 1 (N.D.N.Y. 2000) (holding that the NYAG has *parens patriae* authority to bring a suit to protect the voting rights of disabled New Yorkers).

Response to Paragraph 14:

The allegations of paragraph 14 constitute legal conclusions and questions of law to which no response is required.  To the extent that any response is required, Message Communications lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 14.

Paragraph 15:

Plaintiff-Intervenor, the NYAG, is aggrieved by Defendants' actions and has standing to bring this action.

Response to Paragraph 15:

The allegations of paragraph 15 constitute legal conclusions and questions of law to which no response is required.  To the extent that any response is required, Message Communications lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 15.

Paragraph 16:

Defendant Jacob Wohl ("Wohl") is a resident of Los Angeles, California.  Wohl is a businessperson and conspiracy theorist.

Response to Paragraph 16:

Message Communications lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 16.

Paragraph 17:

Defendant Jack Burkman ("Burkman") is a resident of Arlington, Virginia.  Burkman is a lobbyist, attorney, and conspiracy theorist.

Response to Paragraph 17:

Message Communications lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 17.

Paragraph 18:

> Defendant J.M. Burkman & Associates, LLC ("Burkman & Associates") is a lobbying firm founded, controlled, and operated by Burkman.  Burkman & Associates is headquartered at 1530 Key Blvd., Apt. 1222, Arlington, Virginia, an address affiliated with Burkman.

> Response to Paragraph 18:

> Message Communications lacks knowledge or information sufficient to form a

belief as to the truth of the allegations in paragraph 18.

Paragraph 19:

> Defendant Project 1599 is an organization founded by Wohl and Burkman with headquarters at 1599 N. Colonial Terrace, Arlington, an address affiliated with Burkman.

> Response to Paragraph 19:

> Message Communications lacks knowledge or information sufficient to form a

belief as to the truth of the allegations in paragraph 19.

Paragraph 20:

> Defendant Message Communications, Inc. is a California corporation that owns, operates, and hosts a telecommunication broadcasting platform, which broadcasts robocalls or pre-recorded telephone messages for a fee.  Message Communications, Inc. is headquartered at 505 N. Tigertail Road, Los Angeles, California.

> Response to Paragraph 20:

> Message Communications denies the allegations of paragraph 20, except admits

that Message Communications, Inc. is a California corporation that owns, operates, and hosts a

platform which transmits prerecorded messages for a fee, and further admits that Message

Communications, Inc. is headquartered at 505 North Tigertail Road, Los Angeles, California.

Paragraph 21:

> Defendant Robert Mahanian ("Mahanian") is a resident of Los Angeles, California and is the principal agent and owner of Message Communications, Inc.

> Response to Paragraph 21:

> Message Communications admits the allegations in paragraph 21.

Paragraph 22:

> In advance of the 2020 presidential election, Wohl and Burkman expressed an interest in interfering in that election by, among other things, spreading disinformation to suppress voter turnout through a self-proclaimed "conservative political intelligence and advocacy organization" called the Arlington Center for Political Intelligence (ACPI).

> Response to Paragraph 22:

> Message Communications lacks knowledge or information sufficient to form a

belief as to the truth of the allegations in paragraph 22.

Paragraph 23:

> The details of ACPI's mission to "affect[] political outcomes in the interest of advancing conservative candidates and the financial interests of our backers" were disseminated in a 12-page document, dated January 2019, to solicit donors to fundraise for ACPI's goals.

> Response to Paragraph 23:

> Message Communications lacks knowledge or information sufficient to form a

belief as to the truth of the allegations in paragraph 23.

Paragraph 24:

> Indeed, by February 2019, Wohl, who had previously partnered with Burkman to engage in political activities, told USA Today that he was "already plotting ways to discredit Democrats in the 2020 election with lies and other disinformation, using his large

following on social media to cause disarray similar to what the
Russians did during the 2016 election."

Response to Paragraph 24:

Message Communications lacks knowledge or information sufficient to form a

belief as to the truth of the allegations in paragraph 24.

Paragraph 25:

In June 2019, Wohl admitted to The Washington Post that he had
sought investors through ACPI to fund the scheme outlined in the
ACPI prospectus: to use fraudulent news stories about candidates
to suppress voter turnout and manipulate political betting markets.

Response to Paragraph 25:

Message Communications lacks knowledge or information sufficient to form a

belief as to the truth of the allegations in paragraph 25.

Paragraph 26:

The fundraising documents for ACPI stated, among other things,
that it would create "what appear to be grass-roots" groups to
target "voters in swing districts" and conduct a "voter-suppression
effort" "[j]ust before the election."

Response to Paragraph 26:

Message Communications lacks knowledge or information sufficient to form a

belief as to the truth of the allegations in paragraph 26.

Paragraph 27:

ACPI also aimed to swing political betting markets.  The document
noted that the Center's "backers will affect political outcomes and
use our actionable intelligence to reap rewards betting on those
outcomes."

Response to Paragraph 27:

Message Communications lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 27.

Paragraph 28:

Upon information and belief, Wohl and Burkman created Project 1599 as an effort to carry out the goals outlined in the ACPI document: specifically, to spread disinformation, suppress voter turnout, and otherwise interfere in the 2020 election.

Response to Paragraph 28:

Message Communications lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 28.

Paragraph 29:

In the summer leading up to the 2020 general election, Wohl and Burkman planned, funded, and executed a concerted effort to intimidate and threaten voters through a nationwide robocall.

Response to Paragraph 29:

Message Communications lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 29.

Paragraph 30:

Upon information and belief, on June 17, 2020, Burkman left a voice message for Mahanian to discuss broadcasting a robocall that Burkman and Wohl intended to discourage mail-in voting and suppress voter turnout.

Response to Paragraph 30:

Message Communications denies the allegations of paragraph 30.

Paragraph 31:

On June 21, 2020, Burkman left a message with Message Communications stating that he wanted to place some robocalls –

- 11 -

that he wanted to "buy some" – and asked for a return call to his telephone at 703-795-5364.

Response to Paragraph 31:

Message Communications admits the allegations in paragraph 31.

Paragraph 32:

Over the next few days, upon information and belief, Burkman discussed with Mahanian the robocalls Burkman wanted to broadcast via Message Communications.

Response to Paragraph 32:

Message Communications denies the allegations of paragraph 32.

Paragraph 33:

On June 23, 2020, Burkman issued from a Burkman & Associates bank account the first of a series of checks (number 19518) to Message Communications in the amount of $1,000 with a subject of "PR – Robo call."

Response to Paragraph 33:

Message Communications denies the allegations of paragraph 33, except admits that Message Communications received a check in the amount of $1000, dated June 23, 2020, from the bank account of JM Burkman & Associates LLC.

Paragraph 34:

As seen below, while Wohl and Burkman were preparing their robocall message, the two discussed their goal of interfering with the upcoming election. On August 19, 2020, Wohl wrote an email to Burkman regarding Bill Clinton's Democratic Convention speech, saying, "[o]ur press conferences literally get 50-100x more views, which is why we must HIJACK this boring election."

Response to Paragraph 34:

Message Communications lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 34.

Paragraph 35:

> That same day, Burkman wrote an email to Mahanian at Message
> Communications, copying Wohl, confirming, "Check to you
> Robert just went out in the 2 day pouch you will have in 2-3 days
> then we attack."

> Response to Paragraph 35:

> Message Communications denies the allegations of paragraph 35, except admits

that on August 19, 2020 Burkman sent an email to Message Communications, copying Wohl, the

contents of which speak for themselves.

Paragraph 36:

> On August 21, 2020, Burkman & Associates issued check number
> 19921 to Message Communications for $1,000 with a subject
> "Robo [illegible] call."

> Response to Paragraph 36:

> Message Communications denies the allegations of paragraph 36, except admits

that Message Communications received a check in the amount of $1000, dated August 21, 2020,

from the bank account of JM Burkman & Associates LLC.

Paragraph 37:

> On August 24, 2020, Burkman emailed Mahanian at Message
> Communications to confirm that he received the payment for the
> voter robocall campaign.

> Response to Paragraph 37:

> Message Communications denies the allegations of paragraph 37, except admits

that on August 24, 2020 Burkman sent an email to Message Communications, the contents of

which speak for themselves.

Paragraph 38:

> The next day, Mahanian confirmed receipt of Burkman's check
> number 19921 and informed Burkman that he was "all set" to
> begin the robocall campaign.

> Response to Paragraph 38:

Message Communications denies the allegations of paragraph 38, except admits

that on August 25, 2020 Message Communications sent an email to Burkman, the contents of

which speak for themselves.

Paragraph 39:

> Throughout the day on August 25, 2020, Wohl and Burkman
> emailed each other to identify specific neighborhoods to target
> with their robocall message.

> Response to Paragraph 39:

Message Communications lacks knowledge or information sufficient to form a

belief as to the truth of the allegations in paragraph 39.

Paragraph 40:

> At 12:10 am on that day, Wohl emailed Burkman an audio file of
> the robocall recording, adding that it should be sent to "black
> neighborhoods" in several cities (as seen below).

> Response to Paragraph 40:

Message Communications lacks knowledge or information sufficient to form a

belief as to the truth of the allegations in paragraph 40.

Paragraph 41:

> Burkman emailed Wohl back at 5:51 pm, a message with the
> subject line "working on robo now."

Response to Paragraph 41:

Message Communications lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 41.

Paragraph 42:

Burkman emailed another update to Wohl at 6:48 pm, confirming "the message says data all loaded, ready.  Many zip codes.  We have two wavs, the 267,000 calls each.  If you could do me one favor, just go in and upload the recording. Message Communications.com account 12013, pass code 5202.  Then I will enable, pick days and go in and hit go.".

Response to Paragraph 42:

Message Communications lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 42.

Paragraph 43:

At 8:27 pm on August 25, Burkman emailed Mahanian "2 mins when u can almost done 7037955364 thx so much."

Response to Paragraph 43:

Message Communications denies the allegations of paragraph 43, except admits that on August 25, 2020 Burkman sent an email to Message Communications, the contents of which speak for themselves.

Paragraph 44:

Upon information and belief, Burkman and Mahanian then discussed the robocall, including the targeted neighborhoods that Burkman and Wohl's robocall campaign would reach.

Response to Paragraph 44:

Message Communications denies the allegations of paragraph 44.

Paragraph 45:

> Wohl emailed Burkman and Mahanian on August 26 at 10:41 am
> informing them that the WAV file was uploaded successfully and
> that he updated the calls-per-minute to the maximum.

> Response to Paragraph 45:

Message Communications denies the allegations of paragraph 45, except admits

that on August 26, 2020 Wohl sent an email to Message Communications and Burkman, the

contents of which speak for themselves.

Paragraph 46:

> Mahanian confirmed to Wohl and Burkman via Mahanian's
> Message Communications email account that "yes, your campaign
> is currently running and recording, uploaded about 20 minutes ago,
> is running. I believe you are all set."

> Response to Paragraph 46:

Message Communications denies the allegations of paragraph 46, except admits

that on August 26, 2020 Message Communications sent an email to Burkman and Wohl, the

contents of which speak for themselves.

Paragraph 47:

> Minutes later, Burkman emailed Wohl and Mahanian to
> congratulate them for the "great job."

> Response to Paragraph 47:

Message Communications denies the allegations of paragraph 47, except admits

that on August 26, 2020 Burkman sent an email to Wohl and Message Communications, the

contents of which speak for themselves.

Paragraph 48:

>Upon information and belief, Message Communications monitors its robocall campaigns, including recording all calls delivered via the broadcast platform.

>Response to Paragraph 48:

>Message Communications denies the allegations of paragraph 48, except admits

that Message Communications generally retains copies of prerecorded messages transmitted

from the Message Communications platform.

Paragraph 49:

>Upon information and belief, Message Communications did not perform any due diligence or make any effort to determine whether the robocall provided to him by Wohl and Burkman – two individuals known for spreading conspiracy theories and other disinformation – constituted voter intimidation.

>Response to Paragraph 49:

>Message Communications denies the allegations of paragraph 49.

Paragraph 50:

>Instead, Message Communications processed the robocall and disseminated it via its broadcast platform to thousands of voters in multiple states, including New York, Ohio, Michigan, Pennsylvania, and Illinois.  Message Communications' records show that the messages were sent from 10:36 am to 3:30 pm ET on August 26, 2020.

>Response to Paragraph 50:

>Message Communications denies the allegations of paragraph 50, except admits

that on or about August 26, 2020, a prerecorded message created by Burkman and/or Wohl was

transmitted.

Paragraph 51:

> The robocall message, once dialed, transmitted to caller IDs an origination phone number of 703-795-5364, which belonged to Burkman.

> Response to Paragraph 51:

Message Communications lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 51, except admits that on or about August 26, 2020, a prerecorded message created by Burkman and/or Wohl was transmitted.

Paragraph 52:

> Voters who received the robocall message either received it live, if they answered the call, or through their voicemail system.

> Response to Paragraph 52:

Message Communications lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 52.

Paragraph 53:

> Wohl and Burkman's robocall message began with a woman introducing herself as Tamika Taylor from Project 1599. The message then falsely stated that voters who chose to vote by mail would face several severe consequences for doing so. The call stated that the police would use information from mail-in voting to track down old arrest warrants, that credit card companies would collect outstanding debts with the information provided, and that the CDC would use the information to administer mandatory vaccines. None of these statements is true.

> Response to Paragraph 53:

Message Communications lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 53.

Paragraph 54:

> Below is a complete transcript of the robocall:

Hi, this is Tamika Taylor from Project 1599, the civil rights
organization founded by Jack Burman and Jacob Wohl. Mail-in
voting sounds great, but did you know that if you vote by mail,
your personal information will be part of a public database that
will be used by police departments to track down old warrants and
be used by credit card companies to collect outstanding debts? The
CDC is even pushing to use records for mail-in voting to track
people for mandatory vaccines. Don't be finessed into giving your
private information to the man, stay safe and beware of vote
by mail.

Response to Paragraph 54:

Message Communications lacks knowledge or information sufficient to form a

belief as to the truth of the allegations in paragraph 54.

Paragraph 55:

In addition to containing blatant lies, the robocall traded on racist
stereotypes intended to intimidate and otherwise discourage Black
voters from using absentee or mail-in ballots.

Response to Paragraph 55:

Message Communications lacks knowledge or information sufficient to form a

belief as to the truth of the allegations in paragraph 55.

Paragraph 56:

For example, "Tamika Taylor" bears resemblance to Tamika
Palmer, the mother of Breonna Taylor, a Black woman killed by
police while sleeping in her home in Louisville, Kentucky in 2020.
When Breonna Taylor's death became an important part of the
movement for Black lives and racial justice, the media often
misidentified Tamika Palmer as Tamika Taylor.

Response to Paragraph 56:

Message Communications lacks knowledge or information sufficient to form a

belief as to the truth of the allegations in paragraph 56.

Paragraph 57:

> Moreover, as another example, stating that vote by mail
> information would be used by police to track down old warrants
> could be perceived as intimidating for Black voters who may have
> legitimate fears of interacting with law enforcement due to a long
> history of systemic racism in the criminal justice system.

> Response to Paragraph 57:

> Message Communications lacks knowledge or information sufficient to form a

belief as to the truth of the allegations in paragraph 57.

Paragraph 58:

> By instructing Black voters to "stay safe" during a global
> pandemic, the call also discouraged any exercise of the franchise.
> Voters intimidated from voting by mail were left with the choice of
> voting in person – and risking death or lifelong debilitation from
> COVID-19 – or not voting at all.

> Response to Paragraph 58:

> Message Communications lacks knowledge or information sufficient to form a

belief as to the truth of the allegations in paragraph 58.

Paragraph 59:

> Wohl and Burkman's emails further reveal the shared racial
> animus that motivated the robocall campaign.

> Response to Paragraph 59:

> Message Communications lacks knowledge or information sufficient to form a

belief as to the truth of the allegations in paragraph 59.

Paragraph 60:

> At 12:36 pm on August 26, 2020, Burkman sent an email to Wohl,
> stating "I love these robo calls…getting angry black call
> backs…win or lose…the black robo was a great jw idea."

- 20 -

Response to Paragraph 60:

Message Communications lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 60.

Paragraph 61:

Upon information and belief, Message Communications maintains a database of phone numbers that can be targeted for purposes of a robocall campaign and it was aware of and directed the robocall message to specific communities selected by Wohl and Burkman.

Response to Paragraph 61:

Message Communications denies the allegations of paragraph 61.

Paragraph 62:

The purpose of this robocall campaign, though devious in its intended result, was plain to Wohl and Burkman, and should have been equally so to Mahanian and Message Communications:  to prevent voters, especially Black voters in specific cities, from accessing absentee or mail-in ballots, which would prove to be a critical and secure method for preserving the elective franchise during the COVID-19 pandemic.

Response to Paragraph 62:

Message Communications lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 62, except denies the allegations as to Message Communications.

Paragraph 63:

Message Communications and Mahanian failed to prevent Wohl and Burkman from directing the robocall message to specific communities based on race.

Response to Paragraph 63:

Message Communications denies the allegations of paragraph 63.

Paragraph 64:

> Upon information and belief, Message Communications maintains real time analytics, such as response rate analyses and geographic response analyses, for robocall campaigns to identify how to increase robocall performance.  Upon information and belief, Message Communications maintained these analyses for the Project 1599 robocall campaign.

Response to Paragraph 64:

Message Communications denies the allegations of paragraph 64.

Paragraph 65:

> Federal law prescribes the technical and procedural standards for systems that are used to transmit artificial or prerecorded voice messages via telephone, including the requirement that such messages state certain information such as the identity of the calling entity.  47 U.S.C. § 227(d)(3)(A).  Based on these federal requirements, to ensure that a robocall message complied with federal law, Message Communications knew or should have known the content of the Wohl and Burkman robocall message.

Response to Paragraph 65:

Message Communications denies the allegations of paragraph 65.

Paragraph 66:

> Defendants' illegal robocall was sent to approximately 85,000 potential voters in advance of the 2020 presidential election, including approximately 5,500 New York phone numbers.

Response to Paragraph 66:

Message Communications lacks knowledge or information sufficient to form a

belief as to the truth of the allegations in paragraph 66.

Paragraph 67:

> The Wohl and Burkman robocall sought to subject New York voters to intimidation and attempted to interfere in the State's efforts to provide for free and fair elections in a safe manner during the COVID-19 pandemic.

Response to Paragraph 67:

Message Communications lacks knowledge or information sufficient to form a

belief as to the truth of the allegations in paragraph 67.

Paragraph 68:

As noted, approximately 5,500 New York phone numbers received
the Wohl and Burkman robocall on August 26, 2020.  Of this
group, the vast majority of calls were sent to numbers with New
York City area codes; at least 4,186 calls were sent to the 212 area
code; at least 703 calls were sent to the 646 area code; at least 198
calls were sent to the 347 area code; and at least 170 calls were
sent to the 917 area code.

Response to Paragraph 68:

Message Communications lacks knowledge or information sufficient to form a

belief as to the truth of the allegations in paragraph 68.

Paragraph 69:

Within several days, New York voters who received the robocall
had realized that the purpose of the call was to discourage Black
voters from voting by absentee ballot, a safe alternative to voting
in person during the COVID-19 pandemic, and thereby suppress
Black votes.

Response to Paragraph 69:

Message Communications lacks knowledge or information sufficient to form a

belief as to the truth of the allegations in paragraph 69.

Paragraph 70:

Beyond targeting New York's voters for intimidation, the Wohl
and Burkman robocall campaign sought to interfere with the
State's efforts to encourage and expand absentee ballot access as a
lawful, proven, and safe method for voting.

Response to Paragraph 70:

Message Communications lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 70.

Paragraph 71:

> For example, in the lead-up to the 2020 election, and in response to the exigencies of the COVID-19 pandemic, the State took steps to expand access to absentee ballots by: (1) expanding the qualified excuses for obtaining an absentee ballot to cover the risk of contracting COVID-19; (2) allowing voters to request an absentee ballot more than 30 days before Election Day; (3) modernizing the ways in which voters could request an absentee ballot to include over-the-phone applications as well as via electronic submissions; and (4) directing local boards of elections to send voters information mailings specifying the relevant voting deadlines, including the deadlines for absentee ballot applications and procedures.

Response to Paragraph 71:

Message Communications lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 71.

Paragraph 72:

> Wohl and Burkman's robocall, which approximately 5,500 New York voters received, sought to undermine and hinder these efforts by casting doubt on the security of voting by absentee ballot and threatening severe, harmful collateral consequences for voters who sought to do so.

Response to Paragraph 72:

Message Communications lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 72.

Paragraph 73:

> On October 16, 2020, the National Coalition on Black Civic Participation and others initiated this lawsuit.

Response to Paragraph 73:

Message Communications lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 73.

Paragraph 74:

On October 22, 2020, Plaintiffs in this case sought a temporary restraining order and preliminary injunction to prevent Wohl and Burkman from engaging in any further robocall campaigns to interfere in the 2020 Presidential election.

Response to Paragraph 74:

Message Communications lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 74.

Paragraph 75:

On October 26, 2020, Your Honor heard arguments concerning Plaintiff's temporary restraining order and preliminary injunction. Plaintiffs were represented by counsel and Wohl and Burkman appeared *pro se*.

Response to Paragraph 75:

Message Communications lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 75.

Paragraph 76:

During the October 26 hearing, Wohl and Burkman each made various representations about their role in the robocall campaign, including Burkman's admission to the court that "Yes, that is our call. Yes, yes," and his confirmation that "we do not" deny the content of the robocall message. *See* Court Hrg. Tr. Oct. 26, 2020 beginning at 12:17.

Response to Paragraph 76:

Message Communications lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 76.

Paragraph 77:

> Additionally, when Wohl was subsequently examined by the
> Court, he answered that he "would second everything that
> Mr. Burkman pointed out."  Wohl confirmed that this meant that
> he acknowledges that he "participated in the preparation of the
> content of the messages and its communication to plaintiffs
> through [Message Communications] the entity in California."  *Id*.
> beginning at 14:20.

Response to Paragraph 77:

Message Communications lacks knowledge or information sufficient to form a

belief as to the truth of the allegations in paragraph 77.

Paragraph 78:

> In its decision and order on October 28, 2020, (the October Order),
> the Court granted plaintiffs request for a temporary restraining
> order restraining defendants from engaging in further robocall
> campaigns without prior consent of the court through at least
> November 3, 2020, and ordered that Wohl and Burkman issue a
> curative message to be distributed to numbers dialed by the voter
> intimidation robocall campaign.

Response to Paragraph 78:

Message Communications lacks knowledge or information sufficient to form a

belief as to the truth of the allegations in paragraph 78.

Paragraph 79:

> In the October Order, the Court made certain factual findings in
> support of the temporary restraining order, including that "the
> information Defendants' calls convey is manifestly false and meant
> to intimidate citizens from exercising voting rights."

Response to Paragraph 79:

Message Communications lacks knowledge or information sufficient to form a

belief as to the truth of the allegations in paragraph 79.

Paragraph 80:

> The October Order also found Wohl and Burkman's statements denying targeting particular demographic groups with the robocall, "lacking in credibility," which were belied by their other admissions.

> Response to Paragraph 80:

> Message Communications lacks knowledge or information sufficient to form a

belief as to the truth of the allegations in paragraph 80.

Paragraph 81:

> Defendants conspired, through intimidation and thinly veiled threats, to prevent lawfully registered New York voters from giving their support and advocacy toward candidates to serve as an elector for President and Vice President and to serve as Members of Congress of the United States.

> Response to Paragraph 81:

> Message Communications lacks knowledge or information sufficient to form a

belief as to the truth of the allegations in paragraph 81.

Paragraph 82:

> The conspiracy consisted of Wohl and Burkman, their related entities, and Message Communications.

> Response to Paragraph 82:

> Message Communications lacks knowledge or information sufficient to form a

belief as to the truth of the allegations in paragraph 82, except denies the allegations as to

Message Communications.

Paragraph 83:

> Defendants committed numerous overt acts in furtherance of the conspiracy as outlined above.

Response to Paragraph 83:

Message Communications lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 83, except denies the allegations as to Message Communications.

Paragraph 84:

> For instance, Wohl and Burkman used Burkman & Associates and Project 1599 to plan, draft, and fund a strategically deceptive, racially targeted, and threatening robocall designed to suppress the vote in advance of the general election ending on November 3, 2020.

Response to Paragraph 84:

Message Communications lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 84.

Paragraph 85:

> The purpose of the Project 1599 robocall was to sow distrust in the use of mail-in or absentee ballots among voters, specifically Black voters, to suppress their votes in the general election ending on November 3, 2020.

Response to Paragraph 85:

Message Communications lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 85.

Paragraph 86:

> To fund Project 1599's deceptive and threatening robocall, Wohl and Burkman used Burkman & Associates to pay for robocalls to be broadcast by Message Communications.

Response to Paragraph 86:

Message Communications lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 86.

Paragraph 87:

> Upon information and belief, Message Communications worked with Wohl and Burkman to target specific zip codes to maximize the threatening effects the robocall would have on Black voters in New York and other large metropolitan areas.
>
> Response to Paragraph 87:
>
> Message Communications denies the allegations of paragraph 87.

Paragraph 88:

> Message Communications, once fully paid by Burkman & Associates, broadcast the robocall as well as monitored and recorded its broadcast.
>
> Response to Paragraph 88:
>
> Message Communications denies the allegations of paragraph 88, except admits

that on or about August 26, 2020, a prerecorded message created by Burkman and/or Wohl was

transmitted, a copy of which was maintained by Message Communications.

Paragraph 89:

> On information and belief, at no point did Mahanian or Message Communications, nor any other Defendant, attempt to prevent the robocall from being broadcast.
>
> Response to Paragraph 89:
>
> Message Communications denies the allegations of paragraph 89.

Paragraph 90:

> Plaintiff-Intervenor repeats, realleges, and incorporates herein by reference the allegations set forth in paragraphs 1 through 89 of this Complaint.

Response to Paragraph 90:

Message Communications repeats and realleges its responses to the allegations of paragraphs 1 through 89 of the Complaint with the same force and effect as if fully set forth herein at length.

Paragraph 91:

> Section 11(b) of the Voting Rights Act provides in relevant part that "[n]o person, whether acting under color of law or otherwise, shall intimidate, threaten, or coerce, or attempt to threaten, intimidate, or coerce any person" for voting, attempting to vote, or aiding any person who is voting or attempting to vote, in any election. 52 U.S.C. § 10307(b).

Response to Paragraph 91:

The allegations of paragraph 91 constitute legal conclusions and questions of law to which no response is required. To the extent that any response is required, Message Communications lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 91.

Paragraph 92:

> Defendants' conduct violates Section 11(b) of the Voting Rights Act, which prohibits actual or attempted intimidation, threats, and/or coercive conduct against a person "for voting or attempting to vote." 52 U.S.C. § 10307(b).

Response to Paragraph 92:

The allegations of paragraph 92 constitute legal conclusions and questions of law to which no response is required. To the extent that any response is required, Message Communications lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 92, except denies the allegations as to Message Communications.

Paragraph 93:

> Wohl and Burkman targeted Black communities with their robocall campaign in an effort to intimidate Black voters from voting by mail and thereby suppress their votes, voters whose rights and interests the NYAG asserts and protects.

> Response to Paragraph 93:

Message Communications lacks knowledge or information sufficient to form a

belief as to the truth of the allegations in paragraph 93.

Paragraph 94:

> In furtherance of their efforts to intimidate voters, Wohl and Burkman, through Message Communications, coordinated to ensure the maximum rate at which the robocall campaign would be broadcast to reach the greatest number of dialed-calls.

> Response to Paragraph 94:

Message Communications lacks knowledge or information sufficient to form a

belief as to the truth of the allegations in paragraph 94, except denies the allegations as to

Message Communications.

Paragraph 95:

> Mahanian and Message Communications were aware or should have been aware of the false information and the communities targeted to receive the call but nevertheless failed to prevent the message's broadcast.  Instead, Mahanian and Message Communications sent the intimidating and inaccurate message to thousands of phone numbers in New York and other states and actively monitored its spread.

> Response to Paragraph 95:

Message Communications denies the allegations of paragraph 95.

Paragraph 96:

> Defendants attempted to intimidate New York voters from exercising their right to vote.  Defendants' robocall message

contained thinly veiled threats that were received by approximately
5,500 New York phone numbers.  Those voters who heard the
message were subjected to those threats, which were intended to
raise doubts and fears about absentee or mail-in ballots, and
thereby undermine their confidence in the general election for
President, Vice President, and other offices ending on November 3,
2020.

Response to Paragraph 96:

Message Communications lacks knowledge or information sufficient to form a

belief as to the truth of the allegations in paragraph 96, except denies the allegations as to

Message Communications.

Paragraph 97:

Plaintiff-Intervenor repeats, realleges, and incorporates herein by
reference the allegations set forth in paragraphs 1 through 89 of
this Complaint.

Response to Paragraph 97:

Message Communications repeats and realleges its responses to the allegations of

paragraphs 1 through 89 of the Complaint with the same force and effect as if fully set forth

herein at length.

Paragraph 98:

The Ku Klux Klan Act of 1871 prohibits "two or more persons
[from] conspir[ing] to prevent by force, intimidation, or threat" any
"citizen who is lawfully entitled to vote, from giving his support or
advocacy in a legal manner, toward or in favor of the election of
any lawfully qualified person as an elector for President or Vice
President, or as a Member of Congress of the United States."  42
U.S.C. § 1985(3).  The statute also provides that "in any case of
conspiracy . . . if one or more person engaged therein do, or cause
to be done, any act in furtherance of the object of such conspiracy,
whereby another is injured in his person or property, or deprived of
having and exercising any right or privilege of a citizen of the
United States, the party so injured or deprived may have an action
for the recovery of damages occasioned by such injury or

deprivation against any one or more of the conspirators."  42
U.S.C. § 1985(3).

Response to Paragraph 98:

The allegations of paragraph 98 constitute legal conclusions and questions of law

to which no response is required.  To the extent that any response is required, Message

Communications lacks knowledge or information sufficient to form a belief as to the truth of the

allegations in paragraph 98.

Paragraph 99:

Defendants have violated 42 U.S.C. § 1985(3) because they have
conspired to intimidate and threaten thousands of lawfully
registered New York voters during the general election ending on
November 3, 2020, voters whose rights and interests the NYAG
asserts and protects.

Response to Paragraph 99:

The allegations of paragraph 99 constitute legal conclusions and questions of law

to which no response is required.  To the extent that any response is required, Message

Communications lacks knowledge or information sufficient to form a belief as to the truth of the

allegations in paragraph 99, except denies the allegations as to Message Communications.

Paragraph 100:

Wohl and Burkman planned and conspired to spread a false,
deceptive, and inflammatory robocall message targeted at Black
voters in New York.  The purpose of this robocall was to
"HIJACK" the election and suppress the vote by encouraging
voters to "stay safe" and intimidating voters from obtaining and
voting by absentee ballot for fear of suffering significant collateral
consequences for doing so – such as the enforcement of warrants
by law enforcement, collection of old debts, and forced
vaccination.

Response to Paragraph 100:

Message Communications lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 100.

Paragraph 101:

Wohl and Burkman conspired to target Black voters to receive the robocall and then celebrated receiving "angry black call backs" after thousands of voters, including voters in New York, received it.

Response to Paragraph 101:

Message Communications lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 101.

Paragraph 102:

Wohl and Burkman, through Burkman's business, Burkman & Associates, and Project 1599, enlisted Mahanian and his company Message Communications to place the robocall and target specific cities to receive the robocall message.

Response to Paragraph 102:

Message Communications denies the allegations of paragraph 102.

Paragraph 103:

Defendants coordinated targeting specific communities to receive the intimidating robocall message.

Response to Paragraph 103:

Message Communications lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 103, except denies the allegations as to Message Communications.

Paragraph 104:

> Each defendant, including Mahanian and Message
> Communications, was aware or should have been aware of the
> conspiracy and had the opportunity to stop it by, for instance, not
> placing and/or transmitting the robocall message.

Response to Paragraph 104:

Message Communications lacks knowledge or information sufficient to form a

belief as to the truth of the allegations in paragraph 104, except denies the allegations as to

Message Communications.

Paragraph 105:

> Defendants' conspiracy also sought to deprive Black voters of the
> equal protection of the laws.  Defendants targeted specific zip
> codes in cities in an effort to target Black voters for the robocall
> message.

Response to Paragraph 105:

Message Communications lacks knowledge or information sufficient to form a

belief as to the truth of the allegations in paragraph 105, except denies the allegations as to

Message Communications.

Paragraph 106:

> Each robocall message that was sent was an act in furtherance of
> the object of defendants' Section 1985(3) conspiracy.

Response to Paragraph 106:

The allegations of paragraph 106 constitute legal conclusions and questions of

law to which no response is required.  To the extent that any response is required, Message

Communications lacks knowledge or information sufficient to form a belief as to the truth of the

allegations in paragraph 106, except denies the allegations as to Message Communications.

Paragraph 107:

> Plaintiff-Intervenor repeats, realleges, and incorporates herein by reference the allegations set forth in paragraphs 1 through 89 of this Complaint.

> Response to Paragraph 107:

Message Communications repeats and realleges its responses to the allegations of paragraphs 1 through 89 of the Complaint with the same force and effect as if fully set forth herein at length.

Paragraph 108:

> Section 131(b) of the Civil Rights Act of 1957 prohibits intentional voter intimidation by any person in federal elections. 52 U.S.C. § 10101(b).  Under the statute, "[n]o person, whether acting under color of law or otherwise, shall intimidate, threaten, coerce, or attempt to intimidate, threaten, or coerce any other person for the purpose of interfering with the right of such other person to vote or to vote as he may choose, or of causing such other person to vote for, or not vote for," any candidate for federal office. *Id.*

> Response to Paragraph 108:

The allegations of paragraph 108 constitute legal conclusions and questions of law to which no response is required.  To the extent that any response is required, Message Communications lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 108.

Paragraph 109:

> Wohl and Burkman have violated Section 131(b) because they attempted to intimidate and threaten thousands of lawfully registered New York voters during the general election ending on November 3, 2020, voters whose rights and interests the NYAG asserts and protects.

Response to Paragraph 109:

Message Communications lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 109.

Paragraph 110:

Wohl and Burkman planned and spread a false, deceptive, and inflammatory robocall message targeted at Black voters in New York.  The purpose of this robocall was to suppress the vote by encouraging voters to "stay safe" and intimidating voters out of obtaining and voting by absentee ballots for fear of suffering significant collateral consequences for doing so – such as the enforcement of warrants by law enforcement, collection of old debts, and forced vaccination.

Response to Paragraph 110:

Message Communications lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 110.

Paragraph 111:

Wohl and Burkman conspired to target Black voters to receive their deceptive and harassing robocall by selecting specific zip codes and communities to receive the call, including approximately 5,500 New York voters.  Those voters who heard the message were subjected to thinly veiled threats, which were intended to raise doubts and fears about absentee or mail-in ballots, and thereby undermine their confidence in the general election for President, Vice President, and other offices ending on November 3, 2020.

Response to Paragraph 111:

Message Communications lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 111.

Paragraph 112:

Wohl and Burkman also demonstrated the racial animus of their actions by, among other statements, celebrating receiving "angry

black call backs" after their robocall message was placed and sent
to thousands of voters, including voters in New York.

Response to Paragraph 112:

Message Communications lacks knowledge or information sufficient to form a

belief as to the truth of the allegations in paragraph 112.

Paragraph 113:

Plaintiff-Intervenor repeats, realleges, and incorporates herein by
reference the allegations set forth in paragraphs 1 through 89 of
this Complaint.

Response to Paragraph 113:

Message Communications repeats and realleges its responses to the allegations of

paragraphs 1 through 89 of the Complaint with the same force and effect as if fully set forth

herein at length.

Paragraph 114:

The right to be free from discrimination and harassment in the
exercising of civil rights, including voting rights, is protected and
guaranteed by New York Civil Rights Law § 40-c, which provides
that, "no person shall, because of race, creed, color, national origin,
sex, marital status, sexual orientation or disability…be subjected to
any discrimination in his or her civil rights, or to any harassment,
in the exercise thereof, by any other person."  N.Y. Civ. R. § 40-c.

Response to Paragraph 114:

The allegations of paragraph 114 constitute legal conclusions and questions of

law to which no response is required.  To the extent that any response is required, Message

Communications lacks knowledge or information sufficient to form a belief as to the truth of the

allegations in paragraph 114.

Paragraph 115:

> New York Civil Rights Law § 40-d provides that any person who violates § 40-c "or who shall aid or incite the violation" of that section shall be liable for a penalty of up to five hundred dollars "for each and every violation."  N.Y. Civ. R. § 40-d.

Response to Paragraph 115:

The allegations of paragraph 115 constitute legal conclusions and questions of law to which no response is required.  To the extent that any response is required, Message Communications lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 115.

Paragraph 116:

> Wohl and Burkman have, because of race or color, subjected New York residents to discrimination and harassment aimed at preventing those who received the call from exercising their full voting rights, rights and interests which the NYAG asserts and protects.

Response to Paragraph 116:

Message Communications lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 116.

Paragraph 117:

> Defendants Wohl and Burkman, their related entities, and Message Communications and Mahanian also aided and incited the discrimination of New York voters on the basis of race or color.

Response to Paragraph 117:

Message Communications lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 117, except denies the allegations as to Message Communications.

Paragraph 118:

> Defendants Wohl and Burkman spread a false, deceptive, and inflammatory robocall message targeted at Black voters in New York, the purpose of which was to suppress the vote by encouraging voters to "stay safe" and intimidating voters out of obtaining and voting by absentee ballots.

> Response to Paragraph 118:

Message Communications lacks knowledge or information sufficient to form a

belief as to the truth of the allegations in paragraph 118.

Paragraph 119:

> After approximately 5,500 New York residents received the robocall message, Wohl and Burkman celebrated their efforts to discriminate against and harass Black voters.

> Response to Paragraph 119:

Message Communications lacks knowledge or information sufficient to form a

belief as to the truth of the allegations in paragraph 119.

Paragraph 120:

> Plaintiff-Intervenor repeats, realleges, and incorporates herein by reference the allegations set forth in paragraphs 1 through 89 of this Complaint.

> Response to Paragraph 120:

Message Communications repeats and realleges its responses to the allegations of

paragraphs 1 through 89 of the Complaint with the same force and effect as if fully set forth

herein at length.

Paragraph 121:

> New York Civil Rights Law § 9 states: "[a]ll elections ought to be free; and no person by force of arms, malice, menacing, or otherwise, should presume to disturb or hinder any citizen of this state in the free exercise of the right of suffrage."  N.Y. Civ. R. § 9.

Response to Paragraph 121:

The allegations of paragraph 121 constitute legal conclusions and questions of law to which no response is required.  To the extent that any response is required, Message Communications lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 121.

Paragraph 122:

Defendants have violated New York Civil Rights Law § 9 because they caused to be sent an intimidating and blatantly false robocall message in an effort to "HIJACK" the 2020 election.

Response to Paragraph 122:

Message Communications lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 122, except denies the allegations as to Message Communications.

Paragraph 123:

Defendants' robocall campaign was intended to dissuade New York voters from freely exercising their full voting rights, voters whose rights and interests the NYAG asserts and protects.

Response to Paragraph 123:

Message Communications lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 123, except denies the allegations as to Message Communications.

Paragraph 124:

Defendants' deceptive and menacing robocall message, which contained thinly veiled threats concerning harms that would befall someone who voted by absentee or mail-in ballot, was received by approximately 5,500 New York phone numbers.

Response to Paragraph 124:

Message Communications lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 124, except denies the allegations as to Message Communications.

Paragraph 125:

New York voters who heard the message were subjected to those thinly veiled threats, which were intended to raise doubts and fears about absentee or mail-in ballots and thereby undermine a New York voter's confidence in the general election ending on November 3, 2020.

Response to Paragraph 125:

Message Communications lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 125.

Paragraph 126:

Defendants' purpose in broadcasting the robocall message was to sow doubts and raise fears about absentee or mail-in ballots, and in doing so suppress the vote in specific communities, including Black communities in New York.

Response to Paragraph 126:

Message Communications lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 126, except denies the allegations as to Message Communications.

Paragraph 127:

Defendants have further violated New York Civil Rights Law § 9 by attempting to interfere with and hinder the State's efforts to provide for a free and fair election during the COVID-19 pandemic.

Response to Paragraph 127:

Message Communications lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 127, except denies the allegations as to Message Communications.

Paragraph 128:

> In advance of the general election ending on November 3, 2020, the State adopted several measures to secure a free and fair election while allowing those voters who feared contracting COVID-19 to vote via absentee or mail-in ballots.

Response to Paragraph 128:

Message Communications lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 128.

Paragraph 129:

> Defendants sent a blatantly intimidating robocall to New York voters, which falsely claimed that harmful consequences would befall voters who voted via absentee or mail-in ballot.  This conduct was an attempt to interfere with and hinder the State's contemporaneous efforts to provide a free and fair election during the COVID-19 pandemic.

Response to Paragraph 129:

Message Communications lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 129, except denies the allegations as to Message Communications.

Paragraph 130:

> Plaintiff repeats, realleges, and incorporates herein by reference the allegations set forth in paragraphs 1 through 89 of this Complaint.

- 43 -

Response to Paragraph 130:

Message Communications repeats and realleges its responses to the allegations of paragraphs 1 through 89 of the Complaint with the same force and effect as if fully set forth herein at length.

Paragraph 131:

> New York Executive Law § 63(12) empowers the Attorney General to seek restitution, disgorgement, and injunctive relief when any person or business entity has engaged in repeated fraudulent or illegal acts or otherwise demonstrates persistent fraud or illegality in the carrying on, conducting, or transaction of business.

Response to Paragraph 131:

The allegations of paragraph 131 constitute legal conclusions and questions of law to which no response is required.  To the extent that any response is required, Message Communications lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 131.

Paragraph 132:

> A violation of any state law or regulation constitutes "illegality" within the meaning of § 63(12) and is actionable thereunder when the violation is persistent or repeated.  *See, e.g., Princess Prestige Co.*, 42 N.Y.2d 106 (1977) (violations of the Home Solicitation Act, P.P.L. Art. 10-A); *Applied Card*, 27 A.D.3d at 104 (violations of debt collection laws); *State v. Frink Am., Inc.*, 2 A.D.3d 1379 (4th Dep't 2003) (violations of Labor Law).

Response to Paragraph 132:

The allegations of paragraph 132 constitute legal conclusions and questions of law to which no response is required.  To the extent that any response is required, Message Communications lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 132.

- 44 -

Paragraph 133:

> Similarly, "[i]t long has been recognized that [Executive Law § 63(12)] affords the Attorney General broad authority to enforce federal as well as state law, unless state action in the area of federal concern has been precluded utterly or federal courts have exclusive jurisdiction of the matter." *Oncor Commc'ns, Inc. v. State,* 165 Misc. 2d 262, 267 (Sup. Ct. Albany Cnty. 1995), *aff'd*, 218 A.D.2d 60 (3d Dep't 1996). Indeed, the Attorney General's authority to enforce federal law has been described as not simply a power but an "obligation." *State v. Anderson*, 137 A.D.2d 259, 267 (4th Dep't 1988). Violations of state and federal criminal law have been found actionable under Executive Law § 63(12). *See, e.g., Expressions Hair Design v. Schneiderman*, 975 F. Supp. 2d 430 (S.D.N.Y. 2013).

> Response to Paragraph 133:

The allegations of paragraph 133 constitute legal conclusions and questions of law to which no response is required. To the extent that any response is required, Message Communications lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 133.

Paragraph 134:

> Persistent or repeated conduct under Executive Law § 63(12) includes the repetition of any number of "separate and distinct fraudulent or illegal act[s], or conduct which affects more than one person." *See, e.g., State v. Wilco Energy Corp.,* 284 A.D.2d 469, 471 (2d Dep't 2001).

> Response to Paragraph 134:

The allegations of paragraph 134 constitute legal conclusions and questions of law to which no response is required. To the extent that any response is required, Message Communications lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 134.

Paragraph 135:

> Defendants have engaged in repeated fraudulent or illegal acts or
> otherwise demonstrated persistent fraud or illegality in the carrying
> on, conducting, or transaction of their deceptive robocall campaign
> for purposes of Executive Law § 63(12).

Response to Paragraph 135:

Message Communications lacks knowledge or information sufficient to form a

belief as to the truth of the allegations in paragraph 135, except denies the allegations as to

Message Communications.

Paragraph 136:

> Defendants' targeted robocall campaign was fraudulent conduct, as
> defined under Executive Law section 63(12), because it "has the
> capacity or tendency to deceive, or creates an atmosphere
> conducive to fraud." *People v. Applied Card Sys., Inc.*, 27 A.D.3d
> 104, 107 (3d Dep't 2005), *aff'd on other grounds*, 11 N.Y.3d 105
> (2008).

Response to Paragraph 136:

The allegations of paragraph 136 constitute legal conclusions and questions of

law to which no response is required.  To the extent that any response is required, Message

Communications lacks knowledge or information sufficient to form a belief as to the truth of the

allegations in paragraph 136, except denies the allegations as to Message Communications.

Paragraph 137:

> As described above, Defendants' robocall campaign, funded and
> carried out through Burkman's business entity, was a violation of
> the New York Civil Rights laws, the Ku Klux Klan Act of 1871,
> the Civil Rights Act of 1975, and Section 11-b of the Voting
> Rights Act of 1965.

Response to Paragraph 137:

Message Communications lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 137, except denies the allegations as to Message Communications.

Paragraph 138:

Wohl and Burkman created and disseminated the robocalls, which falsely stated that the police would use information from mail-in voting to track down old arrest warrants, that credit card companies would collect outstanding debts with the information provided, and that the CDC would use the information to administer mandatory vaccines.

Response to Paragraph 138:

Message Communications lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 138.

Paragraph 139:

None of the statements asserted in the Wohl and Burkman robocalls is true.

Response to Paragraph 139:

Message Communications lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 139.

Paragraph 140:

Wohl and Burkman's robocalls were created to deceive or had the capacity to deceive dialed-callers.

Response to Paragraph 140:

Message Communications lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 140.

Paragraph 141:

> The robocall campaign successfully dialed thousands of New
> Yorkers' telephone numbers.

Response to Paragraph 141:

Message Communications lacks knowledge or information sufficient to form a

belief as to the truth of the allegations in paragraph 141.

Paragraph 142:

> Wohl and Burkman, through Burkman & Associates and Project
> 1599, enlisted Mahanian and his company Message
> Communications to place the robocall and target specific areas.

Response to Paragraph 142:

Message Communications denies the allegations of paragraph 142.

Paragraph 143:

> Defendants coordinated targeting specific communities to receive
> the intimidating robocall message.

Response to Paragraph 143:

Message Communications lacks knowledge or information sufficient to form a

belief as to the truth of the allegations in paragraph 143, except denies the allegations as to

Message Communications.

Paragraph 144:

> Each Defendant, including Mahanian and Message
> Communications, had knowledge or should have had knowledge of
> the discriminatory robocall campaign and the opportunity to stop
> it, by for instance not placing or transmitting the robocall message.

Response to Paragraph 144:

Message Communications lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 144, except denies the allegations as to Message Communications.

Paragraph 145:

>Upon information and belief, Mahanian and Message Communications maintained real time analyses about the Project 1599 robocall campaign once it broadcasted, including geographic response analyses and overall response analyses, in order to increase the performance of the robocall campaign.

Response to Paragraph 145:

>Message Communications denies the allegations of paragraph 145.

Paragraph 146:

>Mahanian and Message Communications had obligations to ensure the broadcast message complied with statutory regulations and either failed to properly monitor the Project 1599 robocall campaign or otherwise ignored the deceptive message it spread.

Response to Paragraph 146:

>Message Communications denies the allegations of paragraph 146.

\* \* \* \* \*

## AFFIRMATIVE DEFENSES

Message Communications may rely upon the following affirmative defenses, if supported by the facts ascertained through discovery or investigation.  By asserting these affirmative defenses, Message Communications assumes no burden of proof that Plaintiff may otherwise have.  Message Communications reserves the right to amend their answer to add additional affirmative defenses that may become available or apparent as a result of additional information, through discovery in this matter or otherwise.

Affirmative Defense No. 1:

Plaintiff's claims are barred, in whole or in part, in that they fail to state a claim upon which relief may be granted.

Affirmative Defense No. 2:

Plaintiff's claims are barred by Section 230 of the Communications Decency Act, which provides immunity to Defendants.

\*   \*   \*   \*   \*

- 50 -

<u>RELIEF REQUESTED</u>

WHEREFORE, Defendants Message Communications Inc. and Robert Mahanian pray that the Plaintiff-Intervenor's Complaint be dismissed with prejudice, and for all other relief deemed just and proper.

Dated:  New York, New York        THE LAW OFFICE OF
       October 1, 2021           RUSSELL D. MORRIS PLLC

By: _____
     Russell D. Morris

     11 Broadway, Suite 615
     New York, New York 10004
     Tel:  (212) 380-1619
     Email:  rmorris@russellmorrislaw.com

     *Attorneys for Defendants*
     *Message Communications Inc.*
     *And Robert Mahanian*