# Exhibit A

**\* \* \* PROPOSED AMENDED COMPLAINT \* \* \***

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| NATIONAL COALITION ON BLACK CIVIC PARTICIPATION, MARY WINTER, GENE STEINBERG, NANCY HART, SARAH WOLFF, KAREN SLAVEN, KATE KENNEDY, EDA DANIEL, and ANDREA SFERES, | |
| Plaintiffs, | Civil Action No. 20-cv-8668 |
| -and- | |
| People of the STATE OF NEW YORK, by its attorney general, LETITIA JAMES, ATTORNEY GENERAL OF THE STATE OF NEW YORK | **FIRST AMENDED COMPLAINT** |
| v. | |
| JACOB WOHL, JACK BURKMAN, J.M. BURKMAN & ASSOCIATES, LLC, PROJECT 1599, MESSAGE COMMUNICATIONS, INC., ROBERT MAHANIAN, and JOHN and JANE DOES 1–10, | |
| Defendants. | |

Plaintiffs National Coalition on Black Civic Participation, Mary Winter, Gene Steinberg, Nancy Hart, Sarah Wolff, Karen Slaven, Kate Kennedy, Eda Daniel and Andrea Sferes (collectively, the "Plaintiffs"), for their First Amended Complaint against Defendants Jacob Wohl, Jacob Burkman, J.M. Burkman & Associates, LLC, Project 1599, Message Communications, Inc., Robert Mahanian, and John and Jane Does 1–10 (collectively, the "Defendants"), allege as follows:

**\* \* \* PROPOSED AMENDED COMPLAINT \* \* \***

## NATURE OF THE CASE

1.      Plaintiffs seek to protect their right to vote safely and without fear.  Defendants sent robocalls to Plaintiffs and other voters for the purpose of intimidating them, or attempting to intimidate them, from voting by mail.  Defendants sent an as-yet-unknown number of robocalls to multiple states and used false information to scare recipients that they will experience negative consequences if they choose to vote by mail.  Voters were warned:  "stay safe and beware of vote by mail."  Voters deceived by these messages faced a harmful choice: expose yourself and your family to increased risk of contracting COVID-19 by voting in person, or do not vote.

2.      This is an action pursuant to Section 11(b) of the Voting Rights Act (52 U.S.C. § 10307(b)) and Section 2 of the Ku Klux Klan Act (42 U.S.C. § 1985(3)) to secure relief for the unlawful infringement of voting rights secured by the Constitution and the laws of the United States.  Plaintiffs are United States citizens and residents of New York, Ohio, and Pennsylvania.

3.      Plaintiffs initially filed this action to obtain immediate injunctive relief to halt the irreparable pattern of intimidation, threats, and/or coercion being engaged in by Defendants and others acting in concert with them that had the purpose and the effect of unlawfully interfering with the voting rights of lawfully registered voters, and to obtain redress.

4.      As described below, upon information and belief, Defendants and those acting in concert with them have orchestrated and funded a large-scale robocall campaign aimed at suppressing votes through intimidation and falsehoods.  As set forth below, the robocall campaign targeted voters in areas with significant Black populations and sought to exploit racially charged stereotypes and false information intended to dissuade recipients from voting in the November 3, 2020 election (the "2020 Election").

**\* \* \* PROPOSED AMENDED COMPLAINT \* \* \***

5.      The circumstances demonstrate that Defendants' actions were intended to intimidate, threaten and/or coerce voters, or attempt to intimidate, threaten, and/or coerce voters, and thereby interfere with the free exercise of their right to vote, including on the basis of race. Indeed, in addition to this action, Defendants Jack Burkman ("Burkman") and Jacob Wohl ("Wohl") are also currently facing felony charges brought by the Michigan Attorney General for voter intimidation, conspiracy to violate election law, and related charges stemming from this robocall campaign. The Ohio Attorney General has brought felony charges against Burkman and Wohl as well. These charges include bribery and telecommunications fraud in connection with Defendants' robocall campaign. Further, recently, on August 24, 2021, the Federal Communications Commission proposed a record-breaking $5 million fine against Wohl and Burkman due to their unlawful robocalls.

### PARTIES

6.      Plaintiff National Coalition on Black Civic Participation ("NCBCP") is a 501(c)(3) nonprofit, nonpartisan civil rights and racial justice organization founded in 1976 and headquartered in Washington, DC. NCBCP is dedicated to increasing civic engagement and voter participation in Black and underserved communities.  It strives to create an enlightened community by engaging people in all aspects of public life through service, volunteerism, advocacy, leadership development, and voting.  NCBCP works to address the disenfranchisement of underserved and other marginalized communities through various forms of civic engagement, including nonpartisan voter empowerment organizing and training; young adult civic leadership development; grassroots organizing and issue education; and convening a diverse coalition of members and state-based affiliates nationwide.  NCBCP works to expand, strengthen, and empower communities, particularly Black communities, to make voting and civic participation a

**\* \* \* PROPOSED AMENDED COMPLAINT \* \* \***

cultural responsibility and tradition.   One of NCBCP's programs is the Black Women's Roundtable ("BWR"), which has numerous state-based networks, including Metro Detroit.  BWR brings together Black women from varying backgrounds and across generations to strategize and organize to strengthen the power of Black women's leadership and to advance a policy agenda focused on the needs of Black women, including the promotion of voting, Census participation, and other civic participation.

7.      During the relevant period, Plaintiff Mary Winter was a lawfully registered voter residing in Rockland County, New York.

8.      During the relevant period, Plaintiff Gene Steinberg was a lawfully registered voter residing in Rockland County, New York.

9.      During the relevant period, Plaintiff Nancy Hart was a lawfully registered voter residing in Allegheny County, Pennsylvania.

10.      During the relevant period, Plaintiff Sarah Wolff was a lawfully registered voter residing in New York County, New York.

11.      During the relevant period, Plaintiff Kate Kennedy was a lawfully registered voter residing in Cuyahoga County, Ohio.

12.      During the relevant period, Plaintiff Karen Slaven was a lawfully registered voter residing in Cuyahoga County, Ohio.

13.      During the relevant period, Plaintiff Eda Daniel was a lawfully registered voter residing in Cuyahoga County, Ohio.

14.      During the relevant period, Plaintiff Andrea Sferes was a lawfully registered voter residing in Westchester County, New York.

**\* \* \* PROPOSED AMENDED COMPLAINT \* \* \***

15.     Wohl is a resident of Los Angeles, California.  Wohl is a political scam artist, conspiracy theorist, and known fraudster.  Wohl, both on his own and working in concert with Burkman, has spread odious and false conspiracy theories about numerous government and elected officials (discussed more below).  Wohl has also been previously investigated for securities fraud by several authorities, including the National Futures Association, the Arizona Corporation Commission, and the Riverside County District Attorney's Office.

16.     Burkman is a resident of Arlington, Virginia.  Burkman is a lobbyist, political scam artist, conspiracy theorist, and known fraudster.  He collaborated with Wohl to spread odious and false conspiracy theories, including many discussed below.

17.     Defendant Project 1599 is a political organization founded by Burkman and Wohl, with headquarters at 1599 N. Colonial Terrace, Arlington, Virginia.

18.     Defendant J.M. Burkman & Associates, LLC ("Burkman & Associates') is a lobbyist firm founded by Burkman, with headquarters at 1530 Key Blvd., Apt. 1222, Arlington, Virginia.  The phone number listed as the sender for the robocalls is associated with this lobbyist firm.

19.     Defendant Message Communications, Inc. ("Message Communications") is a California corporation that owns, operates, and hosts a telecommunication broadcasting platform, which broadcasts robocalls or pre-recorded telephone messages for a fee.  Message Communications is headquartered at 505 N. Tigertail Road, Los Angeles, California.

20.     Defendant Robert Mahanian ("Mahanian") is a resident of Los Angeles, California and is the principal agent and owner of Message Communications.

**\* \* \* PROPOSED AMENDED COMPLAINT \* \* \***

21.       Defendants have engaged in a disinformation campaign by bombarding lawfully registered voters with robocalls containing blatant lies about mail-in voting in order to intimidate those voters into not exercising their right to vote in the 2020 Election.

## JURISDICTION & VENUE

22.       This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1331, as this case arises under federal law, specifically Section 11(b) of the Voting Rights Act of 1965, 52 U.S.C. § 10307(b) and Section 2 of the Ku Klux Klan Act of 1871, 42 U.S.C. § 1985(3).

23.       Venue in this Court is proper under 28 U.S.C. § 1391(b) because a substantial portion of the events giving rise to the Plaintiffs' claims has occurred in this judicial district.

## GENERAL ALLEGATIONS

24.       "[S]ince the right to exercise the franchise [of voting] in a free and unimpaired manner is preservative of other basic civil and political rights, any alleged infringement of the right of citizens to vote must be carefully and meticulously scrutinized."  *Reynolds v. Sims*, 377 U.S. 533, 562 (1964).  Thus, the right to vote is inherently the right to vote unimpeded by deception and intimidation.  *See McCutcheon v. Fed. Election Comm'n*, 572 U.S. 185, 191 (2014) ("There is no right more basic in our democracy than the right to participate in electing our political leaders.").  Throughout history, however, bad actors have sought to employ deceptive election practices, intimidation, coercion and threats in an effort to infringe on the rights of citizens to vote. Defendants here have orchestrated one such scheme: the use of widely-disseminated robocalls— i.e., automated telephone calls with a recorded message—spreading fraudulent information and preying on deep-rooted fears and racial stereotypes to suppress votes.  As explained below, Defendants' actions have intimidated voters, and they must be stopped and redressed.

### Defendants Have Stated Their Intent to Interfere in Voters' Rights

25.     Wohl and Burkman have repeatedly and publicly expressed their intentions to interfere with voters' rights in the 2020 Election.  For example, on February 26, 2019, Wohl revealed to USA Today that the Defendants planned to interfere with the 2020 Election. Specifically, Wohl stated "that he's already plotting ways to discredit Democrats in the 2020 election with lies and other disinformation, using his large following on social media to cause disarray similar to what Russians did during the 2016 election."[1]

26.     These are not merely words; Defendants have taken concrete steps toward this goal. Last year, Wohl sought investors in a scheme to use fraudulent news stories to suppress voter turnout and manipulate political betting markets.  Wohl's fundraising documents for the entity, to be called the "Arlington Center for Political Intelligence," described how the entity would "aim to ultimately suppress turnout," "have a devastating impact on Democratic candidates," target "important Demographics of Democrat voters in swing districts," and employ a "voter-suppression effort."[2]  Indeed, the document specifically states Wohl's intention to "make s**t up" for these purposes.[3]

### Defendants Launched a Campaign to Bombard Voters With Fraudulent and Deceptive Robocalls

27.     Consistent with their stated intentions, Defendants engaged in a coordinated and calculated effort to dissuade lawfully registered voters from voting by mail, thereby interfering

---

[1] Christal Hayes and Gus Garcia-Roberts, This is How Jacob Wohl Created a Sexual Harassment Accusation Against Robert Mueller, USA TODAY (Feb. 26, 2019), *available at* https://www.usatoday.com/story/news/politics/ 2019/02/26/robert-mueller-hoax-how-jacob-wohl-created-sexual-harassment-plot/2993799002/.

[2] Manuel Roig-Franzia and Beth Reinhard, *Meet the GOP Operatives Who Aim To Smear the 2020 Democrats – But Keep Bungling I*t, WASHINGTON POST (June 4, 2019), *available at* https://www.washingtonpost.com/lifestyle/ style/meet-the-gop-operatives-who-aim-to-smear-the-2020-democrats--but-keep-bungling-it/2019/06/04/5b70f000- 7691-11e9-bd25-c989555e7766_story.html.

[3] *Id.*

with those individuals' voting rights in violation of several federal laws.

28.    In the summer leading up to the 2020 Election, Wohl and Burkman planned, funded, and executed a concerted effort to intimidate and threaten voters through a nationwide robocall campaign.

29.    Upon information and belief, on June 17, 2020, Burkman left a voice message for Mahanian to discuss broadcasting a robocall that Burkman and Wohl intended to discourage mail-in voting and suppress voter turnout.

30.    Upon information and belief, on June 21, 2020, Burkman left a message with Message Communications stating that he wanted to place some robocalls—that he wanted to "buy some"—and asked for a return call to his telephone at 703-795-5364.

31.    Over the next few days, upon information and belief, Burkman discussed with Mahanian the robocalls Burkman wanted to broadcast via Message Communications.

32.    On June 23, 2020, Burkman issued from a Burkman & Associates bank account the first of a series of checks (number 19518) to Message Communications in the amount of $1,000 with a subject of "PR – Robo call."

33.    As seen below, while Wohl and Burkman were preparing their robocall message, the two discussed their goal of interfering with the 2020 Election. On August 19, 2020, Wohl wrote



Subject: Re: Dem
Date: 19/08/2020 11:49   From: Jack Burkman <jackburkman2016@gmail.com>   To: J W <jacobwohl@gmail.com>

yes    america needs w b

On Wed, Aug 19, 2020 at 11:40 AM J W <jacobwohl@gmail.com> wrote:
Bill Clinton Dem Convention speech viewership online stream total viewership

ABC - 727
CBS - 424
NBC - 196

NO-I'M NOT MISSING ANY ZEROES.

Our press conferences literally get 50-100x more views

which is why we must HIJACK this boring election

* * * PROPOSED AMENDED COMPLAINT * * *

an email to Burkman regarding Bill Clinton's Democratic Convention speech, saying, "[o]ur press

conferences literally get 50-100x more views, which is why we must HIJACK this boring election."

34.     That same day, Burkman wrote an email to Mahanian at Message Communications,

copying Wohl, confirming, "Check to you Robert just went out in the 2 day pouch you will have in

2-3 days then we attack."

| | |
|---|---|
| From: | Jack Burkman |
| To: | robert@messagecommunications.com |
| Cc: | Jacob Wohl |
| Subject: | Re: Robert |
| Date: | Wednesday, August 19, 2020 9:17:08 PM |

Check to you Robert just went out in the 2 day
pouch   you will have in 2- 3 days

then we attack

35.     On August 21, 2020, Burkman & Associates issued check number 19921 to Message

Communications for $1,000 with a subject "Robo [illegible] call."

36.     On August 24, 2020, Burkman emailed Mahanian at Message Communications to

confirm that he received the payment for the voter robocall campaign.

37.     The next day, Mahanian confirmed receipt of Burkman's check number 19921 and

informed Burkman that he was "all set" to begin the robocall campaign.

* * * PROPOSED AMENDED COMPLAINT * * *

> On Tue, Aug 25, 2020 at 3:24 AM Robert Mahanian
> <Robert@messagecommunications.com> wrote:
> 
> Hi Jack,
> 
>     I did receive the check (Check # 19921) today and credited your account just a moment ago.
> 
> You are all set, thank you!
> 
> Robert Mahanian, MBA
> Message Communications, Inc.
> E-Mail:  Robert@MessageCommunications.com
> Toll-Free Phone :  (800) 848-8621 x 350
> Toll-Free Fax :     (800) 848-8892
> Web :  www.MessageCommunications.com
> 
> -----Original Message-----
> From: Jack Burkman [mailto:jackburkman2016@gmail.com]
> Sent: Monday, August 24, 2020 6:45 PM
> To: Robert@messagecommunications.com
> Subject: did
> 
> check come  if not  will overnite new one tuesdasy
> 

38.    Throughout the day on August 25, 2020, Wohl and Burkman emailed each other to

identify specific neighborhoods to target with their robocall message.

39.    At 12:10 am on that day, Wohl emailed Burkman an audio file of the robocall

recording, adding that it should be sent to "black neighborhoods" in several cities (as seen below).

**Subject: Robo Call Tape**
Date: 25/08/2020 00:10  From: "jacobwohl@gmail.com" <jacobwohl@gmail.com>    To: "Jack Burkman" <jackburkman2016@gmail.com>

Attached is the audio file for the robo call. We should send it to black neighborhoods in Milwaukee, Detroit, Philadelphia, Charlotte, Richmond, Atlanta and Cleveland.

40.    Burkman emailed Wohl back at 5:51 pm, a message with the subject line "working

on robo now."

**Subject: working on robo now**
Date: 25/08/2020 17:51  From: Jack Burkman <jackburkman2016@gmail.com>        To: Jacob Wohl <jacobwohl@gmail.com>

cleveland phila minn chicago nyc detroit

**\* \* \* PROPOSED AMENDED COMPLAINT \* \* \***

41.    Burkman emailed another update to Wohl at 6:48 pm, confirming "the message says data all loaded, ready. Many zip codes. We have two wavs, the 267,000 calls each. If you could do me one favor, just go in and upload the recording. Message Communications.com account 12013, pass code 5202. Then I will enable, pick days and go in and hit go."

**Subject:** robo
**Date:** 25/08/2020 18:48   **From:** Jack Burkman <jackburkman2016@gmail.com>   **To:** Jacob Wohl <jacobwohl@gmail.com>

data all loaded ready many zip codes we have 2 waves of 267,000
calls each

if you could do me one favor just go in and upload the recording

message communications.com

account 12013

passcode 5202

then i will enable pick days and go in and hit go

42.    At 8:27 pm on August 25, 2020, Burkman emailed Mahanian "2 mins when u can almost done 7037955364 thx so much."



**From:**    Jack Burkman
**To:**     robert@messagecommunications.com
**Subject:** Re: did
**Date:**   Tuesday, August 25, 2020 8:47:15 PM

2 mins when u can   almost done   703 795 5364   thx u so much

43.    Upon information and belief, Burkman and Mahanian then discussed the robocall, including the targeted neighborhoods that Burkman and Wohl's robocall campaign would reach.

44.    Wohl emailed Burkman and Mahanian on August 26, 2020 at 10:41 am informing them that the WAV file was uploaded successfully and that he updated the calls-per-minute to the maximum.

* * * PROPOSED AMENDED COMPLAINT * * *

45.     Mahanian confirmed to Wohl and Burkman via Mahanian's Message Communications email account that "yes, your campaign is currently running and recording, uploaded about 20 minutes ago, is running. I believe you are all set!"



46.     Minutes later, Burkman emailed Wohl and Mahanian to congratulate them for the "great job."



47.     Upon information and belief, Message Communications monitors its robocall campaigns, including recording all calls delivered via the broadcast platform.

48.     Message Communications processed the robocall and disseminated it via its broadcast platform to thousands of voters in multiple states, including New York, Ohio, Michigan, Pennsylvania, and Illinois. Message Communications' records show that the messages were sent from 10:36 am to 3:30 pm ET on August 26, 2020.

49.     The robocall came from 703-795-5364, which belongs to Burkman.  Below is a photo of Plaintiff Nancy Hart's caller ID:



50.     The robocall begins with a woman introducing herself as Tamika Taylor from Project 1599.  The caller falsely states that (1) police will use information from mail-in voting to track down old arrest warrants, (2) credit card companies will collect outstanding debts with the information provided, and (3) the Centers for Disease Control and Prevention (the "CDC") will use the information to administer mandatory vaccines.

51.     Below is the complete transcript of the robocall:

Hi, this is Tamika Taylor from Project 1599, the civil rights organization founded by Jack Burkman and Jacob Wohl. Mail-in voting sounds great, but did you know that if you vote by mail, your personal information will be part of a public database that will be used by police departments to track down old warrants and be used by credit card companies to collect outstanding debts? The CDC is even pushing to use records for mail-in voting to track people for mandatory vaccines. Don't be finessed into giving your private information to the man, stay safe and beware of vote by mail.

52.     As an initial matter, unlawful robocalls are inherently injurious.  The mere receipt of an unwanted robocall is a nuisance, an invasion of privacy, a waste of the recipient's time, and, in some cases, a drain on the recipient's phone battery.  But the danger caused far surpasses the everyday nuisance caused by Defendants' robocalls.  Each of the statements in the robocall

regarding these potential uses of voters' personal information is false and is designed to scare the listener.

53.     Moreover, the tone, tenor, language, and content of the call is designed to deceive and intimidate Black voters in particular.   It is currently unknown to Plaintiffs who "Tamika Taylor" is, but this name is similar to Breonna Taylor's mother, Tamika Palmer, whom the press has sometimes misidentified as Tamika Taylor.   Breonna Taylor was a Black woman killed by police in Louisville, Kentucky in 2020.   Her story is a key part of the movement for Black lives and racial justice.

54.     "Project 1599" is also not a civil rights organization.   While "Project 1599" conveniently sounds very similar to the New York Times' "1619 Project," which documents the history of slavery and racism, the title likely only relates to Burkman's street address.

55.     Stating that voting by mail information will be used by police intimidates voters if they or their family members fear attention from law enforcement.   Due to a long history of injustice and systemic racism, including the risk of unwarranted violence, many Black voters have legitimate fears of any interaction with law enforcement.

56.     Stating that voting by mail information will be used by debt collectors is likely to intimidate voters with debts.   Due to a long history of discriminatory redlining and predatory lending practices, Black populations are disproportionately indebted and have fewer resources to seek recourse from abusive and invasive debt collection practices.

57.     Stating that the CDC will use vote by mail information to conduct mandatory vaccination efforts is likely to intimidate voters who do not trust government medical programs. Such trust is especially low in the Black community due to a history of racist experimentation and discriminatory practices in such programs, like the Tuskegee Syphilis Study.

58.     Viewed in the totality of the circumstances and in the context of the historical inequities they connote, the language and content of the robocall was designed to resonate with Black voters.

59.     Defendants also specifically targeted their robocalls to areas with large Black populations.  For example, in a news release dated October 1, 2020, the Michigan Department of Attorney General reported that nearly 12,000 robocalls were made to residents with phone numbers from the 313 area code, which services Detroit, Michigan and surrounding areas. According to the U.S. census data, Detroit, Michigan's population is 76.8 % Black.

60.     Similarly, Attorneys General offices in New York, Pennsylvania, Ohio, and Illinois reported that the same robocall reached residents in their states who live in urban areas with significant minority populations, including but not limited to, New York City.

61.     Wohl and Burkman's emails further reveal their shared racial animus that motivated the robocall campaign.

62.     At 12:36 pm on August 26, 2020, Burkman sent an email to Wohl, stating "I love these robo calls…getting angry black call backs…win or lose…the black robo was a great jw idea." Upon information and belief, the term "jw" is an abbreviation for "Jacob Wohl."

63.     Upon information and belief, Message Communications maintains a database of phone numbers that can be targeted for purposes of a robocall campaign and it was aware of and directed the robocall message to specific communities selected by Wohl and Burkman.

64.     Wohl and Burkman's purpose in launching this robocall campaign was to prevent voters, especially Black voters in specific cities, from accessing absentee or mail-in ballots, which would prove to be a critical and secure method for preserving the elective franchise during the COVID-19 pandemic.

65.     Based on all the circumstances, including those set forth above, Message Communications knew or should have known the purpose and intent of Wohl and Burkman's robocall campaign.

66.     Message Communications and Mahanian failed to prevent Wohl and Burkman from directing the robocall message to specific communities based on race.

67.     Upon information and belief, Message Communications maintains real time analytics, such as response rate analyses and geographic response analyses, for robocall campaigns to identify how to increase robocall performance. Upon information and belief, Message Communications maintained these analyses for the Project 1599 robocall campaign.

68.     Federal law prescribes the technical and procedural standards for systems that are used to transmit artificial or prerecorded voice messages via telephone, including the requirement that such messages state certain information such as the identity of the calling entity. 47 U.S.C. § 227(d)(3)(A). Based on these federal requirements, to ensure that a robocall message complied with federal law, Message Communications knew or should have known the content of the Wohl and Burkman robocall message.

69.     Based on information reported to date, it is believed that Defendants' illegal

robocall campaign has reached approximately 85,000 potential voters, including Plaintiffs.

**Defendants' Robocall Campaign Has Diverted NCBCP's Resources**

70.     Plaintiff NCBCP expends significant resources and effort both to promote Black participation in the Census and to promote voting and other civic participation by the Black community.  These issues are priorities of NCBCP's BWR program and its state-based networks, such as BWR Metro Detroit.  BWR has been organizing and working on the ground in Black communities, including in Detroit, to encourage both Black participation in the Census and in elections.

71.     When Defendants' began making their robocalls on August 26, 2020, BWR Metro Detroit learned that members of their community were receiving the calls.  BWR Metro Detroit was immediately and seriously concerned that Defendants' lies and disinformation would intimidate and suppress Black voters, whom BWR Metro Detroit works hard to support.  They feared Black voters would not vote at all out of fear.

72.     They were also concerned that the false information would cause more voters to lose trust in mail in voting and instead vote in person.  COVID-19 has hit the Black community particularly hard, so BWR Metro Detroit was concerned that if more Black voters were tricked into voting in person, they were in danger.

73.     BWR Metro Detroit diverted staff and resources that were allocated toward encouraging Census participation to respond to the threat of Defendants' voter intimidation.  For example, its co-chair stopped her usual work—helping people fill out their Census forms—so that she could respond to the disinformation.  As a result, BWR Metro Detroit's efforts to promote Census participation were impaired and fewer people completed the Census.  As the Census has concluded, this harm is irreparable.  The diversion of resources harms not only the mission of the

* * * PROPOSED AMENDED COMPLAINT * * *

NCBCP, but also its constituents in Detroit who risk being undercounted in the Census and consequently losing their fair share of funding and representation associated with the Census count.

74.     NCBCP anticipates that if Defendants continue to disseminate voter intimidation robocalls, they will need to divert additional resources to protect the communities they serve.

## Defendants' Robocall Campaign Has Intimidated Plaintiffs

75.     During the relevant period, Plaintiff Mary Winter was a resident of Rockland County, New York, where she was registered to vote.  She voted in the primary election by mail-in ballot and intended to vote in the 2020 Election by mail-in ballot.  Because of the COVID-19 outbreak, for which there was no cure or vaccine in August 2020 when the robocall was sent, Ms. Winter did not at that time think it was safe for her to vote in person in 2020.  During the course of the pandemic in 2020, she was very careful in her virus precautions (particularly given that she lives in a County that has experienced a high volume of COVID-19 cases), remained socially distant from almost everyone, and did not even go to the grocery store.  In addition, prior to receiving the robocall, Ms. Winter had doubts about the integrity of voting through the mail-in ballot process due to reports she had seen in the media but was still planning to vote by mail-in ballot.  Ms. Winter's receipt of Defendants' robocall intimidated her into changing plans.

76.     Ms. Winter received the robocall on August 26, 2020, and was so immediately distressed by it, that she shared it with her then-partner, Plaintiff Gene Steinberg.  At first, she thought the robocall might have originated from a legitimate source but soon realized the nefarious intentions behind the call when the speaker's allegations turned to mandatory vaccines.  Even though she knew that the robocall was fraudulent, the robocall exacerbated her fears that someone would tamper with her mail-in ballot or violate its secrecy.  As Ms. Winter describes it, "[i]f

someone is willing to go to the lengths of creating a false robocall to lie and scare people from voting by mail, . . . what else might they be willing to do to block my mail-in ballot[?]"

77.    During the relevant period, Plaintiff Gene Steinberg was a resident of Rockland County, New York, where he was registered to vote.  He voted in the primary election by mail-in ballot and intended to vote in the 2020 Election by mail-in ballot.  At the relevant time of the events in question, Mr. Steinberg was Ms. Winter's partner and lived with her.  Like Ms. Winter, Mr. Steinberg had been vigilant in avoiding exposure to COVID-19 and was planning to vote via mail-in ballot to avoid any unnecessary risk.

78.    Mr. Steinberg heard the robocall because Ms. Winter played it for him immediately after she received it.  Mr. Steinberg has many of the same concerns that Ms. Winter does with regards to mail-in ballots, and the robocall further undermined any confidence in that method that remained.  In addition, Mr. Steinberg found the robocall to be "traumatic" for him due to his personal history.  He has a nonviolent criminal conviction from more than 18 years ago.  Given his history with law enforcement, Mr. Steinberg was particularly fearful after hearing the robocall's threat that law enforcement would use mail-in ballots to track voters.  In fact, this threat so "profoundly scared [him]," Mr. Steinberg now has "great anxiety" and is reliving earlier traumas as a result.  Mr. Steinberg was intimidated by the robocall to the point where he considered voting in person instead of voting by mail, despite the increased risks of contracting COVID-19 and spreading it to his then-partner.

79.    During the relevant period, Plaintiff Nancy Hart was a resident of Allegheny County, Pennsylvania where she was registered to vote.  Ms. Hart received the robocall on August 26, 2020 (even though her phone number is registered with the Do Not Call registry).  Ms. Hart was "irate" upon listening to the robocall because she understood the call to be a voter suppression

tactic.  Ms. Hart was also angry at the fact that the robocalls specifically targeted Black voters by preying upon real fears that exist within the Black community about the police, predatory debt collectors, and government-mandated medical programs.  Ms. Hart's concerns about the robocall have only grown deeper since receiving the robocall because she observed others on social media repeating the false information disseminated by the robocall.  Ms. Hart was so fearful that Defendants might be successful in their efforts to intimidate voters that she called the Pennsylvania State Attorney General Office and Secretary of State.

80.     During the relevant period, Plaintiff Sarah Wolff was a resident of New York County, New York where she was registered to vote.  Ms. Wolff received the robocall on August 26, 2020 (even though her phone number is registered with the Do Not Call registry).  Because Ms. Wolff knew that the robocall's information was a lie and that the purpose of the robocall was to intimidate her, the robocall infuriated her.  Ms. Wolff likewise found the call to be "disgusting" because it was a clear effort to intimidate voters from exercising their right to vote and because she understood the robocall's contents to be targeting Black voters in particular.

81.     During the relevant period, Plaintiff Kate Kennedy was a resident of Cuyahoga County, Ohio where she was registered to vote.  Ms. Kennedy is married to Plaintiff Karen Slaven and they received the robocall at their home where they live together on August 26, 2020.  The robocall angered Ms. Kennedy because she understood this call to be an attempt to scare her into not voting by mail. She is also worried that other voters will be scared by the call.

82.     During the relevant period, Plaintiff Karen Slaven was a resident of Cuyahoga County, Ohio where she was registered to vote.  Ms. Slaven is married to Ms. Kennedy and they received the robocall at their home where they live together on August 26, 2020.  Ms. Slaven understood this call to be an attempt to scare her into not voting by mail, and she is worried that

other voters will be scared by the false information in the robocall.

83.     During the relevant period, Plaintiff Eda Daniel was a resident of Cuyahoga County, Ohio where she was registered to vote.  Ms. Daniel received the robocall in late August or early September, 2020 (even though her phone number is registered with the Do Not Call Registry).  Ms. Daniel was understandably disconcerted, and also scared, by the robocall.  Ms. Daniel is well-familiar with the processes of voting as she serves as a precinct official for her county, and she believes that this robocall is an attempt to harass voters and intimidate them—and her—from voting.  The robocall also left her feeling powerless and vulnerable; she felt as if a stranger had just invaded her home with pernicious lies in order to intimidate her.  Ms. Daniel was so concerned that Defendants might be successful in their efforts to intimidate voters that she called her congresswoman, U.S. senator and mayor to report them.

84.     During the relevant period, Plaintiff Andrea Sferes was a resident of Westchester County, New York where she was registered to vote.  Ms. Sferes received the robocall on August 26, 2020 and also on or around Labor Day.  Ms. Sferes had never heard of Project 1599, Jacob Wohl, or Jack Burkman.  When she listened to the call, Ms. Sferes was shocked, furious and sickened.  Ms. Sferes understood the call to be an attempt to dissuade people from voting by mail. Since she has outstanding debt related to medical bills, Ms. Sferes began to worry whether her information would really be shared and tried to convince herself otherwise.  The robocall resulted in emotional distress that lasted multiple days after the call, and led her to voice her dismay to friends.

### Defendants' Robocall Campaign Was In Furtherance of Defendants' Conspiracy to Intimidate Voters From Exercising Their Right to Vote

85.     Defendants engaged in a conspiracy to prevent, by intimidation and threats, citizens who are lawfully entitled to vote from voting and giving their support and advocacy in a legal

manner toward and in favor of the election of a lawfully qualified person as an elector for President and Vice President and as a Member of Congress of the United States.  The conspiracy consisted of, at least, Burkman, Wohl, Project 1599, Burkman & Associates, Mahanian, Message Communications, and the speaker who identified herself on the robocalls as "Tamika Taylor."  The purpose of the conspiracy is to send voter intimidation robocalls.

86.     Defendants committed numerous overt acts in furtherance of the conspiracy.  For instance, Wohl and Burkman used Burkman & Associates and Project 1599 to plan, draft, and fund a strategically deceptive, racially targeted, and threatening robocall designed to suppress the vote in advance of the 2020 Election.

87.     The purpose of the Project 1599 robocall was to sow distrust in the use of mail-in or absentee ballots among voters, specifically Black voters, to suppress their votes in the 2020 Election.

88.     To fund Project 1599's deceptive and threatening robocall, Wohl and Burkman used Burkman & Associates to pay for robocalls to be broadcast by Message Communications.

89.     Upon information and belief, Message Communications worked with Wohl and Burkman to target specific zip codes to maximize the threatening effects the robocall would have on Black voters in New York and other large metropolitan areas.

90.     Message Communications, once fully paid by Burkman & Associates, broadcast the robocall as well as monitored and recorded its broadcast.

91.     On information and belief, at no point did Mahanian or Message Communications, nor any other Defendant, attempt to prevent the robocall from being broadcast.

92.     Thus, Defendants worked together to create and strategically disseminate the robocalls in an effort to suppress the vote.  Intimidating voters into refraining from voting by mail

* * * PROPOSED AMENDED COMPLAINT * * *

or from voting at all is an interference with those voters' giving of support or advocacy in favor of their preferred candidates in the 2020 Election.

93.     In the alternative, Defendants' conspiracy, by targeting Black voters and using intimidation to deprive them of their right to vote, seeks to deprive a class of persons of equal protection of the law.

94.     The Defendants know or reasonably should know that their actions have the effect of intimidating, threatening, and/or coercing Plaintiffs, and tens of thousands of other potential voters, in connection with exercising their right to vote by mail in the 2020 Election.  Indeed, that Defendants intended for their robocalls to intimidate voters is apparent from the robocall's last statement: "Stay safe and beware of vote by mail."  Defendants do not just want voters, particularly Black voters, to vote by mail—they do not want them to vote at all.

**Wohl and Burkman Face Criminal Charges
And Civil Pentalites Arising From Their Robocall Campaign**

95.     Defendants' actions have not escaped the notice of law enforcement authorities. On October 1, 2020, the Michigan Attorney General announced the filing of felony charges against Burkman and Wohl in connection with the robocalls at issue in this case, to the extent they targeted voters in Michigan.  Each was charged with one count of intimidating voters, one count of conspiracy to commit an election law violation, one count of using a computer to commit the crime of intimidating voters, and using a computer to commit the crime of conspiracy, all in violation of Michigan state law.

96.     Additionally, in October 2020, the Ohio Attorney General brought felony charges against Burkman and Wohl for bribery and telecommunications fraud in violation of Ohio state law.

97.     Finally, the Federal Communications Commission announced on August 24, 2021,

Defendants are facing an unprecedented $5 million fine due to their unlawful robocalls.

### Defendants Must be Stopped From Causing Irreparable Harm

98.     Wohl and Burkman's long history of disregard for the law and undermining confidence in elected officials whom they deem to be opponents is well-documented. They have orchestrated elaborate plans—including coercing and/or paying individuals to lie—to bring sexual misconduct allegations against Special Counsel Robert Mueller,[5] Minnesota Congresswoman Ilhan Omar, former South Bend, Indiana Mayor and then-Democratic presidential candidate Pete Buttigieg, Massachusetts Senator and then-Democratic presidential candidate Elizabeth Warren, and White House Coronavirus Task Force member Dr. Anthony Fauci. Although these allegations were debunked, Wohl and Burkman have been undeterred in their reckless chase of fraudulent schemes. Wohl and Burkman even hired actors on Craigslist to stage an FBI raid on Burkman's home, which he falsely alleged was retaliation by government officials.

99.     In short, Burkman and Wohl have long been engaged in a game of lies and fraud with the goal of undermining fair and free elections. Indeed, employing robocalls to further their fraud is nothing new: In 2019, Burkman and Wohl used robocalls in a failed effort to solicit derogatory information about Joe Biden. They have shown over and over again their intentional disregard for truth and the law.

100.    Defendants must be deterred immediately to prevent irreparable harm to voters, including Plaintiffs. Being denied the right to vote via intimidation is an irreparable harm; the voter permanently loses that opportunity to vote. Similarly, a voter suffers an irreparable, and potentially fatal, harm when they feel compelled to expose themselves to heightened COVID-19

---

[5] Andrew Prokop, *The incredibly shoddy plot to smear Robert Mueller, explained,* Vox (October 30, 2018), *available at* https://www.vox.com/2018/10/30/18044110/robert-mueller-jacob-wohl-jack-burkman-surefire.

risk in order to vote in person because they do not trust vote by mail due to intimidation and deception.

101.    If voters, including Plaintiffs, are intimidated, coerced, threatened, or otherwise prevented from voting—or are impaired by having to vote in person instead of by mail—in elections because of Defendants' actions, there will be no way to undo or remedy this damage.  If Plaintiffs, or other potential voters, do not vote in elections as a result of Defendants' actions, their votes in those elections are forever lost.  Enough is enough.

## CAUSES OF ACTION

### COUNT 1
### (Violation of Section 11(b) of the Voting Rights Act – Against All Defendants)

102.    Plaintiffs incorporate by reference the preceding paragraphs as if fully set forth herein.

103.    Section 11(b) of the Voting Rights Act provides in relevant part:  "No person, whether acting under color of law or otherwise, shall intimidate, threaten, or coerce, or attempt to intimidate, threaten, or coerce any person for voting, attempting to vote, or . . . aiding any person who is voting or attempting to vote, in any election."  52 U.S.C. § 10307(b) (formerly codified at 42 U.S.C. § 1973i(b)).

104.    Defendants have orchestrated a deceptive robocall campaign threatening, falsely, that personal information provided in connection with mail-in voting would be used by (i) the police to make arrests, (ii) credit card companies to collect outstanding debt, and (iii) the CDC to enforce mandatory vaccines.

105.    Defendants' conduct violates Section 11(b) of the Voting Rights Act, which prohibits all actual or attempted "intimidation," "threats," or "coercion" against a person, either "for voting or attempting to vote." 52 U.S.C. § 10307(b).

106.    Defendants' actions had the effect of intimidating, threatening, and/or coercing, or attempting to intimidate, threaten, and/or coerce, tens of thousands of lawfully registered voters in connection with voting or attempting to vote in the 2020 Election.

107.    Defendants' actions were undertaken with the purpose of intimidating, threatening, or coercing lawfully registered voters, so that they would be fearful and reluctant to exercise their right to vote by mail in the 2020 Election.

108.    Wohl and Burkman targeted Black communities with their robocall campaign in an effort to intimidate Black voters from voting by mail and thereby suppress their votes.

109.    In furtherance of their efforts to intimidate voters, Wohl and Burkman, through Message Communications, coordinated to ensure the maximum rate at which the robocall campaign would be broadcast to reach the greatest number of dialed-calls.

110.    Mahanian and Message Communications were aware or should have been aware of the false information and the communities targeted to receive the call but nevertheless failed to prevent the message's broadcast. Instead, Mahanian and Message Communications sent the intimidating and inaccurate message to thousands of phone numbers in various states and actively monitored its spread.

111.    Defendants attempted to intimidate voters from exercising their right to vote. Defendants' robocall message contained thinly veiled threats, and those voters who heard the message were subjected to those threats, which were intended to raise doubts and fears about absentee or mail-in ballots, and thereby undermine their confidence in the 2020 Election for President, Vice President, and other offices.

112.    Unless and until enjoined by the Court, Defendants will continue to intimidate, threaten, and/or coerce, or attempt to intimidate, threaten, and/or coerce, lawfully registered voters,

such as Plaintiffs, in violation of Section 11(b) of the Voting Rights Act.

## COUNT 2
### (Violation of Section 2 of the Ku Klux Klan Act – Against All Defendants)

113.    Plaintiffs incorporate by reference the preceding paragraphs as if fully set forth herein.

114.    Plaintiffs bring a claim under clause 3 of 42 U.S.C. § 1985(3), which as set forth in the underline text below, provides that:

> If two or more persons in any State or Territory conspire or go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws; if two or more persons conspire to prevent by force, intimidation, or threat, any citizen who is lawfully entitled to vote, from giving his support or advocacy in a legal manner, toward or in favor of the election of any lawfully qualified person as an elector for President or Vice President, or as a Member of Congress of the United States; or to injure any citizen in person or property on account of such support or advocacy; in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

42 U.S.C. § 1985(3) (emphases added).

115.    Defendants have violated clause 3 of 42 U.S.C. § 1985(3) because Defendants have conspired to intimidate and threaten many thousands of eligible voters, including Plaintiffs, through targeted robocalls, with the purpose of dissuading such persons from exercising their voting rights and to sow distrust in the electoral system in general, and voting by mail in particular.

116.    Defendants orchestrated a deceptive robocall campaign by falsely threatening that personal information provided in connection with mail-in voting would be used by (i) the police

to make arrests, (ii) credit card companies to collect outstanding debt, and (iii) the CDC to enforce mandatory vaccines.

117.   Defendants coordinated in the collection of phone numbers and the development of a strategically designed message.

118.   Defendants sought to prevent Plaintiffs, and thousands of other robocall recipients, from exercising their right to vote.

119.   Defendants' robocall message employed thinly veiled threats, intimidating Plaintiffs and causing Plaintiffs to have doubts and fears about voting through mail-in ballots, and undermined Plaintiffs' confidence in voting by mail in the 2020 Election.

120.   Defendants attempted to intimidate Plaintiffs out of exercising their right to vote by mail; upon information and belief, in the case of some percentage of the thousands of unnamed robocall recipients, Defendants no doubt succeeded in coercing such voters out of voting by any means.

121.   Wohl and Burkman, through Burkman & Associates, and Project 1599, enlisted Mahanian and his company Message Communications to place the robocall and target specific cities to receive the robocall message.

122.   Each defendant, including Mahanian and Message Communications, was aware or should have been aware of the conspiracy and had the opportunity to stop it by, for instance, not placing and/or transmitting the robocall message.

123.   Defendants' conspiracy also sought to deprive Black voters of the equal protection of the laws. Defendants targeted specific zip codes in cities in an effort to target Black voters for the robocall message.

* * * **PROPOSED AMENDED COMPLAINT** * * *

124.    The object of the Defendants' conspiracy was to dissuade eligible voters from casting their vote. Defendants' message not only discouraged the recipients from exercising their right to vote by mail, but also undermined their basic trust in the electoral process, all with the intended effect of reducing voter turnout. Plaintiff Hart, who spends much of her time as a journalist and activist encouraging others to vote recognized the robocalls as not solely a form of voter suppression but also as a direct attack on the institution of voting itself.

125.    Each robocall message that was sent was an act in furtherance of the object of Defendants' Section 1985(3) conspiracy.

### PRAYER FOR RELIEF

**WHEREFORE,** Plaintiffs respectfully request judgment be entered in its favor and against Defendants as follows:

a)   Declaring that Defendants' actions as described above violate Section 11(b) of the Voting Rights Act, 52 U.S.C. § 10307(b);

b)   Declaring that Defendants' actions as described above violate 42 U.S.C. § 1985(3), the Ku Klux Klan Act;

c)   Entering a permanent injunction enjoining Wohl, Burkman, Burkman & Associates, and Project 1599 from further engaging or undertaking in any of the challenged actions or conduct set forth in this Complaint;

d)   Entering a permanent injunction requiring Mahanian and Message Communications to establish policies and procedures to prevent unlawful, discriminatory, and intimidating robocalls directed at voters.

e)   Awarding compensatory and punitive damages;

f)   Awarding reasonable attorneys' fees and costs; and

**\* \* \* PROPOSED AMENDED COMPLAINT \* \* \***

g)  Awarding such other and further relief that the Court deems reasonable and just.

Dated:  New York, New York
         November __, 2021

Respectfully submitted,

ORRICK, HERRINGTON & SUTCLIFFE LLP

By:    DRAFT

Amy Walsh
Rene Kathawala
Julie Gorchkova
Aaron Gold
ORRICK HERRINGTON & SUTCLIFFE LLP
51 West 52nd Street
New York, NY 10019-6142
(212) 506-5000
awalsh@orrick.com
rkathawala@orrick.com
jgorchkova@orrick.com
aaron.gold@orrick.com

David Brody (admitted *pro hac vice*)
LAWYERS' COMMITTEE FOR CIVIL
RIGHTS UNDER LAW
1500 K St. NW, Suite 900
Washington, DC 20005
(202) 662-8600
jgreenbaum@lawyerscommittee.org
erosenberg@lawyerscommittee.org
dbrody@lawyerscommittee.org

John F. Libby
MANATT, PHELPS & PHILLIPS, LLP
72049 Century Park East, Suite 1700
Los Angeles, CA 90067
(310) 312-4342
jlibby@manatt.com

*Attorneys for Plaintiffs*

**\* \* \* PROPOSED AMENDED COMPLAINT \* \* \***

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ~~NATIONAL COALITION ON BLACK CIVIC PARTICIPATION~~NATIONAL COALITION ON BLACK CIVIC PARTICIPATION, MARY WINTER, GENE STEINBERG, NANCY HART, SARAH WOLFF, KAREN SLAVEN, KATE KENNEDY, EDA DANIEL, and ANDREA SFERES, <br><br>     Plaintiffs, <br><br>    -and- <br><br>People of the STATE OF NEW YORK, by its attorney general, LETITIA JAMES, ATTORNEY GENERAL OF THE STATE OF NEW YORK <br><br>    v. <br><br>JACOB WOHL, JACK BURKMAN, J.M. BURKMAN & ASSOCIATES, LLC, PROJECT 1599, MESSAGE COMMUNICATIONS, INC., ROBERT MAHANIAN, and JOHN and JANE DOES 1~~-~~–10, <br><br>    Defendants. | Civil Action No.~~—————.~~ 20-cv-8668 <br><br><br>**FIRST AMENDED** COMPLAINT |

Plaintiffs~~,~~ National Coalition on Black Civic Participation, Mary Winter, Gene Steinberg, Nancy Hart, Sarah Wolff, Karen Slaven, Kate Kennedy, Eda Daniel and Andrea Sferes (collectively, the "Plaintiffs"), for their First Amended Complaint against Defendants~~,~~ Jacob Wohl, Jacob Burkman, J.M. Burkman & Associates, LLC, Project 1599, Message Communications, Inc., Robert Mahanian, and John and Jane Does 1–10 (collectively, the "Defendants"), allege as follows:

## NATURE OF THE CASE

1.      Plaintiffs seek to protect their right to vote safely and without fear.  Defendants sent robocalls to Plaintiffs and other voters for the purpose of intimidating them, or attempting to intimidate them, from voting by mail.  Defendants sent an as-yet-unknown number of robocalls to multiple states and used false information to scare recipients that they will experience negative consequences if they choose to vote by mail.  Voters were told, "Stay homewarned: "stay safe and beware of vote by mail."  Voters deceived by these messages facefaced a harmful choice: expose yourself and your family to increased risk of contracting COVID-19 by voting in person, or do not vote.

2.      This is an action pursuant to Section 11(b) of the Voting Rights Act (52 U.S.C. § 10307(b)) and Section 2 of the Ku Klux Klan Act (42 U.S.C. § 1985(3)) to secure relief for the unlawful infringement of voting rights secured by the Constitution and the laws of the United States.  Plaintiffs are United States citizens and residents of New York, Ohio, and Pennsylvania.

3.      Plaintiffs haveinitially filed this action to respectfully move this Court forobtain immediate injunctive relief to halt the irreparable pattern of intimidation, threats, and/or coercion being engaged in by Defendants and others acting in concert with them that hashad the purpose and the effect of unlawfully interfering with the voting rights of lawfully registered voters, and to obtain redress.

4.      As described below, upon information and belief, Defendants and those acting in concert with them have orchestrated and funded a large-scale robocall campaign aimed at suppressing votes through intimidation and falsehoods.  As set forth below, the robocall campaign targetstargeted voters in areas with significant Black populations and seekssought to exploit racially charged stereotypes and false information intended to dissuade recipients from voting in

the November 3, 2020 election. (the "2020 Election").

5.    The circumstances demonstrate that Defendants' actions are were intended to intimidate, threaten and/or coerce voters, or attempt to intimidate, threaten, and/or coerce voters, and thereby interfere with the free exercise of their right to vote, including on the basis of race. Indeed, in addition to this action, Defendants Jack Burkman ("Burkman") and Jacob Wohl ("Wohl") are also currently facing felony charges brought by the Michigan Attorney General for voter intimidation, conspiracy to violate election law, and related charges stemming from this robocall campaign. The Ohio Attorney General has brought felony charges against Burkman and Wohl as well. These charges include bribery and telecommunications fraud in connection with Defendants' robocall campaign. Further, recently, on August 24, 2021, the Federal Communications Commission proposed a record-breaking $5 million fine against Wohl and Burkman due to their unlawful robocalls.

6.    Plaintiffs request that this Court grant relief in the form of, *inter alia*, declaratory and injunctive relief preventing Defendants from disseminating any additional robocalls prior to the conclusion of the election.  Without this Court's intervention, Defendants will continue to inflict irreparable injury on Plaintiffs and potentially many other lawfully registered voters. Plaintiffs intend to file a motion for a temporary restraining order and preliminary injunction as soon as possible.

## PARTIES

7. 6.    Plaintiff National Coalition on Black Civic Participation ("NCBCP") is a 501(c)(3) nonprofit, nonpartisan civil rights and racial justice organization founded in 1976 and headquartered in Washington, DC. NCBCP is dedicated to increasing civic engagement and voter participation in Black and underserved communities.  It strives to create an enlightened community

by engaging people in all aspects of public life through service, volunteerism, advocacy, leadership development, and voting.  NCBCP works to address the disenfranchisement of underserved and other marginalized communities through various forms of civic engagement, including nonpartisan voter empowerment organizing and training; young adult civic leadership development; grassroots organizing and issue education; and convening a diverse coalition of members and state-based affiliates nationwide.  NCBCP works to expand, strengthen, and empower communities, particularly Black communities, to make voting and civic participation a cultural responsibility and tradition.  One of NCBCP's programs is the Black Women's Roundtable ("BWR"), which has numerous state-based networks, including Metro Detroit.  BWR brings together Black women from varying backgrounds and across generations to strategize and organize to strengthen the power of Black women's leadership and to advance a policy agenda focused on the needs of Black women, including the promotion of voting, Census participation, and other civic participation.

8.7.    During the relevant period, Plaintiff Mary Winter iswas a lawfully registered voter residing in Rockland County, New York.

9.8.    During the relevant period, Plaintiff Gene Steinberg iswas a lawfully registered voter residing in Rockland County, New York.

10.9.   During the relevant period, Plaintiff Nancy Hart iswas a lawfully registered voter residing in Allegheny County, Pennsylvania.

11.10.  During the relevant period, Plaintiff Sarah Wolff iswas a lawfully registered voter residing in New York County, New York.

12.11.  During the relevant period, Plaintiff Kate Kennedy iswas a lawfully registered voter residing in Cuyahoga County, Ohio.

13.12.  During the relevant period, Plaintiff Karen Slaven iswas a lawfully registered voter residing in Cuyahoga County, Ohio.

14.13.  During the relevant period, Plaintiff Eda Daniel iswas a lawfully registered voter residing in Cuyahoga County, Ohio.

15.14.  During the relevant period, Plaintiff Andrea Sferes iswas a lawfully registered voter residing in Westchester County, New York.

16.15.  Defendant Jacob Wohl is a resident of Los Angeles, California.  Wohl is a political scam artist, conspiracy theorist, and known fraudster.  Wohl, both on his own and working in cohortconcert with Burkman, has spread odious and false conspiracy theories about numerous government and elected officials (discussed more below).  Wohl has also been previously investigated for securities fraud by several authorities, including the National Futures Association, the Arizona Corporation Commission, and the Riverside County District Attorney's Office. Wohl's criminal case for securities fraud in Riverside County is ongoing, and Wohl has failed to pay the restitution required by the Arizona Corporation Commission for securities laws violations after it concluded that Wohl defrauded investors.  The National Futures Association banned Wohl for life.

17.16.  Defendant Jack Burkman is a resident of Arlington, Virginia.  Burkman is a lobbyist, political scam artist, conspiracy theorist, and known fraudster.  He collaborated with Wohl to spread odious and false conspiracy theories, including many discussed below.

18.17.  Defendant Project 1599 is a political organization founded by Burkman and Wohl, with headquarters at 1599 N. Colonial Terrace, Arlington, Virginia.

19.18.  Defendant J.M. Burkman & Associates, LLC ("Burkman & Associates") is a lobbyist firm founded by Burkman, with headquarters at 1530 Key Blvd., Apt. 1222, Arlington,

Virginia.  The phone number listed as the sender for the robocalls is associated with this lobbyist firm.

19.    Defendant Message Communications, Inc. ("Message Communications") is a California corporation that owns, operates, and hosts a telecommunication broadcasting platform, which broadcasts robocalls or pre-recorded telephone messages for a fee. Message Communications is headquartered at 505 N. Tigertail Road, Los Angeles, California.

20.    Defendant Robert Mahanian ("Mahanian") is a resident of Los Angeles, California and is the principal agent and owner of Message Communications.

20.21.  Defendants have engaged in a disinformation campaign by bombarding lawfully registered voters with robocalls containing blatant lies about mail-in voting in order to intimidate those voters into not exercising their right to vote in the November 3, 2020 electionElection.

## JURISDICTION & VENUE

21.22.  This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1331, as this case arises under federal law, specifically Section 11(b) of the Voting Rights Act of 1965, 52 U.S.C. § 10307(b) and Section 2 of the Ku Klux Klan Act of 1871, 42 U.S.C. § 1985(3).

22.23.  Venue in this Court is proper under 28 U.S.C. § 1391(b) because a substantial portion of the events giving rise to the Plaintiffs' claims has occurred in this judicial district.

## GENERAL ALLEGATIONS

23.24.  "[S]ince the right to exercise the franchise [of voting] in a free and unimpaired manner is preservative of other basic civil and political rights, any alleged infringement of the right of citizens to vote must be carefully and meticulously scrutinized."  *Reynolds v. Sims*, 377 U.S. 533, 562 (1964).  Thus, the right to vote is inherently the right to vote unimpeded by deception and intimidation.  *See McCutcheon v. Fed. Election Comm'n*, 572 U.S. 185, 191 (2014) ("There

is no right more basic in our democracy than the right to participate in electing our political leaders."). Throughout history, however, bad actors have sought to employ deceptive election practices, intimidation, coercion and threats in an effort to infringe on the rights of citizens to vote. Defendants here have orchestrated one such scheme: the use of widely-disseminated robocalls—i.e., automated telephone calls with a recorded message—spreading fraudulent information and preying on deep-rooted fears and racial stereotypes to suppress votes. As explained below, Defendants' actions have intimidated voters, and they must be stopped. and redressed.

**Defendants Have Stated Their Intent to Interfere in Voters' Rights.**

24.25. DefendantsWohl and Burkman have repeatedly and publicly expressed their intentions to interfere with voters' rights in the 2020 presidential election.Election. For example, on February 26, 2019, Wohl revealed to USA Today that the Defendants planned to interfere with the 2020 presidential election.Election. Specifically, Wohl stated "that he's already plotting ways to discredit Democrats in the 2020 election with lies and other disinformation, using his large following on social media to cause disarray similar to what Russians did during the 2016 election."[1]

25.26. These are not merely words; Defendants have taken concrete steps toward this goal. Last year, Wohl sought investors in a scheme to use fraudulent news stories to suppress voter turnout and manipulate political betting markets. Wohl's fundraising documents for the entity, to be called the "Arlington Center for Political Intelligence," described how the entity would "aim to

---

[1] Christal Hayes and Gus Garcia-Roberts, This is How Jacob Wohl Created a Sexual Harassment Accusation Against Robert Mueller, USA TODAY (Feb. 26, 2019), *available at* https://www.usatoday.com/story/news/politics/2019/02/26/robert-mueller-hoax-how-jacob-wohl-created-sexual-harassment-plot/2993799002/.

[1] Christal Hayes and Gus Garcia-Roberts, This is How Jacob Wohl Created a Sexual Harassment Accusation Against Robert Mueller, USA TODAY (Feb. 26, 2019), *available at* https://www.usatoday.com/story/news/politics/2019/02/26/robert-mueller-hoax-how-jacob-wohl-created-sexual-harassment-plot/2993799002/.

ultimately suppress turnout," "have a devastating impact on Democratic candidates," target "important Demographics of Democrat voters in swing districts," and employ a "voter-suppression effort."[22]  Indeed, the document specifically states Wohl's intention to "make s**t up" for these purposes.[33]

### Defendants Launched a Campaign to Bombard
### Voters With
### Fraudulent and Deceptive Robocalls.

27.   Consistent with their stated intentions, Defendants are engaged in a coordinated and calculated effort to interfere with the voting rights of dissuade lawfully registered voters from voting by mail, thereby interfering with those individuals' voting rights in violation of numerousseveral federal statutes.  Specifically, Defendants have orchestratedlaws.

28.   In the summer leading up to the 2020 Election, Wohl and Burkman planned, funded, and executed a large-scaleconcerted effort to intimidate and threaten voters through a nationwide robocall campaign that is designed to dissuade individuals from voting by mail.  This.

29.   Upon information and belief, on June 17, 2020, Burkman left a voice message for Mahanian to discuss broadcasting a robocall that Burkman and Wohl intended to discourage mail-in voting and suppress voter turnout.

---

[2] Manuel Roig-Franzia and Beth Reinhard, Meet the GOP Operatives Who Aim To Smear the 2020 Democrats — But Keep Bungling It, WASHINGTON POST (June 4, 2019), *available at* https://www.washingtonpost.com/lifestyle/style/meet-the-gop-operatives-who-aim-to-smear-the-2020-democrats--but-keep-bungling-it/2019/06/04/5b70f000-7691-11e9-bd25-c989555e7766_story.html.

[2] Manuel Roig-Franzia and Beth Reinhard, *Meet the GOP Operatives Who Aim To Smear the 2020 Democrats – But Keep Bungling I*t, WASHINGTON POST (June 4, 2019), *available at* https://www.washingtonpost.com/lifestyle/style/meet-the-gop-operatives-who-aim-to-smear-the-2020-democrats--but-keep-bungling-it/2019/06/04/5b70f000-7691-11e9-bd25-c989555e7766_story.html.

[3] *Id.*

[3] *Id.*

30.   Upon information and belief, on June 21, 2020, Burkman left a message with Message Communications stating that he wanted to place some robocalls—that he wanted to "buy some"—and asked for a return call to his telephone at 703-795-5364.

31.   Over the next few days, upon information and belief, Burkman discussed with Mahanian the robocalls Burkman wanted to broadcast via Message Communications.

32.   On June 23, 2020, Burkman issued from a Burkman & Associates bank account the first of a series of checks (number 19518) to Message Communications in the amount of $1,000 with a subject of "PR – Robo call."

33.   As seen below, while Wohl and Burkman were preparing their robocall message, the two discussed their goal of interfering with the 2020 Election. On August 19, 2020, Wohl wrote an email to Burkman regarding Bill Clinton's Democratic Convention speech, saying, "[o]ur press conferences literally get 50-100x more views, which is why we must HIJACK this boring election."



34.   That same day, Burkman wrote an email to Mahanian at Message Communications, copying Wohl, confirming, "Check to you Robert just went out in the 2 day pouch you will have in 2-3 days then we attack."

**\* \* \* PROPOSED AMENDED COMPLAINT \* \* \***

| | |
|---|---|
| From: | Jack Burkman |
| To: | robert@messagecommunications.com |
| Cc: | Jacob Wohl |
| Subject: | Re: Robert |
| Date: | Wednesday, August 19, 2020 9:17:08 PM |

## Check to you Robert just went out in the 2 day pouch   you will have in 2- 3 days

## then we attack

35.     On August 21, 2020, Burkman & Associates issued check number 19921 to Message Communications for $1,000 with a subject "Robo [illegible] call."

36.     On August 24, 2020, Burkman emailed Mahanian at Message Communications to confirm that he received the payment for the voter robocall campaign.

37.     The next day, Mahanian confirmed receipt of Burkman's check number 19921 and informed Burkman that he was ~~first~~ "all set" to begin the robocall campaign.

```
On Tue, Aug 25, 2020 at 3:24 AM Robert Mahanian
<Robert@messagecommunications.com> wrote:
>
> Hi Jack,
>
>    I did receive the check (Check # 19921) today and credited your account just a moment ago.
>
> You are all set, thank you!
>
> Robert Mahanian, MBA
> Message Communications, Inc.
> E-Mail:   Robert@MessageCommunications.com
> Toll-Free Phone :   (800) 848-8621 x 350
> Toll-Free Fax :      (800) 848-8892
> Web : www.MessageCommunications.com
>
> -----Original Message-----
> From: Jack Burkman [mailto:jackburkman2016@gmail.com]
> Sent: Monday, August 24, 2020 6:45 PM
> To: Robert@messagecommunications.com
> Subject: did
>
> check come   if not  will overnite new one tuesdasy
>
```

38.     Throughout the day on August 25, 2020, Wohl and Burkman emailed each other to identify specific neighborhoods to target with their robocall message.

39.     At 12:10 am on that day, Wohl emailed Burkman an audio file of the robocall recording, adding that it should be sent to "black neighborhoods" in several cities (as seen below).

**Subject:** Robo Call Tape
**Date:** 25/08/2020 00:10   **From:** "jacobwohl@gmail.com" <jacobwohl@gmail.com>   **To:** "Jack Burkman" <jackburkman2016@gmail.com>

Attached is the audio file for the robo call. We should send it to black neighborhoods in Milwaukee, Detroit, Philadelphia, Charlotte, Richmond, Atlanta and Cleveland.

40.     Burkman emailed Wohl back at 5:51 pm, a message with the subject line "working on robo now."

**Subject:** working on robo now
**Date:** 25/08/2020 17:51   **From:** Jack Burkman <jackburkman2016@gmail.com>   **To:** Jacob Wohl <jacobwohl@gmail.com>

cleveland phila minn chicago nyc detroit

41.     Burkman emailed another update to Wohl at 6:48 pm, confirming "the message says data all loaded, ready. Many zip codes. We have two wavs, the 267,000 calls each. If you could do me one favor, just go in and upload the recording. Message Communications.com account 12013, pass code 5202. Then I will enable, pick days and go in and hit go."

**Subject:** robo
**Date:** 25/08/2020 18:48   **From:** Jack Burkman <jackburkman2016@gmail.com>   **To:** Jacob Wohl <jacobwohl@gmail.com>

data all loaded ready many zip codes we have 2 waves of 267,000 calls each

if you could do me one favor just go in and upload the recording

message communications.com

account 12013

passcode 5202

then i will enable pick days and go in and hit go

* * * PROPOSED AMENDED COMPLAINT * * *

42.     At 8:27 pm on August 25, 2020, Burkman emailed Mahanian "2 mins when u can almost done 7037955364 thx so much."

| | |
|---|---|
| From: | Jack Burkman |
| To: | robert@messagecommunications.com |
| Subject: | Re: did |
| Date: | Tuesday, August 25, 2020 8:47:15 PM |

2 mins when u can  almost done  703 795 5364  thx u so much

43.     Upon information and belief, Burkman and Mahanian then discussed the robocall, including the targeted neighborhoods that Burkman and Wohl's robocall campaign would reach.

44.     Wohl emailed Burkman and Mahanian on August 26, 2020, at 10:41 am informing them that the WAV file was uploaded successfully and that he updated the calls-per-minute to the maximum.

45.     Mahanian confirmed to Wohl and Burkman via Mahanian's Message Communications email account that "yes, your campaign is currently running and recording, uploaded about 20 minutes ago, is running. I believe you are all set!"

Subject: RE: Got Call Uploaded
Date: 26/08/2020 10:47   From: "Robert Mahanian" <Robert@MessageCommunications.com>   To: <jacobwohl@gmail.com>, "Jack Burkman" <jackburkman2016@gmail.com>

Yes, your campaign is currently running, and the recording uploaded about 20 minutes ago is running.  I believe you are all set!

Robert Mahanian, MBA
Message Communications, Inc.
E-Mail   Robert@MessageCommunications.com
Toll-Free Phone   (800) 848-9621 x 350
Toll-Free Fax   (800) 848-8892
Web   www.MessageCommunications.com

From: jacobwohl@gmail.com [mailto:jacobwohl@gmail.com]
Sent: Wednesday, August 26, 2020 7:41 AM
To: Jack Burkman; Robert Mahanian
Subject: Got Call Uploaded

I just uploaded the WAV file successfully and updated the calls-per-minute number to the maximum  We should be ready to go now

46.     Minutes later, Burkman emailed Wohl and Mahanian to congratulate them for the "great job."

Subject: Re: Got Call Uploaded
Date: 26/08/2020 10:51   From: Jack Burkman <jackburkman2016@gmail.com>   To: "jacobwohl@gmail.com" <jacobwohl@gmail.com>

# great job

On Wed, Aug 26, 2020 at 10:41 AM jacobwohl@gmail.com <jacobwohl@gmail.com> wrote:
    I just uploaded the WAV file successfully and updated the calls-per-minute number to the maximum. We should be ready to go now.

47.    Upon information and belief, Message Communications monitors its robocall campaigns, including recording all calls delivered via the broadcast platform.

26.48. Message Communications processed the robocall and disseminated it via its broadcast platform to thousands of voters in multiple states, including New York, Ohio, Michigan, Pennsylvania, and Illinois. Message Communications' records show that the messages were sent from 10:36 am to 3:30 pm ET on August 26, 2020.

27.49. The robocall came from 703-795-5364, which belongs to Jack Burkman. HereBelow is a photo of Plaintiff Nancy Hart's caller ID:





28.50.  The robocall begins with a woman introducing herself as Tamika Taylor from Project 1599.  The caller falsely states that (1) police will use information from mail-in voting to track down old arrest warrants,  (2) credit card companies will collect outstanding debts with the information provided, and  (3) the Centers for Disease Control and Prevention (the "CDC") will use the information to administer mandatory vaccines.

29.51.  Below is the complete transcript of the robocall:

Hi, this is Tamika Taylor from Project 1599, the civil rights organization founded by Jack Burkman and Jacob Wohl. Mail-in voting sounds great, but did you know that if you vote by mail, your personal information will be part of a public database that will be used by police departments to track down old warrants and be used by credit card companies to collect outstanding debts? The CDC is even pushing to use records for mail-in voting to track people for mandatory vaccines. Don't be finessed into giving your private information to the man, stay home safe and beware of vote by mail.

30.52.  As an initial matter, unlawful robocalls are inherently injurious.  The mere receipt of an unwanted robocall is a nuisance, an invasion of privacy, a waste of the recipient's time, and, in some cases, a drain on the recipient's phone battery.  But the danger caused far surpasses the everyday nuisance caused by Defendants' robocalls.  Each of the statements in the robocall regarding these potential uses of voters' personal information is false and is designed to scare the listener.

31.53.  Moreover, the tone, tenor, language, and content of the call is designed to deceive

and intimidate Black voters in particular.  It is currently unknown to Plaintiffs who "Tamika Taylor" is, but this name is similar to Breonna Taylor's mother, Tamika Palmer, whowhom the press has sometimes misidentified as Tamika Taylor.  Breonna Taylor was a Black woman killed by police in Louisville, KY, earlier this year.Kentucky in 2020.  Her story is a key part of the movement for Black lives and racial justice.

32.54.  "Project 1599" is also not a civil rights organization.  While "Project 1599" conveniently sounds very similar to the New York Times' "1619 Project," which documents the history of slavery and racism, the title likely only relates to Defendant Burkman's street address.

33.55.  Stating that voting by mail information will be used by police intimidates voters if they or their family members fear attention from law enforcement.  Due to a long history of injustice and systemic racism, including the risk of unwarranted violence, many Black voters have legitimate fears of any interaction with law enforcement.

34.56.  Stating that voting by mail information will be used by debt collectors is likely to intimidate voters with debts.  Due to a long history of discriminatory redlining and predatory lending practices, Black populations are disproportionately indebted and have fewer resources to seek recourse from abusive and invasive debt collection practices.

35.57.  Stating that the CDC will use vote by mail information to conduct mandatory vaccination efforts is likely to intimidate voters who do not trust government medical programs.  Such trust is especially low in the Black community due to a history of racist experimentation and discriminatory practices in such programs, like the Tuskegee Syphilis Study.

36.58.  Viewed in the totality of the circumstances and in the context of the historical inequities they connote, the language and content of the robocall was designed to resonate with Black voters.

37.59.  The Defendants also specifically targeted their robocalls to areas with large Black populations.  For example, in a news release dated October 1, 2020, the Michigan Department of Attorney General reported that nearly 12,000 robocalls were made to residents with phone numbers from the 313 area code, which services Detroit, Michigan and surrounding areas. According to the U.S. census data, Detroit, Michigan's population is 76.8 % blackBlack.

38.60.  Similarly, Attorneys General offices in New York, Pennsylvania, Ohio, and Illinois reported that the same robocall reached residents in their states who live in urban areas with significant minority populations, including but not limited to, New York City.

61.     Wohl and Burkman's emails further reveal their shared racial animus that motivated the robocall campaign.

62.     At 12:36 pm on August 26, 2020, Burkman sent an email to Wohl, stating "I love these robo calls…getting angry black call backs…win or lose…the black robo was a great jw idea." Upon information and belief, the term "jw" is an abbreviation for "Jacob Wohl."



-16-

**\* \* \* PROPOSED AMENDED COMPLAINT \* \* \***

63.     Upon information and belief, Message Communications maintains a database of phone numbers that can be targeted for purposes of a robocall campaign and it was aware of and directed the robocall message to specific communities selected by Wohl and Burkman.

64.     Wohl and Burkman's purpose in launching this robocall campaign was to prevent voters, especially Black voters in specific cities, from accessing absentee or mail-in ballots, which would prove to be a critical and secure method for preserving the elective franchise during the COVID-19 pandemic.

65.     Based on all the circumstances, including those set forth above, Message Communications knew or should have known the purpose and intent of Wohl and Burkman's robocall campaign.

66.     Message Communications and Mahanian failed to prevent Wohl and Burkman from directing the robocall message to specific communities based on race.

67.     Upon information and belief, Message Communications maintains real time analytics, such as response rate analyses and geographic response analyses, for robocall campaigns to identify how to increase robocall performance. Upon information and belief, Message Communications maintained these analyses for the Project 1599 robocall campaign.

68.     Federal law prescribes the technical and procedural standards for systems that are used to transmit artificial or prerecorded voice messages via telephone, including the requirement that such messages state certain information such as the identity of the calling entity. 47 U.S.C. § 227(d)(3)(A). Based on these federal requirements, to ensure that a robocall message complied with federal law, Message Communications knew or should have known the content of the Wohl and Burkman robocall message.

~~39.~~69.  Based on information reported to date, it is believed that Defendants' illegal

-17-

robocall campaign has reached approximately 85,000 potential voters, including Plaintiffs.

**Defendants' Robocall Campaign Has Diverted NCBCP's Resources.**

40.70.  Plaintiff NCBCP expends significant resources and effort both to promote Black participation in the Census and to promote voting and other civic participation by the Black community.  These issues are priorities of NCBCP's BWR program and its state-based networks, such as BWR Metro Detroit.  BWR has been organizing and working on the ground in Black communities, including in Detroit, to encourage both Black participation in the Census and in elections.

41.71.  When Defendants' began making their robocalls on August 26, 2020, BWR Metro Detroit learned that members of their community were receiving the calls.  BWR Metro Detroit was immediately and seriously concerned that Defendants' lies and disinformation would intimidate and suppress Black voters, whom BWR Metro Detroit works hard to support.  They feared Black voters would not vote at all out of fear.

42.72.  They were also concerned that the false information would cause more voters to lose trust in mail in voting and instead vote in person.  COVID-19 has hit the Black community particularly hard, so BWR Metro Detroit was concerned that if more Black voters were tricked into voting in person, they were in danger.

43.73.  BWR Metro Detroit diverted staff and resources that were allocated toward encouraging Census participation to respond to the threat of Defendants' voter intimidation.  For example, its co-chair stopped her usual work—helping people fill out their Census forms—so that she could respond to the disinformation.  As a result, BWR Metro Detroit's efforts to promote Census participation were impaired and fewer people completed the Census.  As the Census has concluded, this harm is irreparable.  The diversion of resources harms not only the mission of the

NCBCP, but also its constituents in Detroit who risk being undercounted in the Census and consequently losing their fair share of funding and representation associated with the Census count.

44.74.  NCBCP anticipates that if Defendants continue to disseminate voter intimidation robocalls, they will need to divert additional resources to protect the communities they serve.

### Defendants' Robocall Campaign Has Intimidated Plaintiffs.

45.75.  During the relevant period, Plaintiff Mary Winter iswas a resident of Rockland County, New York, where she iswas registered to vote.  She voted in the primary election by mail-in ballot and intended to vote in the November 3, 2020 general electionElection by mail-in ballot. Because of the COVID-19 outbreak, for which there is currentlywas no cure or vaccine in August 2020 when the robocall was sent, Ms. Winter doesdid not at that time think it iswas safe for her to vote in person in 2020.  During the course of the pandemic in 2020, she has beenwas very careful in her virus precautions (particularly given that she lives in a County currently experiencingthat has experienced a high volume of COVID-19 cases), has remained socially distant from almost everyone, and doesdid not even go to the grocery store anymore.  In addition, prior to receiving the robocall, Ms. Winter had doubts about the integrity of voting through the mail-in ballot process due to reports she had seen in the media but was still planning to vote by mail-in ballot.  Ms. Winter's receipt of Defendants' robocall has intimidated her into changing plans.

46.76.  Ms. Winter received the robocall on August 26, 2020, and was so immediately distressed by it, that she shared it with her then-partner, Plaintiff Gene Steinberg.  At first, she thought the robocall might originatehave originated from a legitimate source but soon realized the nefarious intentions behind the call when the speaker's allegations turned to mandatory vaccines. Even though she knowsknew that the robocall iswas fraudulent, the robocall has exacerbated her

fears that someone ~~will~~would tamper with her mail-in ballot or violate its secrecy.   As Ms. ~~Winters~~Winter describes it, "[i]f someone is willing to go to the lengths of creating a false robocall to lie and scare people from voting by mail, . . . what else might they be willing to do to block my mail-in ballot[?]"   ~~The robocall has intimidated Ms. Winter to the point where she is no longer planning to vote by mail and instead has decided to vote in person, despite the increased risks of contracting COVID-19 and spreading it to her partner.~~

~~47.~~77.  During the relevant period, Plaintiff Gene Steinberg ~~is~~was a resident of Rockland County, New York, where he ~~is~~was registered to vote.  He voted in the primary election by mail-in ballot and intended to vote in the ~~November 3,~~ 2020 ~~general election~~Election by mail-in ballot. At the relevant time of the events in question, Mr. Steinberg ~~is~~was Ms. Winter's partner and ~~lives~~lived with her.  Like Ms. Winter, Mr. Steinberg ~~has~~had been vigilant in avoiding exposure to COVID-19 and was planning to vote via mail-in ballot to avoid any unnecessary risk.  ~~Because of the robocall, Mr. Winter is now planning to vote in person.~~

~~48.~~78.  Mr. Steinberg heard the robocall because Ms. Winter played it for him immediately after she received it.  Mr. Steinberg has many of the same concerns that Ms. Winter does with regards to mail-in ballots, and the robocall further undermined any confidence in that method that remained.  In addition, Mr. Steinberg found the robocall to be "traumatic" for him due to his personal history.  He has a nonviolent criminal conviction from more than 18 years ago.  Given his history with law enforcement, Mr. Steinberg was particularly fearful after hearing the robocall's threat that law enforcement would use mail-in ballots to track voters.  In fact, this threat ~~has~~ so "profoundly scared [him]," Mr. Steinberg now has "great anxiety" and is reliving earlier traumas as a result.  Mr. Steinberg ~~has been~~was intimidated by the robocall to the point where he ~~is no longer planning to vote by mail and instead has decided to vote~~considered voting in person

instead of voting by mail, despite the increased risks of contracting COVID-19 and spreading it to his then-partner.

49.79. During the relevant period, Plaintiff Nancy Hart iswas a resident of New YorkAllegheny County, New YorkPennsylvania where she iswas registered to vote.  Ms. Hart received the robocall on August 26, 2020 (even though her phone number is registered with the Do Not Call registry).  Ms. Hart was "irate" upon listening to the robocall because she understood the call to be a voter suppression tactic.  Ms. Hart was also angry at the fact that the robocalls specifically targeted Black voters by preying upon real fears that exist within the Black community about the police, predatory debt collectors, and government-mandated medical programs.  Ms. Hart's concerns about the robocall have only grown deeper since receiving the robocall because she has observed others on social medialmedia repeating the false information disseminated by the robocall.  Ms. Hart iswas so fearful that Defendants might be successful in their efforts to intimidate voters that she called the Pennsylvania State Attorney General Office and Secretary of State.

50.80.  During the relevant period, Plaintiff SaraSarah Wolff iswas a resident of New York County, New York where she iswas registered to vote.  Ms. Wolff received the robocall on August 26, 2020 (even though her phone number is registered with the Do Not Call registry).  Because Ms. Wolff knew that the robocall's information was a lie and that the purpose of the robocall was to intimidate her, the robocall infuriated her.  Ms. Wolff likewise found the call to be "disgusting" because it was a clear effort to intimidate voters from exercising their right to vote and because she understood the robocall's contents to be targeting Black voters in particular.

51.81.  During the relevant period, Plaintiff Kate Kennedy iswas a resident of Cuyahoga County, Ohio where she iswas registered to vote.  Ms. Kennedy is married to Plaintiff Karen

Slaven and they received the robocall at their home where they live together on August 26, 2020. The robocall angered Ms. Kennedy because she understood this call to be an attempt to scare her into not voting by mail. ——She is also worried that other voters will be scared by the call.

52.82. During the relevant period, Plaintiff Karen Slaven iswas a resident of Cuyahoga County, Ohio where she iswas registered to vote.  Ms. Slaven is married to Ms. Kennedy and they received the robocall at their home where they live together on August 26, 2020.  Ms. Slaven understood this call to be an attempt to scare her into not voting by mail, and she is worried that other voters will be scared by the false information in the robocall.

53.83. During the relevant period, Plaintiff Eda Daniel iswas a resident of Cuyahoga County, Ohio where she iswas registered to vote.  Ms. Daniel received the robocall in late August or early September, 2020 (even though her phone number is registered with the Do Not Call Registry).  Ms. Daniel was understandably disconcerted, and also scared, by the robocall.  Ms. Daniel is well-familiar with the processes of voting as she serves as a precinct official for her county, and she believes that this robocall is an attempt to harass voters and intimidate them—and her—from voting.  The robocall also left her feeling powerless and vulnerable; she felt as if a stranger had just invaded her home with pernicious lies in order to intimidate her.  Ms. Daniel was so concerned that Defendants might be successful in their efforts to intimidate voters that she called her congresswoman, U.S. senator and mayor to report them.

54.84. During the relevant period, Plaintiff Andrea Sferes iswas a resident of Westchester County, New York where she iswas registered to vote.  Ms. Sferes received the robocall on August 26, 2020 and also on or around Labor Day.  Ms. Sferes had never heard of Project 1599, Jacob Wohl, or Jack Burkman.  When she listened to the call, Ms. Sferes was shocked, furious and sickened.  Ms. Sferes understood the call to be an attempt to dissuade people from voting by mail.

**\* \* \* PROPOSED AMENDED COMPLAINT \* \* \***

Since she has outstanding debt related to medical bills, Ms. Sferes began to worry whether her information would really be shared and tried to convince herself otherwise.  The robocall resulted in emotional distress that lasted multiple days after the call, and led her to voice her dismay to friends.

**Defendants' Robocall Campaign is a Was In Furtherance of Defendants' ~~Conspiracy to Intimidate Voters From Exercising Their Right to Vote.~~ Conspiracy to Intimidate Voters From Exercising Their Right to Vote**

85.     Defendants ~~are~~ engaged in a conspiracy to prevent, by intimidation and threats, citizens who are lawfully entitled to vote from voting and giving their support and advocacy in a legal manner toward and in favor of the election of a lawfully qualified person as an elector for President and Vice President and as a Member of Congress of the United States.  The conspiracy ~~consists~~consisted of, at least, ~~Defendant~~ Burkman, ~~Defendant~~ Wohl, ~~Defendant~~ Project 1599, ~~Defendant J.M.~~ Burkman & Associates, ~~LLC~~Mahanian, Message Communications, and the speaker who identified herself on the robocalls as "Tamika Taylor."  The purpose of the conspiracy is to send voter intimidation robocalls.

86.     Defendants committed numerous overt acts in furtherance of the conspiracy, ~~including each.~~  For instance, Wohl and Burkman used Burkman & Associates and Project 1599 to plan, draft, and fund a strategically deceptive, racially targeted, and threatening robocall ~~call~~designed to suppress the ~~individual Plaintiffs and others.~~ vote in advance of the 2020 Election.

87.     The purpose of the Project 1599 robocall was to sow distrust in the use of mail-in or absentee ballots among voters, specifically Black voters, to suppress their votes in the 2020 Election.

88.     To fund Project 1599's deceptive and threatening robocall, Wohl and Burkman used Burkman & Associates to pay for robocalls to be broadcast by Message Communications.

89.      Upon information and belief, Message Communications worked with Wohl and Burkman to target specific zip codes to maximize the threatening effects the robocall would have on Black voters in New York and other large metropolitan areas.

90.      Message Communications, once fully paid by Burkman & Associates, broadcast the robocall as well as monitored and recorded its broadcast.

91.      On information and belief, at no point did Mahanian or Message Communications, nor any other Defendant, attempt to prevent the robocall from being broadcast.

55.92.  Thus, Defendants conspiredworked together to create and strategically disseminate the robocalls in an effort to suppress the vote.  Intimidating voters into refraining from voting by mail or from voting at all is an interference with those voters' giving of support or advocacy in favor of their preferred candidates in the election2020 Election.

56.93.  In the alternative, Defendants' conspiracy, by targeting Black voters and using intimidation to deprive them of their right to vote, seeks to deprive a class of persons of equal protection of the law.

57.94.  The Defendants know or reasonably should know that their actions have the effect of intimidating, threatening, and/or coercing Plaintiffs, and tens of thousands of other potential voters, in connection with exercising their right to vote by mail in the November 3, 2020 electionElection.  Indeed, that Defendants intended for their robocalls to intimidate voters is apparent from the robocall's last statement: "Stay home safe and beware of vote by mail."  Defendants do not just want voters, particularly Black voters, to vote by mail—they do not want them to vote at all.

**\* \* \* PROPOSED AMENDED COMPLAINT \* \* \***

**~~Defendants Are Facing~~Wohl and Burkman Face Criminal Charges
And Civil Pentalites Arising From Their Robocall Campaign~~.~~**

~~58.~~95.   Defendants' actions have not escaped the notice of law enforcement authorities. On October 1, 2020, the Michigan Attorney General announced the filing of felony charges against Burkman and Wohl in connection with the robocalls at issue in this case, to the extent they targeted voters in Michigan.   Each was charged with one count of intimidating voters, one count of conspiracy to commit an election law violation, one count of using a computer to commit the crime of intimidating voters, and using a computer to commit the crime of conspiracy, all in violation of Michigan state law.  ~~As a condition of bail, Defendants Burkman and Wohl have been ordered to not "initiate or cause anyone else to initiate any robocalls or other communications directed at multiple recipients" until after the election.[4]  However, these are state law charges from just one state.   Defendants sent their robocalls to many other states outside of the jurisdiction of the Michigan Attorney General, including each of the states in which the Plaintiffs reside.~~

96.     Additionally, in October 2020, the Ohio Attorney General brought felony charges against Burkman and Wohl for bribery and telecommunications fraud in violation of Ohio state law.

97.     Finally, the Federal Communications Commission announced on August 24, 2021, Defendants are facing an unprecedented $5 million fine due to their unlawful robocalls.

**Defendants Must be Stopped From Causing Irreparable Harm~~.~~**

~~59.~~98.   ~~There is no reason this Court should assume that Defendants – individuals who have turned being liars and fraudsters into full-time jobs – will adhere to the Michigan court's order.   Indeed, Defendants'~~Wohl and Burkman's long-~~ ~~history of disregard for the law and

---

[4] ~~Gregory Lemos and Chandelis Duster, Ring-Wing Political Operatives Arraigned on Felony Voter Intimidation Charges Charges for Robocalls, CNN Politics (Oct. 8, 2020), *available at* https://www.cnn.com/2020/10/08/politics/jack-burkman-jacob-wohl-robocall-voter-intimidation-charges/index.html.~~

undermining confidence in elected officials whom ~~Defendants~~they deem to be opponents is well-documented.  ~~In the last two years, Defendants~~They have orchestrated elaborate plans—including coercing and/or paying individuals to lie—to bring sexual misconduct allegations against Special Counsel Robert Mueller,[55] Minnesota Congresswoman Ilhan Omar, former South Bend, Indiana Mayor and then-Democratic presidential candidate Pete Buttigieg, Massachusetts Senator and then-Democratic presidential candidate Elizabeth Warren, and White House Coronavirus Task Force member Dr. Anthony Fauci.  Although these allegations were debunked, ~~Defendants~~Wohl and Burkman have been undeterred in their reckless chase of fraudulent schemes.  ~~Just last month, Defendants~~Wohl and Burkman even hired actors on Craigslist to stage an FBI raid on Burkman's home, which he falsely alleged was retaliation by government officials.

~~60.~~99.  In short, Burkman and Wohl have long been engaged in a game of lies and fraud with the goal of undermining fair and free elections.  Indeed, employing robocalls to further their fraud is nothing new:  In 2019, Burkman and Wohl used robocalls in a failed effort to solicit derogatory information about Joe Biden.  ~~Defendants~~They have shown over and over again their intentional disregard for truth and the law.[6]

~~61.~~100.        Defendants must be deterred immediately to prevent irreparable harm to voters, including Plaintiffs.  Being denied the right to vote via intimidation is an irreparable harm; the voter permanently loses that opportunity to vote.  Similarly, a voter suffers an irreparable, and potentially fatal, harm when they feel compelled to expose themselves to heightened COVID-19

---

[5] ~~Andrew Prokop, The incredibly shoddy plot to smear Robert Mueller, explained, VOX (October 30, 2018), available at https://www.vox.com/2018/10/30/18044110/robert-mueller-jacob-wohl-jack-burkman-surefire.~~

[5] Andrew Prokop, *The incredibly shoddy plot to smear Robert Mueller, explained,* VOX (October 30, 2018), *available at* https://www.vox.com/2018/10/30/18044110/robert-mueller-jacob-wohl-jack-burkman-surefire.

[6] ~~Wohl's refusal to pay the restitution imposed by the Arizona Corporation Commission further demonstrates his disregard for lawful authorities.  In addition, Defendants' staging of an FBI raid with actors potentially violates the federal statute making it a crime to aid and abet the false impersonation of federal agents.  See 18 U.S.C. § 912.~~

risk in order to vote in person because they do not trust vote by mail due to intimidation and deception.

62.101.    If voters, including Plaintiffs, are intimidated, coerced, threatened, or otherwise prevented from voting—or are impaired by having to vote in person instead of by mail— in the upcoming November 3, 2020 electionelections because of Defendants' actions, there will be no way to undo or remedy this damage.  If Plaintiffs, or other potential voters, do not vote in the November 3, 2020 electionelections as a result of Defendants' actions, their votevotes in that election isthose elections are forever lost.  Enough is enough.

## CAUSES OF ACTION

### COUNT 1
### (Violation of Section 11(b) of the Voting Rights Act – Against All Defendants)

63.102.    Plaintiffs incorporate by reference the preceding paragraphs as if fully set forth herein.

64.103.    Section 11(b) of the Voting Rights Act provides in relevant part:  "No person, whether acting under color of law or otherwise, shall intimidate, threaten, or coerce, or attempt to intimidate, threaten, or coerce any person for voting or, attempting to vote[.]", or . . . aiding any person who is voting or attempting to vote, in any election."  52 U.S.C. § 10307(b) (formerly codified at 42 U.S.C. § 1973i(b)).

65.104.    Defendants have orchestrated a deceptive robocall campaign threatening, falsely, that personal information provided in connection with mail-in voting would be used by (i) the police to make arrests, (ii) credit card companies to collect outstanding debt, and (iii) the CDC to enforce mandatory vaccines.

66.105.    Defendants' conduct violates Section 11(b) of the Voting Rights Act, which prohibits all actual or attempted "intimidation," "threats," or "coercion" against a person, either

"for voting or attempting to vote." 52 U.S.C. § 10307(b).

67.106.        Defendants' actions havehad the effect of intimidating, threatening, and/or coercing, or attempting to intimidate, threaten, and/or coerce, tens of thousands of lawfully registered voters in connection with voting or attempting to vote in the November 3, 2020 electionElection.

68.107.        Defendants' actions arewere undertaken with the purpose of intimidating, threatening, or coercing lawfully registered voters, so that they would be fearful and reluctant to exercise their right to vote by mail in the November 3, 2020 electionElection.

108.    Wohl and Burkman targeted Black communities with their robocall campaign in an effort to intimidate Black voters from voting by mail and thereby suppress their votes.

109.    In furtherance of their efforts to intimidate voters, Wohl and Burkman, through Message Communications, coordinated to ensure the maximum rate at which the robocall campaign would be broadcast to reach the greatest number of dialed-calls.

110.    Mahanian and Message Communications were aware or should have been aware of the false information and the communities targeted to receive the call but nevertheless failed to prevent the message's broadcast. Instead, Mahanian and Message Communications sent the intimidating and inaccurate message to thousands of phone numbers in various states and actively monitored its spread.

111.    Defendants attempted to intimidate voters from exercising their right to vote. Defendants' robocall message contained thinly veiled threats, and those voters who heard the message were subjected to those threats, which were intended to raise doubts and fears about absentee or mail-in ballots, and thereby undermine their confidence in the 2020 Election for President, Vice President, and other offices.

69.112.    Unless and until enjoined by the Court, Defendants will continue to intimidate, threaten, and/or coerce, or attempt to intimidate, threaten, and/or coerce, lawfully registered voters, such as Plaintiffs, in violation of Section 11(b) of the Voting Rights Act.

## COUNT 2
### (Violation of Section 2 of the Ku Klux Klan Act) – Against All Defendants)

70.113.    Plaintiffs incorporate by reference the preceding paragraphs as if fully set forth herein.

71.114.    Plaintiffs bring a claim under clause 3 of 42 U.S.C. § 1985(3), which as set forth in the underline text below, provides that:

> If two or more persons in any State or Territory conspire or go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws; if two or more persons conspire to prevent by force, intimidation, or threat, any citizen who is lawfully entitled to vote, from giving his support or advocacy in a legal manner, toward or in favor of the election of any lawfully qualified person as an elector for President or Vice President, or as a Member of Congress of the United States; or to injure any citizen in person or property on account of such support or advocacy; in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

42 U.S.C. § 1985(3) (emphases added).

72.115.    Defendants have violated clause 3 of 42 U.S.C. § 1985(3) because Defendants have conspired to intimidate and threaten many thousands of eligible voters, including Plaintiffs, through targeted robocalls, with the purpose of dissuading such persons from exercising their voting rights and to sow distrust in the electoral system in general, and voting by mail in

particular.

73.116.        Defendants ~~have~~ orchestrated a deceptive robocall campaign by falsely threatening that personal information provided in connection with mail-in voting would be used by (i) the police to make arrests, (ii) credit card companies to collect outstanding debt, and (iii) the CDC to enforce mandatory vaccines.

74.117.        Defendants coordinated in the collection of phone numbers and the development of a strategically designed message.

75.118.        Defendants sought to prevent Plaintiffs, and thousands of other robocall recipients, from exercising their right to vote.

76.119.        Defendants' robocall message employed thinly veiled threats, intimidating Plaintiffs and causing Plaintiffs to have doubts and fears about voting through mail-in ballots, and undermined Plaintiffs' confidence in voting by mail in the ~~November 3,~~ 2020 ~~election~~Election.

77.120.        Defendants attempted to intimidate Plaintiffs out of exercising their right to vote by mail; upon information and belief, in the case of some percentage of the thousands of unnamed robocall recipients, Defendants no doubt succeeded in coercing such voters out of voting by any means.

121.    ~~In~~Wohl and Burkman, through Burkman & Associates, and Project 1599, enlisted Mahanian and his company Message Communications to place the ~~alternative,~~ robocall and target specific cities to receive the robocall message.

122.    Each defendant, including Mahanian and Message Communications, was aware or should have been aware of the conspiracy and had the opportunity to stop it by, for instance, not placing and/or transmitting the robocall message.

78.123.        Defendants' conspiracy also sought to deprive Black voters of the equal

protection of the laws ~~by targeting the voter intimidation robocalls to~~ . Defendants targeted specific zip codes in cities in an effort to target Black voters ~~to attempt to deprive them of their right to vote~~for the robocall message.

~~79.~~124.         The object of the Defendants' conspiracy ~~is~~was to dissuade eligible voters from casting their vote. Defendants' message not only ~~discourages~~discouraged the recipients from exercising their right to vote by mail, but also ~~undermines~~undermined their basic trust in the electoral process, all with the intended effect of reducing voter turnout. Plaintiff Hart, who spends much of her time as a journalist and activist encouraging others to vote recognized the robocalls as not solely a form of voter suppression but also as a direct attack on the institution of voting itself.

~~80.         Each robocall is~~message that was sent was an act in furtherance of the object of ~~Defendant's~~Defendants' Section 1985(3) conspiracy.

~~81.~~125.         ~~Plaintiffs experienced distress and fear upon receiving the call.   All Plaintiffs were emotionally disturbed by the receipt of the robocall.  Plaintiffs Winter and Steinberg now intend to vote in person, putting themselves at a higher risk of contracting coronavirus, a direct result of Defendants dissuading them from voting by mail.~~

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiffs respectfully request judgment be entered in its favor and against Defendants as follows:

a)   Declaring that Defendants' actions as described above violate Section 11(b) of the Voting Rights Act, 52 U.S.C. § 10307(b);

b)   Declaring that Defendants' actions as described above violate 42 U.S.C. § 1985(3), the Ku Klux Klan Act;

c) ~~Enjoining Defendants, their agents, employees~~Entering a permanent injunction enjoining Wohl, Burkman, Burkman & Associates, and ~~all persons acting in concert with them,~~Project 1599 from further engaging or undertaking in any of the ~~unlawful~~challenged actions or conduct set forth in ~~the~~this Complaint;

d) Entering a permanent injunction requiring Mahanian and Message Communications to establish policies and procedures to prevent unlawful, discriminatory, and intimidating robocalls directed at voters.

~~d)~~e)        Awarding compensatory and punitive damages ~~under 42 U.S.C. § 1985(3), the Ku Klux Klan Act~~;

~~e)~~f)   Awarding reasonable attorneys' fees and costs; and

~~f)~~g)   Awarding such other and further relief that the Court deems reasonable and just.

~~In the near future, Plaintiffs also intend to file a request for a temporary restraining order prohibiting Defendants, their agents, employees, and all persons acting in concert with them, from further undertaking the unlawful actions set forth in the Complaint.~~

Dated: New York, New York                          Respectfully submitted,
        ~~October 16, 2020~~November __, 2021

                                                   ORRICK, HERRINGTON & SUTCLIFFE LLP

                                                   By:  ~~/s/ Rachelle Navarro~~DRAFT


                                                   Amy Walsh
                                                   Rene Kathawala
                                                   ~~Rachelle Navarro~~
                                                   Julie Gorchkova
                                                   ~~Spencer Bruck~~
                                                   Aaron Gold
                                                   ~~Michael Maruca *(not admitted in SDNY)*~~
                                                   ORRICK HERRINGTON & SUTCLIFFE LLP
                                                   51 West 52nd Street
                                                   New York, NY 10019-6142

(212) 506-5000
awalsh@orrick.com
rkathawala@orrick.com
~~awalsh@orrick.com~~
~~rnavarro@orrick.com~~
jgorchkova@orrick.com
~~sbruck@orrick.com~~
aaron.gold@orrick.com
~~mmaruca@orrick.com~~

~~Jon Greenbaum*~~
~~Ezra Rosenberg*~~
~~John Libby~~
David Brody* (admitted *pro hac vice*)
LAWYERS' COMMITTEE FOR CIVIL
RIGHTS UNDER LAW
1500 K St. NW, Suite 900
Washington, DC 20005
(202) 662-8600
jgreenbaum@lawyerscommittee.org
erosenberg@lawyerscommittee.org
~~jlibby~~dbrody@lawyerscommittee.org
~~dbrody@lawyerscommittee.org~~

~~*Application Pro Hac Vice Forthcoming~~

John F. Libby
MANATT, PHELPS & PHILLIPS, LLP
72049 Century Park East, Suite 1700
Los Angeles, CA 90067
(310) 312-4342
jlibby@manatt.com

*Attorneys for Plaintiffs*