UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| NATIONAL COALITION ON BLACK CIVIC PARTICIPATION, MARY WINTER, GENE STEINBERG, NANCY HART, SARAH WOLFF, KAREN SLAVEN, KATE KENNEDY, EDA DANIEL, and ANDREA SFERES,<br><br>                                   Plaintiffs,<br><br>         -and-<br><br>People of the STATE OF NEW YORK, by its attorney general, LETITIA JAMES, ATTORNEY GENERAL OF THE STATE OF NEW YORK,<br><br>                   v.<br><br>JACOB WOHL, JACK BURKMAN, J.M. BURKMAN & ASSOCIATES, LLC, PROJECT 1599, MESSAGE COMMUNICATIONS, INC., ROBERT MAHANIAN, and JOHN and JANE DOES 1-10,<br><br>                         Defendants. | Civil Action No.:<br>20-cv-8668 (VM)(OTW) |

## ANSWER TO THE AMENDED COMPLAINT BY MESSAGE COMMUNICATIONS, INC. AND ROBERT MAHANIAN

THE LAW OFFICE OF
RUSSELL D. MORRIS PLLC
11 Broadway, Suite 615
New York, New York  10004
Tel:  (212) 380-1619

FELSENTHAL LAW FIRM
1100 Glendon Avenue, Suite 1500
Los Angeles, California  90024
Tel:  (310) 432-8491

*Attorneys for Defendants Message Communications and Robert Mahanian*

Defendants Message Communications Inc. and Robert Mahanian (together, "Message Communications") answer the First Amended Complaint (D.E. 149) (the "Amended Complaint"), filed on November 22, 2021, as follows:

Paragraph 1:

> Plaintiffs seek to protect their right to vote safely and without fear. Defendants sent robocalls to Plaintiffs and other voters for the purpose of intimidating them, or attempting to intimidate them, from voting by mail.  Defendants sent an as-yet-unknown number of robocalls to multiple states and used false information to scare recipients that they will experience negative consequences if they choose to vote by mail.  Voters were warned: "stay safe and beware of vote by mail."  Voters deceived by these messages faced a harmful choice: expose yourself and your family to increased risk of contracting COVID-19 by voting in person, or do not vote.

> Response to Paragraph 1:

Message Communications lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 1, except denies the allegations as to Message Communications.

Paragraph 2:

> This is an action pursuant to Section 11(b) of the Voting Rights Act (52 U.S.C. § 10307(b)) and Section 2 of the Ku Klux Klan Act (42 U.S.C. § 1985(3)) to secure relief for the unlawful infringement of voting rights secured by the Constitution and the laws of the United States.  Plaintiffs are United States citizens and residents of New York, Ohio, and Pennsylvania.

> Response to Paragraph 2:

The allegations of paragraph 2 constitute legal conclusions and questions of law to which no response is required.  To the extent that any response is required, Message Communications lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 2.

Paragraph 3:

> Plaintiffs initially filed this action to obtain immediate injunctive relief to halt the irreparable pattern of intimidation, threats, and/or coercion being engaged in by Defendants and others acting in concert with them that had the purpose and the effect of unlawfully interfering with the voting rights of lawfully registered voters, and to obtain redress.

> Response to Paragraph 3:

Message Communications lacks knowledge or information sufficient to form a

belief as to the truth of the allegations in paragraph 3, except denies the allegations as to Message

Communications.

Paragraph 4:

> As described below, upon information and belief, Defendants and those acting in concert with them have orchestrated and funded a large-scale robocall campaign aimed at suppressing votes through intimidation and falsehoods.  As set forth below, the robocall campaign targeted voters in areas with significant Black populations and sought to exploit racially charged stereotypes and false information intended to dissuade recipients from voting in the November 3, 2020 election (the "2020 Election").

> Response to Paragraph 4:

Message Communications lacks knowledge or information sufficient to form a

belief as to the truth of the allegations in paragraph 4, except denies the allegations as to Message

Communications.

Paragraph 5:

> The circumstances demonstrate that Defendants' actions were intended to intimidate, threaten and/or coerce voters, or attempt to intimidate, threaten, and/or coerce voters, and thereby interfere with the free exercise of their right to vote, including on the basis of race. Indeed, in addition to this action, Defendants Jack Burkman ("Burkman") and Jacob Wohl ("Wohl") are also currently facing felony charges brought by the Michigan Attorney General for voter intimidation, conspiracy to violate election law, and related charges stemming from this robocall campaign.  The

Ohio Attorney General has brought felony charges against
Burkman and Wohl as well.  These charges include bribery and
telecommunications fraud in connection with Defendants' robocall
campaign.  Further, recently, on August 24, 2021, the Federal
Communications Commission proposed a record-breaking $5
million fine against Wohl and Burkman due to their unlawful
robocalls.

Response to Paragraph 5:

Message Communications lacks knowledge or information sufficient to form a

belief as to the truth of the allegations in paragraph 5, except denies the allegations as to Message

Communications.

Paragraph 6:

Plaintiff National Coalition on Black Civil Participation ("NCBCP")
is a 501(c)(3) nonprofit, nonpartisan civil rights and racial justice
organization founded in 1976 and headquartered in Washington, DC.
NCBCP is dedicated to increasing civic engagement and voter
participation in Black and underserved communities.  It strives to
create an enlightened community by engaging people in all aspects of
public life through service, volunteerism, advocacy, leadership
development, and voting.  NCBCP works to address the
disenfranchisement of underserved and other marginalized
communities through various forms of civic engagement, including
nonpartisan voter empowerment organizing and training; young adult
civic leadership development; grassroots organizing and issue
education; and convening a diverse coalition of members and state-
based affiliates nationwide.  NCBCP works to expand, strengthen,
and empower communities, particularly Black communities, to make
voting and civic participation a cultural responsibility and tradition.
One of NCBCP's programs is the Black Women's Roundtable
("BWR"), which has numerous state-based networks, including Metro
Detroit. BWR brings together Black women from varying
backgrounds and across generations to strategize and organize to
strengthen the power of Black women's leadership and to advance a
policy agenda focused on the needs of Black women, including the
promotion of voting, Census participation, and other civic
participation.

Response to Paragraph 6:

Message Communications lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 6.

Paragraph 7:

During the relevant period, Plaintiff Mary Winter was a lawfully registered voter residing in Rockland County, New York.

Response to Paragraph 7:

Message Communications lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 7.

Paragraph 8:

During the relevant period, Plaintiff Gene Steinberg was a lawfully registered voter residing in Rockland County, New York.

Response to Paragraph 8:

Message Communications lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 8.

Paragraph 9:

During the relevant period, Plaintiff Nancy Hart was a lawfully registered voter residing in Allegheny County, Pennsylvania.

Response to Paragraph 9:

Message Communications lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 9.

Paragraph 10:

During the relevant period, Plaintiff Sarah Wolff was a lawfully registered voter residing in New York County, New York.

Response to Paragraph 10:

Message Communications lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 10.

Paragraph 11:

During the relevant period, Plaintiff Kate Kennedy was a lawfully registered voter residing in Cuyahoga County, Ohio.

Response to Paragraph 11:

Message Communications lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 11.

Paragraph 12:

During the relevant period, Plaintiff Karen Slaven was a lawfully registered voter residing in Cuyahoga County, Ohio.

Response to Paragraph 12:

Message Communications lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 12.

Paragraph 13:

During the relevant period, Plaintiff Eda Daniel was a lawfully registered voter residing in Cuyahoga County, Ohio.

Response to Paragraph 13:

Message Communications lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 13.

Paragraph 14:

During the relevant period, Plaintiff Andrea Sferes was a lawfully registered voter residing in Westchester County, New York.

Response to Paragraph 14:

Message Communications lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 14.

Paragraph 15:

Wohl is a resident of Los Angeles, California. Wohl is a political scam artist, conspiracy theorist, and known fraudster. Wohl, both on his own and working in concert with Burkman, has spread odious and false conspiracy theories about numerous government and elected officials (discussed more below). Wohl has also been previously investigated for securities fraud by several authorities, including the National Futures Association, the Arizona Corporation Commission, and the Riverside County District Attorney's Office.

Response to Paragraph 15:

Message Communications lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 15.

Paragraph 16:

Burkman is a resident of Arlington, Virginia. Burkman is a lobbyist, political scam artist, conspiracy theorist, and known fraudster. He collaborated with Wohl to spread odious and false conspiracy theories, including many discussed below.

Response to Paragraph 16:

Message Communications lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 16.

Paragraph 17:

Defendant Project 1599 is a political organization founded by Burkman and Wohl, with headquarters at 1599 N. Colonial Terrace, Arlington, Virginia.

Response to Paragraph 17:

Message Communications lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 17.

Paragraph 18:

>Defendant J.M. Burkman & Associates, LLC ("Burkman & Associates") is a lobbyist firm founded by Burkman, with headquarters at 1530 Key Blvd., Apt. 1222, Arlington, Virginia.  The phone number listed as the sender for the robocalls is associated with this lobbyist firm.

>Response to Paragraph 18:

Message Communications lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 18.

Paragraph 19:

>Defendant Message Communications, Inc. ("Message Communications") is a California corporation that owns, operates, and hosts a telecommunication broadcasting platform, which broadcasts robocalls or pre-recorded telephone messages for a fee. Message Communications is headquartered at 505 N. Tigertail Road, Los Angeles, California.

>Response to Paragraph 19:

Message Communications denies the allegations of paragraph 19, except admits that Message Communications, Inc. is a California corporation that owns, operates, and hosts a platform which transmits prerecorded messages for a fee, and further admits that Message Communications, Inc. is headquartered at 505 North Tigertail Road, Los Angeles, California.

Paragraph 20:

>Defendant Robert Mahanian ("Mahanian") is a resident of Los Angeles, California and is the principal agent and owner of Message Communications.

>Response to Paragraph 20:

Message Communications admits the allegations of paragraph 20.

Paragraph 21:

>Defendants have engaged in a disinformation campaign by bombarding lawfully registered voters with robocalls containing

blatant lies about mail-in voting in order to intimidate those voters into not exercising their right to vote in the 2020 Election.

Response to Paragraph 21:

Message Communications lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 21, except denies the allegations as to Message Communications.

Paragraph 22:

This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1331, as this case arises under federal law, specifically Section 11(b) of the Voting Rights Act of 1965, 52 U.S.C. § 10307(b) and Section 2 of the Ku Klux Klan Act of 1871, 42 U.S.C. § 1985(3).

Response to Paragraph 22:

The allegations of paragraph 22 constitute legal conclusions and questions of law to which no response is required.  To the extent that any response is required, Message Communications lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 22.

Paragraph 23:

Venue in this Court is proper under 28 U.S.C. § 1391(b) because a substantial portion of the events giving rise to the Plaintiffs' claims has occurred in this judicial district.

Response to Paragraph 23:

The allegations of paragraph 23 constitute legal conclusions and questions of law to which no response is required.  To the extent that any response is required, Message Communications lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 23.

Paragraph 24:

"[S]ince the right to exercise the franchise [of voting] in a free and unimpaired manner is preservative of other basic civil and political rights, any alleged infringement of the right of citizens to vote must be carefully and meticulously scrutinized." *Reynolds v. Sims*, 377 U.S. 533, 562 (1964).  Thus, the right to vote is inherently the right to vote unimpeded by deception and intimidation. *See McCutcheon v. Fed. Election Comm'n*, 572 U.S. 185, 191 (2014) ("There is no right more basic in our democracy than the right to participate in electing our political leaders.").  Throughout history, however, bad actors have sought to employ deceptive election practices, intimidation, coercion and threats in an effort to infringe on the rights of citizens to vote.  Defendants here have orchestrated one such scheme: the use of widely-disseminated robocalls—i.e., automated telephone calls with a recorded message—spreading fraudulent information and preying on deep-rooted fears and racial stereotypes to suppress votes.  As explained below, Defendants' actions have intimidated voters, and they must be stopped and redressed.

Response to Paragraph 24:

The allegations of paragraph 24 constitute legal conclusions and questions of law to which no response is required.  To the extent that any response is required, Message Communications lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 24, except denies the allegations as to Message Communications.

Paragraph 25:

Wohl and Burkman have repeatedly and publicly expressed their intentions to interfere with voters' rights in the 2020 Election.  For example, on February 26, 2019, Wohl revealed to USA Today that the Defendants planned to interfere with the 2020 Election.  Specifically, Wohl stated "that he's already plotting ways to discredit Democrats in the 2020 election with lies and other disinformation, using his large following on social media to cause disarray similar to what Russians did during the 2016 election.

Response to Paragraph 25:

Message Communications lacks knowledge or information sufficient to form a

belief as to the truth of the allegations in paragraph 25.

Paragraph 26:

These are not merely words; Defendants have taken concrete steps
toward this goal.  Last year, Wohl sought investors in a scheme to
use fraudulent news stories to suppress voter turnout and
manipulate political betting markets.  Wohl's fundraising
documents for the entity, to be called the "Arlington Center for
Political Intelligence," described how the entity would "aim to
ultimately suppress turnout," "have a devastating impact on
Democratic candidates," target "important Demographics of
Democrat voters in swing districts," and employ a "voter-
suppression effort."  Indeed, the document specifically states
Wohl's intention to "make s**t up" for these purposes.

Response to Paragraph 26:

Message Communications lacks knowledge or information sufficient to form a

belief as to the truth of the allegations in paragraph 27, except denies the allegations as to

Message Communications.

Paragraph 27:

Consistent with their stated intentions, Defendants engaged in a
coordinated and calculated effort to dissuade lawfully registered
voters from voting by mail, thereby interfering with those
individuals' voting rights in violation of several federal laws.

Response to Paragraph 27:

Message Communications lacks knowledge or information sufficient to form a

belief as to the truth of the allegations in paragraph 27, except denies the allegations as to

Message Communications.

Paragraph 28:

> In the summer leading up to the 2020 Election, Wohl and Burkman planned, funded, and executed a concerted effort to intimidate and threaten voters through a nationwide robocall campaign.

> Response to Paragraph 28:

Message Communications lacks knowledge or information sufficient to form a

belief as to the truth of the allegations in paragraph 28.

Paragraph 29:

> Upon information and belief, on June 17, 2020, Burkman left a voice message for Mahanian to discuss broadcasting a robocall that Burkman and Wohl intended to discourage mail-in voting and suppress voter turnout.

> Response to Paragraph 29:

Message Communications denies the allegations of paragraph 29.

Paragraph 30:

> Upon information and belief, on June 21, 2020, Burkman left a message with Message Communications stating that he wanted to place some robocall – that he wanted to "buy some" – and asked for a return call to his telephone at 703-795-5364.

> Response to Paragraph 30:

Message Communications admits the allegations in paragraph 30.

Paragraph 31:

> Over the next few days, upon information and belief, Burkman discussed with Mahanian the robocalls Burkman wanted to broadcast via Message Communications.

> Response to Paragraph 31:

Message Communications denies the allegations of paragraph 31.

Paragraph 32:

> On June 23, 2020, Burkman issued from a Burkman & Associates
> bank account the first of a series of checks (number 19518) to
> Message Communications in the amount of $1,000 with a subject
> of "PR – Robo call."

> Response to Paragraph 32:

Message Communications denies the allegations of paragraph 32, except admits

that Message Communications received a check in the amount of $1,000, dated June 23, 2020,

from the bank account of JM Burkman & Associates LLC.

Paragraph 33:

> As seen below, while Wohl and Burkman were preparing their
> robocall message, the two discussed their goal of interfering with
> the 2020 Election.  On August 19, 2020, Wohl wrote an email to
> Burkman regarding Bill Clinton's Democratic Convention speech,
> saying, "[o]ur press conferences literally get 50-100x more views,
> which is why we must HIJACK this boring election."

> Response to Paragraph 33:

Message Communications lacks knowledge or information sufficient to form a

belief as to the truth of the allegations in paragraph 33.

Paragraph 34:

> That same day, Burkman wrote an email to Mahanian at Message
> Communications, copying Wohl, confirming, "Check to you
> Robert just went out in the 2 day pouch you will have in
> 2-3 days then we attack."

> Response to Paragraph 34:

Message Communications denies the allegations of paragraph 34, except admits

that on August 19, 2020, Burkman sent an email to Message Communications, copying Wohl,

the contents of which speak for themselves.

Paragraph 35:

> On August 21, 2020, Burkman & Associates issued check number
> 19921 to Message Communications for $1,000 with a subject
> "Robo [illegible] call."

Response to Paragraph 35:

Message Communications denies the allegations of paragraph 35, except admits

that Message Communications received a check in the amount of $1,000, dated August 21, 2020,

from the bank account of JM Burkman & Associates LLC.

Paragraph 36:

> On August 24, 2020, Burkman emailed Mahanian at Message
> Communications to confirm that he received the payment for the
> voter robocall campaign.

Response to Paragraph 36:

Message Communications denies the allegations of paragraph 36, except admits

that on August 24, 2020, Burkman sent an email to Message Communications, the contents of

which speak for themselves.

Paragraph 37:

> The next day, Mahanian confirmed receipt of Burkman's check
> number 19921 and informed Burkman that he was "all set" to
> begin the robocall campaign.

Response to Paragraph 37:

Message Communications denies the allegations of paragraph 37, except admits

that on August 25, 2020, Message Communications sent an email to Burkman, the contents of

which speak for themselves.

Paragraph 38:

>Throughout the day on August 25, 2020, Wohl and Burkman emailed each other to identify specific neighborhoods to target with their robocall message.

>Response to Paragraph 38:

>Message Communications lacks knowledge or information sufficient to form a

belief as to the truth of the allegations in paragraph 38.

Paragraph 39:

>At 12:10 am on that day, Wohl emailed Burkman an audio file of the robocall recording, adding that it should be sent to "black neighborhoods" in several cities (as seen below).

>Response to Paragraph 39:

>Message Communications lacks knowledge or information sufficient to form a

belief as to the truth of the allegations in paragraph 39.

Paragraph 40:

>Burkman emailed Wohl back at 5:51 pm, a message with the subject line "working on robo now."

>Response to Paragraph 40:

>Message Communications lacks knowledge or information sufficient to form a

belief as to the truth of the allegations in paragraph 40.

Paragraph 41:

>Burkman emailed another update to Wohl at 6:48 pm, confirming "the message says data all loaded, ready. Many zip codes. We have two wavs, the 267,000 calls each.  If you could do me one favor, just go in and upload the recording. Message Communications.com account 12013, pass code 5202.  Then I will enable, pick days and go in and hit go."

Response to Paragraph 41:

Message Communications lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 41.

Paragraph 42:

At 8:47 pm on August 25, 2020, Burkman emailed Mahanian "2 mins when u can almost done 7037955364 thx so much."

Response to Paragraph 42:

Message Communications denies the allegations of paragraph 42, except admits that on August 25, 2020, Burkman sent an email to Message Communications, the contents of which speak for themselves.

Paragraph 43:

Upon information and belief, Burkman and Mahanian then discussed the robocall, including the targeted neighborhoods that Burkman and Wohl's robocall campaign would reach.

Response to Paragraph 43:

Message Communications denies the allegations of paragraph 43.

Paragraph 44:

Wohl emailed Burkman and Mahanian on August 26, 2020 at 10:41 am informing them that the WAV file was uploaded successfully and that he updated the calls-per-minute to the maximum.

Response to Paragraph 44:

Message Communications denies the allegations of paragraph 44, except admits that on August 26, 2020, Wohl sent an email to Message Communications and Burkman, the contents of which speak for themselves.

Paragraph 45:

      Mahanian confirmed to Wohl and Burkman via Mahanian's
Message Communications email account that "yes, your campaign
is currently running and recording, uploaded about 20 minutes ago,
is running. I believe you are all set!"

      Response to Paragraph 45:

Message Communications denies the allegations of paragraph 45, except admits

that on August 26, 2020, Message Communications sent an email to Burkman and Wohl, the

contents of which speak for themselves.

Paragraph 46:

      Minutes later, Burkman emailed Wohl and Mahanian to
congratulate them for the "great job."

      Response to Paragraph 46:

Message Communications denies the allegations of paragraph 46, except admits

that on August 26, 2020, Burkman sent an email to Wohl and Message Communications, the

contents of which speak for themselves.

Paragraph 47:

      Upon information and belief, Message Communications monitors
its robocall campaigns, including recording all calls delivered via
the broadcast platform.

      Response to Paragraph 47:

Message Communications denies the allegations of paragraph 47, except admits

that Message Communications generally retains copies of prerecorded messages transmitted

from the Message Communications platform.

Paragraph 48:

      Message Communications processed the robocall and disseminated
it via its broadcast platform to thousands of voters in multiple

states, including New York, Ohio, Michigan, Pennsylvania, and
Illinois. Message Communications' records show that the
messages were sent from 10:36 am to 3:30 pm ET on August 26,
2020.

Response to Paragraph 48:

Message Communications denies the allegations of paragraph 48, except admits

that on or about August 26, 2020, a prerecorded message created by Burkman and/or Wohl was

transmitted.

Paragraph 49:

The robocall came from 703-795-5364, which belongs to
Burkman. Below is a photo of Plaintiff Nancy Hart's caller ID.

Response to Paragraph 49:

Message Communications lacks knowledge or information sufficient to form a

belief as to the truth of the allegations in paragraph 49, except admits that on or about August 26,

2020, a prerecorded message created by Burkman and/or Wohl was transmitted.

Paragraph 50:

The robocall begins with a woman introducing herself as Tamika
Taylor from Project 1599.  The caller falsely states that (1) police
will use information from mail-in voting to track down old arrest
warrants, (2) credit card companies will collect outstanding debts
with the information provided, and (3) The Centers for Disease
Control and Prevention (the "CDC") will use the information to
administer mandatory vaccines.

Response to Paragraph 50:

Message Communications lacks knowledge or information sufficient to form a

belief as to the truth of the allegations in paragraph 50.

Paragraph 51:

Below is the complete transcript of the robocall:

- 17 -

> Hi, this is Tamika Taylor from Project 1599, the civil rights
> organization founded by Jack Burkman and Jacob Wohl.  Mail-in
> voting sounds great, but did you know that if you vote by mail,
> your personal information will be part of a public database that
> will be used by police departments to track down old warrants and
> be used by credit card companies to collect outstanding debts?
> The CDC is even pushing to use records for mail-in voting to track
> people for mandatory vaccines.  Don't be finessed into giving your
> private information to the man, stay safe and beware of vote
> by mail.

Response to Paragraph 51:

Message Communications lacks knowledge or information sufficient to form a

belief as to the truth of the allegations in paragraph 51.

Paragraph 52:

> As an initial matter, unlawful robocalls are inherently injurious.
> The mere receipt of an unwanted robocall is a nuisance, an
> invasion of privacy, a waste of the recipient's time, and, in some
> cases, a drain on the recipient's phone battery.  But the danger
> caused far surpasses the everyday nuisance caused by Defendants'
> robocalls.  Each of the statements in the robocall regarding these
> potential uses of voters' personal information is false and is
> designed to scare the listener.

Response to Paragraph 52:

Message Communications lacks knowledge or information sufficient to form a

belief as to the truth of the allegations in paragraph 52.

Paragraph 53:

> Moreover, the tone, tenor, language, and content of the call is
> designed to deceive and intimidate Black voters in particular.  It is
> currently unknown to Plaintiffs who "Tamika Taylor" is, but this
> name is similar to Breonna Taylor's mother, Tamika Palmer,
> whom the press has sometimes misidentified as Tamika Taylor.
> Breonna Taylor was a Black woman killed by police in Louisville,
> Kentucky in 2020.  Her story is a key part of the movement for
> Black lives and racial justice.

Response to Paragraph 53:

Message Communications lacks knowledge or information sufficient to form a

belief as to the truth of the allegations in paragraph 53.

Paragraph 54:

> "Project 1599" is also not a civil rights organization.  While
> "Project 1599" conveniently sounds very similar to the New York
> Times' "1619 Project" which documents the history of slavery and
> racism, the title likely only relates to Burkman's street address.

Response to Paragraph 54:

Message Communications lacks knowledge or information sufficient to form a

belief as to the truth of the allegations in paragraph 54.

Paragraph 55:

> Stating that voting by mail information will be used by police
> intimidates voters if they or their family members fear attention
> from law enforcement.  Due to a long history of injustice and
> systemic racism, including the risk of unwarranted violence, many
> Black voters have legitimate fears of any interaction with law
> enforcement.

Response to Paragraph 55:

Message Communications lacks knowledge or information sufficient to form a

belief as to the truth of the allegations in paragraph 55.

Paragraph 56:

> Stating that voting by mail information will be used by debt
> collectors is likely to intimidate voters with debts.  Due to a long
> history of discriminatory redlining and predatory lending practices,
> Black populations are disproportionately indebted and have fewer
> resources to seek recourse from abusive and invasive debt
> collection practices.

Response to Paragraph 56:

Message Communications lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 56.

Paragraph 57:

Stating that the CDC will use vote by mail information to conduct mandatory vaccination efforts is likely to intimidate voters who do not trust government medical programs.  Such trust is especially low in the Black community due to a history of racist experimentation and discriminatory practices in such programs, like the Tuskegee Syphilis Study.

Response to Paragraph 57:

Message Communications lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 57.

Paragraph 58:

Viewed in the totality of the circumstances and in the context of the historical inequities they connote, the language and content of the robocall was designed to resonate with Black voters.

Response to Paragraph 58:

Message Communications lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 58.

Paragraph 59:

Defendants also specifically targeted their robocalls to areas with large Black populations.  For example, in a news release dated October 1, 2020, the Michigan Department of Attorney General reported that nearly 12,000 robocalls were made to residents with phone numbers from the 313 area code, which services Detroit, Michigan and surrounding areas.  According to the U.S. census data, Detroit, Michigan's population is 76.8 % Black.

Response to Paragraph 59:

Message Communications lacks knowledge or information sufficient to form a

belief as to the truth of the allegations in paragraph 59, except denies the allegations as to

Message Communications.

Paragraph 60:

> Similarly, Attorneys General offices in New York, Pennsylvania,
> Ohio, and Illinois reported that the same robocall reached residents
> in their states who live in urban areas with significant minority
> populations, including but not limited to, New York City.

Response to Paragraph 60:

Message Communications lacks knowledge or information sufficient to form a

belief as to the truth of the allegations in paragraph 60.

Paragraph 61:

> Wohl and Burkman's emails further reveal their shared racial
> animus that motivated the robocall campaign.

Response to Paragraph 61:

Message Communications lacks knowledge or information sufficient to form a

belief as to the truth of the allegations in paragraph 61.

Paragraph 62:

> At 12:36 pm on August 26, 2020, Burkman sent an email to Wohl,
> stating "I love these robo calls…getting angry black call
> backs…win or lose…the black robo was a great jw idea."  Upon
> information and belief, the term "jw" is an abbreviation for "Jacob
> and Wohl."

Response to Paragraph 62:

Message Communications lacks knowledge or information sufficient to form a

belief as to the truth of the allegations in paragraph 62.

Paragraph 63:

> Upon information and belief, Message Communications maintains a database of phone numbers that can be targeted for purposes of a robocall campaign and it was aware of and directed the robocall message to specific communities selected by Wohl and Burkman.

> Response to Paragraph 63:

> Message Communications denies the allegations of paragraph 63.

Paragraph 64:

> Wohl and Burkman's purpose in launching this robocall campaign was to prevent voters, especially Black voters in specific cities, from accessing absentee or mail-in ballots, which would prove to be a critical and secure method for preserving the elective franchise during the COVID-19 pandemic.

> Response to Paragraph 64:

> Message Communications lacks knowledge or information sufficient to form a

belief as to the truth of the allegations in paragraph 64.

Paragraph 65:

> Based on all the circumstances, including those set forth above, Message Communications knew or should have known the purpose and intent of Wohl and Burkman's robocall campaign.

> Response to Paragraph 65:

> Message Communications denies the allegations of paragraph 65.

Paragraph 66:

> Message Communications and Mahanian failed to prevent Wohl and Burkman from directing the robocall message to specific communities based on race.

> Response to Paragraph 66:

> Message Communications denies the allegations of paragraph 66.

Paragraph 67:

> Upon information and belief, Message Communications maintains real time analytics, such as response rate analyses and geographic response analyses, for robocall campaigns to identify how to increase robocall performance.  Upon information and belief, Message Communications maintained these analyses for the Project 1599 robocall campaign.

> Response to Paragraph 67:

> Message Communications denies the allegations of paragraph 67.

Paragraph 68:

> Federal law prescribes the technical and procedural standards for systems that are used to transmit artificial or prerecorded voice messages via telephone, including the requirement that such messages state certain information such as the identity of the calling entity.  47 U.S.C. § 227(d)(3)(A).  Based on these federal requirements, to ensure that a robocall message complied with federal law, Message Communications knew or should have known the content of the Wohl and Burkman robocall message.

> Response to Paragraph 68:

> Message Communications denies the allegations of paragraph 68.

Paragraph 69:

> Based on information reported to date, it is believed that Defendants' illegal robocall campaign has reached approximately 85,000 potential voters, including Plaintiffs.

> Response to Paragraph 69:

> Message Communications lacks knowledge or information sufficient to form a

belief as to the truth of the allegations in paragraph 69.

Paragraph 70:

> Plaintiff NCBCP expends significant resources and effort both to promote Black participation in the Census and to promote voting and other civic participation by the Black community.  These issues are priorities of NCBCP's BWR program and its state-based

networks, such as BWR Metro Detroit.  BWR has been organizing
and working on the ground in Black communities, including in
Detroit, to encourage both Black participation in the Census and
in elections.

Response to Paragraph 70:

Message Communications lacks knowledge or information sufficient to form a

belief as to the truth of the allegations in paragraph 70.

Paragraph 71:

When Defendants' [sic] began making their robocalls on
August 26, 2020, BWR Metro Detroit learned that members of
their community were receiving the calls.  BWR Metro Detroit was
immediately and seriously concerned that Defendants' lies and
disinformation would intimidate and suppress Black voters, whom
BWR Metro Detroit works hard to support.  They feared Black
voters would not vote at all out of fear.

Response to Paragraph 71:

Message Communications lacks knowledge or information sufficient to form a

belief as to the truth of the allegations in paragraph 71.

Paragraph 72:

They were also concerned that the false information would cause
more voters to lose trust in mail in voting and instead vote in
person. COVID-19 has hit the Black community particularly hard,
so BWR Metro Detroit was concerned that if more Black voters
were tricked into voting in person, they were in danger.

Response to Paragraph 72:

Message Communications lacks knowledge or information sufficient to form a

belief as to the truth of the allegations in paragraph 72.

Paragraph 73:

BWR Metro Detroit diverted staff and resources that were
allocated toward encouraging Census participation to respond to
the threat of Defendants' voter intimidation.  For example, its co-

chair stopped her usual work–helping people fill out their Census forms–so that she could respond to the disinformation.  As a result, BWR Metro Detroit's efforts to promote Census participation were impaired and fewer people completed the Census.  As the Census has concluded, this harm is irreparable.  The diversion of resources harms not only the mission of the NCBCP, but also its constituents in Detroit who risk being undercounted in the Census and consequently losing their fair share of funding and representation associated with the Census count.

Response to Paragraph 73:

Message Communications lacks knowledge or information sufficient to form a

belief as to the truth of the allegations in paragraph 73.

Paragraph 74:

NCBCP anticipates that if Defendants disseminate additional voter intimidation robocalls, they will need to divert additional resources to protect the communities they serve.

Response to Paragraph 74:

Message Communications lacks knowledge or information sufficient to form a

belief as to the truth of the allegations in paragraph 74.

Paragraph 75:

During the relevant period, Plaintiff Mary Winter was a resident of Rockland County, New York, where she was registered to vote. She voted in the primary election by mail- in ballot and intended to vote in the 2020 Election by mail-in ballot.  Because of the COVID-19 outbreak, for which there was no cure or vaccine in August 2020 when the robocall was sent, Ms. Winter did not at that time think it was safe for her to vote in person in 2020. During the course of the pandemic in 2020, she was very careful in her virus precautions (particularly given that she lives in a County that has experienced a high volume of COVID-19 cases), remained socially distant from almost everyone, and did not even go to the grocery store.  In addition, prior to receiving the robocall, Ms. Winter had doubts about the integrity of voting through the mail-in ballot process due to reports she had seen in the media but was still planning to vote by mail-in ballot. Ms. Winter's receipt of Defendants' robocall intimidated her into changing plans.

Response to Paragraph 75:

Message Communications lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 75.

Paragraph 76:

> Ms. Winter received the robocall on August 26, 2020, and was so immediately distressed by it, that she shared it with her then-partner, Plaintiff Gene Steinberg.  At first, she thought the robocall might have originated from a legitimate source but soon realized the nefarious intentions behind the call when the speaker's allegations turned to mandatory vaccines.  Even though she knew that the robocall was fraudulent, the robocall exacerbated her fears that someone would tamper with her mail-in ballot or violate its secrecy.  As Ms. Winter describes it, "[i]f someone is willing to go to the lengths of creating a false robocall to lie and scare people from voting by mail, . . . what else might they be willing to do to block my mail-in ballot[?]"

Response to Paragraph 76:

Message Communications lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 76.

Paragraph 77:

> During the relevant period, Plaintiff Gene Steinberg was a resident of Rockland County, New York, where he was registered to vote. He voted in the primary election by mail-in ballot and intended to vote in the 2020 Election by mail-in ballot.  At the relevant time of the events in question, Mr. Steinberg was Ms. Winter's partner and lived with her.  Like Ms. Winter, Mr. Steinberg had been vigilant in avoiding exposure to COVID-19 and was planning to vote via mail-in ballot to avoid any unnecessary risk.

Response to Paragraph 77:

Message Communications lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 77.

Paragraph 78:

Mr. Steinberg heard the robocall because Ms. Winter played it for him immediately after she received it. Mr. Steinberg has many of the same concerns that Ms. Winter does with regards to mail-in ballots, and the robocall further undermined any confidence in that method that remained.  In addition, Mr. Steinberg found the robocall to be "traumatic" for him due to his personal history. He has a nonviolent criminal conviction from more than 18 years ago. Given his history with law enforcement, Mr. Steinberg was particularly fearful after hearing the robocall's threat that law enforcement would use mail-in ballots to track voters.  In fact, this threat so "profoundly scared [him]," Mr. Steinberg now has "great anxiety" and is reliving earlier traumas as a result.  Mr. Steinberg was intimidated by the robocall to the point where he considered voting in person instead of voting by mail, despite the increased risks of contracting COVID-19 and spreading it to his then-partner.

Response to Paragraph 78:

Message Communications lacks knowledge or information sufficient to form a

belief as to the truth of the allegations in paragraph 78.

Paragraph 79:

During the relevant period, Plaintiff Nancy Hart was a resident of Allegheny County, Pennsylvania where she was registered to vote. Ms. Hart received the robocall on August 26, 2020 (even though her phone number is registered with the Do Not Call registry). Ms. Hart was "irate" upon listening to the robocall because she understood the call to be a voter suppression tactic.  Ms. Hart was also angry at the fact that the robocalls specifically targeted Black voters by preying upon real fears that exist within the Black community about the police, predatory debt collectors, and government-mandated medical programs.  Ms. Hart's concerns about the robocall have only grown deeper since receiving the robocall because she observed others on social media repeating the false information disseminated by the robocall.  Ms. Hart was so fearful that Defendants might be successful in their efforts to intimidate voters that she called the Pennsylvania State Attorney General Office and Secretary of State.

Response to Paragraph 79:

Message Communications lacks knowledge or information sufficient to form a

belief as to the truth of the allegations in paragraph 79.

Paragraph 80:

> During the relevant period, Plaintiff Sarah Wolff was a resident of
> New York County, New York where she was registered to vote.
> Ms. Wolff received the robocall on August 26, 2020 (even though
> her phone number is registered with the Do Not Call registry).
> Because Ms. Wolff knew that the robocall's information was a lie
> and that the purpose of the robocall was to intimidate her, the
> robocall infuriated her.  Ms. Wolff likewise found the call to be
> "disgusting" because it was a clear effort to intimidate voters from
> exercising their right to vote and because she understood the
> robocall's contents to be targeting Black voters in particular.

Response to Paragraph 80:

Message Communications lacks knowledge or information sufficient to form a

belief as to the truth of the allegations in paragraph 80.

Paragraph 81:

> During the relevant period, Plaintiff Kate Kennedy was a resident
> of Cuyahoga County, Ohio where she was registered to vote.
> Ms. Kennedy is married to Plaintiff Karen Slaven and they
> received the robocall at their home where they live together on
> August 26, 2020.  The robocall angered Ms. Kennedy because she
> understood this call to be an attempt to scare her into not voting by
> mail.  She is also worried that other voters will be scared by
> the call.

Response to Paragraph 81:

Message Communications lacks knowledge or information sufficient to form a

belief as to the truth of the allegations in paragraph 81.

Paragraph 82:

> During the relevant period, Plaintiff Karen Slaven was a resident
> of Cuyahoga County, Ohio where she was registered to vote.

Ms. Slaven is married to Ms. Kennedy and they received the robocall at their home where they live together on August 26, 2020. Ms. Slaven understood this call to be an attempt to scare her into not voting by mail, and she is worried that other voters will be scared by the false information in the robocall.

Response to Paragraph 82:

Message Communications lacks knowledge or information sufficient to form a

belief as to the truth of the allegations in paragraph 82.

Paragraph 83:

During the relevant period, Plaintiff Eda Daniel was a resident of Cuyahoga County, Ohio where she was registered to vote. Ms. Daniel received the robocall in late August or early September, 2020 (even though her phone number is registered with the Do Not Call Registry). Ms. Daniel was understandably disconcerted, and also scared, by the robocall. Ms. Daniel is well-familiar with the processes of voting as she serves as a precinct official for her county, and she believes that this robocall is an attempt to harass voters and intimidate them–and her–from voting. The robocall also left her feeling powerless and vulnerable; she felt as if a stranger had just invaded her home with pernicious lies in order to intimidate her. Ms. Daniel was so concerned that Defendants might be successful in their efforts to intimidate voters that she called her congresswoman, U.S. senator and mayor to report them.

Response to Paragraph 83:

Message Communications lacks knowledge or information sufficient to form a

belief as to the truth of the allegations in paragraph 83.

Paragraph 84:

During the relevant period, Plaintiff Andrea Sferes was a resident of Westchester County, New York where she was registered to vote. Ms. Sferes received the robocall on August 26, 2020 and also on or around Labor Day. Ms. Sferes had never heard of Project 1599, Jacob Wohl, or Jack Burkman. When she listened to the call, Ms. Sferes was shocked, furious and sickened. Ms. Sferes understood the call to be an attempt to dissuade people from voting by mail. Since she has outstanding debt related to medical bills,

Ms. Sferes began to worry whether her information would really be shared and tried to convince herself otherwise.  The robocall resulted in emotional distress that lasted multiple days after the call, and led her to voice her dismay to friends.

Response to Paragraph 84:

Message Communications lacks knowledge or information sufficient to form a

belief as to the truth of the allegations in paragraph 84.

Paragraph 85:

Defendants engaged in a conspiracy to prevent, by intimidation and threats, citizens who are lawfully entitled to vote from voting and giving their support and advocacy in a legal manner toward and in favor of the election of a lawfully qualified person as an elector for President and Vice President and as a Member of Congress of the United States.  The conspiracy consisted of, at least, Burkman, Wohl, Project 1599, Burkman & Associates, Mahanian, Message Communications, and the speaker who identified herself on the robocalls as "Tamika Taylor."  The purpose of the conspiracy is to send voter intimidation robocalls.

Response to Paragraph 85:

Message Communications lacks knowledge or information sufficient to form a

belief as to the truth of the allegations in paragraph 85, except denies the allegations as to

Message Communications and Mahanian.

Paragraph 86:

Defendants committed numerous overt acts in furtherance of the conspiracy.  For instance, Wohl and Burkman used Burkman & Associates and Project 1599 to plan, draft, and fund a strategically deceptive, racially targeted, and threatening robocall designed to suppress the vote in advance of the 2020 Election.

Response to Paragraph 86:

Message Communications lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 86, except denies the allegations as to Message Communications.

Paragraph 87:

The purpose of the Project 1599 robocall was to sow distrust in the use of mail-in or absentee ballots among voters, specifically Black voters, to suppress their votes in the 2020 Election.

Response to Paragraph 87:

Message Communications lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 87.

Paragraph 88:

To fund Project 1599's deceptive and threatening robocall, Wohl and Burkman used Burkman & Associates to pay for robocalls to be broadcast by Message Communications.

Response to Paragraph 88:

Message Communications lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 88.

Paragraph 89:

Upon information and belief, Message Communications worked with Wohl and Burkman to target specific zip codes to maximize the threatening effects the robocall would have on Black voters in New York and other large metropolitan areas.

Response to Paragraph 89:

Message Communications denies the allegations of paragraph 89.

Paragraph 90:

>Message Communications, once fully paid by Burkman &
>Associates, broadcast the robocall as well as monitored and
>recorded its broadcast.

>Response to Paragraph 90:

Message Communications denies the allegations of paragraph 90, except admits

that on or about August 26, 2020, a prerecorded message created by Burkman and/or Wohl was

transmitted, a copy of which was maintained by Message Communications.

Paragraph 91:

>On information and belief, at no point did Mahanian or Message
>Communications, nor any other Defendant, attempt to prevent the
>robocall from being broadcast.

>Response to Paragraph 91:

Message Communications denies the allegations of paragraph 91.

Paragraph 92:

>Thus, Defendants worked together to create and strategically
>disseminate the robocalls in an effort to suppress the vote.
>Intimidating voters into refraining from voting by mail or from
>voting at all is an interference with those voters' giving of support
>or advocacy in favor of their preferred candidates in the 2020
>Election.

>Response to Paragraph 92:

Message Communications lacks knowledge or information sufficient to form a

belief as to the truth of the allegations in paragraph 92, except denies the allegations as to

Message Communications.

Paragraph 93:

>In the alternative, Defendants' conspiracy, by targeting Black
>voters and using intimidation to deprive them of their right to vote,
>seeks to deprive a class of persons of equal protection of the law.

Response to Paragraph 93:

Message Communications lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 93, except denies the allegations as to Message Communications.

Paragraph 94:

> The Defendants know or reasonably should know that their actions have the effect of intimidating, threatening, and/or coercing Plaintiffs, and tens of thousands of other potential voters, in connection with exercising their right to vote by mail in the 2020 Election.  Indeed, that Defendants intended for their robocalls to intimidate voters is apparent from the robocall's last statement: "Stay safe and beware of vote by mail."  Defendants do not just want voters, particularly Black voters, to vote by mail–they do not want them to vote at all.

Response to Paragraph 94:

Message Communications lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 94, except denies the allegations as to Message Communications.

Paragraph 95:

> Defendants' actions have not escaped the notice of law enforcement authorities.  On October 1, 2020, the Michigan Attorney General announced the filing of felony charges against Burkman and Wohl in connection with the robocalls at issue in this case, to the extent they targeted voters in Michigan.  Each was charged with one count of intimidating voters, one count of conspiracy to commit an election law violation, one count of using a computer to commit the crime of intimidating voters, and using a computer to commit the crime of conspiracy, all in violation of Michigan state law.

Response to Paragraph 95:

Message Communications lacks knowledge or information sufficient to form a

belief as to the truth of the allegations in paragraph 95.

Paragraph 96:

> Additionally, in October 2020, the Ohio Attorney General brought
> felony charges against Burkman and Wohl for bribery and
> telecommunications fraud in violation of Ohio state law.

Response to Paragraph 96:

Message Communications lacks knowledge or information sufficient to form a

belief as to the truth of the allegations in paragraph 96.

Paragraph 97:

> Finally, the Federal Communications Commission announced on
> August 24, 2021, Defendants are facing an unprecedented $5
> million fine due to their unlawful robocalls.

Response to Paragraph 97:

Message Communications lacks knowledge or information sufficient to form a

belief as to the truth of the allegations in paragraph 97, except denies the allegations as to

Message Communications.

Paragraph 98:

> Wohl and Burkman's long history of disregard for the law and
> undermining confidence in elected officials whom they deem to be
> opponents is well-documented.  They have orchestrated elaborate
> plans–including coercing and/or paying individuals to lie–to bring
> sexual misconduct allegations against Special Counsel Robert
> Mueller, Minnesota Congresswoman Ilhan Omar, former South
> Bend, Indiana Mayor and then-Democratic presidential candidate
> Pete Buttigieg, Massachusetts Senator and then-Democratic
> presidential candidate Elizabeth Warren, and White House
> Coronavirus Task Force member Dr. Anthony Fauci.  Although
> these allegations were debunked, Wohl and Burkman have been
> undeterred in their reckless chase of fraudulent schemes.  Wohl

and Burkman even hired actors on Craigslist to stage an FBI raid on Burkman's home, which he falsely alleged was retaliation by government officials.

Response to Paragraph 98:

Message Communications lacks knowledge or information sufficient to form a

belief as to the truth of the allegations in paragraph 98.

Paragraph 99:

In short, Burkman and Wohl have long been engaged in a game of lies and fraud with the goal of undermining fair and free elections. Indeed, employing robocalls to further their fraud is nothing new: In 2019, Burkman and Wohl used robocalls in a failed effort to solicit derogatory information about Joe Biden. They have shown over and over again their intentional disregard for truth and the law.

Response to Paragraph 99:

Message Communications lacks knowledge or information sufficient to form a

belief as to the truth of the allegations in paragraph 99.

Paragraph 100:

Defendants must be deterred immediately to prevent irreparable harm to voters, including Plaintiffs. Being denied the right to vote via intimidation is an irreparable harm; the voter permanently loses that opportunity to vote. Similarly, a voter suffers an irreparable, and potentially fatal, harm when they feel compelled to expose themselves to heightened COVID-19 risk in order to vote in person because they do not trust vote by mail due to intimidation and deception.

Response to Paragraph 100:

Message Communications lacks knowledge or information sufficient to form a

belief as to the truth of the allegations in paragraph 100, except denies the allegations as to

Message Communications.

Paragraph 101:

> If voters, including Plaintiffs, are intimidated, coerced, threatened,
> or otherwise prevented from voting–or are impaired by having to
> vote in person instead of by mail–in elections because of
> Defendants' actions, there will be no way to undo or remedy this
> damage.  If Plaintiffs, or other potential voters, do not vote in
> elections as a result of Defendants' actions, their votes in those
> elections are forever lost. Enough is enough.

> Response to Paragraph 101:

Message Communications lacks knowledge or information sufficient to form a

belief as to the truth of the allegations in paragraph 101, except denies the allegations as to

Message Communications.

Paragraph 102:

> Plaintiffs incorporate by reference the preceding paragraphs as if
> fully set forth herein.

> Response to Paragraph 102:

Message Communications repeats and realleges its responses to the allegations of

paragraphs 1 through 101 of the Amended Complaint with the same force and effect as if fully

set forth herein at length.

Paragraph 103:

> Section 11(b) of the Voting Rights Act provides in relevant part:
> "No person, whether acting under color of law or otherwise, shall
> intimidate, threaten, or coerce, or attempt to intimidate, threaten, or
> coerce any person for voting, attempting to vote, or . . . aiding any
> person who is voting or attempting to vote, in any election."
> 52 U.S.C. § 10307(b) (formerly codified at 42 U.S.C. § 1973i(b)).

> Response to Paragraph 103:

The allegations of paragraph 103 constitute legal conclusions and questions of

law to which no response is required.  To the extent that any response is required, Message

Communications lacks knowledge or information sufficient to form a belief as to the truth of the

allegations in paragraph 103.

Paragraph 104:

>   Defendants have orchestrated a deceptive robocall campaign
>   threatening, falsely, that personal information provided in
>   connection with mail-in voting would be used by (i) the police to
>   make arrests, (ii) credit card companies to collect outstanding debt,
>   and (iii) the CDC to enforce mandatory vaccines.

>   Response to Paragraph 104:

Message Communications lacks knowledge or information sufficient to form a

belief as to the truth of the allegations in paragraph 104, except denies the allegations as to

Message Communications.

Paragraph 105:

>   Defendants' conduct violates Section 11(b) of the Voting Rights
>   Act, which prohibits all actual or attempted "intimidation,"
>   "threats," or "coercion" against a person, either "for voting or
>   attempting to vote." 52 U.S.C. § 10307(b).

>   Response to Paragraph 105:

The allegations of paragraph 105 constitute legal conclusions and questions of

law to which no response is required.  To the extent that any response is required, Message

Communications lacks knowledge or information sufficient to form a belief as to the truth of the

allegations in paragraph 105, except denies the allegations as to Message Communications.

Paragraph 106:

>   Defendants' actions had the effect of intimidating, threatening,
>   and/or coercing, or attempting to intimidate, threaten, and/or
>   coerce, tens of thousands of lawfully registered voters in
>   connection with voting or attempting to vote in the 2020 Election.

Response to Paragraph 106:

Message Communications lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 106, except denies the allegations as to Message Communications.

Paragraph 107:

Defendants' actions were undertaken with the purpose of intimidating, threatening, or coercing lawfully registered voters, so that they would be fearful and reluctant to exercise their right to vote by mail in the 2020 Election.

Response to Paragraph 107:

Message Communications lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 107, except denies the allegations as to Message Communications.

Paragraph 108:

Wohl and Burkman targeted Black communities with their robocall campaign in an effort to intimidate Black voters from voting by mail and thereby suppress their votes.

Response to Paragraph 108:

Message Communications lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 108.

Paragraph 109:

In furtherance of their efforts to intimidate voters, Wohl and Burkman, through Message Communications, coordinated to ensure the maximum rate at which the robocall campaign would be broadcast to reach the greatest number of dialed-calls.

Response to Paragraph 109:

Message Communications lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 109, except denies the allegations as to Message Communications.

Paragraph 110:

Mahanian and Message Communications were aware or should have been aware of the false information and the communities targeted to receive the call but nevertheless failed to prevent the message's broadcast.  Instead, Mahanian and Message Communications sent the intimidating and inaccurate message to thousands of phone numbers in various states and actively monitored its spread.

Response to Paragraph 110:

Message Communications denies the allegations of paragraph 110.

Paragraph 111:

Defendants attempted to intimidate voters from exercising their right to vote.  Defendants' robocall message contained thinly veiled threats, and those voters who heard the message were subjected to those threats, which were intended to raise doubts and fears about absentee or mail-in ballots, and thereby undermine their confidence in the 2020 Election for President, Vice President, and other offices.

Response to Paragraph 111:

Message Communications lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 111, except denies the allegations as to Message Communications.

Paragraph 112:

Unless and until enjoined by the Court, Defendants will continue to intimidate, threaten, and/or coerce, or attempt to intimidate, threaten, and/or coerce, lawfully registered voters, such as Plaintiffs, in violation of Section 11(b) of the Voting Rights Act.

Response to Paragraph 112:

Message Communications lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 112, except denies the allegations as to Message Communications.

Paragraph 113:

Plaintiffs incorporate by reference the preceding paragraphs as if fully set forth herein.

Response to Paragraph 113:

Message Communications repeats and realleges its responses to the allegations of paragraphs 1 through 101 of the Amended Complaint with the same force and effect as if fully set forth herein at length.

Paragraph 114:

Plaintiffs bring a claim under clause 3 of 42 U.S.C. § 1985(3), which as set forth in the underline text below, provides that:

If two or more persons in any State or Territory conspire or go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws; if two or more persons conspire to prevent by force, intimidation, or threat, any citizen who is lawfully entitled to vote, from giving his support or advocacy in a legal manner, toward or in favor of the election of any lawfully qualified person as an elector for President or Vice President, or as a Member of Congress of the United States; or to injure any citizen in person or property on account of such support or advocacy; in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United

> States, the party so injured or deprived may have an action for the
> recovery of damages occasioned by such injury or deprivation,
> against any one or more of the conspirators.

42 U.S.C. § 1985(3) (emphases added).

Response to Paragraph 114:

The allegations of paragraph 114 constitute legal conclusions and questions of law to which no response is required.  To the extent that any response is required, Message Communications lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 114.

Paragraph 115:

> Defendants have violated clause 3 of 42 U.S.C. § 1985(3) because
> Defendants have conspired to intimidate and threaten many
> thousands of eligible voters, including Plaintiffs, through targeted
> robocalls, with the purpose of dissuading such persons from
> exercising their voting rights and to sow distrust in the electoral
> system in general, and voting by mail in particular.

Response to Paragraph 115:

The allegations of paragraph 115 constitute legal conclusions and questions of law to which no response is required.  To the extent that any response is required, Message Communications lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 115, except denies the allegations as to Message Communications.

Paragraph 116:

> Defendants orchestrated a deceptive robocall campaign by falsely
> threatening that personal information provided in connection with
> mail-in voting would be used by (i) the police to make arrests, (ii)
> credit card companies to collect outstanding debt, and (iii) the
> CDC to enforce mandatory vaccines.

<u>Response to Paragraph 116</u>:

Message Communications lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 116, except denies the allegations as to Message Communications.

<u>Paragraph 117</u>:

Defendants coordinated in the collection of phone numbers and the development of a strategically designed message.

<u>Response to Paragraph 117</u>:

Message Communications lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 117, except denies the allegations as to Message Communications.

<u>Paragraph 118</u>:

Defendants sought to prevent Plaintiffs, and thousands of other robocall recipients, from exercising their right to vote.

<u>Response to Paragraph 118</u>:

Message Communications lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 118, except denies the allegations as to Message Communications.

<u>Paragraph 119</u>:

Defendants' robocall message employed thinly veiled threats, intimidating Plaintiffs and causing Plaintiffs to have doubts and fears about voting through mail-in ballots, and undermined Plaintiffs' confidence in voting by mail in the 2020 Election.

Response to Paragraph 119:

Message Communications lacks knowledge or information sufficient to form a

belief as to the truth of the allegations in paragraph 119, except denies the allegations as to

Message Communications.

Paragraph 120:

> Defendants attempted to intimidate Plaintiffs out of exercising
> their right to vote by mail; upon information and belief, in the case
> of some percentage of the thousands of unnamed robocall
> recipients, Defendants no doubt succeeded in coercing such voters
> out of voting by any means.

Response to Paragraph 120:

Message Communications lacks knowledge or information sufficient to form a

belief as to the truth of the allegations in paragraph 120, except denies the allegations as to

Message Communications.

Paragraph 121:

> Wohl and Burkman, through Burkman & Associates, and Project
> 1599, enlisted Mahanian and his company Message
> Communications to place the robocall and target specific cities to
> receive the robocall message.

Response to Paragraph 121:

Message Communications denies the allegations of paragraph 121.

Paragraph 122:

> Each defendant, including Mahanian and Message
> Communications, was aware or should have been aware of the
> conspiracy and had the opportunity to stop it by, for instance, not
> placing and/or transmitting the robocall message.

Response to Paragraph 122:

Message Communications lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 122, except denies the allegations as to Message Communications.

Paragraph 123:

Defendants' conspiracy also sought to deprive Black voters of the equal protection of the laws. Defendants targeted specific zip codes in cities in an effort to target Black voters for the robocall message.

Response to Paragraph 123:

Message Communications lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 123, except denies the allegations as to Message Communications.

Paragraph 124:

The object of the Defendants' conspiracy was to dissuade eligible voters from casting their vote. Defendants' message not only discouraged the recipients from exercising their right to vote by mail, but also undermined their basic trust in the electoral process, all with the intended effect of reducing voter turnout. Plaintiff Hart, who spends much of her time as a journalist and activist encouraging others to vote recognized the robocalls as not solely a form of voter suppression but also as a direct attack on the institution of voting itself.

Response to Paragraph 124:

Message Communications lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 124, except denies the allegations as to Message Communications.

Paragraph 125:

       Each robocall message that was sent was an act in furtherance of
the object of Defendants' Section 1985(3) conspiracy.

Response to Paragraph 125:

       The allegations of paragraph 125 constitute legal conclusions and questions of

law to which no response is required.  To the extent that any response is required, Message

Communications lacks knowledge or information sufficient to form a belief as to the truth of the

allegations in paragraph 125, except denies the allegations as to Message Communications.

## AFFIRMATIVE DEFENSES

Defendants may rely upon the following affirmative defenses, if supported by the facts ascertained through discovery or investigation.  By asserting these affirmative defenses, the Defendants assume no burden of proof that plaintiffs may otherwise have.  Defendants reserve the right to amend their answer to add additional affirmative defenses that may become available or apparent as a result of additional information, through discovery in this matter or otherwise.

Affirmative Defense No. 1:

Plaintiffs' claims are barred, in whole or in part, in that they fail to state a claim upon which relief may be granted.

Affirmative Defense No. 2:

Plaintiffs' claims are barred by Section 230 of the Communications Decency Act, which provides immunity to Message Communications.

Dated:  New York, New York
        December 6, 2021

THE LAW OFFICE OF
RUSSELL D. MORRIS PLLC

By: _____
            Russell D. Morris

11 Broadway, Suite 615
New York, New York 10004
Tel:  (212) 380-1619
Email:  rmorris@russellmorrislaw.com

        *-and-*

David B. Felsenthal (*pro hac vice*)
FELSENTHAL LAW FIRM
1100 Glendon Avenue, Suite 1500
Los Angeles, CA  90024
Tel:  (310) 432-8491
Email: david@felsenthal-firm.com

*Attorneys for Defendants Message
Communications and Robert Mahanian*

- 47 -