

March 17, 2022

**VIA CM/ECF**
The Honorable Ona T. Wang (Wang_NYSDChambers@nysd.uscourts.gov)
United States Magistrate Judge
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, New York 10007-1312

>   Re: *National Coalition on Black Civil Participation et al. v. Wohl et al.*, United States District Court, Southern District of New York, Case No. 1:20-cv-08668

Dear Judge Wang:

We write on behalf of the Defendants Jacob Wohl, Jack Burkman, J.M. Burkman & Associates, LLC, and Project 1599 (collectively, "Defendants") in the above-referenced matter to address Plaintiffs' March 14, 2022 letter requesting a pre-motion conference and/or an order compelling Defendants to answer interrogatories propounded in Plaintiffs' Second Set of Interrogatories (the "Interrogatories").

##   I. The Fifth Amendment Applies To The Individual Defendants
###   a. Defendants October 26, 2020 statements should be precluded for any substantive purpose

As a threshold matter, the statements Defendants made (*pro se*) at the October 26, 2020 hearing do not constitute sworn "testimony" as these statements were not made under oath. Moreover, the notion that Defendants "waived" their Fifth Amendment privilege as a result of these statements is risible. Indeed, on the date of the hearing, Defendants had *already been indicted* in Ohio (*State of Ohio v. Burkman and Wohl*, No. 654013-20-CR (Ohio Criminal Division, Cuyahoga County, 2021)[1], and expressly informed the Court that they were in the process of retaining counsel for the instant matter. (ECF Docket No. 53). Yet, instead of adjourning the matter or advising Defendants of their constitutional right to invoke the Fifth Amendment and/or retain counsel, Judge Marrero instead invited Defendants to comment. *Id*. The tenor of this exchange validates Defendants' belief that they had no choice but to "present their case pro se", "make their case", and "respon[d] to the plaintiffs' allegations", which, of course, is false. (ECF No. 53 at 4:3-8; 10:22-25). Moreover, Mr. Burkman proffered what he believed to be both valid legal defenses and an express request for an adjournment. This is not demonstrative of someone knowingly and intelligently waiving their Fifth Amendment privilege, but rather of compelled disclosure. *See Garner v. United States*, 424 U.S. 648, 657 (1976) (an incriminating disclosure is considered

---

[1] Defendants were also indicted the *very next day* in Michigan. *See State of Michigan v. Burkman and Wohl*, No. 20-004637 FH (Wohl) 20-004636 FH (Burkman).



compelled when the "free choice to admit, to deny, or to refuse to answer," is whether the assertion of the privilege is penalized so as to "foreclos[e] a free choice to remain silent, and therefore ... compe[l] ... incriminating testimony."). Significantly, *neither* Mr. Wohl nor Mr. Burkman provided an express waiver, which requires a writing or statement, nor an implied waiver, which must unequivocally express a desire to waive one's rights. *See, e.g., Rosenthal v. New York Life Ins. Co.*, 99 F.2d 578 (8th Cir. 1938). Accordingly, any statements made by Defendants ostensibly against their interests should be precluded for any substantive purpose.[2]

### b. Plaintiffs' Own Arguments Demonstrate Why A Stay Is Warranted

Furthermore, Plaintiffs rely far too heavily upon *Louis Vuitton Malletier S.A.* v. *LY USA, Inc.*, 676 F.3d 83, 92 n.2 (2d Cir. 2012) for the contention that JMBA as a corporate entity cannot assert the Fifth Amendment, ignoring in the first instance that JMBA has *not* asserted the Fifth Amendment. Plaintiffs' extrapolation that it is a foregone conclusion that the corporate entity has the information it seeks is speculative, presumptuous, and conclusory. In fact, the central contention of "[a] stay can protect a civil defendant from facing the difficult choice between being prejudiced in the civil litigation, if the defendant asserts ... her Fifth Amendment privilege, or from being prejudiced in the criminal litigation if ... she waives that privilege in the civil litigation." *Id.* at 97. Thus, in essence, Plaintiffs' argument effectively reiterates why a stay should be granted.

### c. The Individual Defendants Can Invoke The Fifth Amendment

Even assuming, *arguendo*, the individual Defendants admitted to *participating* in the creation of the robocall, this does not invariably establish their knowledge about each and every aspect of the robocall. In fact, establishing such knowledge is precisely what the Ohio and Michigan State prosecutors have the burden to prove. And Plaintiffs' Interrogatories seek some of this very information; namely, the identity and contact information of the person identified in the robocall as Tamika Taylor. Thus, despite Plaintiffs' claims to the contrary, compelling the individual Defendants to answer these Interrogatories could communicate incriminatory statements and therefore falls squarely within the Fifth Amendment's protection against self-incrimination. Indeed, it has "long been settled that [the Fifth Amendment's] protection encompasses compelled statements that lead to the discovery of incriminating evidence even though the statements themselves are not incriminating and are not introduced into evidence." *United States* v. *Hubbell*, 530 U.S. 27, 37 (2000). Thus, "[c]ompelled testimony that communicates information that may lead to incriminating evidence is privileged even if the information itself is not inculpatory." *Hubbell*, 530 U.S. at 38 (2000) (citations omitted);

---

[2] The individual Defendants intend to move for a motion in limine precluding all of the improperly obtained statements.



*Hoffman* v. *United States,* 341 U.S. 479, 486 (1951) (communications are protected by the Fifth Amendment when they "would furnish a link in the chain of evidence needed to prosecute").

### II. Plaintiffs' Contention That Information About Tamika Taylor Is Within JMBA'S Possession Is Speculative, Conclusory, and Presumptuous

The mere fact that JMBA issued a check for the robocall, does not mean that JMBA has records or information responsive to these particular Interrogatories. Indeed, Plaintiffs' insistence that "documents prove they did, it is a 'foregone conclusion' that they know the identity of 'Tamika Taylor'" is the height of hubris. In any event, Defendants' response was unequivocal: there are no corporate records or *information* responsive to the Interrogatories. That Plaintiffs find this response unsatisfactory or dubious is of no consequence. Certainly, Defendants may question JMBA's corporate representative about its Interrogatory responses at JMBA's deposition.[3] Indeed, not one case that Plaintiffs cite involve a solo practitioner, like JMBA, that is so clearly tangential to the allegations, let alone with principals poised to assert the Fifth Amendment. All of these cases are therefore distinguishable. Again, JMBA's *sole role* to date involves merely issuing a check, which alone does not establish that the robocall project was a JMBA project, and ultimately Plaintiffs' dissatisfaction with Defendants' response is of no moment. Had Plaintiff not prejudged the situation, there are innumerable reasons why a robocall subcontracted out would be beyond the knowledge of JMBA or even the individual Defendants.

### III. Plaintiffs' Local Civil Rule 33.3 Argument Is Moot

For the foregoing reasons, Plaintiffs' Local Civil Rule 33.3 argument is moot. First, the individual Defendants are protected by the Fifth Amendment privilege against self-incrimination. Second, JMBA has no corporate records of information responsive to the Interrogatories. Simply stated, JMBA has met its discovery obligations. Accordingly, Plaintiffs' argument is moot.

Respectfully Submitted,
/s/

David M. Schwartz

Randy E. Kleinman


Cc:   All counsel of record (via ECF)

---

[3] Despite Plaintiffs' allegations to the contrary, JMBA has never asserted a Fifth Amendment privilege.