IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| NATIONAL COALITION ON BLACK CIVIC PARTICIPATION, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>Jacob Wohl, et al.,<br><br>Defendants. | Civil Action No.: 20-cv-8668-VM |

**PLAINTIFF-INTERVENOR FIRST REQUEST FOR PRODUCTION OF DOCUMENTS TO DEFENDANTS**

Under Rules 26 and 34 of the Federal Rules of Civil Procedure, Local Rule 26, and any other applicable rules or governing law, Plaintiff-intervenor People of the State of New York by its Attorney General Letitia James (OAG) hereby demand, by and through their undersigned attorneys, that Defendants Jacob Wohl, Jack Burkman, J.M. Burkman & Associates, and Project 1599 (collectively, "Defendants") produce the documents described herein for inspection and copying at the offices of the New York State Attorney General, 28 Liberty St, 20th floor, New York, NY 10005 within 30 days, or at such other time and place as may be mutually agreed, in the manner prescribed by the Federal Rules and the Local Rules, and in accordance with the definitions and instructions set forth below.

## **DEFINITIONS**

The following definitions apply to all discovery requests:

1. The phrase "2020 presidential election" refers to the 59th quadrennial United States presidential election held on Tuesday, November 3, 2020, including the period of early voting for that election.

2. The term "app" means a digital application that is available on a computer, tablet, or smartphone.

3. When referring to digital content, the term "available" means posted, published, or accessible online or within one or more apps.

4. The term "communication" means the transmittal of information (in the form of facts, ideas, inquiries or otherwise).

5. The term "concerning" means relating to, referring to, describing, evidencing, or constituting.

6. The term "Defendants" means Jacob Wohl, Jack Burkman, Project 1599, and J.M. Burkman & Associates.

7. The term "documents" is defined to be synonymous in meaning and equal in scope to the usage of the term "documents or electronically stored information" in Fed. R. Civ. P. 34(a)(1)(A). A draft or non-identical copy is a separate document within the meaning of this term.

8. The term "including" means including but not limited to.

9. The term "person" is defined as any natural person or any legal entity, including, without limitation, any business or governmental entity or association.

10. The terms "robocall" and "robocalls" means the alleged phone calls referred to in Paragraph 20 of Plaintiff-Intervenor's Complaint in Intervention, ECF No. 102.

11. The term "statements" means any electronic, hand-written, recorded, or otherwise documented expression of information by one or more persons.

12. When referring to documents, "to identify" means to give, to the extent known, the (i) type of document; (ii) general subject matter; (iii) date of the document; and (iv) author(s), addressee(s) and recipient(s). In the alternative, the responding party may produce the documents, together with identifying information sufficient to satisfy Fed. R. Civ. P. 33(d).

13. When referring to a person, "to identify" means to give, to the extent known, the person's full name, present or last known address, and when referring to a natural person, additionally, the present or last known place of employment. Once a person has been identified in accordance with this subparagraph, only the name of that person need be listed in response to subsequent discovery requesting the identification of that person.

14. The term "voter" means any person lawfully eligible to vote in the 2020 United States presidential election.

The following rules of construction apply to all discovery requests:

1. The terms "all," "any," and "each" shall each be construed as encompassing any and all.

2. The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

3. The use of the singular form of any word includes the plural and vice versa.

4. The use of the present tense includes the past tense and vice versa.

## INSTRUCTIONS

1. All responsive non-privileged documents in Defendants' possession, custody, or control are to be produced.

2. If any document or thing is not produced based on a claim of privilege, or if Defendants contend a document or thing is otherwise exempt from discovery, Defendants shall provide Plaintiff-intervenor with a privilege log in compliance with Rule 26(b)(5) of the Federal Rules of Civil Procedure.

3. If Defendants object to any Request as overly broad or unduly burdensome, Defendants shall produce those documents and/or things that are unobjectionable and specifically identify the respect in which the Request is allegedly overly broad or burdensome.

4. If Defendants are aware that any document or thing responsive to any Request once existed but has been destroyed, or is no longer available for production, Defendants shall identify who destroyed it, why it was destroyed, and the circumstances under which it was destroyed or is no longer available.

5. Respond to each of the requests separately. Identify any document responsive to any request as being responsive to the specific request at issue. If the same document is responsive to more than one request, identify all requests to which it is responsive.

## DOCUMENT REQUESTS

1. All communications between the Defendants concerning the 2020 presidential election.

2. All communications between the Defendants concerning the robocall, including, but not limited to:

    a) All communications concerning how certain zip codes, towns, cities, or other geographic regions were identified as target regions for the robocall.

      b) All communications concerning the claim that vote by mail leads to "personal information" becoming part of a "public database...used by police departments," as was stated in the robocall message.

      c) All communications related to the "track(ing) down of … warrants," as was stated in the robocall message.

      d) All communications related to credit card debts.

      e) All communications related to "mandatory vaccines," as was stated in the robocall message.

3. All documents, communications, and statements made by the Defendants referencing Black people, African Americans, Black voters, African American voters, or any other term for a person or group of people that could reasonably be assumed to fall into the United States census category of "Black or African American."

4. All documents, communications, and statements in which the Defendants employ racial slurs to refer to a person or group of people that could reasonably be assumed to fall into the census category of "Black or African American."

5. All documents, communications, and statements concerning the intended effects of the robocall, including, but limited to:

      a) The robocall's effects on any individual's or group's willingness to vote in the 2020 presidential election.

      b) The robocall's effect on any individual's or group's method of voting in the 2020 presidential election.

      c) The robocall's effect on voter turnout in the 2020 presidential election.

      d) The robocall's effect on electoral outcomes in the 2020 presidential election

6. All documents, communications, and statements concerning communications between the Defendants and the recipients of the robocall.

7. All documents, communications, and statements concerning the formation of Project 1599 and the Arlington Center for Political Intelligence (ACPI).

8. All documents, communications, and statements concerning the creation, development, implementation, and dissemination of the robocall, including, but not limited to:

> a) The script and draft scripts of the robocall message.
>
> b) The audio recording of the robocall message.
>
> c) The audio file and draft audio files of the robocall message.
>
> d) All documents, communications, and statements concerning the drafting or development of the contents or script of the robocall message.
>
> e) All documents, communications, and statements concerning reasons why the Defendants chose to include or exclude certain information from the audio recording or script of the robocall message.
>
> f) All documents, communications, and statements concerning the search and selection of a voice actor for the robocall, including, but not limited to:
>
>> i) Any casting calls or other documents or communications seeking individuals to read the script of the robocall.
>>
>> ii) Any audition materials for the robocall, such as resumes, audio files, or video tapes.
>>
>> iii) Any documents, communications, or statements concerning auditions or audition materials.

    iv) Any documents, communications, or statements concerning the voice actor that was selected and the voice actor candidates for the robocall.

  g) Any documents, communications, or statements concerning the use of the name "Tamika Taylor" in the robocall.

  h) Any communications between the Defendants and the individual whose voice was used in the robocall.

9. All documents, communications, and statements concerning domain names, social media profiles, digital usernames or handles, or any other digital identities, platforms, or pages that represent the Defendants, or that were created, owned, or operated by the Defendants.

10. All digital content that was created, posted, or owned by the Defendants on social media or other websites after January 1, 2016, including without limitation any content from the Twitter accounts @Jack_Burkman or @WohlPolitics; the Instagram account @jacobawohl; the Onlyfans account jacobawohl; Jacob Wohl's Substack newsletter; and any accounts or websites associated with the email addresses jacobwohl@gmail.com, jackburkman2016@gmail.com; or any account linked to the phone numbers (703) 795-5364, (703) 755-1155, or (951) 741-5565, irrespective of whether that content is no longer publicly available. This includes, but is not limited to:

  a) Digital content that is currently or was previously available online or within an app.

  b) Drafts of digital content that is currently or was previously available online or within an app.

  c) Digital content in the form of:

    i) Posts, blogs, or any other typed or written content;

    ii) Videos;

    iii) Scripts of videos;

   iv) Still images; and

   v) Podcasts or other audio files.

11. All documents, communications, and statements concerning other investigations of the robocalls, including, but not limited to, the Ohio criminal and civil prosecutions of Jacob Wohl and Jack Burkman, the Michigan criminal prosecution of the Jacob Wohl and Jack Burkman, and the Federal Election Commission's investigation of Jacob Wohl and Jack Burkman.

12. All documents, communications, and statements concerning all profits earned, debts owed, and assets owned by J.M. Burkman & Associates during fiscal years (FY) 2019 and 2020.

13. All of Jacob Wohl's and Jack Burkman's bank statements and tax returns from FY 2019 and 2020.

14. All bank statements and tax returns concerning Project 1599 and the ACPI from FY 2019 and 2020.

15. All documents, communications, and statements concerning donations, payments, shared assets, debts, money transfers, or any other financial relationships between J.M. Burkman & Associates and:

  a) Jacob Wohl, Jack Burkman, Project 1599, the ACPI, Message Communications, or Robert Mahanian.

  b) Any family members of Jacob Wohl or Jack Burkman.

  c) Any organizations that Jacob Wohl or Jack Burkman are involved with by virtue of:

   i) Full or partial ownership.

   ii) Employment.

   iii) Volunteer work.

   iv) Board membership.

      v) Contracts.

      vi) Formal or informal consulting.

      vii) Any other formal or informal relationship that involves aiding an organization in the fulfillment of one or more of its goals.

      viii) Any other formal or informal relationship that involves receiving any type of support from an organization or its members.

16. All documents, communications, and statements concerning donations, payments, shared assets, debts, money transfers, or any other financial relationships among the Defendants.

17. All documents, communications, and statements concerning donations, payments, shared assets, debts, money transfers, or any other financial relationships between the ACPI and the Defendants.

18. All documents, communications, and statements concerning donations, payments, shared assets, debts, money transfers, or any other financial relationships between the ACPI and third parties that began, continued, or occurred during the time period of January 1, 2018 to November 3, 2020.

19. All press releases and draft press releases containing information about, associated with, created by, or released by the Defendants that were written, created, posted, printed, or otherwise documented or disseminated between January 1, 2018 and November 3, 2020.

20. All documents, communications, and statements concerning political advocacy (i.e. any activities that aim to influence political institutions or support specific political outcomes) conducted by the Defendants in the two years leading up to the 2020 presidential election.

21. All communications between the Defendants and any third parties that occurred on or after January 1, 2018 concerning any of the following topics:

      a) Project 1599.

      b) The ACPI.

      c) Voting by mail.

      d) Preventing or discouraging people from voting in any form.

      e) Influencing the outcome of the 2020 presidential election.

      f) Russian intervention in the 2016 presential election.

      g) Russian influence on American social media.

      h) The role of social media in the 2016 presidential election.

22. All documents authored, endorsed, posted, or otherwise distributed by the ACPI regarding:

      a) The ACPI.

      b) Project 1599.

      c) Voting by mail.

      d) Preventing or discouraging people from voting in any form.

      e) Influencing the 2020 presidential election.

      f) Russian intervention in the 2016 presential election.

      g) Russian influence on American social media.

      h) The role of social media in the 2016 or the 2020 presidential election.

23. All documents, communications, or statements concerning the solicitation of donations for Project 1599, including, but not limited to:

      a) Solicitation materials created by, associated with, or distributed by or on behalf of Project 1599.

      b) Drafts of solicitation materials created by, associated with, or distributed by or on behalf of Project 1599.

24. All documents, communications, or statements concerning the solicitation of donations for the ACPI, including, but not limited to:

    a) Donation solicitation materials created by, associated with, or distributed by or on behalf of the ACPI.

    b) Drafts of donation solicitation materials created by, associated with, or distributed by or on behalf of the ACPI.

Dated: New York, New York
November 12, 2021

LETITA JAMES
Attorney General of the State of New York


By: /s/ Rick Sawyer
    Jessica Clarke
    Civil Rights Bureau Chief
    Office of the Attorney General
    28 Liberty Street, 20th floor
    New York, New York 10005
    Tel. (212) 416-8252
    Jessica.clarke@ag.ny.gov

JESSICA CLARK, *Civil Rights Bureau Chief*
CONOR DUFFY, *Assistant Attorney General, Civil Rights*
COLLEEN K. FAHERTY, *Assistant Attorney General, Executive Division*
RICK SAWYER, *Special Counsel for Hate Crimes*