# EXHIBIT F

```
 1     A.    Yes.
 2     Q.    What address are you registered to vote
 3  at?
 4     A.    I believe at my home address.
 5     Q.    Okay.  Is this -- how long have you been
 6  registered to vote at that address?
 7     A.    Since 2016.
 8     Q.    And more generally how long have you been
 9  registered to vote for?
10     A.    Since I was eighteen.
11     Q.    What political party are you registered
12  for?
13           MS. ROEHRS:  Objection.
14     A.    I honestly don't remember at the moment.
15     Q.    Did you vote in the 2020 presidential
16  election?
17     A.    Yes.
18     Q.    Did you vote in person or by mail?
19     A.    In person.
20     Q.    Prior to November of 2020 had you voted in
21  person in any other elections before?
22     A.    Yes.
23     Q.    How many, approximately?
24     A.    I regularly voted in general elections
25  since I was registered to vote.
```

Trustpoint.One Alderson
www.trustpoint.one
www.aldersonreporting.com
800.FOR.DEPO
(800.367.3376)

```
 1   says, don't be finessed to giving your private

 2   information, stay safe and beware of vote by mail.

 3   What about this statement in particular do you

 4   believe to be false?

 5        A.   Beware of vote by mail.

 6        Q.   So, the statement of beware of vote by

 7   mail, you believe to be a false statement?

 8             MS. ROEHRS:  Objection.

 9        A.   I believe it to be intimidating, so, yes.

10        Q.   What specifically do you believe about it

11   is intimidating?

12        A.   The admonition to stay safe and to beware.

13        Q.   Specifically, do you feel that that is an

14   intimidating statement?

15             MS. ROEHRS:  Objection.

16        A.   Absolutely.  It implies that there is

17   something unsafe and something to be wary of.

18        Q.   So, by telling someone -- is it your

19   testimony by telling someone to stay safe, that that

20   is an intimidating statement?

21             MS. ROEHRS:  Objection.

22        A.   No.

23        Q.   Were you personally intimidated by the

24   robocall?

25             MS. ROEHRS:  Objection.
```

1   A.   Yes.

2   Q.   How so?

3   A.   I found that it sounded very scary and
4   threatening and made me not sure that I could trust
5   that methods of voting were not being targeted for
6   partisan reasons.

7   Q.   So, you recognized, is it fair to say --
8        MR. KLEINMAN:  Withdrawn.
9   Q.   When you received the robocall you
10  believed its contents to be false though, correct?

11  A.   Correct.

12  Q.   Okay.  Yet, is fair to say that you were
13  never the less intimidated by what you believed to
14  be false statements?

15       MS. ROEHRS:  Objection.

16  A.   The fact that someone would go to efforts
17  to create this call made me very concerned about
18  whether or not there would be tampering.

19  Q.   Do you think there was any legitimacy
20  behind those concerns about tampering?

21       MS. ROEHRS:  Objection.

22  A.   I don't know.

23  Q.   Is it fair to say you'd be grateful if
24  there was truth behind the fact that your vote could
25  be tampered with and you were warned about such

1  there are many aspects of the lawsuit as I read it.
2    Q.   What do you believe those aspects to be?
3        MS. ROEHRS:  Objection.
4    A.   There were racial components.  There was
5  also, there are aspects that affect many types of
6  demographics in our country.  Some, perhaps a lot,
7  may also overlap along racial lines.  The fear
8  mongering about vaccines obviously affects all of us
9  because it was during the pandemic.
10    Q.   What specifically do you believe was part
11  of the robocall that was racially motivated?
12        MS. ROEHRS:  Objection.
13    A.   I'm not sure.
14    Q.   Okay.  At the time you received the
15  robocall did you recognize the name Tamika Taylor?
16    A.   No.
17    Q.   Have you performed any independent
18  research on mail-in voting?
19        MS. ROEHRS:  Objection.
20    A.   No.
21    Q.   Do you know what happens to the personal
22  information of an individual who utilizes.  Mail-in
23  voting?
24        MS. ROEHRS:  Objection.
25    A.   No.

1    Q.   In that time period I just referenced
2 between August of 2020 and March of '21, how
3 frequently would you go for walks?
4    A.   I don't remember.
5    Q.   Was it on a daily basis or something
6 different?
7    MS. ROEHRS:  Objection.
8    A.   Possibly something different.
9    Q.   Was it on a weekly basis?
10   A.   I do not remember.
11   Q.   Are you aware that on October 28, 2020,
12 the Court ordered my clients to issue a corrective
13 robocall?
14   A.   That sounds familiar, yes.
15   Q.   Do you recall whether or not you received
16 this call?
17   A.   I think so.
18   Q.   Do you recall the substance of this call?
19   A.   No.
20   Q.   What effect, if anything, did this Court
21 ordered robocall have on you?
22   A.   I don't remember.  I don't know.
23   Q.   As a result of the robocall did you
24 sustain any psychological or emotional injuries?
25   A.   Can you define?

```
 1      Q.   Sure.  Were you diagnosed with any type of
 2  psychological or mental or emotional disorder as a
 3  result of the robocall?
 4      A.   No.
 5      Q.   Have you sought any type of mental health
 6  treatment as a result of the robocall?
 7      A.   No.
 8      Q.   As a result of voting in person did you
 9  sustain any physical injuries?
10      A.   No.
11      Q.   Did you contract Covid at any point in
12  time --
13           MR. KLEINMAN:  Withdrawn.
14      Q.   Within the two weeks following the
15  November 2020 presidential election did you contract
16  Covid?
17      A.   No.
18           MR. KLEINMAN:  I'm going to put up on the
19      screen what's been marked as Defendant's
20      Exhibit O.
21                   (Whereupon, Defendants' Exhibit
22                    O, being a email document, is
23                    displayed.)
24           MR. KLEINMAN:  Can you see what's on the
25      screen, Ms. Winter?
```