# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF NEW YORK

NATIONAL COALITION ON BLACK CIVIC
PARTICIPATION, et al.

*Plaintiffs*

-and-

People of the STATE OF NEW YORK, by
LETITIA JAMES, ATTORNEY GENERAL OF
THE STATE OF NEW YORK

*Plaintiff-Intervenor*

v.

JACOB WOHL, et al.

*Defendants*

Civil Action No. 20-cv-08668-VM-OTW

# BRIEF FOR AMICUS CURIAE PROTECT DEMOCRACY PROJECT IN SUPPORT OF PLAINTIFFS' AND PLAINTIFF-INTERVENOR'S MOTION FOR SUMMARY JUDGMENT ON THE FEDERAL CLAIMS

## **TABLE OF CONTENTS**

**Page**

TABLE OF CONTENTS ......................................................................................................... ii

TABLE OF AUTHORITIES ................................................................................................... iii

INTRODUCTION & SUMMARY OF ARGUMENT .................................................................. 1

ARGUMENT ........................................................................................................................... 1

Defendants Have Violated Federal Law Prohibiting Voter Intimidation ...................................... 1

    A.   The Relevant Federal Statutes .......................................................................................... 2

        i.     Section 2 of the Ku Klux Klan Act, 42 U.S.C. § 1985(3) clause 3 ........................... 2

        ii.    Section 131(b) of the Civil Rights Act of 1957, 52 U.S.C. § 10101(b)..................... 3

        iii.   Section 11(b) of the Voting Rights Act, 52 U.S.C. § 10307(b)................................. 3

    B.   None of These Statutes Require a Threat of Force to Prove Intimidation .......................... 5

    C.   Threats of Prosecution or Other Legal Consequences Are Classic Forms of Voter
        Intimidation ................................................................................................................... 10

    D.   Defendants' Conduct Constitutes Intimidation Even If No Voter Was Entirely Prevented
        From Voting ................................................................................................................... 11

    E.   These Federal Statutes Do Not Require Any Showing of Racial Animus ........................ 12

CONCLUSION ...................................................................................................................... 14

CERTIFICATE OF SERVICE ................................................................................................ 15

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Bailey v. United States*,
　　516 U.S. 137 (1995) ................................................................................................ 6

*Bray v. Alexandria Women's Health Clinic*,
　　506 U.S. 263 (1993) .............................................................................................. 13

*Burwell v. Hobby Lobby Stores, Inc.*,
　　573 U.S. 682 (2014) ................................................................................................ 7

*Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc.*,
　　447 U.S. 102 (1980) ................................................................................................ 6

*Daschle v. Thune*,
　　No. 04-cv-4177, Dkt. No. 6 (D.S.D. Nov. 2, 2004) ................................................ 7

*Ex parte Yarbrough*,
　　110 U.S. 651 (1884) .............................................................................................. 13

*Griffin v. Breckenridge*,
　　403 U.S. 88 (1971) ................................................................................................ 13

*Johnson v. Holder*,
　　564 F.3d 95 (2d Cir. 2009) ...................................................................................... 5

*King v. Cook*,
　　298 F. Supp. 584 (N.D. Miss. 1969) ....................................................................... 9

*Kush v. Rutledge,*
　　460 U.S. 719 (1983) .............................................................................................. 13

*League of United Latin Am. Citizens v. Pub. Interest Legal Found.*,
　　2018 WL 3848404 (E.D. Va. Aug. 13, 2018) ................................................. passim

*McCord v. Bailey*,
　　636 F.2d 606 (D.C. Cir. 1980) .............................................................................. 13

*Nat'l Coal. on Black Civic Participation v. Wohl*,
　　2021 WL 4254802 (S.D.N.Y. Sep. 17, 2021) ....................................................... 12

*Nat'l Coal. on Black Civic Participation v. Wohl*,
　　498 F. Supp. 3d 457 (S.D.N.Y. 2020) .............................................................. passim

*Nat'l Coal. on Black Civic Participation v. Wohl,*
  512 F. Supp. 3d 500 (S.D.N.Y. 2021) ............................................................................ passim

*New York v. Horelick,*
  424 F.2d 697 (2d Cir. 1970) ........................................................................................... 7

*Northcross v. Bd. Of Ed. Of Memphis City Schs.,*
  412 U.S. 427 (1973) ........................................................................................................ 5

*Olagues v. Russoniello,*
  797 F.2d 1511 (9th Cir. 1986) ..................................................................................... 5, 10

*People Helpers, Inc. v. City of Richmond,*
  789 F. Supp. 725 (E.D. Va. 1992) ................................................................................ 10

*Pincham v. Illinois Judicial Inquiry Bd.,*
  681 F. Supp. 1309 (N.D. Ill. 1988) ................................................................................. 5

*Reno v. Bossier Parish Sch. Bd.,*
  520 U.S. 471 (1997) ......................................................................................................... 5

*Silverman v. Newspaper & Mail Deliverers' Union of N.Y. and Vicinity,*
  1999 WL 893398 (S.D.N.Y. Oct. 18, 1999) ................................................................... 7

*U.S. ex rel. Katzenbach v. Original Knights of the KKK,*
  250 F. Supp. 330 (E.D. La. 1965) .............................................................................. 7, 9

*United States v. Beaty,*
  288 F.2d 653 (6th Cir. 1961) .......................................................................................... 7

*United States v. Bruce,*
  353 F.2d 474 (5th Cir. 1965) .......................................................................................... 7

*United States v. Clark,*
  249 F. Supp. 720 (S.D. Ala. 1965) ........................................................................... 10, 12

*United States v. Gartman,*
  1995 WL 265925 (4th Cir. May 9, 1995) ....................................................................... 8

*United States v. Goldman,*
  25 F. Cas. 1350 (C.C.D. La. 1878) ............................................................................... 13

*United States v. McLeod,*
  385 F.2d 734 (5th Cir. 1967) ...................................................................................... 3, 10

*United States v. Nguyen*,
 673 F.3d 1259 (9th Cir. 2012) ................................................................. 7, 10, 11

*United States v. North Carolina Republican Party*,
 No. 5:92-00161, 91-161-CIV-5-F (E.D.N.C Feb. 27, 1992) ............................ 10, 11

*United States v. Reyes*,
 302 F.3d 48 (2d Cir. 2002) .................................................................................. 3

*United States v. Wood*,
 295 F.2d 772 (5th Cir. 1961) ............................................................................. 10

*Willingham v. Cty. of Albany*,
 593 F. Supp. 2d 446 (N.D.N.Y. 2006) .............................................................. 5, 13

**Statutes and Other Legislative Materials**

42 U.S.C. § 1985(3) ........................................................................... 2, 6, 11, 12

52 U.S.C. § 10101(b) ............................................................................ 3, 6, 12

52 U.S.C. § 10307(b) ......................................................................... 4, 6, 11, 12

Act of Feb. 8, 1894, ch. 25, § 1 .......................................................................... 14

Rev. Stat. § 5520 (2d ed. 1878) .......................................................................... 14

*Civil Rights: Hearings Before the S. Subcomm. on Constitutional Rights of the Committee on the Judiciary*,
 85 Cong. 293-99 (1957) ................................................................................... 9

Cong. Globe, 42d Cong.,
 1st Sess. 460 (1871) ........................................................................................ 8

H.R. Rep. No. 1, 42d Cong., 1st Sess. xxx-xxxi ..................................................... 8

H.R. Rep. No. 89-439 (1965) .......................................................................... 5, 13

*Hearing on the Voting Rights Act of 1965 Before the H. Comm. on the Judiciary*,
 89th Cong. 12 (1965) ..................................................................................... 4, 5

*Voting Rights: Hearings Before the S. Subcomm. on the Judiciary*, 89 Cong. 1292 (1965) .......... 9

**Other Authorities**

Ben Cady & Tom Glazer, *Voters Strike Back: Litigating Against Modern Voter Intimidation*, 39 N.Y.U. Rev. L. & Soc. Change 173 (2015) ............................................................. 4

Noah Webster, *An American Dictionary of the English Language* (1867) ................................. 6

U.S. Dep't of Just., *Federal Prosecution of Election Offenses* (8th ed. 2017) ............................ 6

Webster's New International Dictionary (3d ed. 1966) ................................................................ 6

**Constitutional Provisions**

U.S. Const. art. I., § 4, cl. i .......................................................................................................... 14

## INTRODUCTION & SUMMARY OF ARGUMENT

Defendants sent a robocall falsely telling voters that if they voted by mail, their personal information would be added to a public database that would be used by the police for warrants, credit card companies for unpaid debts, and the government for mandatory vaccines. This conduct unequivocally falls within the definition of illegal voter intimidation prohibited by federal law. This Court should therefore grant Plaintiffs' and Plaintiff-Intervenor's Motion for Summary Judgment with respect to the federal claims under Section 131(b) of the Civil Rights Act, Section 11(b) of the Voting Rights Act, and Section 2 of the Ku Klux Klan Act. *Amicus Curiae* Protect Democracy submits this brief to provide the Court with additional clarity in interpreting these federal statutes.

## ARGUMENT

### Defendants Have Violated Federal Law Prohibiting Voter Intimidation

Plaintiff the National Coalition on Black Civic Participation, individual plaintiffs, and Plaintiff-Intervenor the New York Attorney General's Office brought claims under Section 131(b) of the Civil Rights Act of 1957, Section 11(b) of the Voting Rights Act, and one of the "support or advocacy" clauses of Section 2 of the Ku Klux Klan Act, codified at 42 U.S.C. § 1985(3) clause 3, against Defendants Jacob Wohl, Jack Burkman, J.M. Burkman & Associates LLC, Project 1599, and Jane and John Does 1 through 10. Based on the undisputed facts—including Defendants' admissions—and long-established law, Defendants have violated all three federal statutes. *See Nat'l Coal. on Black Civic Participation v. Wohl*, 498 F. Supp. 3d 457, 464 (S.D.N.Y. 2020) (*NCBCP TRO Order*), ECF No. 38; *Nat'l Coal. on Black Civic Participation v. Wohl*, 512 F. Supp. 3d 500, 516-17 (S.D.N.Y. 2021) (*NCBCP MTD Order*), ECF No. 66. Plaintiffs and Plaintiff-Intervenor have moved for summary judgment on all claims. This Court should grant their motion

for summary judgment with respect to the three federal claims. (*Amicus curiae* takes no position on the other claims).

### A.  The Relevant Federal Statutes

The three relevant federal statutes prohibiting voter intimidation share a common purpose, but the elements and legal standards for a successful claim under each are slightly different. Because there is no genuine dispute of material facts, *see* Mem. of Law in Support of Plaintiffs' Joint Mot. For Summary Judgment (Pls.' MSJ), at 9-11, ECF No. 213, the only questions are legal ones. And based on the undisputed facts and well-established law, Defendants violated all three statutes.

### i.  *Section 2 of the Ku Klux Klan Act, 42 U.S.C. § 1985(3) clause 3*

Section 2 of the Klan Act, codified in relevant part at 42 U.S.C. § 1985(3), prohibits conspiracies to intimidate voters. In the modern federal code, four clauses of what was once Section 2 are now codified in 42 U.S.C. § 1985(3). Clause 3 states:

> [I]f two or more persons conspire . . . [3] to prevent by force, intimidation, or threat, any citizen who is lawfully entitled to vote, from giving his support or advocacy in a legal manner, toward or in favor of the election of any lawfully qualified person as an elector for President or Vice President, or as a Member of Congress of the United States; . . . the party so injured or deprived may have an action for the recovery of damages . . . against any one or more of the conspirators.

42 U.S.C. § 1985(3). Clause 3 forbids conspiracies to intimidate voters, by any public or private actor, regardless of any racial animus or equal protection violation, and provides a private right of action with a remedy that includes damages. This is similar to Section 131(b) and Section 11(b), both discussed below, which also apply to any actor, do not require any showing of racial animus, and provide a private right of action. Unlike Section 131(b) and Section 11(b), however, this provision is a conspiracy claim, which requires that two or more persons conspire, and then (like

all conspiracies) makes all conspirators liable for the actions of any member of the conspiracy. *See United States v. Reyes*, 302 F.3d 48, 53 (2d Cir. 2002) (defining elements of a conspiracy).

To prove a claim under clause 3 of Section 1985(3), a plaintiff must demonstrate: "(1) a conspiracy; (2) the purpose of which is to force, intimidate, or threaten; (3) an individual legally entitled to vote who is engaging in lawful activity related to voting in federal elections." *NCBCP TRO Order*, 498 F. Supp. at 487; *see also League of United Latin Am. Citizens v. Pub. Interest Legal Found.*, 2018 WL 3848404, at *5 (E.D. Va. Aug. 13, 2018) (*LULAC*) (similar).

### ii.   *Section 131(b) of the Civil Rights Act of 1957, 52 U.S.C. § 10101(b)*

Section 131(b) of the Civil Rights Act also explicitly forbids voter intimidation. It reads:

> No person, whether acting under color of law or otherwise, shall intimidate, threaten, coerce, or attempt to intimidate, threaten, or coerce any other person for the purpose of interfering with the right of such other person to vote or to vote as he may choose, or of causing such other person to vote for, or not to vote for, any candidate for [federal office.]

52 U.S.C. § 10101(b). Like the Klan Act and Section 11(b), it forbids voter intimidation by any public or private actor and does not require any showing of racial animus. Unlike Section 11(b), however, it includes a *mens rea* requirement that the perpetrator *intend* to "intimidate, threaten, coerce, or attempt" to do so. *Id.*

Thus, to prove a claim under Section 131(b), a plaintiff must show: "(1) that there was an intimidation, threat, or coercion, or an attempt to intimidate, threaten or coerce, and (2) that the intimidation was for the purpose of interfering with the right to vote." *United States v. McLeod*, 385 F.2d 734, 740 (5th Cir. 1967) (internal quotation marks omitted).

### iii.   *Section 11(b) of the Voting Rights Act, 52 U.S.C. § 10307(b)*

Section 11(b) of the Voting Rights Act also provides a blanket prohibition on voter intimidation. It reads:

> No person, whether acting under color of law or otherwise, shall intimidate, threaten, or coerce, or attempt to intimidate, threaten, or coerce any person for voting or attempting to vote, or intimidate, threaten, or coerce, or attempt to intimidate, threaten, or coerce any person for urging or aiding any person to vote or attempt to vote[.]

52 U.S.C. § 10307(b). It explicitly forbids voter intimidation, by any public or private actor, regardless of any racial animus, and does not include any *mens rea* requirement.

Section 11(b) is nearly identical to the language of the early Section 131(b) of the Civil Rights Act of 1957, but it conspicuously omits the phrase "for the purpose of" that Section 131(b) contains. Congress's decision to exclude this language was intentional. "The text of § 11(b), unlike § 131(b), plainly omits 'for the purpose of,' suggesting § 11(b)'s deliberately unqualified reach." *See LULAC*, 2018 WL 3848404, at *9. Section 11(b) thus prohibits all actions that have the effect of intimidating any reasonable person from registering or voting; no showing "of specific intent . . . is required." *Id.*; *see also* Ben Cady & Tom Glazer, *Voters Strike Back: Litigating Against Modern Voter Intimidation*, 39 N.Y.U. Rev. L. & Soc. Change 173, 204 (2015) ("Section 11(b) does not require a plaintiff to make any showing with regard to the defendant's intent.").

The legislative history confirms what the text makes plain: that Congress intentionally declined to incorporate a *mens rea* requirement into Section 11(b). As then-Attorney General Nicholas Katzenbach explained, excluding a *mens rea* requirement was necessary to combat nefarious activity difficult to reach under older voting rights statutes: "Since many types of intimidation, particularly economic intimidation, involve subtle forms of pressure, this treatment of the purpose requirement [in Section 131(b)] has rendered the statute largely ineffective." *Hearing on the Voting Rights Act of 1965 Before the H. Comm. on the Judiciary*, 89th Cong. 12 (1965) (statement of Nicholas Katzenbach, Att'y Gen. of the United States).[1] Thus, "no subjective

---

[1] https://www.justice.gov/sites/default/files/ag/legacy/2011/08/23/03-18-1965.pdf.

'purpose' need be shown . . . in order to prove intimidation under [Section 11(b)]. Rather, defendants would be deemed to intend the natural consequences of their acts." *Id.* The House Report accompanying the Voting Rights Act echoes Katzenbach, stating that under Section 11(b), "no subjective purpose or intent need be shown." H.R. Rep. No. 89-439, at 30 (1965), *as reprinted in* 1965 U.S.C.C.A.N. 2437. *Cf. Reno v. Bossier Parish Sch. Bd.*, 520 U.S. 471, 487 (1997) ("[P]eople usually intend the natural consequences of their actions." ).

Because the statutes are otherwise nearly identical, courts routinely look to interpretations of one when applying the other. *Cf. Northcross v. Bd. Of Ed. Of Memphis City Schs.*, 412 U.S. 427, 428 (1973) (holding that where a statutory term has similar language to a previously enacted statute, and a common purpose, the term should be interpreted in light of the previously enacted statute). This has occasionally led to confusion, and some courts have erroneously applied the "for the purpose of" requirement from Section 131(b) to Section 11(b). *See Olagues v. Russoniello*, 797 F.2d 1511, 1522 (9th Cir. 1986) (erroneously requiring a showing of intent under § 11(b)); *Willingham v. Cty. of Albany*, 593 F. Supp. 2d 446, 462 (N.D.N.Y. 2006) (similar); *Pincham v. Illinois Judicial Inquiry Bd.*, 681 F. Supp. 1309, 1317 (N.D. Ill. 1988) (similar). However, that interpretation is contrary to the text, context, and legislative history of Section 11(b), and is therefore wrong.

**B.  None of These Statutes Require a Threat of Force to Prove Intimidation**

This court was correct when it held that "intimidation" within the meaning of Sections 11(b) and 1985(3) does not require any force or threat of force. *NCBCP MTD Order*, 512 F. Supp. 3d at 512. That holding governs as the law of the case. *Johnson v. Holder*, 564 F.3d 95, 99 (2d Cir. 2009). And it is correct with respect to all three federal statutes.

"The starting point for interpreting a statute is the language of the statute itself." *Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc.*, 447 U.S. 102, 108 (1980). Webster's dictionary in 1867—nearly contemporaneous with the passage of the Klan Act in 1871—defines "intimidation" as "[t]o make fearful; to inspire with fear," and lists as synonyms, "to dishearten; dispirit; abash; deter; frighten; terrify." Noah Webster, *An American Dictionary of the English Language* 555 (1867).[2] Similarly, Webster's 1966 edition—nearly contemporaneous with both Sections 131(b) and 11(b)—defines intimidation as "to make timid or fearful" or "inspire or affect with fear." Webster's New International Dictionary 1184 (3d ed. 1966). It is therefore not a surprise that the Department of Justice's definition of voter intimidation is similar: conduct designed to "deter or influence voting activity through threats to deprive voters of something they already have, such as jobs, government benefits, or, in extreme cases, their personal safety." U.S. Dep't of Just., *Federal Prosecution of Election Offenses* at 49-50 (8th ed. 2017).[3] These definitions all extend far beyond threats of force.

The surrounding statutory text in all three statutes leads to the same conclusion. Sections 131(b) and 11(b) both forbid efforts to "threaten[] or coerce," and Section 1985(3) forbids the use of "force . . . or threat," in addition to "intimidation." 52 U.S.C. §§ 10101(b), 10307(b); 42 U.S.C. § 1985(3). To read a requirement of force or a threat of force into the word "intimidation" would deprive these other words of their meaning, which this Court cannot do. *See Bailey v. United States*, 516 U.S. 137, 146 (1995) ("We assume that Congress used two terms because it intended each term to have a particular, nonsuperfluous meaning.").

---

[2] https://babel.hathitrust.org/cgi/pt?id=loc.ark:/13960/t7cr73m53;view=1up;seq=583.
[3] https://www.justice.gov/criminal/file/1029066/download.

Textual analysis of other statutes prohibiting intimidation strengthens this reading. There *are* some statutes forbidding intimidation that *do* require force or a threat of force—and say so explicitly in the text. *See, e.g.*, *New York v. Horelick*, 424 F.2d 697, 703 (2d Cir. 1970) (discussing 18 U.S.C. § 245(b), which prohibits intimidation or interference "by force or threat of force"). Thus here, where Congress has chosen *not* to so limit the definition of "intimidation," courts cannot read in such an extra-textual limitation. *Cf. Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 714 (2014) ("When Congress wants to" define a term in a certain way "it knows how to do so").

This is why courts have repeatedly interpreted the word "intimidation" to encompass a far broader range of conduct than solely force or threats of force. This construction is especially clear in the voter intimidation context, where courts have explained that intimidation "is not limited to displays or applications of force, but can be achieved through manipulation and suggestion." *United States v. Nguyen*, 673 F.3d 1259, 1264-66 (9th Cir. 2012) (finding that a letter sent to Hispanic voters warning of incarceration or deportation could have "constituted a tactic of intimidation" under state voter intimidation law); *see also, e.g.*, *NCBCP MTD Order*, 512 F. Supp. 3d at 509-11 (citing cases); *United States v. Bruce*, 353 F.2d 474, 476-77 (5th Cir. 1965) (selective invocation of trespass laws against individuals registering to vote is intimidation); *United States v. Beaty*, 288 F.2d 653, 656 (6th Cir. 1961) (cancelation of contracts or rental agreements is intimidation); *LULAC*, 2018 WL 3848404, at *4 (defamation and doxxing are intimidation); *Daschle v. Thune*, No. 04-cv-4177, Dkt. No. 6, at 1-2 (D.S.D. Nov. 2, 2004) (aggressive poll watching is intimidation); *U.S. ex rel. Katzenbach v. Original Knights of the KKK*, 250 F. Supp. 330, 342 (E.D. La. 1965) (economic coercion and character assassination are intimidation).

This is clear in other contexts as well. *See, e.g.*, *Silverman v. Newspaper & Mail Deliverers' Union of N.Y. and Vicinity*, 1999 WL 893398, at *4 (S.D.N.Y. Oct. 18, 1999) (interpreting

intimidation in 42 U.S.C. § 1985(2), which prohibits witness tampering). As one court explained, intimidation is "any words or actions that are intended or designed to harass, frighten or threaten a person to do something that person would not otherwise do or not to do something that the person otherwise would do." *United States v. Gartman*, 1995 WL 265925, at *4 (4th Cir. May 9, 1995) (per curiam) (interpreting intimidation in 18 U.S.C. § 1512, which prohibits obstruction of justice).

In their pre-Motion to Dismiss letters, Defendants assert that it is "unseemly and preposterous" to equate their conduct with "the blazing firebrand of the KKK." Def's Pre-MTD Letters at 4, ECF No. 58. While Defendants might be embarrassed by the historical company they keep, their anger is not legally relevant. The relevant matter is not what the statutes are named, but what they forbid: voter intimidation. In fact, Congress explained when it passed the Klan Act that the goal was not only to curb the "reign of terror" of the Klan generally, but also specifically to "secure free elections" from the Klan's "political" interference. *See* Cong. Globe, 42d Cong., 1st Sess. 460 (1871) (statement of Rep. John Coburn).[4] In other words, Congress's prohibition of not just physical violence, but also "force, intimidation, or threat" against voters was intentional—as demonstrated not just by the text of the statute, but also by Congress's *explicit* goal of stopping politically motivated conduct that interfered with the democratic process. Congress's descriptions, too, of the Klan's conduct included articulations of both physical violence *and* non-violent intimidation. The Senate Select Committee majority report explained: the Klan "has a political purpose . . . [and] has sought to carry out its purpose by murders, whippings, *intimidations*, and violence." H.R. Rep. No. 1, 42d Cong., 1st Sess. xxx-xxxi (emphasis added).

Indeed, there is a straight line from what Congress prohibited in 1871, to what it again prohibited in 1957 and 1965, to Defendants' actions today. Congressional hearings for the Voting

---

[4] https://memory.loc.gov/cgi-bin/ampage?collId=llcg&fileName=099/llcg099.db&recNum=575.

Rights Act highlighted specific examples of intimidation that did not include force or threats of force, and instead consisted of efforts to intimidate voters by, for example, sharing lists of Black citizens who voted or registered to vote. *See, e.g.*, *Voting Rights: Hearings Before the S. Subcomm. on the Judiciary*, 89 Cong. 1292 (1965) (discussing a "systematic campaign of intimidation" in Tennessee that included circulating a list of Black citizens to be denied credit); *Civil Rights: Hearings Before the S. Subcomm. on Constitutional Rights of the Committee on the Judiciary*, 85 Cong. 293-99 (1957) (discussing a Black family forced to move after they were publicly named as supporting desegregation). Courts have repeatedly recognized that maintaining and publicizing lists of voters can be voter intimidation. *See, e.g.*, *Original Knights of the KKK*, 250 F. Supp. at 342 (describing intimidating handbills posted to identify specific individuals and businesses that the KKK was targeting); *King v. Cook*, 298 F. Supp. 584, 587 (N.D. Miss. 1969) ("Reticence to apply for registration might have been intensified . . . by publication in the local newspaper of the names and addresses of all applying for registration[.]").

   This is strikingly similar to Defendants' undisputed conduct here: their robocalls warned voters that "if you vote by mail, your personal information will be part of a public database" and that database "will be used by police departments, . . . credit card companies," and "[t]he CDC" for "mandatory vaccines." Pls.' Joint Statement of Undisputed Material Facts (Pls.' SOF) ¶ 4, ECF No. 214 (contents of robocalls); *id.* ¶¶ 5-17 (Defendants' explicitly stated intention to intimidate voters, especially Black voters). As this Court has already found, those statements are both intimidation *and* a threat of physical harm. *See NCBCP TRO Order*, 498 F. Supp. 3d at 484-87. Now that the relevant underlying facts are undisputed, *see* Pls.' SOF ¶¶ 1-17, this Court should grant the Motion for Summary Judgment with respect to the federal claims.

### C.  Threats of Prosecution or Other Legal Consequences Are Classic Forms of Voter Intimidation

As this Court correctly recognized when it denied Defendants' motion to dismiss, threats of prosecution or other legal consequences for voting are a classic form of voter intimidation. *See NCBCP MTD Order*, 512 F. Supp. 3d at 510-11. In fact, nearly 60 years of case law support the finding that the threats here constitute voter intimidation. Courts have found intimidation in: "baseless arrests and prosecutions," *see McLeod*, 385 F.2d at 740-74; arrests of voting rights organizers, *see United States v. Wood*, 295 F.2d 772, 781-82 (5th Cir. 1961) and *United States v. Clark*, 249 F. Supp. 720, 728 (S.D. Ala. 1965); investigations of voters who requested bilingual ballots, *see Olagues,* 797 F.2d at 1522; excessive investigations by a city rental agency, *People Helpers, Inc. v. City of Richmond*, 789 F. Supp. 725 (E.D. Va. 1992); letters from private individuals threatening deportation or incarceration for voting, *Nguyen*, 673 F.3d at 1265-66; and publishing voters' names and personal information with allegations of felonious voter registration "in a clear effort to subject the named individuals to public opprobrium," *LULAC*, 2018 WL 3848404, at *4.

The U.S. Department of Justice's 1992 action against the North Carolina Republican Party under Section 11(b), *United States v. North Carolina Republican Party*, is particularly relevant here. No. 5:92-00161 (E.D.N.C Feb. 27, 1992). In that case, DOJ alleged that the Republican Party violated Section 11(b) when it sent thousands of postcards to registered Black voters stating that giving false information to an election official was "punishable by up to five years in jail." Somani Decl., Ex. A (Complaint, *United States v. N.C. Rep. Party*, 91-161-CIV-5-F, at *12 ¶¶ 43-44 (E.D.N.C Feb. 27, 1992)). The mailing was intended, according to DOJ, "to intimidate and/or threaten black voters from exercising their right to vote[.]" *Id.* The defendants entered into a

consent decree that prohibited the parties from engaging in such practices. Somani Decl., Ex. B

(Consent Decree, *United States v. N.C. Rep. Party*, 91-161-CIV5-F (E.D.N.C Feb. 27, 1992)).

Defendants' conduct here falls well within the bounds of what is widely recognized as

voter intimidation. Like in *North Carolina Republican Party*, *LULAC*, and *Nguyen*, Defendants

warned of legal consequences for voting: that voters' "personal information" would become "part

of a public database," and that database would "be used by police departments to track down old

warrants," used to "collect outstanding debts," and used "for mandatory vaccines" by the

government. *See* SOF ¶ 4; *see also NCBCP TRO Order*, 498 F. Supp. 3d at 464-66 (Defendants

admitting they made the robocall and its content). As this Court correctly held, such statements

are obvious and explicit threats of prosecution, harassment, and interference with the right to vote,

as well as an implied threat of physical harm. *See NCBCP MTD Order*, 512 F. Supp. 3d at 511-

12. Given the undisputed facts here, and decades of case law determining what constitutes

unlawful intimidation, there can be no serious dispute that Defendants violated all three federal

statutes.

**D. Defendants' Conduct Constitutes Intimidation Even If No Voter Was**
**Entirely Prevented From Voting**

Finally, Defendants' conduct was undoubtedly "intimidation" within the meaning of these

federal statutes regardless of whether any specific voter was entirely prevented from voting. As

this Court explained when it denied Defendants' motion to dismiss, Section 11(b) forbids any

"attempt to intimidate" any voter, and Section 1985(3) forbids any "conspir[acy]" to "intimidate"

voters. *NCBCP MTD Order*, 512 F. Supp. 3d at 516; 52 U.S.C. § 10307(b); 42 U.S.C. § 1985(3).

The Court's reasoning applies equally to Section 131(b), which uses identical language to Section

11(b). *See* 52 U.S.C. § 10101(b) ("attempt to intimidate"). None of these statutes require plaintiffs

to prove that a defendants' efforts to intimidate voters was successful in fully preventing them from voting. *See* 52 U.S.C. §§ 10101(b), 10307(b); 42 U.S.C. § 1985(3); *see also Clark*, 249 F. Supp. at 728 ("The success or failure of intimidation, threats or coercion, is immaterial, since 'attempts' are equally proscribed.").

### E.  These Federal Statutes Do Not Require Any Showing of Racial Animus

This Court was correct to hold that neither Section 11(b) nor Section 1985(3) clause 3 require any showing of racial animus. *See NCBCP TRO Order*, 498 F. Supp. 3d at 476-87; *NCBCP MTD Order*, 512 F. Supp. 3d at 509. Once again, this reasoning applies equally to Section 131(b), which has identical language to Section 11(b) in relevant part. *See* 52 U.S.C. § 10101(b). Plaintiffs and Plaintiff-Intervenor have pleaded that Defendants intended to intimidate Black voters specifically, which is relevant to understanding the nature of the intimidation, the state law claims, some of the defenses that other defendants raised, *see Nat'l Coal. on Black Civic Participation v. Wohl*, 2021 WL 4254802, at *8-10 (S.D.N.Y. Sep. 17, 2021), ECF No. 140, and the general heinousness of Defendants' actions, *see* Pls.' Am. Compl. ¶¶ 4-5, ECF No. 149. But it is not an element of any of the federal claims.

Sections 11(b), by its plain text, states that "[n]o person . . . shall intimidate, threaten or coerce, or attempt to intimidate, threaten or coerce any person for voting or attempting to vote." 52 U.S.C. § 10307(b). Section 131(b) forbids identical conduct, except for the words "for the purpose of." *See id.* § 10101(b). The text of both statutes does not describe any racial animus requirement, nor is there any basis for reading in any such extra-textual requirement. As the House Report accompanying the Voting Rights Act explained, "[t]he prohibited acts of intimidation need not be racially motivated." H.R. Rep. No. 89-439, at 30. Numerous courts have so held. *See, e.g.*, *LULAC*, 2018 WL 3848404, at *3-4; *Willingham*, 593 F. Supp. 2d at 462. This Court has already

correctly ruled on this issue *twice* with respect to Section 11(b), and the same conclusion holds true for the identical language of Section 131(b). *See NCBCP TRO Order*, 498 F. Supp. 3d at 476; *NCBCP MTD Order*, 512 F. Supp. 3d at 509.

Section 1985(3) clause 3 likewise does not require any showing of racial animus or any equal protection violation, as this Court has also held. *NCBCP TRO Order*, 498 F. Supp. 3d at 487. Clauses 1 and 2 of Section 1985(3) are "equal protection" clauses, importing the constitution's equal protection framework; clauses 3 and 4 are "support or advocacy" clauses. Claims under the first two clauses generally require an "intent to deprive of equal protection, or equal privileges and immunities, [which] means there must be some . . . animus behind the conspirators' actions." *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971).[5] This requirement comes explicitly from the text of those two clauses. But the portions of Section 1985 that proscribe conspiracies to interfere with federal functions—including clauses 3 and 4 of Section 1985(3)—"contain no language requiring that the conspirators act with intent to deprive their victims of the equal protection of the laws." *Kush v. Rutledge,* 460 U.S. 719, 726 (1983) (explaining that "there is no suggestion" that the equal protection language applies to "any other portions of § 1985"); *see also Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 267 n.13 (1993) (noting the centrality of the equal protection language to *Kush*'s holding); *McCord v. Bailey*, 636 F.2d 606, 614 & n.12 (D.C. Cir. 1980) (holding that no showing of class-based animus is required where the text "does not demand a denial of 'equal protection of the laws'"). This makes sense: the "support or advocacy" clauses were passed under different constitutional authority (the Elections Clause[6]), have different

---

[5] Some equal protection claims under clauses 1 and 2 do not, however, require a showing of state action when the underlying right is assertible against private parties. *See, e.g.*, *Griffin*, 403 U.S. at 105-06 (Thirteenth Amendment and right of interstate travel).

[6] U.S. Const. art. I., § 4, cl. i; *see Ex parte Yarbrough*, 110 U.S. 651, 660-67 (1884); *United States v. Goldman*, 25 F. Cas. 1350, 1353-54 (C.C.D. La. 1878). *Yarbrough* and *Goldman*

statutory text, and are targeted at different concerns—namely, proscribing conspiracies that interfere with federal elections. This Court therefore should be sure not to import such a requirement into Section 1985(3) clause 3.

## CONCLUSION

For the foregoing reasons, this Court should grant Plaintiffs' and Plaintiff-Intervenor's Motion for Summary Judgment with respect to the three federal law claims.

Respectfully submitted,

Dated:  July 29, 2022

By:  _/s/ Rachel F. Homer_____

Rachel F. Homer
*pro hac vice* admission pending
PROTECT DEMOCRACY PROJECT
2020 Pennsylvania Avenue, NW,  #163
Washington, D.C. 20006
rachel.homer@protectdemocracy.org
P: 202-997-2166

*Counsel for Amicus Curiae*
*Protect Democracy Project*

---

analyzed the constitutionality of Section 5520 of the Revised Statutes, which was the statutory provision creating criminal liability for violating the "support or advocacy" clauses. *See* Rev. Stat. § 5520 (2d ed. 1878); *see also id.* § 1980 (civil enforcement provision for the "support or advocacy" clauses). Section 5520 was repealed in 1894. *See* Act of Feb. 8, 1894, ch. 25, § 1, 28 Stat. 36, 37.

**CERTIFICATE OF SERVICE**

I hereby certify that on July 29, 2022, I electronically filed the foregoing brief with the Clerk of the Court for the United States District Court for the Southern District of New York by CM/ECF. All participants in the case are registered CM/ECF users, and service will be accomplished by the CM/ECF system.

*/s/ Rachel F. Homer*

Rachel F. Homer*
   * *pro hac vice* admission pending


*Attorney for Amicus Curiae*
   *Protect Democracy Project*