# EXHIBIT 2

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

NATIONAL COALITION ON BLACK CIVIC PARTICIPATION, et al.,

Plaintiffs,

v. CIVIL ACTION NO: 1:20-CV-08668-VM-OTW

JACOB WOHL, et al.,

Defendants.

______________________________/ Volume I

The videotaped deposition of ROBERT MAHANIAN was held via Zoom on Thursday, February 17, 2022, commencing at 8:18 a.m. before Esther Levi, Notary Public.

REPORTED BY: Esther Levi

APPEARANCES:

ON BEHALF OF THE STATE OF NEW YORK:

CONOR DUFFY, ESQUIRE (via videoconference)
COLLEEN FAHERTY, ESQUIRE (via videoconference)
RICHARD SAWYER, ESQUIRE (via videoconference)
Office of the Attorney General
28 Liberty Street, 20th Floor
New York, New York 10005
Telephone: 212-416-8252
E-mail: Conor.duffy@ag.ny.gov

ON BEHALF OF THE PLAINTIFFS:

AARON GOLD, ESQUIRE (via Videoconference)
RYAN LIND, ESQUIRE (via Videoconference)
FRANKLIN MONSOUR, ESQUIRE (via Videoconference)
Orrick Herrington & Sutcliffe
51 West 52nd Street
New York, New York 10019
Telephone: 212-506-5179
E-mail: Aaron.gold@orrick.com

APPEARANCES CONTINUED:

ON BEHALF OF THE PLAINTIFFS:

DAVID BRODY, ESQUIRE (via Videoconference)

Lawyers' Committee for Civil Rights Under Law

1500 K Street Northwest, Suite 900

Washington, DC 20005

Telephone: 202-662-8600

E-mail: Dbrody@lawyerscommittee.org

ON BEHALF OF THE DEFENDANTS, JACOB WOHL, JACK BURKMAN & JM BURKMAN & ASSOCIATES & PROJECT 1599:

RANDY KLEINMAN, ESQUIRE (via Videoconference)

Gerstman Schwartz, LLP

1399 Franklin Avenue, Suite 200

Garden City, New York 11530

Telephone: 516-880-8170

E-mail: Rkleinman@gerstmanschwartz.com

APPEARANCES CONTINUED:

ON BEHALF OF THE DEFENDANTS, ROBERT MAHANIAN & MESSAGE COMMUNICATIONS, INC.:

DAVID FELSENTHAL, ESQUIRE (via Videoconference)
Felsenthal Law Firm
1100 Glendon Avenue, Suite 1500
Los Angeles, California 90024
Telephone: 310-432-8491
E-mail: Dfelsenthal@felsenthal-firm.com

ALSO PRESENT: Miriam Li & Skylar Spear
Terri Perkins, Videographer

INDEX

Deposition of Robert Mahanian

February 17, 2022


| Examination By: | Page |
|---|---|
| Mr. Duffy | 10 |

| Exhibit No. | | Marked |
|---|---|---|
| Exhibit 1 | Fact Deposition Notice | 22 |
| Exhibit 2 | 30(b)(6) Deposition Notice | 22 |
| Exhibit 3 | WAV File | 40 |
| Exhibit 4 | E-mails | 53 |
| Exhibit 5 | Account Log File | 53 |
| Exhibit 6 | Rejection E-mail | 79 |
| Exhibit 7 | Rejection E-mail | 88 |
| Exhibit 8 | Rejection E-mail | 90 |
| Exhibit 9 | Rejection E-mail | 92 |
| Exhibit 10 | Rejection E-mail | 93 |
| Exhibit 11 | Rejection E-mail | 107 |
| Exhibit 12 | Rejection E-mail | 114 |
| Exhibit 13 | Rejection E-mail | 118 |
| Exhibit 14 | Rejection E-mail | 120 |
| Exhibit 15 | Business/Consumer List Form | 132 |
| Exhibit 16 | Recording Instructions | 145 |


(Index continued on next page.)

INDEX

Deposition of Robert Mahanian

February 17, 2022



| Exhibit No. | | Marked |
|---|---|---|
| Exhibit 17 | E-mail | 152 |
| Exhibit 18 | E-mail | 155 |
| Exhibit 19 | Rejection E-mail | 157 |

Right?

A. Yes.

Q. Okay.

Can we go to the first-in-time e-mail, which is at the bottom of the page? And it's sent on Wednesday of August 26th, 2020.

Correct?

A. Yes.

Q. And I'll -- this -- this -- it says from Mr. Wohl, I just uploaded the WAV file successfully and updated the calls per minute number to the maximum. We should be ready to go now.

Did I read that accurately?

A. Yes.

Q. So is it fair to assume that he -- Mr. Wohl is uploading that call that we just heard that you just testified was sent in August of 2020? Correct?

A. I don't know what he uploaded.

Q. Okay.

Can we go to Exhibit 5, please? And this is -- it should be 22975 at the bottom right. I just want to make sure you have the right one.

Is that right?

A. The account log file is what you're referring to?

Sorry.

BY MR. DUFFY:

Q. So -- and does each account have one of these in your system?

A. Yes.

Q. Okay.

So if you go to -- let me see, it's hard for me to read this -- Page 2. Do you see where it says, the third line down, Wednesday, August 26th at 7:38 and 17 seconds? Do you see that?

A. Yes.

Q. And it says JM Burkman and Associates, LLC in the second line.

Do you see that?

A. Yes.

Q. Is that how you tell that this is the JM Burkman's and Associates' account? As Message -- you know, Message Communications -- is that how you -- Message Communications determines whose account it is?

A. That's one way to identify it.

Q. And what is another way to identify it?

A. By the file name.

Q. Okay.

And you said there's no file name on this.

Is that -- is that your testimony?

A. The file is a PDF file. It doesn't have the original file name.

Q. Okay.

So in your -- I'm just trying to understand your system. So in your system, if you want to go look up an account, there's the account name and you click on that, and then -- and then this document comes up?

A. No.

Q. So how would you access this document?

A. I could open up the text file --

Q. Okay.

A. -- that contains this information.

Q. But if you -- are you able to search by account in your -- in your system?

A. Yes.

Q. Okay.

And if you search by account for JM Burkman and Associates, would this document be housed somewhere within that account folder?

A. Yes.

Q. Okay.

And if you look at the next -- the second line on this page, it says Wednesday, August 26th at 7:37 and 7 seconds.

Do you see that line?

A. Yes.

Q. And it says, Administration customer uploaded answer -- answering machine recording WAV file.

Do you see that?

A. Yes.

Q. And it says, Name: 1599 Vote By Mail Robocall.WAV.

Can you see that?

A. Yes.

Q. So is this -- is this a -- an uploading of a -- of a WAV file that is a call that can be placed by Message Communications? Is that fair to say?

A. This line indicates that a file named 1599 Vote By Mail Robocall.WAV was uploaded to our platform.

Q. Okay.

Is -- and is there anything on this form that indicates that that -- that WAV file was placed by Message Communications?

A. Yes.

Q. And what is that?

A. Well, it doesn't necessarily mean it was placed, but the campaign was turned on at 7:38 and 51 --

Q. And where -- I'm sorry, I didn't mean to cut

you off. Please.

A. At 7:38 and 51 seconds.

Q. Okay.

So that's where it says, Successfully enabled 5LD JM Burkman and Associates.

Is that right?

A. Yes.

Q. Okay.

So is it your testimony -- I'm just trying to understand -- that Message Communications did not place that robocall that we heard earlier?

A. No.

Q. So they -- Message Communications did place that and send it out.

Is that correct?

A. Message Communications transmitted JM Burkman and Associates' uploaded robocall. The customer transmitted it. We are a platform.

Q. Okay.

And what do you -- what is your understanding of what transmitted means?

A. I take it by the common understanding that --

Q. And what is that understanding? Sorry, I didn't mean to cut you off.

A. That it was sent.
Q. Okay.
So when I say this shows that Message Communications sent the robocall, would you agree with me that that's accurate?
A. By sent, it means it was transmitted on behalf of a client of Message Communications.
Q. Okay.
But the -- but the client didn't send out the call on its own.
Right?
A. The client did send it out on their own.
Q. But the client doesn't have access to your -- to your technology.
Is that accurate?
A. The client does have access to our technology.
Q. Okay.
But the -- then why do clients come to you? Just in general.
A. To use our web platform to transmit their calls.
Q. Okay.
And when you say our, you mean Message Communications.

Correct?

A. Yes.

Q. Okay.

So can we go back to Exhibit 4? Actually, can we put them -- I'm going to ask if you could just look at our screen for this one.

MR. DUFFY: Can we put them both up on the screen, Miriam?

BY MR. DUFFY:

Q. Can you see both -- both of the exhibits we just discussed on the -- on the screen, Mr. Mahanian?

A. Yes.

Q. So you said -- you pointed me to -- you said -- when I asked if there's anything that shows the call was transmitted, you pointed me to the line that said, Successfully enabled.

Do you remember doing that?

A. Yes.

Q. And what's the date on that -- associated with that log?

A. The campaign was enabled at 7:38 and 51 seconds.

Q. On -- on what date?

A. August 26th.

Q. Okay.

And if you look at the other -- the other -- Exhibit 4, the first-in-time e-mail, it says -- what's the date of that e-mail?

A. Wait, I'm sorry, which e-mail are you referring to?

Q. Exhibit 4. There's only one e-mail, I'm sorry.

A. The date -- the date of the e-mail from Jacob Wohl or the date of my e-mail to Mr. Jacob Wohl and Jack Burkman?

Q. Well, they're the same date. Aren't they?

A. That's August 26th. It's the same date, different times.

Q. Yes. So is it your testimony that the call -- well, strike that.

I believe you said it's your understanding that the JM Burkman and Associates account, that Jack Burkman was associated with that account.

Is that correct?

A. Yes.

Q. And Jacob Wohl was associated with that account.

Is that correct?

A. Jacob Wohl was, like I stated earlier, within e-mails that were transmitted back and forth,

State of Maryland
City of Baltimore, to wit:

I, Esther Levi, a Notary Public of the State of Maryland, do hereby certify that the within-named witness personally appeared before me at the time and place herein set out, and after having been duly sworn by me, according to law, was examined by counsel.

I further certify that the examination was recorded stenographically by me and this transcript is a true record of the proceedings.

I further certify that I am not of counsel to any of the parties, nor in any way interested in the outcome of this action.

As witness my hand this 3rd day of March, 2022.

Esther Levi
Notary Public

My commission expires:
July 8, 2023