# EXHIBIT 23

NATIONAL FUTURES ASSOCIATION
BEFORE THE
HEARING PANEL

FILED

MAR -2 2017

NATIONAL FUTURES ASSOCIATION
LEGAL DOCKETING

In the Matter of: )
)
NEX CAPITAL MANAGEMENT LLC )
(NFA ID #492753), )
)
and ) NFA Case No. 16-BCC-011
)
JACOB WOHL )
(NFA ID #489736), )
)
Respondents. )

## DECISION

On January 10, 2017, a designated Panel of the Hearing Committee (Panel) held a hearing to consider the charges against Nex Capital Management LLC (Nex Capital) and Jacob Wohl (Wohl) (collectively, Respondents). The Panel issues the following Decision under National Futures Association (NFA) Compliance Rule 3-10.

I

## PROCEDURAL BACKGROUND

On August 19, 2016, NFA's Business Conduct Committee issued a one-count Complaint against Nex Capital and Wohl. The Complaint charged that Nex Capital and Wohl violated NFA Compliance Rule 2-5 by failing to cooperate promptly and fully with NFA during its attempted examination of Nex Capital. On October 5, 2016, the Respondents filed an Answer appearing to assert that NFA had no jurisdiction over Nex Capital or Wohl. The Answer also alleged that the manner in which NFA staff attempted to contact Wohl was improper.

II

## EVIDENCE PRESENTED AT THE HEARING

NFA presented one witness at the hearing and introduced a number of documents into evidence. Although properly served with the Notice of Hearing under NFA Rules, neither Wohl nor Nex Capital appeared at the hearing or presented any evidence. A summary of the evidence follows:

███████████ a Manager in NFA's Compliance Department, testified substantially as follows:

Nex Capital became a registered commodity trading advisor (CTA) and NFA Member on February 19, 2016. Wohl became an associated person (AP) and listed principal of Nex Capital on February 19, 2016. Nex Capital withdrew as a CTA and NFA Member and Wohl was terminated as an AP and listed principal of Nex Capital on July 25, 2016.

Prior to Nex Capital or Wohl becoming NFA Members, as part of NFA's online surveillance program, ███ identified an article about Wohl titled, "High School Jock Turned 'Hedge Fund Trader' – Is Regulatory Trouble Ahead?" (Exhibit 3).[1] This article described Wohl as a high schooler who appeared to be acting as a hedge fund trader with 20 clients and $200,000 in assets under management but was not registered in any regulatory capacity. Since neither the firm nor Wohl were registered nor an NFA Member, NFA referred the article to other regulatory authorities.

---

[1] Available at http://www.valuewalk.com/2015/03/hedge-fund-jacob-whol/.

███ stated that after the Respondents became NFA Members, NFA received a phone call from a member of the public who provided NFA with some of Wohl and Nex Capital's promotional material. NFA reviewed that material along with Nex Capital's social media sites and YouTube videos. NFA was concerned when it found that Nex Capital's promotional materials included numerous examples of positive hypothetical performance, were missing disclosures, and mentioned Wohl managing customer funds prior to Wohl and Nex Capital's registration as a CTA. NFA reached out to Wohl regarding the promotional material and after some back and forth with NFA's promotional material team, Wohl represented that he would no longer use the non-compliant material.

███ further stated that in May 2016, NFA received a customer complaint from an individual who had been solicited by Wohl to invest $75,000 with Wohl Capital Investment Group, an entity affiliated with Wohl. (Exhibit 4). According to the customer, in late 2015, the customer received a statement from Wohl stating that his $75,000 investment had grown to $89,000. However, when the customer attempted to contact Wohl to withdraw his investment, the customer was unable to reach him. Finally, in February 2016, Wohl sent the customer a check for a little over $44,000, which was substantially less than the $75,000 the customer had invested with Wohl and the $89,000 that Wohl had represented was in the customer's account. The customer also provided NFA with some of Nex Capital's promotional material. ███ stated that NFA was further concerned by the promotional material, which touted returns of 149 percent and represented that Wohl had nine years of trading experience even though Wohl was only 17 or 18 years old at the time.

Given the customer's complaint and NFA's concerns regarding the Nex Capital promotional material reviewed, NFA scheduled an unannounced examination of Nex Capital. On June 20, 2016, ▇ and an NFA examination team attempted to visit Wohl at the address located in the Hollywood Hills area of Los Angeles, California that Wohl had listed as his main office address in NFA's Online Registration System (ORS). ▇ acknowledged that he knew that Wohl had filed to withdraw from NFA at the time NFA attempted to commence the examination, but stated that NFA routinely conducts examinations of firms that have a pending withdrawal request. ▇ also stated that it was his recollection that NFA had determined to schedule this examination prior to the time Wohl filed the withdrawal request.

▇ stated that when the team arrived at the address listed as Nex Capital's main office, the team parked the car, walked to the front gate of the residence and rang the buzzer. When no one answered, the team drove to an area with better cell phone coverage and called the phone numbers for Nex Capital provided by Wohl in ORS. The examination team did not reach anyone and was unable to leave any voicemails. About 10 minutes later, ▇ received a phone call from Matt Johnson (Johnson), who is Nex Capital's Managing Partner/CTO. Johnson informed ▇ that the best way to reach Wohl would be via email. That afternoon, the examination team sent Wohl an email informing him of NFA's examination of Nex Capital and asking that he contact the examination team as soon as possible. (Exhibit 8). The examination team also informed Wohl that they would return to Wohl's main office address in Los Angeles the following morning at 8:30 a.m. to begin the examination.

4

On the morning of June 21, 2016, the examination team drove back to the address in the Hollywood Hills, parked the car and walked down the hill to the residence. They rang the buzzer, but again there was no answer. ███ stated that it did not appear that anyone was home, so one of the examination team members left a business card for Wohl in the mailbox.

As they started walking back up the hill to the car, the examination team looked back about 30 to 40 feet from the front of the residence and noticed what appeared to be two people watching them from the second floor. As they drove down the hill, the examination team noticed what appeared to be someone on the second or third floor opening up the curtains and taking video or pictures of the examination team, with what appeared to be a cell phone. In response to a question from the Panel, ███ stated that the examination team was never next to a window or looking into a window. He further stated that there was a gate to the entrance of the residence that the examination team could not see through.

Since the examination team had been unable to contact Wohl by phone, email, or at Nex Capital's main office address, they attempted to contact Wohl at the address Wohl listed on ORS as the location where Nex Capital maintained its business records. (Exhibit 6). The office was located on the campus of La Sierra University in Riverside, California. When the team located the office space, the lights were off, and the door was locked.

The examination team next attempted to contact Wohl at an address in Corona, California that Wohl had listed in ORS for firm Contact Information. (Exhibit 7). ███ and another examination team member walked up to the door of the residence while the third examination team member stayed in the car. An individual appearing

5

to be about 12 years of age opened the door and in response to ▅▅▅ questions, informed ▅▅▅ that Wohl was not present and that he did not know Wohl's whereabouts[2].

The examination team left the address in Corona and drove to a coffee shop to reach out to Wohl by email. About 10 minutes after reaching the coffee shop ▅▅▅ received a phone call from Wohl's father, David Wohl. According to ▅▅▅, David Wohl was angry and stated that Wohl had withdrawn from NFA membership and that NFA no longer had any authority over him or Nex Capital. ▅▅▅ stated that David Wohl threatened legal action with the Los Angeles Police Department if NFA continued to attempt to conduct the examination of Nex Capital.

Following the phone call with David Wohl, Jennifer Sunu (Sunu), the NFA Director assigned to the examination of Nex Capital, sent Wohl an email providing more background information about the examination and reminding Wohl that he was required by NFA Requirements to promptly and fully cooperate with NFA during an examination. (NFA Exhibit 9). About an hour later, NFA received an email in response to Sunu's email from David Wohl (which identified him as an attorney). (Exhibit 10). In his email, David Wohl denied that NFA had jurisdiction over Nex Capital and Wohl and indicated that Wohl would not cooperate with NFA under any circumstances. David Wohl also accused the examination team of stalking and vandalism and threatened NFA with criminal and civil court action.

On June 23, 2016, NFA Attorney Ronald Hirst (Hirst) responded to David Wohl's email and explained that because Nex Capital filed its membership

---

[2] NFA later learned through an email from Wohl's father that the person answering the door was Wohl's younger brother.

6

withdrawal request on June 13, 2016, Nex Capital would remain an NFA Member until at least July 13, 2016 under NFA Bylaw 301(h)(iv), which provides that a request to withdraw membership becomes effective 30 days after the withdrawal request is made unless NFA denies the request in writing prior to the 30th day. (Exhibit 11). Hirst's email reiterated the multiple attempts the examination team had made to contact Wohl and Nex Capital and informed David Wohl that Wohl and Nex Capital had failed to cooperate promptly and fully with NFA in their attempted examination of Nex Capital in violation of NFA Compliance Rule 2-5. Hirst further advised David Wohl that a violation of NFA Compliance Rule 2-5 typically results in a significant penalty which is often a permanent bar from NFA membership.

Later that day, Hirst received an email from David Wohl indicating that the Los Angeles Police Department had been contacted and any further attempts to conduct the examination would result in the arrest and prosecution of the examination team. ▇ has not had any contact with Wohl since June.

III

**FINDINGS, CONCLUSIONS AND PENALTY**

Nex Capital was a CTA Member of NFA during the period covered by the Complaint. As an NFA Member, Nex Capital was required to comply with NFA requirements and is subject to disciplinary proceedings for violations of NFA requirements that occurred while it was an NFA Member.[3] Wohl was a principal and AP of Nex Capital and an NFA Associate Member during the period covered by the

---

[3] *See* Compliance Rule 2-14.

7

Complaint. Therefore, Wohl was required to comply with NFA requirements, and NFA has jurisdiction over him for purposes of this action.[4]

NFA's Complaint alleges that Nex Capital and Wohl violated NFA Compliance Rule 2-5 by failing to cooperate promptly and fully with NFA during its attempted examination of the firm. Specifically, the Complaint alleges that Wohl refused to respond to repeated requests from NFA's examination staff for Wohl to meet with NFA in order to commence an examination of Nex Capital.

Prior to addressing the substance of the Complaint against the Respondents, the Panel will address the allegations made by Wohl and Nex Capital in their Answer, as well as by Wohl's father in an email to NFA, regarding the manner in which NFA staff attempted to contact Wohl to commence an examination. Both the Answer and the email appear to claim that NFA staff was acting unprofessionally by attempting to contact Wohl at his home and at the home of his father. Both also suggest that NFA staff was out of bounds when speaking to Wohl's younger brother, who happened to answer the door when staff arrived at Wohl's father's home. However, as discussed below, NFA staff had a significant regulatory concern that prompted the attempt to conduct an examination of Nex Capital and based on the evidence presented at the hearing, staff followed proper procedures in seeking to contact Wohl.

Despite the suggestion in the Answer and email that NFA staff was improperly stalking Wohl at his home and the home of his father, NFA staff was merely attempting to contact Wohl at the addresses Wohl provided NFA as contact

---

[4] See NFA Bylaw 301(b) and Compliance Rule 2-14.

addresses for Wohl and Nex Capital. Staff did not engage in any improper communication with Wohl's younger brother when he answered the door and staff asked him if Wohl was available or if he knew where they could reach him. It was Wohl's refusal to respond to NFA's phone calls and emails, and likely to answer the door at the address given as the firm's main office, that caused NFA to attempt to reach Wohl at the alternative address he provided for Nex Capital, which happened to be the home of his father. It appears to the Panel that Wohl and his father raised these allegations in order to deflect from the real issue at hand – that being Wohl's failure to respond to NFA's requests to meet with him and cooperate with NFA's examination. The record in this matter clearly establishes that the examination staff acted professionally at all times and gave Wohl multiple opportunities to respond to the team's request to meet with him.

Turning to the charges against Wohl and Nex Capital, NFA's case was based primarily on the testimony of ▇, who provided detailed testimony on NFA staff's attempts to contact Wohl. Specifically, ▇ described the examination team's attempts to visit Wohl at the three separate addresses listed by Wohl in ORS as Nex Capital's main office address, location of Nex Capital's books and records and location of business contacts, as well as the team's attempts to contact Wohl at the phone numbers he had listed in ORS. NFA also submitted documentary evidence that showed NFA's attempts to reach Wohl through email, including emails from NFA outlining Wohl's and Nex Capital's obligation to cooperate in an examination and the consequences for failing to do so. (Exhibits 9 and 11).

Wohl did not appear at the hearing to respond to these charges. He did, however, as noted above, submit an Answer to the Complaint in which he stated that

in June 2016, he and Nex Capital made it clear to NFA that he and his firm would have no further involvement with NFA and that it would not be engaging in business that would require CTA registration. Although not entirely clear, the Panel believes that Wohl was attempting to assert in his Answer the same defense his father raised in his June 21, 2016 email to NFA – that Wohl withdrew and resigned from NFA shortly before NFA commenced its examination and therefore, NFA had no jurisdiction to commence an examination of Nex Capital.

Wohl is mistaken that he and Nex Capital were not subject to NFA's jurisdiction at the time NFA attempted to commence an examination of Nex Capital on June 20, 2016. NFA Bylaw 301(h)(iv) provides that a request to withdraw an application for membership becomes effective on the 30th day after the request is filed, unless NFA denies the withdrawal request prior to the effective date. Since Wohl and Nex Capital filed a membership withdrawal request with NFA on June 13, 2016, NFA had jurisdiction over Wohl and Nex Capital until at least July 13, 2016. Accordingly, NFA had the authority to conduct an examination of Nex Capital on June 20, 2016. Moreover, NFA specifically explained to Wohl's attorney, David Wohl, the impact of NFA Bylaw 301(h)(iv) on Wohl's withdrawal request in an email dated June 23, 2016. (NFA Exhibit 11).

Although not necessary to establish a violation of NFA Compliance Rule 2-5, the Panel believes that it is important to note that NFA demonstrated at the hearing that it had a significant regulatory concern regarding Wohl that needed to be addressed through an examination of the firm. Most significantly, NFA received a customer complaint from an individual who represented that he had invested $75,000

with Wohl and was informed by Wohl that his investment had increased in value, but was unable to get his money back.

The evidence presented at the hearing clearly demonstrated that Nex Capital and Wohl refused to submit to an examination despite the examination team's multiple attempts to contact Wohl at the addresses Wohl had provided to NFA as business contact addresses. Although the examination team acted appropriately and professionally at all times, the only response the examination team received was a phone call from Wohl's father who denied NFA's authority to conduct an examination and threatened legal action should the examination team further attempt to contact Wohl. David Wohl's email to NFA on June 23, 2016, denying NFA's jurisdiction and repeatedly threatening the examination team with legal action should the examination team continue to pursue the examination, made it clear that Wohl and Nex Capital had no intention of cooperating with NFA even after being informed of the consequences for continuing to fail to cooperate. The Panel also notes that Nex Capital and Wohl's Answer to the Complaint further demonstrates their continued refusal to acknowledge NFA's authority to conduct an examination of Nex Capital. There is no question that Nex Capital and Wohl willfully violated NFA Compliance Rule 2-5 by refusing to submit to an examination of Nex Capital.

A number of factors must be considered when determining the appropriate sanctions for these violations. One of the more important factors is the nature of the violations. The evidence at the hearing clearly establishes that Wohl, on behalf of himself and Nex Capital, repeatedly refused to submit to an examination despite being informed of his obligation under NFA Compliance Rule 2-5 to do so. Since NFA Compliance Rule 2-5 is the foundation by which NFA is able to obtain the

information it needs from its Members to carry out its regulatory responsibilities, any violation of this rule is a very serious violation and cannot be tolerated. See, for example, In the Matter of H. James Kyle, Jr., NFA Case No. 87-BCC-016 (App.Com. Sept. 28, 1988) (Associate permanently barred from association with an NFA Member and membership in NFA based on a violation of NFA Compliance Rule 2-5); In the Matter of Denver Difference Energy LLC, et al., NFA Case No. 12-BCC-002, Dec. 18, 2012 (Member and Associate permanently barred from NFA membership and from acting as a principal of an NFA Member, and Associate permanently barred from NFA associate membership based on a violation of NFA Compliance Rule 2-5); and In the Matter of Chazon QTA Quantitative Trading Artists LLC and Lawrence I. Fejokwu, NFA Case No. 14-BCC-006 (App. Com. Nov. 23, 2015) (Member and Associate permanently barred from NFA membership and from acting as a principal of an NFA Member, and Associate permanently barred from NFA associate membership based on a violation of NFA Compliance Rule 2-5). Moreover, the Panel believes that Wohl's and Nex Capital's continued disregard for NFA's jurisdiction demonstrates that they are unfit to be NFA Members. Based on the above findings and discussion, the Panel hereby imposes the following sanctions:

1. Nex Capital is permanently barred from NFA membership and from acting as a principal of an NFA Member.

2. Wohl is permanently barred from NFA membership, associate membership and from acting as a principal of an NFA Member.

## IV

## APPEAL

Nex Capital and Wohl may appeal the Panel's Decision to the Appeals Committee of NFA by filing a written Notice of Appeal with NFA within 15 days of the date of this Decision. Pursuant to NFA Compliance Rule 3-13(a), the Notice must describe those aspects of the disciplinary action to which exception is taken and must include any request to present written or oral arguments. The Decision shall be final after the expiration of the time for appeal or review unless it is appealed or reviewed.

## V

## INELIGIBILITY

Pursuant to the provisions of Commodity Futures Trading Commission (CFTC) Regulation 1.63, this Decision and the sanctions imposed by it renders Wohl permanently ineligible to serve on a governing board, disciplinary committee, oversight panel, or arbitration panel of any self-regulatory organization as that term is defined in CFTC Regulation 1.63.

NATIONAL FUTURES ASSOCIATION
HEARING PANEL

Dated: 03-02-2017

By: _____
Patricia M. Donahue
Chairperson

/jlw/BCC Cases/Case Files/Nex Capital Management LLC/Decision/Decision_final