# EXHIBIT 62

I.      **Introduction**

The so-called "Project 1599" robocall at issue in this litigation spread disinformation regarding purported negative consequences to voting by absentee ballot in the November 2020 general election. In doing so, the Project 1599 robocall, to the extent it was received by New York voters, would have had the capacity to undermine, interfere, and conflict with the State of New York's ("State") election administration and its efforts to inform voters of their rights with respect to absentee ballots, as well as the State's common-sense measures to expand the use of absentee ballots in light of the COVID-19 pandemic.

II.     **Statement of Inquiry**

Given my knowledge and experience in administering elections in New York and my service on the U.S. Election Assistance Commission Standards Board, I was asked to review the Project 1599 robocall and determine whether and to what extent it could interfere with New York's election administration, as well as whether the claims regarding absentee or "vote-by-mail" ballots were truthful.

III.    **Qualifications**

I am a licensed attorney and have served as Commissioner and Co-Chair of the New York State Board of Elections ("State Board") since 2005. Before assuming my present position on the State Board, I was a commissioner of the New York City Board of Elections from 1993 until my appointment to the State Board in 2005. I also serve as the New York State representative to the Standards Board of the United States Election Assistance Commission. My curriculum vitae, listing my relevant education and professional experiences, is attached as "exhibit A." Additionally, I have added at "exhibit B" a list of other cases for which I have served as an expert or provided testimony (whether at trial or at a deposition), including those from the past four years.

It also includes a list of my publications. As a public servant for the State of New York, I receive a salary of $25,000 per year as commissioner (NY Election Law § 3-100(3)); I did not receive any additional compensation for issuing this report or for my expert opinions and testimony.

IV.     **Expert Opinions Formed**

**Opinion 1: The Project 1599 robocall contains false and misleading information**

I have reviewed a transcription of the robocall message that is the subject of this litigation (the "Project 1599 robocall"). It is my understanding that the Project 1599 robocall was sent out on August 26, 2020. The Project 1599 robocall states:

> "Hi, this is Tamika Taylor from Project 1599, the civil rights organization founded by Jack Burman and Jacob Wohl. Mail-in voting sounds great, but did you know that if you vote by mail, your personal information will be part of a public database that will be used by police departments to track down old warrants and be used by credit card companies to collect outstanding debts? The CDC is even pushing to use records for mail-in voting to track people for mandatory vaccines. Don't be finessed into giving your private information to the man, stay safe and beware of vote by mail."

The Project 1599 robocall contains false and misleading information. The New York State Constitution, Art. II § 5 requires that every voter—not just absentee voters—register before voting. Article V of the Election Law sets forth the procedure for registering. In addition, the federal Help America Vote Act, 52 U.S.C. § 21083, requires that every state maintain a computerized voter registration list for all elections for federal office.

Concerning voter registration records, including their preservation and accessibility, New York Election Law § 3-220 provides that:

> 1.  All registration records, certificates, lists, and inventories referred to in, or required by, this chapter shall be public records and open to public inspection under the immediate supervision of the board of elections or its employees and subject to such reasonable regulations as such board may impose, provided, however, that a voter's driver's license number, department of motor vehicle non-driver photo ID number, social security number

and facsimile number shall not be released for public inspection. No such records shall be handled at any time by any person other than a member of a registration board or board of inspectors of elections or board of elections except as provided by rules imposed by the board of elections.

2. The central file registration records shall be kept in locked filing cabinets in the office of the board of elections or, in the appropriate branch offices of the board of elections. Such records shall be taken from such file and handled only where necessary to make entries thereon or take other action in connection therewith as required by this article. The board of elections may cause to be made, photostatic copy or copies of the registration poll records of registered voters in any election district and shall cause such photostatic copies to be placed in one or more ledgers in the same manner and in the same order as the original registration poll records appear in the ledger or ledgers containing the registration poll records for such election district. Such photostatic records shall be open to public inspection, in lieu of the original registration records.

Most significantly, Election Law § 3-103(5) provides that "The information contained in the statewide voter registration list shall not be used for non-election purposes." Given this provision of law, it is completely false that "if you vote by mail, your personal information will be part of a public database that will be used by police departments to track down old warrants and be used by credit card companies to collect outstanding debts." In New York, there is no database that police departments, credit card companies, the Centers for Disease Control, or anyone else may lawfully access for non-election purposes, such as enforcing old warrants, collecting debts, or in any public health vaccination effort.

**Opinion 2: To the extent the Project 1599 Robocall was heard by New York voters, it had the capacity to undermine the State's election administration**

New York's general elections are administered by its 58 bipartisan boards of election consisting of a board of elections for each county in the state and a single board of elections for the five counties of New York City (collectively "local BOEs"), pursuant to N.Y. Election Law § 3-200 *et seq*. The State Board has significant authority to promulgate policies, regulations, and instructions as to the administration of elections generally, and many of these powers are enumerated in N.Y. Election Law § 3-102. The State Board is comprised of four commissioners,

two from each major political party (defined as the parties that receive the highest and second highest number of voters for its candidate in the preceding gubernatorial election).

The 2020 election year consisted of the Presidential Election as well as contests to fill all positions in the U.S. House of Representatives, the State Senate, and the State Assembly, in addition to numerous judicial and local elections. The State Board and local BOEs began their preparations for the 2020 elections in 2019, as Presidential Election years result in increased voter turnout, as well as an all-around heightened volume of election processes. In March of 2020, with the outbreak of the COVID-19 pandemic, the State Board and local BOEs were presented with new and complex problems to solve. And while New York has successfully administered elections in times of turmoil—for example, during the Hurricanes Irene, Lee, and Sandy, as well as in the aftermath of the terrorist attacks of September 11, 2001, which was a primary election day in New York City—in terms of how it affected election administration, the COVID-19 pandemic was a longer, more sustained, and unforeseen crisis.

The State Board works tirelessly to ensure voter access and safety, as well as the safety of our staff and poll workers, all the while running elections in a manner to preserve the accountability, integrity, transparency, and verifiability of New York elections. During the 2020 election, in the middle of the pandemic, the State and the State Board adopted several measures to ensure that all voters could access the ballot without fear of contracting COVID-19. Chief among these was ensuring that all eligible New York voters could vote by absentee or so-called vote-by-mail ballots.

Under longstanding New York law, absentee voting is an exception to in-person voting and is available upon application to voters who by reason of disability, caretaking responsibilities, illness, absence, or being detained in jail cannot vote in person at the polling place. On April 9,

2020, in advance of the then-imminent federal and state primary elections,[1] the Governor issued an executive order allowing all eligible voters to vote by absentee ballot citing temporary illness due to fear of contracting the coronavirus.[2] The same executive order allowed for the electronic applications for absentee ballots. On April 24, 2020, an executive order was issued to require local BOEs to mail an absentee ballot application with a return postage paid envelope to all eligible voters.[3]

On May 1, 2020, the Governor issued an executive order permitting absentee ballot requests to be made over the phone and mandated that local BOEs provide postage paid return envelopes for the return of completed absentee ballots.[4] On June 7, 2020, the State extended the postmark deadline, or the date by which completed absentee ballots needed to show a postmark in order to be counted, from the day before Election Day to Election Day for the remainder of 2020. The State also authorized the online or electronic submission of absentee ballot applications until the end of 2020 by law, codifying and extending the existing executive orders requiring the same for the primary elections.[5]

After the June 2020 primaries, in advance of November's election and as the pandemic persisted, the State adopted additional measures to expand voter access and provide the local BOEs with the appropriate resources to meet the very likely demands of increased absentee voting for

---

[1] On March 28, 2020, the New York Governor issued an executive order consolidating the Presidential Primacy scheduled for April 28 with the state primary elections, which were held on June 23, 2020. See Exec. Order 202.12 (Mar. 28, 2020).
[2] Exec. Order No. 202.15 (Apr. 9, 2020).
[3] Exec. Order No. 202.23 (Apr. 24, 2020).
[4] Exec. Order No. 202.26 (May 1, 2020).
[5] *See* N.Y. Elec. Law § 8-412 (McKinney) (absentee postmark deadline) and N.Y. Elec. Law § 8–400 (McKinney) (absentee ballot application process) as amended by S.8130D, 2020 Leg. Sess. (N.Y. 2020), https://www.nysenate.gov/legislation/bills/2019/s8130. Both the additional day to postmark a completed absentee ballot prior to mailing and the authorization for the online application process terminate at the end of 2020, and therefore only affect the June primary and the November general election.

the general election. For example, in August of 2020, the State enacted numerous election-law related bills related to the expansion of absentee ballots, including: (a) codifying into law that the fear of contracting COVID-19 would be a qualifying justification for the illness exemption entitling voters to an absentee ballot;[6] (b) allowing local BOEs to accept absentee ballot applications more than 30-days before Election Day in an effort to encourage and provide for increased absentee ballot access;[7] (c) requiring local BOEs to accept absentee ballots received by the day after Election Day even if the envelope did not contain a postmark;[8] and (d) establishing a notice and opportunity to cure process for voters to correct certain minor errors on their completed absentee ballots so that their vote would be properly counted.[9]

Separately, on August 24, 2020—just two days before the Project 1599 robocall was placed—the Governor issued another voting-related executive order, which among other things, required all local BOEs to send information to every registered voter informing them of the process for applying for an absentee ballot for the 2020 general election, and specifying the deadline for applying and explaining that voters could apply over the phone or online as well.[10]

Based on my experience as a longstanding elections official, absentee ballots are an efficient and effective voting method. Voting by absentee ballot is often the only viable method for voters who have difficulty or cannot vote in person at the polls. Together, the above-referenced reforms and emergency measures expanding the use and applicability of absentee ballots served a critical public health function and allowed voters to cast ballots without fear of contracting COVID

---

[6] S.8015D, 2020 Leg. Sess. (N.Y. 2020), (enacted Aug. 20, 2020).
[7] S.8783A, 2020 Leg. Sess. (N.Y. 2020), (enacted Aug. 20, 2020).
[8] S.8799, 2020 Leg. Sess. (N.Y. 2020) (enacted Aug. 20, 2020).
[9] S.8370B, 2020 Leg. Sess. (N.Y. 2020), (enacted Aug. 21, 2020 with modifications made pursuant to Exec. Order 202.58 (Aug. 24, 2020)).
[10] Exec. Order 202.58 (Aug. 24, 2020).

at a public poll site. The Project 1599 robocall, however, had the capacity to undermine all of the above-described reforms and emergency measures because the robocall delivered false information about purported negative consequences that would result from absentee or mail-in voting.

The Project 1599 robocall is also the type of message and disinformation campaign that the United States Election Assistance Commission recommends should be reported to state and federal authorities as potential voter intimidation.[11]

## V. Conclusion

As a longstanding election official, I am deeply concerned by the spread of disinformation that has the potential to intimidate or otherwise confuse voters about the safety of our elections process. Among the types of disinformation and intimidation that is particularly appalling are false messages or rumors that threaten or purport to reveal negative consequences from voting. I believe strongly that disinformation and intimidation, such as the Project 1599 robocall, should be deterred and prevented to the fullest extent possible.

/s/ Douglas Kellner

---

[11] See U.S. EAC, Other National Contact Information, available at: https://www.eac.gov/voters/other-national-contact-information.

# EXHIBIT A

# DOUGLAS A. KELLNER

132 Manhattan Avenue          470 Park Avenue South
New York, New York 10025      New York, New York 10016
(212) 866-0752                (212) 889-2121

PROFESSIONAL EXPERIENCE

| | |
|---|---|
| 1982 - present | **KELLNER HERLIHY GETTY & FRIEDMAN LLP**<br>Partner in law firm specializing in international asset recovery, commercial and real estate litigation (formerly known as Kellner Chehebar & Deveney) |
| 1977 - 1982 | **DEWEY BALLANTINE**<br>Associate attorney.handling real estate and antitrust litigation. |
| 1979 - 1980 | **NEW YORK STATE ASSEMBLY COMMITTEE ON BANKS**<br>Special Counsel to Chairman Herman D. Farrell, Jr. Supervised committee staff, drafted and revised legislation. |

EDUCATION

COLUMBIA UNIVERSITY SCHOOL OF LAW, J. D., 1977
Harlan Fiske Stone Scholar; Certificate with Honors, Parker School of Foreign and Comparative Law; elected to the University Senate.

INTERNATIONAL INSTITUTE OF HUMAN RIGHTS, STRASBOURG (FRANCE), 1975, Certificate in International Human Rights Law.

GEORGETOWN UNIVERSITY SCHOOL OF FOREIGN SERVICE, B.S.F.S. *magna cum laude,* 1973; Phi Beta Kappa; Tropais Valedictorian; Maguire Medal as outstanding student; President, Undergraduate Student Body; Dean's Citation for Outstanding Achievement.

COMMUNITY SERVICE

NEW YORK STATE BOARD OF ELECTIONS, Commissioner and Co-Chair 2005-present; New York State Representative on the Standards Board of the United States Election Assistance Commission, 2015-present

NEW YORK CITY BOARD OF ELECTIONS, New York County Elections Commissioner 1993-2005

NEW YORK COUNTY DEMOCRATIC COMMITTEE, Co-Chair, Law Committee, 1981-1993, Chair Rules Committee, 1997-2005

NEW YORK CITY COMMUNITY SCHOOL BOARD #3, Member 1992-93

INTERNATIONAL CHAMBER OF COMMERCE—FRAUDNET, Chair, North America Region, 2013-present

VERIFIED VOTING FOUNDATION, Board of Advisors, 2005-present

ACCURATE VOTING FOUNDATION, Board of Advisors, 2006-2012

MCBURNEY YMCA, Board of Directors, 1991-1993

MANHATTAN VALLEY HOUSING CLINIC, Founding member, President, 1982- 1987, Community based volunteer organization providing housing assistance.to low income residents.

HARLEM WASHINGTON HEIGHTS COMMUNITY RENAISSANCE CORPORATION, Chairman of Board, 1976-1979; Helped to organize this program to provide alternative housing and employment opportunities.

# EXHIBIT B

DOUGLAS A. KELLNER

TESTIMONY ON ELECTION MATTERS SINCE JANUARY 1, 2017

Eve Silberberg et al. v. Board of Elections of the State of New York et al., 16-cv-08336(PKC) SDNY

In re Gordon Boyd v. William Fruci et al., Sup. Ct., Saratoga County No. 3418/17

Andrew Yang et al. v. New York State Board of Elections et al., 20-cv-03325 (AT) SDNY

Emily Gallagher et al. v. New York State Board of Elections et al., 20-cv-5504(AT) SDNY

Mathew Harley et al. v. Peter S. Kosinski et al., 20-cv-4664(BMC) EDNY

State of New York et al. v. Donald J. Trump et al., 20-cv-2340 (EGS) US District Court for the District of Columbia


PUBLICATIONS AND STATEMENTS ON ELECTIONS MATTERS SINCE JANUARY 1, 2012

Testimony before the New York City Council Committee on Government Operations, August 8, 2012

Testimony before the New York City Council Committee on Government Operations, November 21, 2013

Memorandum to the Commissioners of the Board of Elections in the City of New York, December 10, 2013

Testimony before the New York State Assembly Standing Committee on Election Law Subcommittee on Election Day Operations and Voter Disenfranchisement,

November 28, 2017

Statement for the New York City Council Committee on Governmental Operations, December 13, 2017

Statement for the Election Assistance Commission, April 18, 2018

Statement for the New York City Council Committee on Governmental Operations and Committee on Oversight and Investigations, November 20, 2018

Statement for the New York City Council Committee on Governmental Operations, December 13, 2017

Memorandum to the Commissioners of the Board of Elections in the City of New York, August 4, 2020

Testimony Provided to the Senate Standing Committee on Elections, Senate Standing Committee on Local Government, Assembly Standing Committee on Election Law Assembly Standing Committee on Local Governments: Elections in a Pandemic: A Review of the 2020 Primaries, August 11, 2020

Report to the Senate Committee on Elections: Review of Elections Administration and Voting Rights in New York State, September 21, 2021

"Cordell Cleare Poised to Join Storied History of Harlem-West Side Senate District" Gotham Gazette, September 30, 2021 https://www.gothamgazette.com/public-safety/130-opinion/10800-cordell-cleare-history-harlem-west-side-state-senate-district

# DOUGLAS A. KELLNER

# TESTIMONY ON ELECTION MATTERS

Bethany Kosmider v. Mark Whitney et al., Sup. Ct., Essex Co.  265/16

Matter of Alan Flacks et al. v. Board of Elections in the City of New York et al.,, Sup. Ct., N.Y. Co. 101057/13

Randy Credico et al. v. New York State Board of Elections, SDNY 10 Civ 4555

Liberty Election Systems, LLC v. New York State Board of Elections et al., Sup. Ct., Albany Co., 789-08

Avante International Technology, Inc. v. New York State Board of Elections et al., Sup. Ct., Albany Co., 1055-08

United States v New York State Board of Elections et al., NDNY 06 Civ 263

Assemblyman Reed Gusciora et al. v. James E. McGreevey et al., N.J. Superior Ct., Mercer Co. MER-L-2691-04

Margarita Lopez Torres et al. v. New York State Board of Elections et al., SDNY 04 Civ 1129

Douglas A. Kellner v Board of Elections in the City of New York, et al., Sup. Ct., N.Y Co. 1995

Sequoia Pacific Voting Equipment, Inc. v New York State Board of Elections et al., Sup. Ct., Albany Co. 963-96

Mary France et al. v. Mario M. Cuomo et al., SDNY 92 Civ 1144

Angel del Toro et al. v. Mario M. Cuomo et al., SDNY 92 Civ 7739