

July 29, 2022

**VIA ECF**

The Honorable Victor Marrero
United States District Court
Southern District of New York
500 Pearl Street
New York, NY 10007-1312

**Orrick, Herrington & Sutcliffe LLP**
51 West 52nd Street
New York, NY 10019-6142

+1 212 506 5000

**orrick.com**

**Franklin Monsour Jr.**

E  fmonsour@orrick.com
D  +1 212 506 3512

Re:    *National Coalition on Black Civic Participation et al.* v. *Wohl et al.*, No. 20-cv-8668

Dear Judge Marrero:

On behalf of all Plaintiffs in the above-referenced action, we write to move the Court to strike the opinions rendered by Defendants' expert, Charles Ribando.  Mr. Ribando offers two opinions in his expert report: 1) "Voter Registration Records Are Utilized By Law Enforcement, Debt Collectors, and the CDC in the Manner in Which the Robocall Suggests," Ex. 1 (Expert Report ("R.")) at 3;[1] and 2) "The Robocall is Not Intimidating," *id*. at 5.  Mr. Ribando's opinions are inadmissible under Federal Rule of Civil Procedure 702 and *Daubert v. Merrell Dow Pharmaceuticals Inc.*, 509 U.S. 579 (1993), because they are improper legal conclusions, *United States v. Bilzerian*, 926 F.2d 1285, 1294 (2d Cir. 1991), and he is not "qualified as an expert by knowledge, skill, experience, training, or education" and his opinions will not "help the trier of fact to understand the evidence or to determine a fact in issue," Fed. R. Civ. P. 702.

**I.     Both of Mr. Ribando's Opinions are Improper Legal Conclusions**

Mr. Ribando offers his first opinion, essentially that the statements in the robocall are true, as support for his second opinion, that the robocall is not intimidating; he apparently reasons that because the statements are true, they cannot be intimidating.  "[T]he robocall, which merely highlights some of the intrinsic infirmities of mail-in voting, cannot be perceived as intimidating because it is true and accurate." R. at 6.  He testified similarly at his deposition:

> Yes.  Yes. Not -- in other words, I was asked to review the call for its accuracy.  If somebody were to feel intimidated by that, I can't put myself in somebody else's shoes.  I could only say is the content of that call accurate.  I can't put myself in

---

[1] The Report does not contain page numbers; the page numbers listed herein are counting from the first page, not including the filing cover pages.

>somebody else's shoes and say well to me I was intimidated by that because nothing in that call to me in my expertise was inaccurate.

Ex. 2 (Ribando Depo. Tr. ("Tr.")) at 182:4-13.  Thus, the first opinion, that the robocall is true and accurate, is only purportedly relevant in relation to the second opinion that the robocall is not intimidating.

Putting aside this flawed reasoning, the opinion of what does and does not constitute intimidation—particularly voter intimidation under the Voting Rights Act, Section 11(b), and 42 U.S.C. § 1985(3) of the Ku Klux Klan Act, which is the central issue of this case—is a legal conclusion unsuitable for expert opinion.  "As a general rule an expert's testimony on issues of law is inadmissible."  *Bilzerian*, 926 F.2d at 1294.  "[A]lthough an expert may opine on an issue of fact within the jury's province, he may not give testimony stating ultimate legal conclusions based on those facts."  *Id*.; *see also S.E.C. v. Lyon*, No. 1:06-cv-14338, 2009 WL 6325519, at *1 (S.D.N.Y. Mar. 18, 2009) ("[T]he 'conclusions' defendants' experts seek to draw from those opinions are inappropriate for expert testimony, as they amount almost entirely to conclusions of fact or evidentiary weight that are for a jury to reach, or conclusions of law that will be resolved by this Court.").  Indeed, this Court previously ruled on this very issue: "the context in which Defendants' message was communicated supports a conclusion that the message constituted a threat or intimidation."  Dkt. 38 (Order on TRO) at 48.  The Court will have to do so again in deciding the recently filed motions for summary judgement.

Mr. Ribando's opinions are explicitly about these same legal questions the Court will decide.  *See, e.g*., R. at 6 ("For example, relying on New York Penal Code's definition of intimidation, the robocall simply does not have these elements."); *id*. (opining that the purpose of the "civil Ku Klux Klan Act" is limited to "extralegal violence"); *see also* Tr. at 185:2-6 ("Q: And here based on your decades in law enforcement your legal conclusion is that this was not intimidating, correct?  A: Yes.").  Accordingly, Mr. Ribando's offered opinions are simply improper as expert evidence.  For this reason alone, his opinions should be stricken.

## II. Mr. Ribando is Not Qualified to Provide His Offered Opinions

Even if his legal conclusions were an appropriate type of expert opinion, Mr. Ribando's proffered experience as "an experienced lawman and private investigator," R. at 3, does not qualify him to provide them.  "[W]hile experience can provide the basis to qualify a witness as an expert, the experience must be demonstrated and have direct relevance to the issues in the case."  *Krause v. CSX Transp.*, 984 F. Supp. 2d 62, 79 (N.D.N.Y. 2013) (internal citation omitted).  Here, Mr. Ribando has never sat for an expert deposition or prepared an expert report prior to this case.  Tr. at 10:10-13; 37:25-38:4.  The only instance in which he was previously retained as an expert witness was in a murder case.  *Id*. at 10:18-21; 28:18-29:8.  As discussed below, he additionally lacks the subject-matter experience to qualify as an expert in this case.

      A.      Opinion 1: "Voter Registration Records Are Utilized By Law Enforcement, Debt Collectors, and the CDC in the Manner in Which the Robocall Suggests"

The robocall Mr. Ribando opines on stated as follows:

> Hi, this is Tamika Taylor from Project 1599, the civil rights organization founded by Jack Burkman and Jacob Wohl . . . . Mail-in voting sounds great, but did you know that if you vote by mail, your personal information will be part of a public database that will be used by police departments to track down old warrants and be used by credit card companies to collect outstanding debts? The CDC is even pushing to use records for mail-in voting to track people for mandatory vaccines. Don't be finessed into giving your private information to the man, stay safe and beware of vote by mail.

D.E. 214 (Rule 56.1 Statement) ¶ 4. As set forth in Plaintiffs' motion for summary judgement, the robocall was sent to approximately 85,000 phone numbers in numerous jurisdictions, including nearly 5,500 phone numbers in New York, and the rest in Cleveland, Minneapolis, Chicago, Pittsburgh, Detroit, Philadelphia, and Arlington, Virginia. *Id.* ¶¶ 1-2, 15. However, Mr. Ribando conceded that he has no experience outside of the State of New York. Tr. at 173:14-25 (noting he is not familiar with other states' election laws); *id.* at 195:11-19 (can only speak to New York). Further, Mr. Ribando has no experience with collecting debts: "I've never been hired by a debt collector, but I *would assume* they would – they would engage a private investigator to help them with debt collections." Tr. at 232:5-12 (emphasis added). Moreover, nowhere does Mr. Ribando provide any experience with the CDC or "mandatory vaccines."

     Mr. Ribando fares no better with respect to the robocall's *threat* that police will use personal information from voting by mail to "track down old warrants." While his public service with the New York City Police Department and the Nassau County District Attorney's Office is uncontrovertibly noble, Mr. Ribando has no specified expertise on this statement in the robocall. He was unfamiliar with the New York Board of Election's Website and its following statement: "New York State Election Law Section 3-1035 prohibits using information derived from voter registration records for nonelection purposes." Tr. at 230:23-231:2. While he conceded this law would bar debt collectors from using any voter registration information for nonelection purposes, he opined without basis that it would not apply to police, or even private investigators. *Id.* at 232:5-22. Mr. Ribando eventually conceded that the law, as written, does not provide exceptions for police, private investigators, or the CDC. *Id.* at 233:21-234:7.

     More fundamentally, Mr. Ribando made clear that his opinion was based merely on the fact that police could look voter information up online—apparently like anyone else:

> I am simply saying that part of identifying someone -- part of -- one of many, many different things that helps identify somebody is where they are registered to vote, so your -- I think your -- and correct me if I am wrong, and I am not trying to be combative, I think you are say to -- making a statement to say the only way I identify somebody is where they vote or where they get their absentee ballot, and that is not

> an accurate statement. It is one of 10,000 different things you use. So your -- you are absolutely right with the questions you asked me, but that would be pertaining to if the only way I was identifying where somebody lives is specifically based on their voter registration. I am saying that is one of many.

Tr. at 236:5-23. It is not clear exactly what Mr. Ribando is saying. That the police can search for information is not novel, or the product of an expert's insight; nor does it address the statement in the robocall that police will use mail-in voting registration information "to track down old warrants."

Mr. Ribando further proffers that mail-in registration information can be mixed in with many other sources of information (apparently for online search platforms) and will more accurately reflect a person's address the same way a properly addressed utility bill would.

> I'm saying it is more accurate. I won't specifically go off a voter registration for somebody's address. I would say there is a number of different things that come into play, and one of which is if somebody registers a mail-in ballot that will -- that will enhance that is the address I am looking for.

*Id.* at 214:22-215:5.

> No it's disclosing -- that is another way. I would have to go a little further to get it, but what I am saying is if that mail was going to that specific address, whether it was a utility bill or whether it was an absentee ballot, it is going to confirm the address of that person.

*Id.* at 216:21-217:4. Under the most charitable interpretation, Mr. Ribando is opining that mail-in voting requires a person to provide their address so they can receive a ballot, which could make their address accessible online. This deduction is unremarkable and unrelated to police practices, which Mr. Ribando does not address. None of this will "help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Civ. P. 702(a). Moreover, such opinions should be furthered excluded under Federal Rule of Civil Procedure 403 because their low probative value is outweighed by the prejudice of labeling them as expert evidence. *In re "Agent Orange" Prod. Liab. Litig.*, 611 F. Supp. 1223, 1256 (E.D.N.Y. 1985) (Weinstein, J.), aff'd, 818 F.2d 187 (2d. Cir. 1987), cert. denied, 487 U.S. 1234 (1988) (403 exclusion of expert opinion is appropriate where there is a "false aura of scientific infallibility, coupled with low probative value"); *U.S. v. Frazier*, 387 F.3d 1244, 1263 (11th Cir. 2004) (en banc) ("Simply put, expert testimony may be assigned talismanic significance in the eyes of lay jurors, and, therefore, the district courts must take care to weigh the value of such evidence against its potential to mislead or confuse.").

### B.     Opinion 2: "The Robocall is Not Intimidating"

Mr. Ribando has no relevant experience with voter intimidation. While Mr. Ribando vaguely described his prior role of having been an executive in charge of multiple police divisions, which purportedly oversaw voter intimidation cases in the public corruption context, he provided

no examples of those cases. Tr. at 158:22-160:8. Instead, Mr. Ribando conceded that public corruption cases he was discussing "didn't deal with voting rights or voter intimidation." *Id.* at 160:11-19. And he was never "part of a team that prosecuted a voter intimidation case." *Id.* at 167:19-22.

Finally, as alluded to above, Mr. Ribando's opinion regarding whether Defendants' robocall was intimidating is irrevocably based on his prior, uniformed opinion that the robocall was true and accurate:

> Question: So we may save time by doing it right now, but your -- the entirety of your expert opinion with respect to that opinion 2 is that because you believe the call is true, you found it not to be intimidating, correct?
>
> MR. KLEINMAN:  Objection.
>
> Answer: Yes.  Yes.  Not -- in other words, I was asked to review the call for its accuracy.  If somebody were to feel intimidated by that, I can't put myself in somebody else's shoes.  I could only say is the content of that call accurate.  I can't put myself in somebody else's shoes and say well to me I was intimidated by that because nothing in that call to me in my expertise was inaccurate.
>
> Question: And your expertise is from your understanding of the law you determined that the call was not intimidating, correct?
>
> Answer: Correct, but again if – if somebody is stating a fact, I don't know how that can be intimidating.  Somebody could take it as that, but I can't opine on what somebody else's perception of the call was.  That wasn't my job.  I mean I guess you can let a hundred people listen to that call, and you might get somebody to say I am intimidated for whatever reason.  But again my job was to look at the call and say is there anything – to be honest with you to go into it deeper I thought the woman on the call was very -- sounded very professional on the phone, and she just merely stated to me what the facts were.

Tr. at 181:21-183:9. In conceding that he did not look at "Election law and how it defines voter intimidation" in preparation for his deposition, Tr. at 178:12-17, Mr. Ribando put his reasoning more succinctly: "if I thought there was a possibility of voter intimidation regarding this call I might have done that, but there was nothing in this call that was intimidating to anybody. <u>Nobody told anybody don't vote</u>," *id.* at 178:20-25 (emphasis added). Mr. Ribando is simply unqualified to opine on what constitutes voter intimidation.

### III.    Conclusion

For the foregoing reasons, Plaintiffs respectfully request that the Court grant their motion in its entirety and strike the opinions of Mr. Ribando.

          Respectfully submitted,

          /s/ *Franklin Monsour Jr.*
          Franklin Monsour Jr.

CC:    All counsel of record (via ECF)