


August 4, 2022

**VIA ECF**
The Honorable Victor Marrero
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007-1312

Re: *National Coalition on Black Civil Participation et al. v. Wohl et al.*, United States District Court, Southern District of New York, Case No. 1:20-cv-08668

Dear Judge Marrero:

We write on behalf of the Defendants in the above-referenced matter in opposition to Plaintiffs' motion to strike the opinions rendered by Defendants' expert, Charles Ribando. Mr. Ribando submitted his report outlining his decades of experience as a detective and private investigator.

The assessment of expert testimony is governed by Rule 702 of the Federal Rules of Civil Procedure, which provides that an expert witness may testify, in the form of an opinion or otherwise, "if scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue." This standard is designed to be a liberal one that favors the admission of expert testimony. As the Second Circuit has explained, "doubts about whether an expert's testimony will be useful should generally be resolved in favor of admissibility unless there are strong factors such as time or surprise favoring exclusions." *United States v. Jakobetz*, 955 F.2d 786, 797 (2d Cir. 1992). "Any more rigorous approach would deny the jury's constitutional role." *In re Zyprexa Prods. Liab. Litig.*, 489 F. Supp. 2d 230, 285 (E.D.N.Y. 2007). This means that district courts should presume expert evidence is reliable. *Borawick v. Shay*, 68 F.3d 597, 610 (2d Cir. 1995); *see also Clarke v. LR Systems*, 219 F. Supp. 2d 323, 332 (E.D.N.Y. 2002) ("[T]he Second Circuit's standard for admissibility of expert testimony is especially broad.") (collecting authority). Indeed, the Supreme Court has "expressed its faith in the power of the adversary system to test 'shaky but admissible' evidence, and advanced a bias in favor of admitting evidence short of that solidly and indisputably proven to be reliable." *Borawick*, 68 F.3d at 610 (*citing Daubert*, 509 U.S. at 596).

In addition to satisfying Rule 702, expert testimony is also required to satisfy the provisions of Rule 403. Pursuant to Rule 403 otherwise admissible testimony can be excluded if—and only if—"its probative value is *substantially* outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless



1399 Franklin Avenue, Suite 200, Garden City, N.Y. 11530 OFFICE: 516.880.8170 FAX: 516.880.8171




presentation of cumulative evidence." (emphasis supplied). "Unfairness does not result from the tendency of the evidence to prove an adversary's case." *United States v. Ballesteros Gutierrez*, 181 F. Supp. 2d 350, 355 (S.D.N.Y. 2002). Rather, unfair prejudice, "means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." Fed. R. Evid. 403, advisory committee's notes. Because Rule 403 excludes relevant evidence, "it is an extraordinary remedy that must be used sparingly." *George v. Celotex Corp.*, 914 F.2d 26, 31 (2d Cir.1990).

Plaintiffs ignore the fact that Mr. Ribando's report is a direct response to the Court's own pre-discovery ruling that:

> [t]he robocall message contains various false statements ... the publication of information about voters in public records is a function of voter registration, and unrelated to whether a voter chooses to vote by mail or in person [and that] ... Defendants' contention that voting by mail increases the likelihood of dissemination of a voter's personal information is baseless... Defendants provide no credible evidence, and the Court finds none in the record of this proceeding, to support a claim that publicly available voter-registration lists are used by law enforcement, debt collectors, and the CDC in the manner the robocall alleges. [Docket No. 38].

Mr. Ribando's testimony was proffered in large part to rebut what Defendants, respectfully, perceive as the Court's misapprehension of facts, which flowed from both Plaintiffs' misrepresentations and the record. His testimony is therefore critical in filling a void in the record based on his lifetime of experience in law enforcement and as a licensed investigator who certainly qualifies as an expert to provide testimony about the methodologies of police and warrant squads, and the tactics used by licensed investigators to track down debtors. Mr. Ribando certainly did not render a legal opinion. In fact, when pressed about case law, Mr. Ribando properly demurred, speaking solely to the discretion he employed while working, among other roles, as a detective, and later as the Executive Chief of Investigations for the Nassau County District Attorney's Office, and then the Deputy County Executive of Public Safety for the Nassau County Office of the County Executive.

Plaintiffs repeatedly mischaracterize Mr. Ribando's testimony about the practices of law enforcement, debt collectors, and government entities in an obvious attempt to deflect attention from the substance of his testimony because it undercuts their claims about the veracity and impact of the Robocall. Plaintiffs conflate the purpose of Mr. Ribando's testimony by relying on questions *they asked* at his deposition (rather than relying on the substance of his report) to erroneously argue

that Mr. Ribando's "first opinion, that the robocall is true and accurate, is only purportedly relevant in relation to the second opinion that the robocall is not intimidating." [Docket No. 219]. But this is not the purpose of Mr. Ribando's testimony; rather, the purpose is to corroborate that private and public entities regularly use mail-in voting records to locate and track individuals for myriad reasons. [Docket No. 219 at Exhibit 1].

For example, Mr. Ribando, as the former Deputy County Executive of Public Safety, would reasonably expect that during a pandemic the Center for Disease Control would use all available public records (including voter registration records) to facilitate the tracking of issues related to COVID-19, including the federal government's mandatory vaccine requirements for its employees. *Id.* While Plaintiffs attack the accuracy of Mr. Ribando's conclusions, their arguments go, if at all, to the weight and not admissibility. *Fin. Guar. Ins. Co. v. Putnam Advisory Co, LLC*, 2020 U.S. Dist. LEXIS 116036, *3 (S.D.N.Y. 2020); *Cedar Petrochemicals, Inc. v. Dongbu Hannong Chem. Co.*, 769 F. Supp. 2d 269, 285 (S.D.N.Y. 2011) ("Questions over whether there is a sufficient factual basis for an expert's testimony may go to weight, not admissibility.").

A witness can be an expert based on experience alone so long as the district court "require[s] an experiential witness to "explain how [his] experience leads to the conclusion reached, why [his] experience is a sufficient basis for the opinion, and how [his] experience is reliably applied to the facts." *United States v. Wilson*, 484 F.3d 267, 274 (4th Cir. 2007) (citations omitted). Thus, Mr. Ribando should at the very least be provided the opportunity to do so.

Indeed, Plaintiffs' argument that Mr. Ribando, who has over 35-years of experience leading law enforcement and government agencies, is not an expert in these matters is plainly wrong. His report expressly states highlights his myriad of experience working for and with state and federal law enforcement agencies, as well as his "in-depth comprehension of agency needs in assessment, planning, investigation methods, project management, case management, personnel leadership, and fiscal management at all levels of government." [Docket No. 219 at Exhibit 1]. Mr. Ribando is a "recognized leader in investigation methodologies in areas from local street and violent crime to global terrorism and corruption." *Id.* Mr. Ribando's report and testimony reflect that he is a highly experienced law enforcement and government official and investigator who has applied reasonable and reliable methods to help jurors identify and understand the practices of police departments, warrant squads, debt collectors, private investigators, and government entities such as the Food and Drug Administration. [*See* Docket No. 219 at Ex. 1].

The fact that at his deposition Mr. Ribando was unfamiliar with a disclaimer meant for the general public contained within the New York Board of Election's website is irrelevant because it does not speak to Mr. Ribando's knowledge or expertise regarding the actual practices of police departments, warrant squads, debt collectors, private investigators, and government entities who utilize voter information for the exact purposes articulated in the Robocall; *i.e.*, tracking down old

warrants, collecting outstanding debts, tracking vaccines mandated by the federal government for its employees, and the irrefutable fact that databases relied upon by investigators continue to abstract from Board of Elections data. In short, such data is readily available from third parties who do not even post such disclaimers In any event, Mr. Ribando' so-called concessions in testimony elicited directly from the Plaintiffs are incomplete and out of context. Plaintiffs attempt to use the answers derived from their own pointed questions as a basis for Mr. Ribando's disqualification, while ignoring the substance of his report, is not an appropriate basis to strike his testimony. *See, e.g.*, *McCullock v. H.B. Fuller Co.*, 61 F.3d 1038, 1044 (2d. Cir. 1995) ("Disputes as to the strength of [an expert's] credentials, faults in his use of . . . a methodology, or lack of textual authority for his opinion, go to the weight, not the admissibility of his testimony.").

Plaintiffs' argument that Mr. Ribando is unqualified to offer his opinion in this matter because he did not look up the definition of "intimidation" in the Election Law prior to his deposition is as disingenuous as it is a red herring. *First*, Mr Ribando's report does not render a legal opinion or interpretation of the Election Law, but rather police investigative methods. He did, however, offer that he has encountered actionable intimidation in a criminal context. That Plaintiffs' argument is a complete red herring, however, can be discerned from the fact that New York State Election Law, for example, does not actually define "intimidation," and that the only reference to intimidation of voters that is vaguely relevant, namely, ELN § 17-150, speaks only of the use or threats of "force, violence or restraint, or inflicts or threatens to inflict any injury, damage, harm or loss..." *Id.* Accordingly, Mr. Ribando's experiential observations as to what constitutes intimidation are still valuable as nothing in the record that meets the foregoing standard. *Second*, Mr. Ribando did not offer an opinion as to what constitutes intimidation, rather, he merely opined that the Robocall was not intimidating. While Plaintiffs allege that this is "the central issue of this case" and "a legal conclusion unsuitable for expert opinion", this is ironic given that their own experts' reports center around the issue of voter intimidation in relation to the Robocall. *See* **Exhibit A**. Whether the substance of the Robocall was actually intimidating is a question of fact for the jury, which will be aptly aided by the testimony of both Plaintiffs' and Defendants' experts and can be accompanied by jury instructions limiting the scope of this testimony.

In other words, the proposed testimony does not question what the term "intimidation" means in this context, but instead serves to inform the jury on the weight to give testimony about whether the Robocall's message was intimidating. Plaintiffs are free to attack the expert's conclusions through cross-examination, but the final assessment of those conclusions is left to the jury. *See, e.g., Highlands Cap.*, 2008 WL 282769 (S.D.N.Y. 2008) at *6 (The testimony "will likely prove helpful in allowing the trier of fact to better understand the evidence and providing the trier of fact with the tools necessary to make an ultimate determination.").




For the foregoing reasons, the Court should deny in its entirety Plaintiffs' motion to strike the opinions of Mr. Ribando.

Respectfully submitted,

/s/ *David M. Schwartz*
David M. Schwartz

/s/ *Randy E. Kleinman*
Randy E. Kleinman

cc: All counsel of record (via ECF)