UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

NATIONAL COALITION ON BLACK CIVIL PARTICIPATION, et al.,

        Plaintiffs,

-and-

People of the STATE OF NEW YORK, by its attorney general, LETITIA JAMES, ATTORNEY GENERAL OF THE STATE OF NEW YORK,

        Plaintiff-Intervenor,

v.

JACOB WOHL; JACK BURKMAN; J.M. BURKMAN & ASSOCIATES, LLC; PROJECT 1599; and JOHN and JANE DOES 1-10,

        Defendant.

20-cv-08668 (VM)

**BRIEF OF THE NEW YORK CIVIL LIBERTIES UNION AS AMICUS CURIAE IN SUPPORT OF NEITHER PARTY CONCERNING PLAINTIFF-INTERVENOR'S MOTION FOR SUMMARY JUDGMENT ON N.Y. CIVIL RIGHTS LAW SECTION 9**

THE NEW YORK CIVIL LIBERTIES
UNION FOUNDATION

Perry Grossman
Arthur Eisenberg
Christopher Dunn
125 Broad Street
New York, New York 10004
Phone: (212) 607-3300
pgrossman@nyclu.org

Dated: August 5, 2022
      New York, New York

**TABLE OF CONTENTS**

INTEREST OF AMICUS CURIAE ........................................................................................... 1

SUMMARY OF ARGUMENT ................................................................................................. 1

BACKGROUND ....................................................................................................................... 2

ARGUMENT .............................................................................................................................. 4

   I.    SECTION 9 PROHIBITS PRIVATE ACTORS FROM INTERFERING WITH ANY ELIGIBLE NEW YORK VOTER'S FREE EXERCISE OF SUFFRAGE. ............................... 4

   II.   SECTION 9 PROHIBITS INTEFERENCE WITH ANY LAWFUL METHOD OF ELECTORAL PARTICIPATION, INCLUDING ABSENTEE VOTING. ............................... 6

   III.   SECTION 9 PROHIBITS AN EXPANSIVE RANGE OF CONDUCT THAT COULD INTERFERE WITH THE FREE EXERCISE OF SUFFRAGE. ................................................. 8

   IV.   LIABILITY UNDER SECTION 9 DOES NOT REQUIRE PROOF THAT A DEFENDANT ACTUALLY PREVENTED ANYONE FROM VOTING. ............................ 11

CONCLUSION ........................................................................................................................ 12

# TABLE OF AUTHORITIES

## CASES

*Arizona State Legislature v. Arizona Indep. Redistricting Comm'n*, 576 U.S. 787, 813 (2015) .... 8

*Burson v. Freeman,* 504 U.S. 191 (1992) ................................................................. 10, 11

*Citizens for Police Accountability Pol. Comm. v. Browning*, 572 F.3d 1213 (11th Cir. 2009).... 11

*Hopper v. Britt*, 203 N.Y. 144 (1911) ................................................................................. 6

*In re Barber*, 263 N.Y.S.2d 599, *aff'd sub nom. Barber v. Lomenzo*, 16 N.Y. 2d 963 (1965) ....... 7

*League of United Latin Am. Citizens - Richmond Region Council 4614 v. Pub. Interest Legal Found*, No. 18 Civ. 423, 2018 WL 3848404 (E.D. Va. Aug. 13, 2018) ..................................... 4

*League of Women Voters of N.Y. State v. N.Y. State Bd. of Elections*, No. 160342/2018, 2019 WL 4899034 (N.Y. Sup. Ct. Oct. 4, 2019) ................................................................. 1

*Palla v. Suffolk Cnty. Bd. of Elections*, 31 N.Y. 2d 36 (1972) ........................................... 1

*People by James v. Schofield*, 199 A.D. 3d 5 (N.Y. App. Div. 2021) ............................... 1

*People v. Dieppa*, 601 N.Y.S. 2d 786 (N.Y. Sup. Ct. 1993) ............................................. 4

*People v. Longo*, 227 N.Y.S. 2d 815 (N.Y. App. Div. 1962) ........................................... 12

*Salonen v. Barbella*, 409 N.Y.S. 2d 759 (N.Y. App. Div. 1978) ....................................... 4

*Smith v. Wade*, 461 U.S. 30 (1983) .................................................................................... 8

*Spring Valley Branch of the NAACP v. Rockland County Bd. of Elections*, Index No. 035092/2020 (N.Y. Sup. Ct. Oct. 29, 2020) ................................................................. 1

*St. John v. Bd. of Elections of Cnty. of Albany*, 546 N.Y.S.2d 301 (N.Y. Sup. Ct. 1989) .............. 7

*United States v. Reed*, 88 F.3d 174 (2d Cir. 1996) .......................................................... 12

*Vogt v. City of Hays, Kansas*, 844 F.3d 1235 (10th Cir. 2017) ......................................... 8

## STATUTES

1787 N.Y. Laws, Tenth Session, § 9 ............................................................................... 5, 8

3 Edw. 1 c. 5 (Eng.) ........................................................................................................... 8

N.Y. Civ. Rights Law § 9 ............................................................................................. passim

N.Y. Election Law § 11-204(4) ............................................................................................. 3

N.Y. Election Law § 8-400(1)(b) .......................................................................................... 3

N.Y. Election Law § 10-108(1) ............................................................................................. 3

N.Y. Rev. Stat. Chap. IV, § 4 (1829) .................................................................................... 7

S.8783A, 2020 Leg. Sess. (N.Y. 2020), (enacted Aug. 20, 2020) ...................................... 3

## CONSTITUTIONAL PROVISIONS

N.Y. Const. § VII (1777) ........................................................................................................ 5

N.Y. Const. art.I, § 1 .............................................................................................................. 9

N.Y. Const. art.II § 5 .............................................................................................................. 5

N.Y. Const. art.II, § 1 ............................................................................................................. 6

N.Y. Const. art.II, § 1 (1846) ................................................................................................. 5

N.Y. Const. art.II, § 2 ............................................................................................................. 7

N.Y. Const. art.II, § 4 (1894) ................................................................................................. 5

N.Y. Const. art.II, § 5 ............................................................................................................. 7

N.Y. Const. art.II, § 7 ............................................................................................................. 7

## OTHER AUTHORITIES

Merriam-Webster Online Dictionary ............................................................................. 9, 11

Noah Webster, *An American Dictionary of the English Language* (1828) ............................... 9, 11

S. Johnson, *A Dictionary of the English Language* (1755) ........................................ 8, 9, 11

*Stormonth's English Dictionary* 584 (1884) ......................................................................... 9

# INTEREST OF AMICUS CURIAE

The New York Civil Liberties Union is a non-profit, non-partisan organization dedicated to the principles of liberty and equality enshrined in the United States and New York State Constitutions. In support of those principles, the NYCLU has appeared before New York courts on behalf of voters in cases involving the right of electoral suffrage under state law, including *Palla v. Suffolk Cnty. Bd. of Elections*, 31 N.Y.2d 36 (1972); *People by James v. Schofield*, 199 A.D.3d 5 (N.Y. App. Div. 2021); *Spring Valley Branch of the NAACP v. Rockland County Bd. of Elections*, Index No. 035092/2020 (N.Y. Sup. Ct. Oct. 29, 2020); and *League of Women Voters of N.Y. State v. N.Y. State Bd. of Elections*, No. 160342/2018, 2019 WL 4899034 (N.Y. Sup. Ct. Oct. 4, 2019). The NYCLU submits this amicus brief to assist the Court in defining the scope of liability under Section 9 of the New York Civil Rights Law—a claim that received little attention in the plaintiffs' joint principal summary judgment brief. *See* ECF No. 213 at 23-24. Although first enacted in 1787, Section 9 has received no significant treatment from courts or scholars.

# SUMMARY OF ARGUMENT

New York Civil Rights Law Section 9 states that "All elections ought to be free; and no person by force of arms, malice, menacing, or otherwise, should presume to disturb or hinder any citizen of this state in the free exercise of the right of suffrage." Consistent with the New York State Constitution's broad protections for electoral participation, Section 9 protects against efforts by private actors to interfere unjustifiably with any eligible voter's free exercise of the right of suffrage, including a voter's lawful decision to vote by absentee ballot.

First, Section 9 states that "no person" shall engage in the proscribed conduct, which unambiguously provides that private parties are among those regulated by the statute. The statute also protects the right of "any citizen of this state," that is, all New Yorkers eligible to vote,

regardless of race. Second, Section 9 protects individuals in the "free exercise of the right of suffrage." To remain consistent with the New York State Constitution's comprehensive protections for the right to vote, this component of Section 9 should be interpreted to protect New Yorkers from wrongful interference with their participation in any part of the electoral process, including their choice to vote by absentee ballot or any other lawful means. Third, the text of Section 9 shows a calculated decision by the New York legislature to expand upon a fundamental English statute protecting the right to vote by prohibiting voter interference by any means "otherwise" in addition to "force of arms, malice, [or] menacing." Even if the statute were interpreted to reach only the categories of behavior expressly identified, Section 9's prohibition on "malice" would reach the conduct at issue here as "malice" includes "deliberate mischief" directed at interfering with the right to vote. Finally, Section 9's command that no person should "*presume to disturb or hinder*" voting makes clear that liability does not require that a voter be prevented from voting but only that the defendant attempt to disturb or hinder voting.

At this time, the defendants still have an opportunity to file a counterstatement of material facts. Amicus therefore does not take a position on how the Court should rule on the pending motion. However, should the Court find that during the administration of an election, the defendants disseminated false and intimidating information about the voting process with the purpose of hindering or disturbing New Yorkers in their decision to vote by absentee ballot, the Court should find the defendants liable under Section 9.

**BACKGROUND**

In 2020, New York State passed a slate of laws to provide voters with more ways to cast a ballot safely. Among other things, those laws provided that the COVID-19 pandemic constituted good cause for any registered voter to request an absentee ballot, *see* N.Y. Election Law § 8-

2

400(1)(b) (citing L.2020, c. 139, § 2 (2020)), and authorized boards of elections to accept applications for absentee ballots from any voter more than 30 days before the election. *See* S.8783A, 2020 Leg. Sess. (N.Y. 2020), (enacted Aug. 20, 2020). Boards of elections begin sending absentee ballots to voters at least 45 days before an election. *See* N.Y. Election Law § 10-108(1), 11-204(4). For the November 3, 2020 general election, boards of elections began sending out absentee ballots by September 18, 2020.[1] By then, New York voters had already been applying for absentee ballots for the November 2020 general election for some time.

On August 26, 2020 the defendants transmitted to residents of New York and other states a robocall that stated:

> Hi, this is Tamika Taylor from Project 1599, the civil rights organization founded by Jack Burkman and Jacob Wohl. Mail-in voting sounds great, but did you know that if you vote by mail, your personal information will be part of a public database that will be used by police departments to track down old warrants and be used by credit card companies to collect outstanding debts? The CDC is even pushing to use records for mail-in voting to track people for mandatory vaccines. Don't be finessed into giving your private information to the man, stay safe and beware of vote by mail.

ECF 209 at 4. The robocall was disseminated only 23 days before the deadline for boards of elections to send out the first absentee ballots.

This Court previously found that the information in this robocall "is manifestly false and meant to intimidate citizens from exercising voting rights." ECF No. 38 at 3-4; *see id*. at 9-10. Plaintiffs have adduced further evidence to support the proposition that information in the robocall was false and part of a strategy by the defendants to use false information ("make shit up") to conduct a "voter suppression effort." ECF No. 214 at 3, ¶ 6; *see id.* ¶¶ 6-8.

---

[1] New York State Board of Elections, 2020 Political Calendar, https://www.elections.ny.gov/NYSBOE/law/2020GenElecPoliticalCalendar.pdf.

Plaintiffs have also adduced evidence that New York voters who received the robocall were disturbed and/or hindered by it. One New York voter who received the robocall "found it scary and very threatening" and ultimately decided not to vote by mail. *Id.* at 6, ¶19. Another New York voter found the robocall to be "traumatic" due to a past criminal conviction and removed his name from the voter rolls. *Id.* at 6-7, ¶ 20. A third New York voter who had outstanding medical debt "worried whether her information would be shared with debt collectors" and felt "'alarmed,' 'anxious,' 'angry,' and 'scared.'" *Id.* at 7, ¶ 22. The defendants have not yet submitted a counterstatement of material facts.

## ARGUMENT

### I. SECTION 9 PROHIBITS PRIVATE ACTORS FROM INTERFERING WITH ANY ELIGIBLE NEW YORK VOTER'S FREE EXERCISE OF SUFFRAGE.

The plain text of Section 9 is consistent with other statutes that prohibit private parties from interfering with the right to vote. Section 9 provides that "no person," that is, without regard to whether they are a public official or private party, may interfere with New York citizens' right to vote. N.Y. Civ. Rights Law § 9. New York courts have held that civil rights statutes using the phrase "no person" apply to conduct by private individuals. *See, e.g.*, *Salonen v. Barbella*, 409 N.Y.S.2d 759 (N.Y. App. Div. 1978) (applying N.Y. Civ. Rights Law § 40-C to a private individual in the voter inference context); *People v. Dieppa*, 601 N.Y.S. 2d 786, 790 (N.Y. Sup. Ct. 1993) (finding private individual violated New York Civil Rights Law Section 40-C). Federal voting rights statutes that use "no person" have also been applied to private individuals. *See League of United Latin Am. Citizens - Richmond Region Council 4614 v. Pub. Interest Legal Found*, No. 18 Civ. 423, 2018 WL 3848404, at *3 (E.D. Va. Aug. 13, 2018) (finding that language of Section 11(b) of the Voting Rights Act "indicates Congressional intent to reach…private conduct").

Section 9 also protects the free exercise of suffrage for all citizens of New York who are eligible to vote without regard to race. The categorical language of Section 9 shows that the statute's protections are designed to be as capacious as the State Constitution's protections for the right to vote. The phrase "any citizen of this state," which has remained unchanged since Section 9 was first enacted in 1787, contains no reference to race, sex, or other protected characteristic. *Compare* 1787 N.Y. Laws, Tenth Session, § 9, *with* N.Y. Civil Rights Law § 9. At that time, the operative 1777 State Constitution guaranteed the right to vote only to property-owning men. *See* N.Y. Const. § VII (1777). By 1846, the State Constitution eliminated the property requirement and imposed only a one-year residency requirement for white men but provided that "no man of color" could vote unless they owned substantial property and had been a citizen of the state for at least three years. N.Y. Const. art. II, § 1 (1846). Section 9 was not amended to limit its protection to those few men of color who could vote. The State Constitution did not guarantee women's suffrage until 1917. N.Y. Amend. 1 (1917). By the breadth of its terms, Section 9's protection extended to encompass the rights of those newly eligible to vote every time the State Constitution expanded access to the franchise.

The plain text of Section 9 does not limit its protection only to certain classes of citizens, certain elections, or registered voters; instead, Section 9 extends to all "citizens of the state in the free exercise of suffrage," that is, all persons eligible to vote under any state law in any election. The State Constitution did not impose voter registration requirements for certain elections until 1894. *See* N.Y. Const. art. II, § 4 (1894). Even today, the State Constitution provides that "registration shall not be required for town and village elections except by express provision of law." N.Y. Const. art. II § 5. Section 9 is clear that its protection extends to the electoral participation of any New Yorker eligible to vote in any election.

5

The plaintiffs have adduced evidence that the robocall reached New Yorkers who were eligible to vote, including New Yorkers who were registered to vote and interested in voting by absentee ballot. ECF No. 214, 6-7 ¶¶ 19-20, 22. Their race is immaterial to the Section 9 claim because the statute categorically protects all citizens of New York who are eligible to vote.

## II. SECTION 9 PROHIBITS INTEFERENCE WITH ANY LAWFUL METHOD OF ELECTORAL PARTICIPATION, INCLUDING ABSENTEE VOTING.

Section 9 provides fulsome protections for New Yorkers participating in any aspect of the "free exercise of suffrage," including voting by mail. N.Y. Civ. Rights Law § 9. The New York State Constitution protects the right to vote and gives content to the scope and meaning of Section 9's phrase "the free exercise of suffrage." As the State Constitution has expanded the scope of the right to vote over the past two centuries to include absentee voting among other forms of electoral participation, Section 9's protections have kept pace.

The New York State Constitution provides the right to vote and a guarantee that New Yorkers will not suffer unnecessary interference with exercising that right. Article II, Section 1 of the State Constitution guarantees that all citizens who meet the qualifications of age and residency "shall be entitled to vote at every election for all officers elected by the people and upon all questions submitted to the vote of the people[.]" Article I, Section 1 provides that "No member of this state shall be disfranchised, or deprived of any of the rights or privileges secured to any citizen thereof, unless by the law of the land, or the judgments of his or her peers[.]" A unanimous New York Court of Appeals has held that these two provisions taken together guarantee "that every elector shall have the right to cast his vote with equal facility to that afforded to other voters, or, to speak more accurately, without unnecessary discrimination against him as to the manner of casting his vote." *Hopper v. Britt*, 203 N.Y. 144, 151 (1911).

These constitutional guarantees therefore afford protections that extend beyond the physical polling place to "include[] the right to participate in the several methods established by law for the selection of candidates to be voted for." *In re Barber*, 263 N.Y.S.2d 599, 600–01, *aff'd sub nom. Barber v. Lomenzo*, 16 N.Y.2d 963 (1965). Voting by mail is undoubtedly among those methods of electoral participation protected by the State Constitution. *See St. John v. Bd. of Elections of Cnty. of Albany*, 546 N.Y.S.2d 301, 303 (N.Y. Sup. Ct. 1989) ("The right to vote, either in person or by absentee ballot, is one of a citizen's most hallowed rights.").

Section 9's protection for the free exercise of suffrage has remained consistently broad and flexible as the New York State Constitution has expanded the definition of and protection for suffrage, including by providing for absentee voting. As first adopted in 1787, the text of Section 9 protected the right of "any citizen of this State to make free election . . . ." 1787 N.Y. Laws, Tenth Session, § 9. In 1829, the statute was amended to its modern framing of protecting "any citizen of this state in the free exercise of suffrage." N.Y. Rev. Stat. Chap. IV, § 4, p.94 (1829). In subsequent years, the State Constitution was amended to expand the right of suffrage to more New Yorkers and to expand the means of exercising the right of suffrage to include absentee voting, N.Y. Const. art. II, § 2, voter registration in some elections, *id.* at art. II, § 5; the secret ballot, *id.* at art. II, § 7; and voter identification by signature, *id.* As New York has expanded access to and the process of electoral participation, the text of Section 9 has continued to protect New Yorkers in the "free exercise of suffrage" without qualification. Consistent with the New York State Constitution, Section 9 protects New Yorkers in all aspects of the electoral process, including voting by mail.

## III. SECTION 9 PROHIBITS AN EXPANSIVE RANGE OF CONDUCT WHEN DIRECTED AT INTERFERING WITH THE FREE EXERCISE OF SUFFRAGE.

The plain text of Section 9 makes clear that the statute protects New Yorkers from any conduct directed at interfering with their electoral participation. Section 9 states that private individuals may not disrupt the exercise of suffrage "by force of arms, malice, menacing, or otherwise." N.Y. Civ. Rights Law § 9. The text of Section 9 hews closely to its English antecedent, the Statute of Westminster, passed in 1275 (and remaining in force today), which provides that "no Man by Force of Arms, nor by Malice, or menacing, shall disturb any to make free Election." 3 Edw. 1 c. 5 (Eng.), available at https://www.legislation.gov.uk/aep/Edw1/3/5. The use of the term "otherwise" indicates a calculated decision by the New York Legislature to expand the scope of the statute to prohibit any conduct directed at disturbing or hindering the right to vote.

Even limited to the enumerated categories of conduct, the dissemination of false and intimidating information regarding absentee voting would be covered by Section 9's proscription on the use of "malice" to disturb or hinder voters.[2] The definition of "malice" in Johnson's Dictionary—"deliberate mischief"—neatly captures the kind of election interference presented by the dissemination of false information about election procedures intended to deter voters from exercising a lawful means of voting. Samuel Johnson, *Malice*, *A Dictionary of the English Language* (1755). Another influential dictionary defines "malice" as a disposition to injure others unjustly for personal gratification . . . ." *Smith v. Wade*, 461 U.S. 30, 62 n.4 (1983) (Rehnquist, J.,

---

[2] Courts have looked to Samuel Johnson's *A Dictionary of the English Language* and Noah Webster's 1828 *An American Dictionary of the English Language*, as authoritative sources for interpreting laws enacted around the time of Section 9's adoption in 1787 or 1829. *See Vogt v. City of Hays, Kansas*, 844 F.3d 1235, 1242 (10th Cir. 2017) ("The most authoritative dictionary of that era was Noah Webster's 1828 dictionary"); *see e.g.*, *Arizona State Legislature v. Arizona Indep. Redistricting Comm'n*, 576 U.S. 787, 813 (2015) (using Johnson's dictionary to interpret the meaning of the word "legislature" in the U.S. Constitution).

8

dissenting) (quoting *Stormonth's English Dictionary* 584 (1884)). Modern definitions are consistent with historical definitions. Today, Merriam-Webster defines "malice" as a "desire to cause pain, injury or distress to another." *Malice*, Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/malice (last visited Aug. 2, 2022). This definition captures intentional efforts to incite distress in voters by making false and intimidating statements about purported adverse consequences of freely exercising their right to vote by mail.

A key inquiry for Section 9 liability is whether the defendant's conduct "presume[s]," that is, attempts to disturb or hinder a New Yorker's participation in the electoral process. N.Y. Civ. Rights Law § 9. Both Johnson and Webster defined "presume" as "[t]o make confident or arrogant attempts." Johnson, *Presume, A Dictionary of the English Language*; *accord* Webster, *Presume, An American Dictionary of the English Language*. Today, Merriam Webster defines "presume" as "to undertake without leave or clear justification." *Presume*, Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/presume (last visited Aug. 5, 2022). Neither the historic or modern definitions of "presume" clearly establish the precise mental state required for a defendant's attempt to unjustifiably hinder or disturb a New Yorker in the free exercise of suffrage to violate Section 9. Section 9 can and must leave breathing space for conduct—such as campaign calls or texts—that may have the effect of interrupting, delaying, or even distressing New Yorkers in their voting choices, but that are not efforts to wrongfully or unjustifiably interfere with New Yorkers' decision to participate in an election.

However, there can be no doubt that disseminating false and intimidating information for the purpose of discouraging voters from using a lawful manner of casting a ballot is sufficient to meet any understanding of Section 9's mental state requirement. Here, the defendants' robocall unambiguously attempts to scare voters away from voting by absentee ballot. ECF No. 209 at 4

9

("beware of vote by mail").  The robocall was disseminated only 23 days before the deadline for boards of elections to send out the first absentee ballots and 69 days from election day itself—during a time when voters were likely applying for absentee ballots.  The robocall statements about voting by mail purportedly leading to potential adverse criminal, economic, and health consequences were "manifestly false and meant to intimidate citizens from exercising voting rights." ECF No. 38 at 3-4.  The plaintiffs have adduced evidence to further support the proposition that information in the robocall was false and part of a strategy by the defendants to use false information ("make shit up") to conduct a "voter suppression effort."  ECF No. 214 at 3, ¶ 6; *see id.* ¶¶ 6-8.  If the Court finds these facts, they would plainly establish a violation of Section 9.

As this Court has already recognized, that defendants' electoral interference takes the form of speech does not immunize them from liability.[3]  The Supreme Court has recognized that laws curtailing even constitutionally-protected political expression can be enforced where there is a compelling and overriding interest in protecting the integrity of the electoral process. See *Burson v. Freeman,* 504 U.S. 191, 211 (1992).  Under *Burson*, the Supreme Court held that a state could regulate campaign speech—speech at the very core of the First Amendment—when its proximity to a polling place could interfere with the government's compelling interest in protecting the integrity of the electoral process and the voter's ability to cast their ballot freely.  *Id.* at 198-99.  The same compelling government interest that justified the electioneering buffer zones in *Burson* justifies a prohibition on disseminating false and intimidating speech about the voting process that is designed to obstruct the exercise of the franchise.  That is particularly so during the administration of an election when the opportunity for the state to cure any voter confusion or harm to the integrity of its election process is limited.

---

[3] ECF No. 38, at 38 n.20.

## IV. LIABILITY UNDER SECTION 9 DOES NOT REQUIRE PROOF THAT A DEFENDANT ACTUALLY PREVENTED ANYONE FROM VOTING.

Section 9 is intended to protect the freedom and integrity of elections from efforts to interfere with voters, regardless of whether and to what extent those efforts result in citizens not voting. To achieve its purpose, Section 9 states that no person "should presume to disturb or hinder" a New York citizen in their free exercise of the right of suffrage. N.Y. Civ. Rights Law § 9. By setting a low threshold for the intended injury, Section 9 vindicates the State's compelling interest in protecting New Yorkers from unjustifiable interference that could discourage people from voting. A state "need not wait for actual interference . . . to . . . take precautions to protect and to facilitate voting." *Citizens for Police Accountability Pol. Comm. v. Browning*, 572 F.3d 1213, 1221 (11th Cir. 2009) (citing *Burson*, 504 U.S. at 205). "[I]f an election is disturbed, it is hard to know what the impact was on the election" and "the cost of a disturbed election is too high to allow the State only to react to disturbances but not to prevent disturbances." *Id.*

The plain text of Section 9, read through either a historical or modern lens, shows that the statute predicates liability on efforts merely to confuse or inconvenience voters and does not require completed vote denial. Johnson's dictionary defined "disturb" as "to confound; to put into irregular motions." Johnson, *Disturb*, *A Dictionary of the English Language*; *accord* Webster, *Disturb*, *An American Dictionary of the English Language* (defining "disturb" as "[to] move from any regular course or operation; to interrupt regular order; to make irregular."). Modern day definitions also reflect that "disturb" refers to disrupting the regular flow of an activity. *Disturb*, Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/disturb (last visited Aug. 5, 2022) (defining "disturb" as "to put to inconvenience.").

11

Section 9 also covers conduct that "hinders," that is, conduct that delays or impedes New Yorkers' free exercise of the right of suffrage, even if only temporarily. New York courts have found the word "hinder" in state statutes to be unambiguous and synonymous with "obstruct." *People v. Longo*, 227 N.Y.S.2d 815, 817 (N.Y. App. Div. 1962). A defendant's obstruction need only amount to a temporary delay to have legal consequences. *See, e.g.*, *United States v. Reed*, 88 F.3d 174, 180-81 (2d Cir. 1996) (finding sentencing enhancement for obstruction of justice appropriate when defendant "delay[ed]" proceeding by failing to turn himself in).

The false and intimidating content of the robocall alone supports an inference that it was intended to intimidate New York voters or, at a minimum cause them to delay (if not forego) their choice to vote by mail. The content of the robocall is objectively intimidating. The plaintiffs have also adduced evidence that New York voters who received the robocall were actually intimidated by the call. ECF 214 at 6-7, ¶¶ 19, 20, 22. The plaintiffs have further adduced evidence of voters who altered their electoral participation as a result of the robocall, including one voter who decided not to vote by mail (*id.* at 6, ¶ 19), and another who removed his information from the voter rolls (*id.* at 6-7, ¶ 20). Regardless of whether they ultimately cast a ballot, the distress and interruption that these voters describe experiencing is the kind of harm to the electoral process that Section 9's prohibition of efforts to disturb or hinder New York voters was manifestly intended to prevent.

## CONCLUSION

If the Court finds that during the administration of an election, the defendants disseminated false and intimidating information about the voting process with the purpose of unjustifiably hindering or disturbing New Yorkers in their decision to vote by absentee ballot, the Court should find that the defendants violated Section 9.

Dated: August 5, 2022
      New York, New York

Respectfully submitted,

THE NEW YORK CIVIL LIBERTIES UNION FOUNDATION

By: <u>/s/ Perry Grossman</u>
Perry Grossman
Arthur Eisenberg
Christopher Dunn
125 Broad Street
New York, New York 10004
Phone: (212) 607-3300
pgrossman@nyclu.org

On the brief: Jake Millman

# CERTIFICATE OF SERVICE

I hereby certify that on August 5, 2022, I electronically filed the foregoing brief with the Clerk of the Court for the United States District Court for the Southern District of New York by CM/ECF. All participants in the case are registered CM/ECF users, and service will be accomplished by the CM/ECF system.

/s/ Perry Grossman___