UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| NATIONAL COALITION ON BLACK CIVIC PARTICIPATION, MARY WINTER, GENE STEINBERG, NANCY HART, SARAH WOLFF, KAREN SLAVEN, KATE KENNEDY, EDA DANIEL,and ANDREA SFERES,<br><br>Plaintiffs,<br><br>-and-<br><br>People of the STATE OF NEW YORK, by its attorney general, LETITIA JAMES, ATTORNEY GENERAL OF THE STATE OF NEW YORK<br><br>Plaintiff-Intervenor,<br><br>v.<br><br>JACOB WOHL, JACK BURKMAN, J.M. BURKMAN & ASSOCIATES, LLC, PROJECT 1599, MESSAGE COMMUNICATIONS, INC., and ROBERT MAHANIAN,<br><br>Defendants. | *Civil Action No. 20-cv-08668-VM-OTW* |

**DEFENDANTS' LOCAL CIVIL RULE 56.1 COUNTER-STATEMENT OF UNDISPUTED MATERIAL FACTS**

Pursuant to Local Civil Rule 56.1 of the United States District Court for the Southern District of New York, Defendants, Jacob Wohl ("Wohl"), Jack Burkman ("Burkman"), J.M. Burkman & Associates, LLC, and Project 1599 (collectively, "Defendants"), respectfully submit, in opposition to Plaintiffs' Motion for Summary Judgment, this Counter-Statement of Undisputed Material Facts.

1

## <u>RESPONSE TO PLAINTIFFS' RULE 56.1 STATEMENT</u>

1.  Agree that Message Communications, Inc. transmitted a robocall but dispute that this number constituted the actual number of recipients. Indeed, a far smaller number of recipients are believed to have received the call live or on their answering machines. *See* Docket No. 49 (demonstrating approximately 29,117 "recipients" – *i.e.*, live answer or answering machine versus the 85,303 calls "transmitted"); *see also* Docket Nos. 50 and 52 (demonstrating that (See approximately 29,117 corrective calls were issued.).

2.  Dispute that 5,494 New Yorkers *received* the robocall. Given the effective ratio of calls transmitted versus calls received, it suggests that only approximately 1,400 calls were received in New York State. *See*, *e.g.*, Docket No. 50.

3.  Agree, but note that the Robocall was transmitted by Message Communications, Inc.

4.  Demurrer.

5.  Disputed. Project 1599 is a fictitious political entity Burkman and Wohl supported consonant with their trademark political buffoonery. As conceded in the Federal Communications' Commissions' Notice of Apparent Liability for Forfeiture "Project-1599" is not a legal entity. *See* FCC Notice of Apparent Liability for Forfeiture at fn. 6.

6.  Disputed insofar as the record does not establish authorship (or relevance) of the so-called "confidential brief" for the Arlington Center for Political Intelligence.

7.  Demurrer.

8.  Demurrer.

9.  Demurrer.

10. Demurrer.

11. Disputed as to the characterization of the term "hired," and otherwise demurrer.

12. Demurrer.

13. Demurrer.

14. Demurrer, while noting that this is indicative of Defendants' trademark political satire and hyperbole.

15. Demurrer.

16. Demurrer.

17. Demurrer, while noting that this is indicative of Defendants' trademark political satire and hyperbole.

18. Disputed as to allegations that the Robocall contained "deceptive and false information about voting by mail" and any intimation that the Robocall was intimidating. *See e.g.*, Docket No. 211 at Ex. J; *U.S. v. Turner*, 720 F.3d 411, 420 (2d. Cir. 2013); *United States v. McLeod*, 385 F.2d 734 (5th Cir. 1967).

19. Disputed, Plaintiff Mary Winter attested she voted in person because she felt it was the more secure way of voting, and because she was afraid partaking in Mail-in-Voting might be subject to partisan tampering.  *See* Ex. F at 12:15-19, 30:23-25, 31:1-6.

20. Disputed, Plaintiff Gene Steinberg conceded that he never received the Robocall, but rather that his then live-in girlfriend played it for him. He also testified that he did not find the Robocall intimating or threatening at the time but did not like finding out that voting records are public records, which he finds upsetting. He also voted in-person to be certain that his vote would be counted.  *See* Ex. C at 21:2-17.

21. Disputed, Plaintiff Eda Daniel testified that the Robocall did not deter her from voting, that she did not know or speak to any member of the Black community who received the call, and that

she did not find the Robocall intimidating or threatening. *See* Ex. B at 15:21-24, 50:12-15; 59:1-10.

22. Disputed, Plaintiff Andrea Sferes testified that the Robocall did not deter her from voting, that she did not know or speak to any member of the Black community who received the call, and that she did not find the Robocall intimidating or threatening. *See* Ex A.at 13:1, 28:19-22; 22:4-25:1.

23. Disputed, Plaintiff Karen Slaven testified that the Robocall did not deter her from voting, that she did not know or speak to any member of the Black community who received the call, and that she did not find the Robocall intimidating or threatening. *See* Ex. E at 13:1-8; 27:7-9; 36:18-25; 37:16-21; 43:18-24; 47:3-8.

24. Disputed, Plaintiff Kate Kennedy testified that the Robocall did not deter her from voting, that she did not know or speak to any member of the Black community who received the call, and that she did not find the Robocall intimidating or threatening. *See* Ex D at 11:2-10; 25:11-14.

25. Disputed, Plaintiff Sarah Wolff testified that the Robocall did not deter her from voting, that she did not know or speak to any member of the Black community who received the call, and that she did not find the Robocall intimidating or threatening. *See* Ex. H at 14:24-25; 45:17-19; 42:9-16

26. Disputed, Plaintiff Nancy Hart testified that the Robocall did not deter her from voting, that she did not know or speak to any member of the Black community who received the call, and that she did not find the Robocall intimidating or threatening. *See* Ex. G 16:15-18; 43:6-11, 53:1-2.

27. Agree that all parties concede Defendants are political provocateur, but Demurrer as to the remainder.

28. Disputed, as Defendants have illustrated innumerable examples of databases relied upon by investigators and others to locate fugitives and debtors that abstract from Boards of Election records including New York State Board of Election records. *See* Docket No. 211 at Ex. J at 7; Docket No. 40 at Ex. No. 1 and 2.

29. Disputed, because in the months preceding the 2020 Election, officials in New York,[1] Michigan,[2] and Ohio[3] confirmed that voting in-person could be undertaken safely and all other relevant states put out information that it was in fact safe to vote in person provided voters followed CDC guidelines.

30. Disputed, as Commissioner Kellner's opinion rendered in 2022 conflicts with the public notice posted by his agency, as well as related agencies throughout the country, which stated that in-person voting was safe.[4]

**GERSTMAN SCHWARTZ LLP**

By: /s/ *Randy E. Kleinman*
Randy E. Kleinman
David M. Schwartz
1399 Franklin Avenue, Suite 200
Garden City, New York 11530
Telephone: (516) 880-8170
Facsimile: (516) 880-8171
rkleinman@gerstmanschwartz.com
dschwartz@gerstmanschwartz.com

*Attorneys for Defendants*

---

[1] *See* https://www1.nyc.gov/assets/doh/downloads/pdf/covid/covid-19-voting.pdf.
[2] *See* https://www.michigan.gov//media/Project/Websites/coronavirus/Folder14/Recommendations_for_Poll_Workers_and_Election_Officials.pdf?rev=45b773d17ba8442c91c0a2979ec55329
[3] *See* https://www.ohiosos.gov/globalassets/elections/directives/2020/2020-09-25.pdf
[4] *See* notes 1-3, *supra*.