# EXHIBIT 71

# Confidential



# Transcript of Sarah Wolff

Monday, May 2, 2022

*National Coalition on Black Civic Participation, et al. v. Jacob Wohl, et al.*

www.trustpoint.one
www.aldersonreporting.com
800.FOR.DEPO (800.367.3376)
Scheduling@Trustpoint.One

Reference Number: 115543

Sarah Wolff     Confidential     5/2/2022
Case 1:20-cv-08668-JSR Document 242-8 Filed 08/12/22 Page 3 of 13
Page 1

```
 1                     CONFIDENTIAL

 2   UNITED STATES DISTRICT COURT
     FOR THE SOUTHERN DISTRICT OF NEW YORK
 3   - - - - - - - - - - - - - - - - - - - - - - - - -

 4   NATIONAL COALITION ON BLACK CIVIC PARTICIPATION,
     MARY WINTER, GENE STEINBERG, NANCY HART,
 5   SARAH WOLFF, KAREN SLAVEN, KATE KENNEDY,
     EDA DANIEL, and ANDREA SFERES,
 6
                             Plaintiffs,
 7
                -and-
 8
     People of the STATE OF NEW YORK, by its attorney
 9   general, LETITIA JAMES, ATTORNEY GENERAL OF THE
     STATE OF NEW YORK,
10
                             Civil Action No.
11        -vs-               1:20-cv-08668-VM-OTW

12

13   JACOB WOHL, JACK BURKMAN, J.M. BURKMAN & ASSOCIATES,
     LLC, PROJECT 1599, MESSAGE COMMUNICATIONS, INC.,
14   ROBERT MAHANIAN, and JOHN and JANE DOES 1-10,

15                       Defendants.
     - - - - - - - - - - - - - - - - - - - - - - - - -
16

17   TRANSCRIPT of the stenographic notes of

18   the REMOTE VIDEOCONFERENCED deposition of SARAH

19   WOLFF in the above-entitled matter, as taken by and

20   before CHRISTINA COCHRAN, a Court Reporter and

21   Notary Public of the State of New York, held on May

22   2, 2022, commencing at 2:00 p.m., pursuant to

23   Notice.

24

25
```

```
 1                    CONFIDENTIAL
 2   A P P E A R A N C E S:
 3   (ALL APPEARANCES ARE VIA REMOTE VIDEOCONFERENCE
 4   AND/OR TELEPHONE)
 5
 6   OORICK, HERRINGTON & SUTCLIFFE, LLP
 7        Attorneys for Plaintiff
 8        51 West 52nd Street
 9        New York, New York 10019
10   BY:  BRITTANY ROEHRS, ESQ.
11        (212) 506-5162
12        Broehrs@orrick.com
13
14   GERSTMAN SCHWARTZ, LLP
15        Attorney for Defendants
16        60 East 42nd Street, Suite 4700, Office 21
17        New York, New York 10165
18   BY:  RANDY E. KLEINMAN, ESQ.
19        (212) 227-7070
20        RKleinman@GerstmanSchwartz.com
21
22   ALSO PRESENT:
23   Marc Epstein, Esq., Attorney for Plaintiff
24   Franklin Monsour, Esq., Attorney for Plaintiff
25   Colleen Faherty, Office of The Attorney General
```

```
 1                    CONFIDENTIAL
 2            MS. ROEHRS:  Yes.
 3       Q.   Okay, and it very well could be.  So
 4  let's circle back a little bit.  You testified
 5  before that the August 26th robocall made you angry;
 6  is that correct?
 7       A.   That is correct.
 8       Q.   Okay, and it made you disturbed also; is
 9  that correct?
10       A.   Yes.
11       Q.   All right.  Why did the robocall anger
12  and disturb you?
13       A.   When I heard the call, my impression was
14  that the call wanted people to be afraid to vote by
15  mail, and therefore, might keep people from voting
16  and I don't think it's right to keep people from
17  voting.
18       Q.   What specifically about the call made you
19  believe it was trying to make people afraid to vote
20  by mail?
21       A.   The overall tone of it, the language that
22  was used overall, just the impression was that the
23  content of the call could have made some people be
24  intimidated for voting by mail.
25       Q.   Do you recall the specific content that
```

1                    CONFIDENTIAL
2    you felt was intimidating?
3              MS. ROEHRS:  Objection.
4         A.   It was the overall content.  No single
5    item in it but everything together in the call that
6    worked together to, I would think, make people
7    concerned about whether or not voting by mail was
8    something that they wanted to do.
9         Q.   Okay.  We will circle back to that in a
10   few.  At any point in time, have you had any
11   conversations with a representative from a National
12   Coalition on Black Civic Participation?
13             MS. ROEHRS:  Objection.
14        A.   No, no.
15        Q.   Did you have any out-of-pocket expenses
16   related to this lawsuit?
17        A.   No.
18        Q.   Are you being paid to testify here today?
19        A.   No, I am not.
20        Q.   Okay.  Are you being paid to be a
21   Plaintiff in this lawsuit?
22        A.   No.
23        Q.   At any point in time, have you discussed
24   this lawsuit with any of the other individual
25   Plaintiffs?

```
 1                      CONFIDENTIAL
 2       Q.    Okay, and do you recognize the substance
 3   and the content contained within paragraph 51?
 4       A.    Yes.
 5       Q.    What do you recognize it to be?
 6       A.    A transcript of the robocall that I
 7   received.
 8       Q.    Does this help refresh your recollection
 9   as to what made you angry and disturbed about the
10   robocall?
11             MS. ROEHRS:  Objection.
12       A.    It does, because each part of this helped
13   create an overall impression that I had when I
14   listened to this call, that it could be responsible
15   for people not voting.
16       Q.    Okay.  So when you say, "each part" are
17   you referring to -- what are you referring to
18   exactly?
19       A.    Pretty much each and every sentence.
20       Q.    So, for example, the part that I have
21   highlighted here where it says, mail-in voting
22   sounds great but did you know that if you vote by
23   mail your personal information will be part of a
24   public database that will be used by police
25   departments to track old warrants?
```

Trustpoint.One | Alderson.
www.trustpoint.one
www.aldersonreporting.com
800.FOR.DEPO
(800.367.3376)

```
 1                    CONFIDENTIAL
 2    targeted toward the black community; is that fair to
 3    saw?
 4              MS. ROEHRS:  Objection.
 5         A.   Those individual things, as part of the
 6    overall call, yes.
 7         Q.   And what about the overall call itself
 8    leads you to that conclusion?
 9              MS. ROEHRS:  Objection.
10         A.   As I said, my overall impression is that
11    this call was intended for black voters and to
12    possibly strike a cord with black voters.
13         Q.   Okay.  You testified earlier that you
14    believed the call was intended to intimidate
15    callers; is that correct?
16              MS. ROEHRS:  Objection.
17         A.   I don't believe, I don't know if I used
18    the word "intimidate".  I think it could certainly
19    persuade or affect the way people would feel about
20    mail-in voting.
21         Q.   Okay.  If I'm mistaken, forgive me.  I
22    had written it down but it's possible you didn't.
23    So I'll ask it this way:  Do you believe the call
24    was intended to intimidate callers?
25              MS. ROEHRS:  Objection.
```

```
 1                      CONFIDENTIAL
 2        A.    I think anything that creates doubt in
 3   voters' minds about whether or not they can vote a
 4   certain way, certainly has the potential of
 5   lessening their confidence in the whole voting
 6   process, which yes, could lead people to not vote.
 7        Q.    Do you believe that the robocall was
 8   intended to intimidate black voters in particular?
 9              MS. ROEHRS:   Objection.
10        A.    I stated from my perception of this call,
11   that it was directed toward black voters.
12        Q.    Sure.  So what, if anything, in the
13   content of the robocall do you believe would be
14   intimidating to a black voter?
15              MS. ROEHRS:   Objection.
16        A.    I'm not sure that I would use the word
17   "intimidate".  I would use the word "discourage"
18   black voters from voting by mail and perhaps from
19   voting at all.
20        Q.    So what, in particular, makes you believe
21   that it was intended to discourage black voters?
22              MS. ROEHRS:   Objection.
23        A.    Overall tone of the call, my perception
24   of it was that it was directed at black voters.
25        Q.    Anything other than what you already
```

1                    CONFIDENTIAL
2     the call?
3              MS. ROEHRS:  Objection.
4         A.   I recognize the lies in the call and the
5     untruths and the -- I saw what this call was doing
6     or trying to do.
7         Q.   But you didn't think that members of the
8     black voting community would be able to see through
9     the alleged lies in this call?
10             MS. ROEHRS:  Objection.
11        A.   I'm sure quite a few people would see
12    through this call and I don't care what color they
13    are.  A lot of people would see through this call.
14        Q.   So do you think that the alleged lies and
15    the alleged misinformation was fairly obvious in
16    this call?
17        A.   I think some of it was, yes.
18        Q.   Which parts of it do you think were
19    obvious?
20             MS. ROEHRS:  Objection.
21        A.   I think there is a mix of borderline
22    truth and an attempt to create doubt in people's
23    minds about the problems that might be involved with
24    voting by mail.  There are scare tactics here.  You
25    are talking to people who might be concerned because

1                     CONFIDENTIAL
2    they owe money to a credit card company or might
3    have a warrant and those things are not related to
4    voting.
5         Q.    You just referenced a partial truth.  Is
6    there a part of this you think is partially true?
7         A.    Well, I think --
8               MS. ROEHRS:  Objection.
9         A.    -- I think it's a bit misleading because
10   you're talking about public databases and we all
11   know that there are public databases but whether or
12   not there are public databases that are going to
13   help, you know, take your voting information and
14   then come and collect on your credit card, so no,
15   it's partially true, possibly.  All it needs to do
16   is make people doubt voting by mail so that they
17   don't vote by mail.  Some people would probably find
18   this to be just discouraging them from voting by
19   mail.
20        Q.    At the time you received the robocall,
21   were you coerced in any way by it?
22              MS. ROEHRS:  Objection.
23        A.    You're going to have to define coerced in
24   that context.
25        Q.    Sure.  Well, let's start here, what is

Trustpoint.One | Alderson
www.trustpoint.one
www.aldersonreporting.com
800.FOR.DEPO
(800.367.3376)

1                    CONFIDENTIAL

2   your understanding of what coerced means?

3        A.   My understanding of coercion is being

4   pressured to do something because someone has some

5   kind of incentive to make you do that, something

6   that you don't want to do.  No, I was not coerced by

7   this call.

8        Q.   Do you believe the call was designed to

9   be coercive?

10             MS. ROEHRS:  Objection.

11       A.   I believe the call was likely intended to

12  discourage people from voting.  I don't know if I

13  would call that coercion, but if you want to,

14  depending on your definition of coercion, could be.

15  If you are trying to push people to not do

16  something, then yeah, it's an attempt at coercion.

17       Q.   Have you spoken to anyone in the black

18  community about this robocall?

19       A.   Not specifically, no.

20       Q.   So is it fair to say you don't know how

21  anyone in the black community would perceive this

22  robocall?

23            MS. ROEHRS:  Objection.

24       A.   I do not.  I have not polled black people

25  on how they would feel about this call.  All I know

```
 1
 2   STATE OF NEW YORK        )
 3   COUNTY OF NEW YORK       )
 4
 5       I, CHRISTINA COCHRAN, a shorthand reporter and
 6   Notary Public, do hereby certify that I reported in
 7   shorthand the proceedings had at the Examination
 8   aforesaid, and that the foregoing is a true,
 9   complete and correct transcript of the proceedings
10   of said Examination as appears from my stenographic
11   notes so taken and transcribed under my personal
12   direction.
13       I further certify that I am not a relative or
14   employee of counsel/attorney for any of the parties,
15   nor a relative or employee of such parties, nor am I
16   financially interested in the outcome of the action.
17       WITNESS MY HAND, this day, May 2, 2022.
18
19
20   Christina Cochran      My commission expires:
21   Notary Public          May 2, 2023
22
23
24
25
```