UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| NATIONAL COALITION ON BLACK CIVIC PARTICIPATION, MARY WINTER, GENE STEINBERG, NANCY HART, SARAH WOLFF, KAREN SLAVEN, KATE KENNEDY, EDA DANIEL, and ANDREA SFERES,<br><br>　　　　　　　　Plaintiffs,<br>　　-and-<br><br>People of the STATE OF NEW YORK, by its attorney general, LETITIA JAMES, ATTORNEY GENERAL OF THE STATE OF NEW YORK<br><br>　　　　　　　　Plaintiff-Intervenor,<br><br>　　　　v.<br><br>JACOB WOHL, JACK BURKMAN, J.M. BURKMAN & ASSOCIATES, LLC, PROJECT 1599, MESSAGE COMMUNICATIONS, INC., and ROBERT MAHANIAN,<br><br>　　　　　　　　Defendants. | Civil Action No. 20-cv-08668-VM-OTW |

**REPLY MEMORANDUM IN FURTHER SUPPORT OF DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT**

　　　　　　　　　　　　　　　　　　　　**GERSTMAN SCHWARTZ, LLP**
　　　　　　　　　　　　　　　　　　　　Randy E. Kleinman, Esq.
　　　　　　　　　　　　　　　　　　　　David M. Schwartz, Esq.
　　　　　　　　　　　　　　　　　　　　1399 Franklin Avenue, Suite 200
　　　　　　　　　　　　　　　　　　　　Garden City, New York 11530
　　　　　　　　　　　　　　　　　　　　(516) 880 – 8170

　　　　　　　　　　　　　　　　　　　　*Attorneys for Defendants*

## TABLE OF CONTENTS

Page(s)

TABLE OF AUTHORITIES……………………………………………………………..iii-iv

I. Defendants' Rule 56.1 statement should not be stricken……………………………..1

II. The law of the case doctrine does not apply………………………………………….2

III. Defendants did not violate the KKK Act…………………………………………….3

IV. Defendants' Conduct Did Not Violate Section 11(b) of the Voting Rights Act……….4

    a. The Robocall is protected First Amendment political speech………………….4

    b. The Robocall is not a true threat……………………………………………......6

    c. Plaintiffs must prove Defendants *intended* to intimidate……………………….7

    d. The statutes at issue in this case fail strict scrutiny under Defendants' as-applied challenge…………………………………………………………….8

V. Defendants Did Not Violate Section 131(b) of the Civil Rights Act of 1957 or Any NY Civil Rights or Executive Laws………………………………………………….9

CONCLUSION………………………………………………………………………………9

## Table of Authorities

**Cases**

*Am. Fed'n of State, Cty. & Mun. Employees, Council*
   25 v. Land, 583 F. Supp. 2d 840 (E.D. Mich. 2008) .................................................................. 8

*Ariz. Democratic Party v. Ariz. Republican Party*,
   2016 U.S. Dist. LEXIS 154086 (D. Ariz. 2016) ........................................................................ 8

*Bray v. Alexandria Women's Health Clinic*,
   506 U.S. 263 (1993) ................................................................................................................... 3

*Buschi v. Kirven,*
   775 F.2d 1240 (4th Cir. 1985) ............................................................................................... 3-4

*Clapper v. Amnesty Int'l*,
   568 U.S. 398 (2013) ................................................................................................................... 3

Federal Rule of Civil Procedure Rule 56 ........................................................................................ 1

*Lexmark Int'l, Inc. v. Static Control Components, Inc.,*
   572 U.S. 118 (2014) ................................................................................................................... 2

*Mahoney Area Sch. Dist. V. B.L.*,
   141 S. Ct. 2038 (2021) ............................................................................................................... 5

*N.Y. Times Co. v. Sullivan,*
   376 U. S. 254 (1964) .................................................................................................................. 9

*Northeast Ohio Coalition for Homeless and Service Employees Intern. Union, Local 1199 v. Blackwell*,
   467 F.3d 999 (6th Cir. 2006) ..................................................................................................... 3

*Olagues v. Russoniello*,
   770 F.2d 791 (9th Cir. 1985) ..................................................................................................... 8

*Paynes v. Lee*,
   377 F.2d 61 (5th Cir. 1967) ............................................................................................... 4, 5, 7

*Snyder v. Phelps,*
   131 S. Ct. 1207 (2011) ............................................................................................................... 2

*U.S. v. Beaty*,
   288 F.2d 653 (6th Cir 1961) ...................................................................................................... 7

*U.S. v. Bruce,*
   353 F.2d 474 ............................................................................................................................... 7

*U.S. v. Clark*,
   249 F. Supp. 720 (S.D. Ala. 1965) ............................................................................................. 7

*U.S. v. Wood*,
   295 F.2d 772 .............................................................................................................................. 7

*United States v. Alvarez,*

567 U.S. 709 (2012) ............................................................................................................. 5-6

*United States v. McLeod*,
 385 F.2d 734 (5th Cir. 1967) ............................................................................................. 7

*United States v. Tan Duc Nguyen*,
 673 F.3d 2359 (9th Cir. 2012) ........................................................................................... 8

*United States v. Turner*,
 720 F.3d 411 (2d Cir. 2013) .......................................................................................... 6, 7

*Watts v. United States*,
 394 U.S. ............................................................................................................................. 6

**Statutes**

42 U.S.C. § 1973i ................................................................................................................... 2
42 U.S.C. § 1985 ................................................................................................................ 2, 3

I.     **Defendants' Rule 56.1 statement should not be stricken.**

Respectfully, Plaintiffs' characterization of Defendants' Motion for Summary Judgment is both discourteous and inaccurate. In seeking to exploit the clerical omission of Defendants' Rule 56.1 statement, Plaintiffs conveniently ignore the fact that the Statements of Fact made in Defendants' Memorandum of Law amply cites to deposition testimony and other objective evidence. It bares mentioning that the primary thrust of the Motion for Summary Judgment is an appeal to legal authority, but the brief expansively cites to deposition testimony, as well as other parts of the record, which are irrefutable. Plaintiffs' counsel is, of course, free to attempt to contextualize the unambiguous deposition testimony disclaiming any injuries, harm, intimidation, threats or coercion, or the speculative nature of the claims about others they have not spoken to.

It is conceded that Defendants' moving papers are flawed insofar as it fails to cross-reference or timely file a Rule 56.1 statement. Defendants' respectfully request that the Court deem the Rule 56.1 statement in support of their motion (Docket No. 226) incorporated by reference, along with the Rule 56.1 in opposition to Plaintiffs' Motion for Summary Judgment (Docket No. 237). It has long been understood that courts favor decisions on the merits over hyper-technical compliance. Moreover, pursuant to Federal Rule of Civil Procedure Rule 56, the Court "*may consider other materials in the records.*" Defendants respectfully note that their Memorandum of Law cites to exhibits from the record a minimum of 19 times and various other citations upwards of 40 times.

Defendants' belatedly filed Rule 56.1 statement in turn contains 23 paragraphs, 18 of which contain citations to the docket, the record, or exhibits related thereto. Defendants respectfully note that of the remaining five paragraphs not anchored by citations, the axiom *res ipsa loquitor* comes to mind, and Plaintiffs are not in any way prejudiced by their inclusion. Obviously, this Court has the discretion to weigh the relative strength or objectivity of these statements.

## II. The law of the case doctrine does not apply.

Once again, Plaintiffs claim that the material elements of their claims have already been established by the Court's prior rulings. If that were so, the discovery stage to date would have been a symbolic exercise in futility, wasting taxpayer dollars, and this Court's valuable time. Of course, this reasoning also requires entirely ignoring the record developed during Plaintiffs' depositions, which cannot be reconciled with Plaintiffs' claims. Regardless, the Court's prior rulings, which pertained solely to Plaintiffs' request for an emergency injunctive relief, are no longer relevant. Docket No. 38.

Plaintiffs seek to vitiate the constitutional requirements that they prove an "injury in fact" that is *fairly traceable to Defendants'* conduct. *Lexmark Int'l, Inc. v. Static Control Components, Inc.,* 572 U.S. 118, 125 (2014). Plaintiffs concede that a majority of the Individual Plaintiffs suffered no harm whatsoever. While Plaintiff Steinberg alleges that after his girlfriend played the call for him it triggered a deep-seated anxiety with law enforcement, this is not relevant to the Acts at issue in this case, which apply to voter suppression. It is undisputed that the Robocall did not intimidate, threaten, or coerce any of the Individual Plaintiffs as it relates to the act of voting. While section 11(b) and the KKK Act each proscribe voter suppression by intimidation, threats, or coercion,[1] neither Act proscribes political speech that merely offends, even if it causes a severe visceral response. *See, e.g.*, *Snyder v. Phelps,* 131 S. Ct. 1207, 1215 (2011) (First Amendment protects "even hurtful speech on public issues to ensure that we do not stifle public debate"). Thus, by their own testimony, Plaintiffs fail to establish a concrete and particularized injury in fact that is fairly traceable to Defendants' alleged conduct.

---

[1] *See* 42 U.S.C. § 1973i(b) and 157.42 U.S.C. § 1985(3), respectively.

Similarly, the NCBCP does not have standing by virtue of its self-inflicted injuries. *Clapper v. Amnesty Int'l*, 568 U.S. 398, 416 (2013). Nor can NCBCP assert standing on behalf of the community it serves. *See*, *e.g.*, *Northeast Ohio Coalition for Homeless and Service Employees Intern. Union, Local 1199 v. Blackwell*, 467 F.3d 999, 1013 (6th Cir. 2006).

**III.   Defendants did not violate the KKK Act.**

Plaintiffs' argument that the KKK Act does not require proof of racial animus is mistaken and contrary to the prevailing legal precedent. *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 267-68 (1993) (requiring "some racial, or perhaps otherwise class-based, invidiously discriminatory animus [lay] behind the conspirators' action"). Indeed, the Supreme Court has held that this "discriminatory purpose" for purposes of § 1985, "implies that the decisionmaker . . . selected or reaffirmed a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group." *Id.* at 271-72. Here, Plaintiffs' only evidence of so-called racial animus is that Defendants allegedly targeted "black neighborhoods." But merely targeting these individuals to raise awareness of a politically charged issue that has a potentially disparate impact on their community does not demonstrate a racial animus, and indeed, is precisely what NCBCP itself has done in the past.[2]

In any event, insofar as the Individual Plaintiffs are each White, they are not those classes of persons who are, so far as the enforcement of their rights is concerned, 'in unprotected circumstances similar to those of the victims of Klan *violence*.'" *Buschi v. Kirven*, 775 F.2d 1240, 1258 (4th Cir. 1985) (quoting omitted (emphasis added); *see also Cloaninger v. McDevitt*, 2006 U.S. Dist. LEXIS 65913 (W.D.N.C. 2006) ("the only class of persons protected

---

[2]https://www.ncbcp.org/news/releases/galvanize_over_150000_bw_vote/index.html;
https://www.ncbcp.org/news/releases/coalition_of_black_women_leaders_ga_vote/index.html

3

by Section 1985(3) are African Americans." (internal quotations omitted). This alone vitiates the Individual Plaintiffs' KKK Act claim.

## IV. Defendants' Conduct Did Not Violate Section 11(b) of the Voting Rights Act.

### a. The Robocall is protected First Amendment political speech.

Rather than rely on the relevant legal standards established by Supreme Court (and other) precedent, Plaintiffs repeatedly argue that the Court's prior rulings nullify each of Defendants arguments, making this an open and shut case. But this argument is more visceral than legal, and Plaintiffs conveniently ignore that no plaintiff has ever brought a successful claim under the VRA because of the onerous statutory prerequisites, which they do not, and simply cannot, satisfy. Moreover, the sole case involving a successful KKK Act claim, *Paynes v. Lee*, 377 F.2d 61, 63 (5th Cir. 1967), involved egregiously overt acts and threats of physical violent that are starkly different facts than the instant matter; namely, the defendant and other white men "assailed appellant in the nighttime and threatened to destroy or to annihilate appellant, his possessions and his family should he again attempt to become a registered voter." Stepping back from the precipice of creating a terrible legal precedent, it must be observed that these statutory prerequisites, which Plaintiffs would simply ignore, were baked into the cake because of the self-evident tension between First Amendment rights and historical concerns about voter disenfranchisement – with great weight being attached to the former.

Yet, here, most astonishingly, without a single person having been disenfranchised, Plaintiffs completely gloss over Defendants' well-reasoned First Amendment arguments, stating only that "the Court has already rejected that argument as well." The reason for this is obvious: Plaintiffs understand Defendants' alleged conduct is unequivocally protected by the First Amendment. While Plaintiffs – who ironically purport to be civil rights crusaders – seem hellbent on crushing

the First Amendment rights of those they perceive to be political enemies, their various allegations of "intimidation" are nothing more than legitimate exercises of free speech. Indeed, it is hard to imagine a court ruling more inimical to the public interest than one aimed at chilling a citizen's political speech. The Robocall is clearly political speech protected by the First Amendment. It offers opinions on a highly charged issue—mail-in voting—and expressed views that this method of voting has some considerable pitfalls. Plaintiffs' suggestion that Defendants seek to suppress voter participation by invoking concerns about mail-in voting is troubling. Regardless of whether Plaintiffs believe these pitfalls are real or imaginary, these issues have been the subject of a robust public debate for many years. After all, "[w]e cannot lose sight of the fact that, in what otherwise might seem a trifling and annoying instance of individual distasteful abuse of a privilege, these fundamental societal values are truly implicated." *Mahoney Area Sch. Dist. V. B.L.*, 141 S. Ct. 2038, 2048 (2021).

Yet Plaintiffs ignore the relevant case law (and commons sense arguments), in favor of arguing that Defendants' purported conduct is not only unprotected by the First Amendment, but tantamount to the egregious over acts and threats of violence present in *Paynes*.[3] This is not only illogical, but anathema to Supreme Court precedent, which has repeatedly "rejected as 'startling and dangerous' a 'free-floating test for First Amendment coverage . . . based on an ad hoc balancing of relative social costs and benefits.'" *See United States v. Alvarez*, 567 U.S. 709, 717 (2012) (quoting *U.S. v. Stevens*, 559 U.S. 460, 470 (2010). The Robocall is not captured by any of the categorical exceptions to the First Amendment, so the Court should not balance the social utility of curtailing it against its government-assigned value. It is axiomatic that the courts may not, consistent with the First Amendment, prohibit the expression of certain disfavored viewpoints.

---

[3] *Supra*, at 377 F.2d at 63.

The idea that the government or the court "has an interest in preventing speech expressing ideas that offend" is an idea that "strikes at the heart of the First Amendment." *Matal v. Tam*, 137 S. Ct. 1744, 1764-65 (2017).

### b. The Robocall is not a true threat.

Significantly, Plaintiffs do not cite to a single case that supports their contention that the Robocall is intimidating. The distinction between "political hyperbole," however "vituperative, abusive," "crude," or "offensive," and a "true threat" is critical to this analysis. *Watts v. United States*, 394 U.S. at 708. First, while Plaintiffs' blithely claim that the Robocall warns of "physical injury to intimidate its recipients and keep them from voting in the 2020 election", this is disingenuous at best. Neither the text of the Robocall nor the record support this notion, and Plaintiffs fail to explain this contention with any further clarity. Mr. Steinberg's idiosyncratic reaction to the Robocall does not make it a physical threat any more than it makes it intimidating. Nor was his reaction related to the act of voting, but rather, as Plaintiffs concede, it was related to a deep-seated trauma stemming from a decades old conviction triggered by the mere mention of law enforcement.[4]

Neither the VRA nor the KKK Act provide protection against a subjectively and "particularly traumatic" reaction (which many of us might experience for a multitude of reasons in everyday life). Nor does the Second Circuit equate a person's subjectively "traumatic" reaction as proof of intimidation, and Plaintiffs' references to *United States v. Turner*, 720 F.3d 411, 420 (2d Cir. 2013), where the defendant discussed murdering three judges at great length, is therefore unseemly. Indeed, as the *Turner* court expressly held: the Second "Circuit's test for whether conduct amounts to a true threat "is an objective one—namely, whether an ordinary, reasonable

---

[4] Apparently, for the past two decades Mr. Steinberg has managed to shelter himself entirely from any references to, or even fleeting encounters with, law enforcement.

recipient who is familiar with the context of the [communication] would interpret it as a **threat of injury**." *United States v. Turner*, 720 F.3d 411, 420 (2d. Cir. 2013). Here, despite Mr. Steinberg's *extraordinary* reaction (which, incidentally, did not perceive the Robocall as a threat of injury), no "*ordinary, reasonable*" recipient would interpret the Robocall as a threat of injury, and Plaintiffs' arguments to the contrary are purely speculative. *Id*. Moreover, economic coercion[5], baseless prosecution[6], and threats thereof[7], alone, have never been held to constitute intimidation. The coercive conduct at issue must be so pervasive, targeted, and concrete that it creates a *significant probability* that harm will occur.[8]

### c. Plaintiffs must prove Defendants *intended* to intimidate.

Plaintiffs conveniently overlook the fact that several of them republished the Robocall on social media websites, by text and emails, and by replaying the call for others to hear. If the Robocall was so intimidating, why did Ms. Winter replay it for her boyfriend, Mr. Steinberg, whom she presumably *knew* had a peculiar sensitivity toward anything involving law enforcement? And why should she not be liable as an intervening cause? Why did Ms. Hart, Ms. Sferes, and Ms. Winter each republish the full text of the Robocall on Facebook? Is it different simply because they did not have the *specific intent* to intimidate or because they qualified the post with their opinions? Whatever the answer, Plaintiffs were clearly not concerned that by redistributing this

---

[5] *U.S. v. Beaty*, 288 F.2d 653 (6th Cir 1961) (white landowners evicted and refused to deal in good faith with black tenant farmers for purpose of interfering with their voting rights); *U.S. Deal*, Race Rel. L. Rep. 474 (W.D.La. 1961) (white business owners refused to engage in business transactions with black farmers who attempted to register to vote); *U.S. v. Bruce*, 353 F.2d 474 (white landowners ordered black defendant, an insurance collector active in encouraging voter registrations, to stay off their property, preventing him from reaching business clients).
[6] *United States v. McLeod*, 385 F.2d 734 (5th Cir. 1967) (baseless arrests and prosecutions of black citizens seeking to vote and voter registration volunteers); *U.S. v. Wood*, 295 F.2d 772 (baseless arrest and prosecution of voting rights volunteer); U.S. v. Clark, 249 F. Supp. 720 (S.D. Ala. 1965) (baseless arrests and prosecutions of black citizens seeking to vote and voter registration volunteers).
[7] *Paynes v. Lee*, 377 F.2d 61 (5th Cir. 1967) (white citizens threatened to "destroy" and "annihilate" Black man who tried to register to vote).
[88] *See*, *supra*, n. 5-7.

7

message it could intimidate anyone from voting or that their speech would not be protected by the First Amendment. Indeed, it was not until Plaintiffs were faced with the prosect of monetizing their indignation that they suddenly changed their tune. Apparently, the First Amendment has a different standard for White liberals.

In any event, despite Defendants' argument to the contrary, the court in *Ariz. Democratic Party v. Ariz. Republican Party*, 2016 U.S. Dist. LEXIS 154086, *24 (D. Ariz. 2016) specifically found that a defendant's intent to intimidate voters is dispositive and further noted that statements made about a political election are protected speech regardless of "whether true or false, and whether appealing or repugnant to the listener…" *Id*. at *27-29. Moreover, notwithstanding the sundry distinctions between *United States v. Tan Duc Nguyen*, 673 F.3d 2359 (9th Cir. 2012) and this case, as demonstrated in Defendants' moving papers, Plaintiffs' attempt to distinguish the intent requirement is misguided. Indeed, to prevail under section 11(b), a plaintiff must prove, *inter alia*, that "(1) that there was an intimidation, threat or coercion, *or an attempt to intimidate, threaten or coerce*…" *Am. Fed'n of State, Cty. & Mun. Employees, Council 25 v. Land*, 583 F. Supp. 2d 840, 846 (E.D. Mich. 2008). Thus, proving an intent to intimidate is an essential element under section 11(b). *See Olagues v. Russoniello*, 770 F.2d 791, 804 (9th Cir. 1985) (denying section 11(b) claim where "the officials did not *intend* to intimidate.").

### d. The statutes at issue in this case fail strict scrutiny under Defendants' as-applied challenge.

Plaintiffs' attempt to punish Defendants for politically protected speech here cannot possibly withstanding intermediate scrutiny, much less strict scrutiny because it is needless, and Plaintiffs' argument is predicated on the erroneous presumption that the Robocall sought to deter voting. It clearly did not, which is evidenced by the fact that each of the Individual Plaintiffs voted. Plaintiffs disingenuously conflate hyperbole and rhetoric with genuine efforts to deter voting. This, however,

8

is the ultimate red herring as it is simply *not unlawful* for an American citizen to metaphorically or hyperbolically "hijack" an election. There is no evidence whatsoever that Defendants actively sought to, or in fact did, deny citizens their fundamental right to vote despite their heroic revolutionary rhetoric. To claim the Robocall in question could have had such an impact is asinine, and the evidence supporting these claims is nowhere to be found. Instead, the record is replete with the antics of two publicity-seeking – and at times eccentric – political provocateurs, Defendants Burkman and Wohl, who routinely use political satire as part of their shtick to gain notoriety and encourage provocative political discourse. They are incorrigible goofballs and political hucksters who use their irreverent sense of humor to bring satirical levity to otherwise contentious issues. While Plaintiffs attempt to paint them as racists who sought to suppress votes, the speech at issue here is facially neutral and does not tell people <u>not</u> to vote. It merely illustrates the pitfalls of mail-in voting, which, true or not, is protected opinion. *See N.Y. Times Co. v. Sullivan,* 376 U. S. 254 (1964).

**V.    Defendants' Did Not Violate Section 131(b) of the Civil Rights Act of 1957 or Any NY Civil Rights or Executive Laws.**

The AG's section 131(b) claims fail for two reasons. First, there was no intimidation, threats, or coercion. Second, there is no evidence that Defendants' *intended* to interfere with any citizens right to vote. Accordingly, the AG's section 131(b) claims must be dismissed. Moreover, because Plaintiffs did not, and cannot, prove that Defendants intimidated, attempted to intimidate, or discriminated against anyone in the exercise of his or her civil rights or in an attempt to suppress votes, the AG's section 40-c and 40-d, and section 9 claims must be dismissed. Moreover, because Defendants did not commit any fraudulent or illegal acts, but rather engaged in free speech protected by the First Amendment, the AG's section 63(12) claim must be dismissed.

## CONCLUSION

For all of the foregoing reasons, Defendants respectfully request that the Court grant summary judgment in their favor, dismiss the respective Complaints in their entirety, and grant such other and further relief as the Court deems just and proper.

Dated: August 19, 2022

**GERSTMAN SCHWARTZ LLP**

By: /s/ *Randy E. Kleinman*
Randy E. Kleinman
David M. Schwartz
1399 Franklin Avenue, Suite 200
Garden City, New York 11530
Telephone: (516) 880-8170
Facsimile: (516) 880-8171
rkleinman@gerstmanschwartz.com
dschwartz@gerstmanschwartz.com

*Attorneys for Defendants*