Lawyers' Committee for Civil Rights Under Law
1500 K Street, NW, Suite 900, Washington, DC 20005
Tel: 202.662.8600  Fax: 202.783.0857
www.lawyerscommittee.org

June 2, 2023

**VIA ECF**

The Honorable Judge Marrero
United States District Court
Southern District of New York
500 Pearl Street
New York, NY 10007-1312

Re: *National Coalition on Black Civic Participation, et al. v. Wohl, et al.*, No. 20-cv-8668

Dear Judge Marrero:

This trial will involve highly charged or sensitive issues that pose a substantial risk of affecting jurors' evaluation of the case. Plaintiffs write jointly to respectfully request that potential jurors fill out a short, written questionnaire (attached as Exhibit A), to be followed by individual voir dire as necessary.[1] Plaintiffs submit this letter motion in advance of other motions as the Court's ruling on a juror questionnaire will likely impact the parties' requests with respect to voir dire. Given that this trial may implicate jurors' potential explicit and implicit biases, including racial bias, and will likely involve extensive pre-trial media coverage, a juror questionnaire will help ensure an impartial jury and reduce the risk of a hung jury, mistrial, or reversal of a jury verdict.

District courts "routinely employ questionnaires to facilitate voir dire in a number of circumstances[.]" *United States v. Quinones*, 511 F.3d 289, 299 (2d Cir. 2007). A written questionnaire serves the purpose of voir dire to empanel an impartial trier of fact—"a jury capable and willing to decide the case solely on the evidence before it"— by "exposing possible biases, both known and unknown, on the part of potential jurors." *McDonough Power Equip., Inc. v. Greenwood*, 464 U.S. 548, 554 (1984). And a short questionnaire helps promote judicial efficiency by "shorten[ing] the jury selection process," including by allowing the court to determine some cause challenges before oral voir dire based on written responses alone, and by "giv[ing] jurors more time to think about their answers, making it more likely they will respond in greater detail." Lin S. Lilley, *Let Jurors Speak the Truth, in Writing*, 41 Trial 64 (2005). Thus, district courts in this circuit have frequently used juror questionnaires. *See, e.g.*, *United States v. Avenatti*, No. 19-cr-373, Dkts. 105–06 (S.D.N.Y. 2021); *United States v. Ashburn*, No. 13-cr-0303, Dkt. 221 (E.D.N.Y. 2014); *Restivo & Halstead v. Nassau County et al.*, No. 06-cv-6720, Electronic Order dated Jan. 6, 2014 (E.D.N.Y. 2017); *United States v. Columbo*, No. 04-cr-273, Minute Entry dated Jan. 3, 2007 (S.D.N.Y. 2007); *United States v. Awadallah*, No. 01-cr-1026, Dkt. 45 (S.D.N.Y. 2006); *United States v. Stewart*, No. 03-cr-717, Dkt. 74 (S.D.N.Y. 2004).

A juror questionnaire is especially useful here for two reasons. First, a juror questionnaire is more likely than oral questioning alone to ferret out explicit and implicit bias, as jurors are "more likely to acknowledge socially unacceptable attitudes and opinions," including "racial or ethnic

---

[1] Plaintiffs attempted to confer with Defendants' counsel on this matter but he did not respond.

prejudice," in a written questionnaire. *See* Lilley, *supra*, at 64. Indeed, where there are "substantial indications of the likelihood of racial or ethnic prejudice affecting the jurors," a district court abuses its discretion in refusing a request to examine the jurors' ability to deal impartially with the subject. *Rosales-Lopez v. United States*, 451 U.S. 182, 190 (1981); *see also, e.g.*, *United States v. Barber*, 80 F.3d 964, 968 (4th Cir. 1996) (holding a court "may abuse its discretion in refusing to inquire into racial prejudice if there is a reasonable possibility that racial prejudice will influence the jury" (quotation omitted)).

There is substantial likelihood of bias or prejudice, including racial bias, affecting jurors' calculation of damages in this case. As the Court held in its summary judgment decision, the robocall was "a calculated attempt to deter Black voters by exploiting fears and stereotypes." *See Nat'l Coal. on Black Civic Participation v. Wohl*, No. 20-cv-8668, 2023 WL 2403012, at *22 (S.D.N.Y. Mar. 8, 2023). Defendants "intentionally sought out and hired a Black female voice actress to read and record the Robocall script," "emailed one another about sending the Robocall to "black neighborhoods" throughout the country," and referred to their call as the "black robo." *Id.* at *32. The robocall, which was issued in advance of the 2020 presidential election, "contained racially coded language and was imbued with numerous harmful racial stereotypes about the Black community in an effort to target Black voters." *Id.* Thus, a written questionnaire will facilitate the district court's responsibility to "probe the jury adequately for bias or prejudice about material matters on request of counsel." *Pitasi v. Stratton Corp.*, 968 F.2d 1558, 1563 (2d Cir. 1992).

Second, district courts also routinely use juror questionnaires where, as here, "there has been extensive pre-trial publicity." *Quinones*, 511 F.3d at 299. Among the news outlets that have already reported on Defendants' robocall and the resulting criminal, civil, and administrative actions, are the New York Times, AP News, MSNBC, FOX News, the Washington Post, CNN, and numerous other news outlets.[2] We anticipate additional coverage in the lead up to trial. A

---

[2] *E.g.*, New York Times: Christine Chung, *They Used Robocalls to Suppress Black Votes. Now They Have to Register Voters.*, N.Y. Times (Oct. 1, 2020), https://www.nytimes.com/2022/12/01/us/politics/wohl-burkman-voter-suppression-ohio.html; Kathleen Gray, *Two conservative operatives charged in a robocall scam are ordered to call 85,000 people back.*, N.Y. Times Oct. 29, 2020), https://www.nytimes.com/2020/10/29/us/elections/two-conservative-operatives-charged-in-a-robocall-scam-are-ordered-to-call-85000-people-back.html; Stephanie Saul, *Deceptive robocalls try to frighten Detroit residents about voting by mail.*, N.Y. Times (Aug. 27, 2020), https://www.nytimes.com/2020/08/27/us/elections/deceptive-robocalls-try-to-frighten-detroit-residents-about-voting-by-mail.html. AP News: Mark Gillispie, *2 conservatives accused in hoax robocall scheme plead guilty*, AP News (Oct. 24, 2022), https://apnews.com/article/2022-midterm-elections-michigan-ohio-cleveland-california-9fd2a1c998ff26412fd53c83cb3efc09. MSNBC: Ja'han Jones, *Judge says GOP operatives violated Ku Klux Klan Act with robocall scheme* (Mar. 10, 2023), https://www.msnbc.com/the-reidout/reidout-blog/jacob-wohl-burkman-robocalls-kkk-rcna74232. Washington Post: Daniel Wu, *Judge sentences men behind election robocall scam to register new voters*, Wash. Post (Dec. 1, 2022), https://www.washingtonpost.com/nation/2022/12/01/burkman-wohl-sentence-register-voter/; Rachel Lerman, *FCC proposes record $5 million fine against Jacob Wohl, Jack Burkman for election robocalls*, Wash. Post (Aug. 24, 2021), https://www.washingtonpost.com/technology/2021/08/24/fcc-robocall-fine/; Meryl Kornfield, *Robocall targets battleground states with falsehoods about mail-in voting*, Wash. Post (Aug. 27, 2020), https://www.washingtonpost.com/politics/2020/08/27/robocalls-michigan-penn-voting-jacob-wohl/. CNN: Brian Fung, *Conservative activists plead guilty in 2020 election robocall fraud*, CNN (Oct. 25, 2022), https://www.cnn.com/2022/10/25/politics/jacob-wohl-jack-burkman-robocall-guilty/index.html. David Wright & Marshall Cohen, *Detroit and Chicago hit with misleading and racist robocalls discouraging mail-in voting, officials say*, CNN (Aug. 27, 2020), https://www.cnn.com/2020/08/27/politics/robocalls-detroit-chicago-racist/index.html. Other news outlets: C. Mandler, *Men who used robocalls to suppress Black votes ordered by judge to register new voters*, CBS News (Dec. 1, 2022), https://www.cbsnews.com/news/jacob-wohl-jack-burkman-ordered-to-register-

supplemental juror questionnaire will allow specific jurors to be questioned outside the presence of other jurors, thereby "minimiz[ing] the likelihood of jurors tainting others with knowledge they have of a case." Gary R. Giewat, Ph.D., *Systematic Jury Selection and the Supplemental Juror Questionnaire As A Means for Maximizing Voir Dire Effectiveness*, 34 Westchester B.J. 49, 55 (2007).

For these reasons, Plaintiffs respectfully request that the Court grant their motion for a juror questionnaire.

Respectfully submitted,

David Brody

CC:   All counsel of record (via ECF)

---

new-voters-over-robocalls-to-suppress-black-votes/; *Mark Gillispie, Jacob Wohl and Jack Burkman, conservatives accused in hoax robocall scheme, plead guilty*, The Hill (Oct. 24, 2022), https://thehill.com/homenews/wire/3702555-jacob-wohl-and-jack-burkman-conservatives-accused-in-hoax-robocall-scheme-plead-guilty/; John Hendel, *FCC proposes fining conspiracists $5.1M for voter suppression robocalls*, Politico (Aug. 24, 2021), https://www.politico.com/news/2021/08/24/fcc-jacob-wohl-voter-robocalls-506813; Pilar Melendez & Will Sommer, *Jack Burkman, Jacob Wohl Charged in Alleged Voter Suppression Scheme*, Daily Beast (Oct. 1, 2020), https://www.thedailybeast.com/michigan-ag-files-felony-charges-again-jack-burkman-jacob-wohl-for-alleged-voter-suppression-scheme.