IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| NATIONAL COALITION ON BLACK CIVIC PARTICIPATION, MARY WINTER, GENE STEINBERG, NANCY HART, SARAH WOLFF, KAREN SLAVEN, KATE KENNEDY, EDA DANIEL, and ANDREA SFERES,<br><br>Plaintiffs,<br><br>-and-<br><br>People of the STATE OF NEW YORK, by its attorney general, LETITIA JAMES, ATTORNEY GENERAL OF THE STATE OF NEW YORK<br><br>v.<br><br>JACOB WOHL, JACK BURKMAN, J.M. BURKMAN & ASSOCIATES, LLC, PROJECT 1599, and JOHN and JANE DOES 1-10,<br><br>Defendants. | **[PROPOSED] JOINT VOIR DIRE**<br><br>Civil Action No. 20-cv-8668 |

## JOINT PROPOSED VOIR DIRE

In accordance with the Court's individual rules, the parties jointly move for the following voir dire. Pending before the Court is a separate motion for a juror questionnaire that includes many of the same questions. The parties have placed an asterisk next to each question also asked in the juror questionnaire. If the Court grants the motion, the parties ask that the redundant questions be omitted from voir dire at trial.

## INTRODUCTION AND BACKGROUND

**Plaintiffs' Proposal:**

This is a damages trial. In an earlier decision, the Court determined that in August 2020, Defendants Jack Burkman, Jacob Wohl, and the Defendant organizations they control, J.M. Burkman and Associates and Project 1599, violated state and federal election law by sending a robocall falsely threatening adverse consequences for voting by mail. The Defendants sent this

call to 85,307 phone numbers nationwide and 5,494 phone numbers with New York area codes. The Plaintiffs include eight individuals—Mary Winter, Gene Steinberg, Nancy Hart, Sarah Wolff, Karen Slaven, Kate Kennedy, Eda Daniel, and Andrea Sferes—who received the robocall, an organization called the National Coalition on Black Civic Participation, or NCBCP, a non-partisan nonprofit dedicated to increasing civic engagement and voter participation in Black and underserved communities, and Letitia James, the New York State Attorney General, who sued on behalf of New Yorkers targeted by the robocall. The Court previously determined that the Defendants intentionally targeted Black voters with the robocall and used stereotypes of Black people in their false message. The Court ruled that Defendants' robocall was not protected speech under the First Amendment.

As the jury, your job will be to determine what amount of money, if any, the Defendants owe the Plaintiffs. The individual Plaintiffs allege that they suffered injuries directly attributable to the Defendants' robocall. They also allege that they are entitled to punitive damages because the Defendants' misconduct was malicious, oppressive, or in reckless disregard of the Plaintiffs' rights. I will describe the differences between those categories of damages at a later time. The Attorney General sues on behalf of injured New Yorkers under a New York law that requires the jury to award a damages penalty of between $100 and $500 for each violation of the law. The Attorney General alleges that each call placed to a New Yorker is a separate violation of the law.

**Defendants' Proposal:**

This is a damages trial. In an earlier decision, the Court determined that in August 2020, Defendants Jack Burkman, Jacob Wohl, and the Defendant organizations they control, J.M. Burkman and Associates and Project 1599, violated state and federal election law by sending a robocall falsely threatening adverse consequences for voting by mail. The Defendants caused to

be sent to 85,307 phone numbers nationwide and 5,494 phone numbers with New York area codes. Of the 85,305 phone numbers transmitted by a Robocall company it was determined that 29,117 were likely "recipients."[1] This court ordered that a corrective call be transmitted to these 29,117 "recipients" before the election in November of 2020 in order to remedy any information the court deemed false or misleading in the initial call. Of these 29,117 numbers only seven hundred are actually New York numbers. It is unknowable at this time how many of these New York numbers pay have been ported to other states. Of the 29117 corrective calls rolled 27,760 were deemed successfully received nationwide which constituted a 95% success rate. It can be extrapolated then that seven hundred corrective calls were successfully transmitted to New York recipients before the November 2020 election.  The Plaintiffs include eight individuals—Mary Winter, Gene Steinberg, Nancy Hart, Sarah Wolff, Karen Slaven, Kate Kennedy, Eda Daniel, and Andrea Sferes—who received the robocall, an organization called the National Coalition on Black Civic Participation, or NCBCP, a non-partisan nonprofit dedicated to increasing civic engagement and voter participation in Black and underserved communities, and Letitia James, the New York State Attorney General, who sued on behalf of New Yorkers targeted by the robocall. The Court previously determined that the Defendants intentionally targeted Black voters with the robocall and used stereotypes of Black people in their false message. The Court ruled that Defendants' robocall was not protected speech under the First Amendment.

      As the jury, your job will be to determine what amount of money, if any, the Defendants owe the Plaintiffs. The individual Plaintiffs allege that they suffered injuries directly attributable to the Defendants' robocall. They also allege that they are entitled to punitive damages because the Defendants' misconduct was malicious, oppressive, or in reckless disregard of the Plaintiffs'

---

[1] A term of art used in the Robocall industry. These numbers were provided by the Robocall company which is no longer part of this case. See October 31 2020 Letter Pacers Docket # _____

rights. I will describe the differences between those categories of damages at a later time. The Attorney General sues on behalf of injured New Yorkers under a New York law that requires the jury to award a damages penalty of between $100 and $500 for each violation of the law. The Attorney General alleges that each call placed to a New Yorker is a separate violation of the law.

## GENERAL QUESTIONS

1. Based on my summary, do you have any personal knowledge of the facts or allegations in this case?

2. Do you have any opinions regarding the nature of the allegations that may prevent you from being a fair and impartial juror in this case?

3. Have you heard, read, or seen anything though the media, internet, or any other source that you think, for any reason, may prevent you from rendering a fair and impartial verdict in this case?

4. Do any of you have any physical ailment or disability or personal problems that would prevent you from serving in this case for the duration of the trial?

5. Do any of you have any difficulty with your sight or hearing that could affect your serving as a juror?

6. Do any of you have any difficulty understanding or reading the English language?

7. Do any of you have any religious, moral or ethical beliefs which would prevent you from passing judgment on another person? If yes, please explain.

8. The Court has already determined that the facts I described have been proven as a matter of law. At the end of the trial, you will be instructed to accept those conclusions as true. Will you have any trouble following that instruction? If yes, please explain.

9. Under the law, all other facts are for the jury to determine and the law is for the Court. The two areas are separate and distinct. At the end of the case, I will instruct you on the law, and you are required to accept the law as it is explained to you. It will be your job to determine the facts under my explanation of the law. Do any of you feel that you may not be able to apply the law, as I explain it, if you disagree with it?

10. \* The Court has already found that Defendants' robocall was not protected by the First Amendment. Do you have any personal, moral religious, or other concerns that would prevent you from accepting that determination?

**TRIAL PARTICIPANTS**

1. Do any of you know me, Judge Marrero, or any of my staff?

2. \* This a civil lawsuit brought by eight individual Plaintiffs and an organization called National Coalition on Black Civic Participation, or NCBCP. Do any of you know Mary Winter, Gene Steinberg, Nancy Hart, Sarah Wolff, Karen Slaven, Kate Kennedy, Eda Daniel, or Andrea Sferes? Or have any of you, to your knowledge, had any dealings, directly or indirectly, with them, or with any relative, friend or associate of theirs? Do you know of the National Coalition on Black Civic Participation. Have you had any dealings, directly or indirectly, with the National Coalition on Black Civic Participation?

3. \* The New York State Attorney General is also a Plaintiff in this lawsuit. Do you or a family member currently have or have you ever had any matters pending with the Attorney General? Have you or a family member ever been investigated by the Attorney General? Have you or a family member ever been a party to a lawsuit brought by or against the Attorney General? Have you or a family member ever been prosecuted by the Attorney General?

4. \* There are four defendants in this case. Do any of you know: Jack Burkman? Jacob Wohl? J.M. Burkman and Associates? Project 1599? Have any of you, to your knowledge, had any dealings, directly or indirectly, with any of the defendants, their relatives, friends or associates?

5. Plaintiffs are represented by Amy Walsh, Franklin Monsour of the law firm of Orrick Herrington & Sutcliffe, David Brody and Marc Epstein of the organization Lawyers' Committee for Civil Rights Under Law, and Colleen Faherty and Rick Sawyer, and Yasmin Dagne of the New York State Attorney General's Office. Do you know Amy Walsh, Franklin Monsour, David Brody, Marc Epstein, Colleen Faherty, Rick Sawyer, or Yasmin Dagne? Or have any of you, to your knowledge, had any dealings, directly or indirectly, with Amy Walsh, Franklin Monsour, David Brody, Marc Epstein, Colleen Faherty, Rick Sawyer, or Yasmin Dagne, or with any employees, of their law offices?

6. \* Do any of you know, or are any of you familiar with, any of the following individuals, who may be witnesses or mentioned during this trial?

    a. Robert Mahanian

    b. Message Communications

    c. Justin Grimmer

    d. Ange-Marie Hancock-Alfaro

    e. Douglas Kellner

      f. Tameka Brown (formerly Tameka Ramsey)

      g. Melanie Campbell

      h. Chenita Gary

      i. "Tamika Taylor"

      j. Jana Hunt

7. As you look around the room, do any of you recognize anyone you know?

## CIVIC EXPERIENCE AND OPINIONS ON VOTING

8. * What groups or organizations do you participate in (civic, social, religious, volunteer, social justice, political, etc.)? Do you have a leadership role in any such group or organization?

9. * Do you believe that everybody who has a right to vote in the United States should be given the opportunity to vote? [Defendants' proposal: Do you believe that everybody who has a right to vote in the United States should be allowed to exercise that right?]

10. * Do you think it is too easy to vote in U.S. presidential elections? [Defendants object to this question]

## BACKGROUND QUESTIONS

1. Without telling me your exact address, where do you live?

2. What kind of building is that (house, apartment, room)? [Defendants object to this question]

3. Do you own or rent?

4. Where else have you lived within the past ten years?

5. Other than the New York metropolitan area, where else have you lived?

6. * What level of education did you complete?

7. * What is your occupation and title, and how long have you been at your current position?

      a. * If you are retired, what did you do before you retired?

    b.  * What are/were your job duties and responsibilities?

8. * Prior to your current job, what other occupations or positions have you held?

9. * Who are the members of your household?

10. * What do they do [occupation]?

11. * Have any of you ever sat as a juror or grand juror before in any type of case?

    a.  * Was the case was in state or federal court?

    b.  * Was it was a civil or criminal matter?

    c.  Without stating what your verdict was, was a verdict reached?

    d.  * Is there anything about your prior jury experience that would prevent you from acting as a fair and impartial juror in this case?

12. Have any of you, any family member, or any close friend, ever testified as a witness at either a deposition, a trial or a grand jury investigation?

    a.  What was the case about?   Is there anything about that experience as a witness that
       would prevent you from acting as a fair and impartial juror in this case?

13. * Have any of you, any family member, or any close friend, ever been a party to—that is, a plaintiff or a defendant—in any court case?

    a.  Was the case in state or federal court?

    b.  Was it a civil or criminal matter?

    c.  What was it about?

    d.  Is there anything about that experience as a party in a case that would prevent you from acting as a fair and impartial juror in this case?

14. Do any of have a family member or close friend who is a lawyer?

    a.  What is your relationship to that person?

    b.  What type of law does that person practice?

15. * What do you like to do in your spare time?

16. * What material do you enjoy reading? What topics interest you?

17. * What newspapers and magazines do you like to read?

18. What television programs do you like watch?

19. * Do you regularly read any blogs or internet publications? What are they? [Defendants object to this question]

20. * What social media outlets do you subscribe to? (E.g. Facebook, LinkedIn, Instagram, Reddit, etc.) [Defendants object to this question]

21. * Do you regularly listen to any podcasts? Which ones? [Defendants object to this question]

22. What stations and programs do you listen to on the radio? [Defendants object to this question]

23. Have you ever served in the military?

    a. Which branch?

    b. What rank did you hold?

    c. What duties did you have?

    d. How were you discharged?

    e. Were you ever in the military police?

24. Aside from the questions that have already been asked, is there anything else that any of you believe that this Court, the Plaintiff, or the Defendants might want to know before deciding whether you should be selected to serve as a juror in this case?

25. Do you promise that you will not allow any consideration of race, religion or ethnic background to influence your evaluation of the evidence presented to you during this trial?

Dated: Washington, DC
June 15, 2023

/s/ Marc Epstein
David Brody (*pro hac vice*)
Marc Epstein
Lawyers' Committee for Civil Rights Under Law
1500 K St. NW
 Suite 900
Tel: 202-662-8600
Fax: 202-783-0857
dbrody@lawyerscommittee.org
mepstein@lawyerscommittee.org

Amy Walsh
Franklin Monsour Jr.
Rene Kathawala
ORRICK HERRINGTON & SUTCLIFFE LLP
51 West 52nd Street
New York, NY 10019-6142
(212) 506-5000
awalsh@orrick.com
fmonsour@orrick.com
rkathawala@orrick.com

*Counsel for Plaintiffs*

**LETITIA JAMES**
*Attorney General of the State of New York*

By:/s/ Rick Sawyer
Rick Sawyer
Colleen K. Faherty*
Assistant Attorneys General
New York City Civil Rights Bureau
*Executive Division, Federal Initiatives
New York State Office of the Attorney General
28 Liberty Street, 20th floor
New York, NY 10005
Tel: 212.416.6182, -6046; -8637
Fax: 212.416.6009
Richard.Sawyer@ag.ny.gov
Colleen.Faherty@ag.ny.gov

*Attorneys for Plaintiff-Intervenor People, State of New York*


/s/ David Schwartz
David Schwartz, Esq.
546 Fifth Avenue, 6th Fl.
New York, NY 10036
(212) 641-0049
david@davidschwartzesq.com

*Attorney for Defendants*