IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| NATIONAL COALITION ON BLACK CIVIC PARTICIPATION, MARY WINTER, GENE STEINBERG, NANCY HART, SARAH WOLFF, KAREN SLAVEN, KATE KENNEDY, EDA DANIEL, and ANDREA SFERES,<br><br>Plaintiffs,<br><br>-and-<br><br>People of the STATE OF NEW YORK, by its attorney general, LETITIA JAMES, ATTORNEY GENERAL OF THE STATE OF NEW YORK<br><br>Plaintiff-Intervenor,<br><br>v.<br><br>JACOB WOHL, JACK BURKMAN, J.M. BURKMAN & ASSOCIATES, LLC, PROJECT 1599, and JOHN and JANE DOES 1-10,<br><br>Defendants. | Civil Action No. 20-cv-8668 |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF NEW YORK ATTORNEY GENERAL'S MOTION *IN LIMINE* TO RULE AS A MATTER OF LAW ON THE NUMBER OF "VIOLATIONS" OF CIVIL RIGHTS LAW § 40-C**

Plaintiff New York State Attorney General moves the Court to instruct the jury that, as a matter of law, each call Defendants sent to New York phone numbers as part of their voter suppression operation constitutes a "violation" of law compensable under New York Civil Rights Law § 40-d and that Defendants committed at least 5,494 statutory violations.

**I.   Introduction**

The Court has already ruled that Defendants' Robocalling campaign violated New York Civil Rights Law § 40-c by targeting Black New Yorkers with a voter intimidation campaign.

Plaintiffs and Defendants agree that each call to a New York phone number can constitute a separate "violation" of § 40-c subject to a statutory penalty under New York Civil Rights Law § 40-d. *See* D.E. 283 (Request to Charge) at 23 ("Under the law, each robocall to a New York number can be considered a separate violation."). Plaintiffs now ask the Court to rule as a matter of law that each phone call to a New York phone number constitutes a separate violation, and that Defendants committed at least 5,494 statutory violations compensable under § 40-d.

## II.     Argument

### A. The Court should rule as a matter of law that all of the 5,494 calls to New York area codes were "violations" of § 40-d.

Under New York Civil Rights Law § 40-d, each "violation" of § 40-c requires a mandatory statutory penalty of between $100 and $500. NYCRL § 40-d. Section 40-c is violated when a person is "subjected to any discrimination in his or her civil rights" based on real or perceived characteristics, including race. NYCRL § 40-c. The Court has already ruled that Defendants violated § 40-c by targeting New Yorkers with a voter suppression message based on their real or perceived race. *See* D.E. 256 at 94–99. It is also beyond dispute that the Robocall "affected more than one person—roughly 5,494 New York phone numbers." *Id.* at 109; *see also id.* at 7, 91, 106, 108.

Defendants now call into question these established facts. In their justification for their proposed jury charge, Defendants claim that "the plaintiff would need to provide evidence that they received the calls and that the calls were made using an automatic dialing system or a pre-recorded voice." D.E. 283 at 24–25.[1] But the Court has already reviewed that evidence—

---

[1] This language appears to refer to the requirements under the federal Telephone Consumer Protection Act (TCPA), not § 40-d, and is an incorrect statement even of that law. Under the TCPA, a violation occurs when a call is placed, not when a call is received. *See* 47 U.S.C. § 227(b)(1)(A)(iii) (stating that it is unlawful "for any person . . . to *make any call* . . . using any

uncontroverted at summary judgment—and concluded that the call "affected" 5,494 New York phone numbers. D.E. 256 at 109.

Defendants also assert that "attaching a statutory penalty for an uncompleted act is not what is contemplated by the statute." D.E. 283 at 25. But § 40-d penalizes every *violation* of § 40-c, and that statute is violated when a person is "subjected" to "discrimination" in their civil rights. NYCRL § 40-c. Defendants subjected each phone number they called to discrimination because, as the Court already found, the Robocall falsely threatened negative consequences for voting by mail. D.E. 256 at 60–61. And the phone numbers were generated because of the perceived race of the recipients—Defendants targeted "black neighborhoods." *Id.* at 96. Those on the other end of the call were "aggrieved," as required by § 40-d because they were targeted for discrimination by the Robocall.[2]

Defining "violation" to include every call placed to a New York number serves the broad remedial purpose of sections 40-c and 40-d. *See People v. Hamilton*, 125 A.D.2d 1000, 1002 (4th Dep't 1986) (holding § 40-d "should be liberally construed to attain [its] objectives"); *see also*

---

automatic telephone dialing system or an artificial or prerecorded voice . . . to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call") (emphasis added). In fact, the Federal Communications Commission recently fined Defendants $5 million for violating the TCPA by placing 1,141 calls to mobile numbers as part of their Robocall. *See* Press Release, Fed. Commc'ns Commission, FCC Issues $5 Million Penalty for Illegal Robocalling Against Jacob Wohl and John Burkman (June 6, 2023), *available at* https://www.fcc.gov/document/fcc-issues-5-million-penalty-illegal-robocalling.

[2] Even those who were fortunate enough not to answer the phone were "aggrieved" by the Robocall. Here, the caller ID information for each call "showed that the call was made under [Jack] Burkman's name with his personal phone number." D.E. 256 at 8. This invasion of privacy conceivably caused every recipient inconvenience and alarm. *Cf. Abante Rooter & Plumbing, Inc. v. Pivotal Payments, Inc.*, No. 16 Civ. 5486, 2017 WL 733123, at *6 (N.D. Cal. Feb. 24, 2017) (finding that the "vast majority of courts . . . have concluded that the invasion of privacy, annoyance and wasted time associated with robocalls is sufficient to demonstrate concrete injury").

*Diegelman v. City of Buffalo*, 28 N.Y.3d 231, 240 (2016) (holding that under New York law, all remedial statutes "should be construed broadly so as to effectuate their purpose") (cleaned up). Civil penalties achieve both remedial and deterrent functions. *See Friends of the Earth v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 186 (2000) ("To the extent that [civil penalties] encourage defendants to discontinue current violations and deter them from committing future ones, they afford redress to citizen plaintiffs who are injured or threatened with injury as a consequence of ongoing unlawful conduct."). Such civil penalties should be adapted to meet the particular means by which Defendants sought to suppress the right to vote.

First, Defendants exploited modern communications technology to magnify the reach of their voter suppression operation. *See* D.E. 38 at 3 (explaining that Defendants were able to reach a "vastly greater population" "instantly with false and dreadful information"). By sending the Robocall to thousands of phone numbers with New York area codes, Defendants increased their chances of reaching Black individuals in the state, the targets of the operation. *See id.* at 7–8 ("Given the technical feasibility of targeting calls to particular geographic areas, and generally known information about social and economic residential patterns in this country… particular demographic groups can be targeted through robocalls."); D.E. 256 at 98 ("The evidence establishes that the neighborhoods that Defendants targeted were not accidental or random…. Defendants deliberately chose 'black neighborhoods' when developing their strategy and designing their voter suppression project via the Robocall."). Because each call that Defendants sent amplified their discriminatory ends and formed a crucial part of the voter suppression operation, each call constitutes a violation of § 40-c.

Second, Defendants achieved their discriminatory ends by cheap and easy means. Specifically, Defendants paid only $1,250 to prepare and send more than 85,000 calls, including

5,494 to New York area codes. *See* D.E. 256 at 6–7 (finding that Burkman issued a check for $1,000 for the Robocall and that Wohl recruited a Black female voice actress who was paid a retainer fee of $50 and a combined total of $250 after she provided her voiceover services). Whereas previous generations of election manipulators would be limited by human ability to make individualized calls or send mailers, today, offenders can weaponize cheap technology to amplify their false and racist messages. A per-call penalty increases the stakes of flooding communities with thousands of robocalls and the likelihood that would-be election hijackers reconsider the scale of their voter suppression operations. *See Friends of the Earth*, 528 U.S. at 186 ("A would-be polluter may or may not be dissuaded by the existence of a remedy on the books, but a defendant once hit in its pocketbook will surely think twice before polluting again.").

Thus, this Court should rule that, as a matter of law, there were at least 5,494 violations of New York Civil Rights Law § 40-c and so instruct the jury.[3]

### B. Alternatively, each call received by a live answer or answering machine of a phone number with a New York area code constitutes a "violation" of 40-c.

Alternatively, the Court should instruct the jury that each of the 1,517 calls to New York area codes that were answered or went to voicemail constitutes a separate "violation" under § 40-d.[4] Defendants have conceded that each call to a New York number can constitute a separate statutory violation, *see* D.E. 283 at 23 ("Under the law, each robocall to a New York number can be considered a separate violation"), and earlier in this litigation they conceded that

---

[3] Plaintiffs reserve their right to argue that many more than 5,494 violations of New York law took place. Many New Yorkers keep their out-of-state area codes, and it is conceivable that the call reached far more New Yorkers than those with New York area codes.

[4] Plaintiffs calculated this figure from the same spreadsheet of dialed numbers Defendants relied upon for the transmission of the Court-ordered curative message. The full spreadsheet numbers thousands of pages but is available for the Court's review upon request.

5

a person was a call "recipient" if the robocall was answered, either by a live person or a voicemail, D.E. 50 (Defs.' Ltr.) at 2. It is thus beyond dispute that each of the 1,517 calls to New York area codes that were answered or went to voicemail constitute separate "violations" to separate "recipients." This Court has already found that "the undisputed evidence in this case establishes that Defendants' conduct in designing and executing the Robocall was racially motivated [and] the Robocall sought to deter eligible Black voters from exercising their right to vote…." D.E. 256 at 95. Moreover, the Robocall that was received by 1,517 different phone numbers "contained racially coded language and was imbued with numerous harmful racial stereotypes about the Black community[.]" *Id.* at 96. Based on these facts alone, each call received by an individual constitutes a violation of the statute.[5]

Thus, this Court should rule that, as a matter of law, there were 1,517 violations of New York Civil Rights Law § 40-c.

### III.  Conclusion

For the foregoing reasons, the Court should grant Plaintiff's motion *in limine*, decide as a matter of law what constitutes a "violation" of 40-c, and instruct the jury on the number of violations.

---

[5] Notwithstanding the many harmful effects of receiving unsolicited, prerecorded messages, *see, e.g.*, D.E. 256 at 49 & n. 18 (listing cases in which courts in this District and in other districts "have held that have held that receiving a robocall directly is sufficient to confer standing upon a plaintiff"), Plaintiffs do not need, as Defendants suggest, to present individualized evidence of "harm or grievance," *see* D.E. 283 at 24–25, for each of the 1,517 recipients of the robocall. The Court has already found that the robocall contained false information as well as intimidating and threatening messages that subjected the Black community to discrimination in their exercise of the right to vote. The harm to New Yorkers will be explored at trial through expert testimony. Requiring additional evidence imposes a higher standard of liability than required by the New York Civil Rights Law. *See Hamilton*, 125 A.D. 2d at 1002 (holding that Attorney General may assert claims under § 40-d on behalf of third-parties).

Dated: New York, New York
June 22, 2023

Respectfully submitted,

**LETITIA JAMES**
*Attorney General*
*State of New York*

By: /s/   Rick Sawyer

Rick Sawyer, Special Counsel
Colleen Faherty, Assistant Attorney General
28 Liberty St., 20th Floor
New York, NY 10005
(212) 416-8252
Richard.Sawyer@ag.ny.gov
Colleen.Faherty@ag.ny.gov

*Attorneys for Plaintiff Attorney General*