

# GERSTMAN SCHWARTZ LLP
ATTORNEYS AT LAW

October 29, 2020

**VIA CM/ECF & EMAIL**
The Honorable Victor Marrero (chambersnysdmarrero@nysd.uscourts.gov)
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, New York 10007-1312

  Re: *National Coalition on Black Civil Participation et al. v. Wohl et al.*, United States District Court, Southern District of New York, Case No. 1:20-cv-08668

Dear Judge Marrero:

  We write on behalf of the Defendants Jacob Wohl, Jack Burkman, J.M. Burkman & Associates, LLC, and Project 1599 (collectively, "Defendants") in the above-referenced matter to address Your Honor's Orders dated October 28, 2020 and October 29, 2020 (collectively, the "Orders"), respectively.

  Respectfully, and without relitigating the merits of Your Honor's Orders, there are several logistical constraints preventing Defendants' from being able to fully comply with these Orders by the Court's 5:00 p.m. deadline.

  After conferring with Scott Grabel, Defendant Mr. Burkman's Michigan criminal counsel, he has taken the position that although the Michigan court has modified its Order to allow for compliance with this Court's Orders, we have no such forbearance from the Ohio court at this time. Therefore, Mr. Grabel's position remains that any robocall, including a retraction, could potentially violate the Ohio criminal court's directives and he will therefore not advise his client to do so. In addition, Mr. Grabel believes that such would be wholly violative of his clients' Fifth and Sixth Amendment rights, effectively amounting to his clients being forced engage in an allocution in advance of Michigan and Ohio criminal trials, thereby undermining a host of criminal defenses available to our clients. On information and belief, based on a conversation had with Mr. Grabel, Mr. Wohl's counsel concurs with this assessment.

  With candor, we have been hampered in interacting with our clients all day because they are in a hearing in Michigan's 36th District Court, which remained ongoing until approximately 4:30 p.m.

  Even if Defendants were able to adhere to this Court's Orders, all of the data necessary to effectuate a remedial robocall is currently in the possession of Robert Mahanian of Messaging Communications. Due to the ongoing criminal matter, upon information and belief, Mr. Mahanian



has been advised by his own attorney to refrain from speaking with Defendants. Additionally, upon information and belief, Mr. Mahanian advised our clients in August 2020 that, as a member of the USTelecom, he and Messaging Communications are no longer willing or able to speak to them. Moreover, insofar as Mr. Mahanian is a potential witness in the criminal matter, any attempt by Defendants to contact him would be tantamount to witness tampering and could jeopardize their criminal defense for various and sundry reasons. Thus, Mr. Grabel has advised his clients to refrain from any such communications (note that the Michigan 36th District Court did not amend its Order to permit Defendants to speak to Mr. Mahanian or Messaging Communications). Nor should Defendants be placed in this catch-22 position.[1]

Respectfully, without admitting culpability, and notwithstanding the constitutional and logistical arguments raised herein and in our prior submissions, insofar as your Honor has determined that the statement at issue is false and has fashioned a remedial measure, based on information provided in discovery to the Michigan's 36th District prosecutors' office, while evidently showing that approximately 85,309 phone numbers were fed into the robocall company's dialer, and that only approximately *5,812* of these calls actually made a connection to either an answering machine or a live person. The remaining approximately 79,497 numbers made absolutely no connection to any human being or answering machine whatsoever.

Even assuming, *arguendo*, Defendants were able to comply with Your Honor's Order without the legal, constitutional and/or logistical constraints and implications addressed herein and prior hereto, and even were Defendants allowed to interact with Mr. Mahanian and/or Messaging Communications directly, requiring that these calls be placed again would not as a matter of course reach the same 5,812 answering machines or live persons reached originally. This is not logistically how robocall dialers work. This has the potential to cause mass confusion because many of these new recipients had never received the initial call. Instead, an entirely different universe of people would receive a remedial corrective call to which they are a stranger, or which is beyond recollection (recall that the original calls were effectuated months ago, in August 2020). A call about a federal court decision so close to an election might have unintended consequences.

Accordingly, and respectfully, Your Honor's Orders would effectively influence prospective witnesses insofar as Defendants' respective criminal attorneys might attempt to contact the approximately 5,812 potential witnesses who were the recipients of these robocalls to determine, among other things, how they received the call and whether they were actually affected

---

[1] Notably, *Madej v. Briley*, 370 F.3d 665, 667 (7th Cir. 2004), the Seventh Circuit case respectfully cited to by Your Honor referencing a conflict between a federal court order and a state court order is distinguishable from the case at hand insofar as that involved criminal cases. The instant conflict warranting a stay involves a federal civil case and two state criminal indictments arising out of the same nucleus of operative facts. Here, civil injunctive relief and monetary damages cannot compare to imperiled liberty interests.



by it in any way. This could adversely affect witnesses or even impact potential jury pools making it impossible for our clients to receive a fair trial in Michigan or Ohio.

Your Honor's directive would have the net effect of informing these prospective witnesses how to testify if called upon to do so; that is, because a federal judge already made a determination that they might not have otherwise agreed with, particularly considering the context of the robocall, which is prefaced in part by a question: *i.e.*, "but did you know that if you vote by mail, your personal information will be part of a public database that will be used by police departments to track down old warrants and be used by credit card companies to collect outstanding debts?" *See, e.g., Bulger v. Woods*, 917 F.3d 471 (6th Cir. 2019) (finding that a question mark leaves open the possibility that reasonable readers would interpret statement as a mere inquiry signaling the speaker's lack of certainty and inviting others to reach their own conclusions).

Without rehashing our contentions in their entirety, our clients are not in any way contemptuous of your Orders; however, given the significant liberty interests at stake and the advice of their criminal defense counsel, our clients find themselves between a rock and a hard place.

We would note that Your Honor has indicated a willingness to consider further requests from Defendants for alternative forms of relief. We are more than willing to discuss same at tomorrow's hearing.

Respectfully Submitted,

/s/ *David M. Schwartz*

/s/ *Randy E. Kleinman*

cc: All counsel of record (via ECF)