IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| NATIONAL COALITION ON BLACK CIVIC PARTICIPATION, MARY WINTER, GENE STEINBERG, NANCY HART, SARAH WOLFF, KAREN SLAVEN, KATE KENNEDY, EDA DANIEL, and ANDREA SFERES,<br><br>   Plaintiff,<br><br>   -and-<br><br>People of the STATE OF NEW YORK, by its attorney general, LETITIA JAMES, ATTORNEY GENERAL OF THE STATE OF NEW YORK<br><br>   Plaintiff-Intervenor,<br><br>   v.<br><br>JACOB WOHL, JACK BURKMAN, J.M. BURKMAN & ASSOCIATES, LLC, PROJECT 1599, and JOHN and JANE DOES 1-10,<br><br>   Defendants. | Civil Action No. 20-cv-8668 |

**REPLY MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF NEW YORK ATTORNEY GENERAL'S MOTION *IN LIMINE* TO RULE AS A MATTER OF LAW ON THE NUMBER OF "VIOLATIONS" OF CIVIL RIGHTS LAW § 40-C**

**I.   Introduction**

Defendants do not dispute that they sent a discriminatory message falsely threatening negative consequences for voting by mail to at least 5,494 numbers with New York area codes. Nor do they dispute that at least 1,517 of those calls were received. And they concede that each call can constitute a separate "violation" of New York Civil Rights Law § 40-c. In opposing Plaintiff's motion asking the Court to rule as a matter of law that each call to a New York number constituted a separate "violation" of § 40-c, Defendants make no effort to engage with the statute's text or the case law interpreting it. Instead, they make irrelevant references to requirements under

*other* statutes and make factual arguments concerning the extent of harm caused by each call. None of these arguments is material to the legal question the Court must decide—whether each call targeting "black neighborhoods" in New York constitutes a separate "violation" of § 40-c. At best, Defendants' arguments relate only to the amount of mandatory statutory penalties (between $100 and $500) the jury must award for each violation. *See* NYCRL § 40-d. Defendants are free to make those factual arguments to the jury, but they have no bearing on the question of law currently before the Court.

**II.     Argument**

    **A.  Whether each call Defendants placed was a separate "violation" of § 40-c is a question of law.**

Defendants misleadingly argue that the jury must decide what constitutes a "violation" under § 40-c. *See* D.E. 302 at 1, 9. But the construction of the term "violation" is a pure question of law reserved to the Court, which is the "final authority on issues of statutory construction." *United States v. Nolan*, 136 F.3d 265, 271 (2d Cir. 1998) (quoting *Fed. Election Comm'n v. Democratic Senatorial Campaign Comm.*, 454 U.S. 27, 32 (1981)); *see also, e.g.*, *United States v. DiCristina*, 726 F.3d 92, 95, 105 (2d Cir. 2013) (explaining how "the District Court ruled that the question of whether poker fell within the [Illegal Gambling Business Act] was a question of law to be decided by the court . . . and instructed the jury that gambling under the IGBA 'includes playing poker for money'" and rejecting Defendant's argument that the district court "improperly refused to submit this question to the jury"). Courts are commonly called upon to answer questions of law—such as the one posed here—when familiar misconduct takes place in novel technological circumstances. *See, e.g.*, *Romero v. 88 Acres Foods, Inc.*, 580 F. Supp. 3d 9, 19–21 (S.D.N.Y. 2022) (answering question of whether a website qualifies as a place of "public accommodation" within the meaning of the Americans with Disabilities Act as "a matter of statutory construction").

Here, Defendants violated § 40-c each time they placed a separate call to a New York number with the intention of discriminating against a New Yorker in their right to vote. Defendants cite no law in opposition to this conclusion, relying entirely on their assertion that this question of statutory interpretation must be decided by the jury. That is not the law. *See Nolan*, 136 F.3d at 271. Ultimately, Defendants confuse the legal question of what constitutes a "violation" of § 40-c—which the Court must decide—with factual arguments for mitigating the amount of the statutory penalty—which go to the jury.

**B. Each of the 5,494 calls sent to New York phone numbers constitute a separate violation of § 40-c.**

In ignoring the authority cited in Plaintiffs' opening brief, Defendants fail to meaningfully contest Plaintiffs' legal argument that each call sent to a New York phone number constitutes a separate violation of § 40-c. First, Defendants cite no case law in support of their proposition that calls sent but not "received" do not violate § 40-c. Unlike the murder statutes Defendants invoke— which are irrelevant to this civil matter—the text of New York Civil Rights Law §§ 40-c and 40-d does not distinguish between attempted and completed acts. Rather, the language of § 40-d is broad, imposing a mandatory statutory penalty of between $100 and $500 for "each and every violation" of § 40-c. NYCRL § 40-d. In other words, each separate act of discrimination requires a separate penalty.

Next, Defendants fail to engage with New York case law that requires courts to broadly interpret remedial statutes like New York Civil Rights Law. *See* D.E. 288 at 3–4 (citing *Diegelman v. City of Buffalo*, 28 N.Y.3d 231, 240 (2016) (holding that, under New York law, all remedial statutes "should be construed broadly so as to effectuate their purpose") (cleaned up)). Defendants likewise ignore case law about the remedial and deterrent purposes of civil penalties and Plaintiff's

3

arguments that a per-call penalty in this case would advance those purposes. *See id.* at 4–5. Defendants effectively concede those arguments.

Rather than actually engaging with the law, Defendants rely instead on factual arguments that can, at best, mitigate the amount of the mandatory statutory penalty award. *See, e.g.*, D.E. 302 at 4–5, 9 (arguing that people who listened to the full 37-second call are entitled to more in statutory penalties than those who hung up). As Defendants acknowledge, they can make such arguments to the jury. *See id.* at 6.[1]

### C. The New York Attorney General has the authority to seek statutory penalties on behalf of all aggrieved New Yorkers.

Without even acknowledging the clear case law supporting the Attorney General's authority to seek statutory penalties on behalf of third-party New Yorkers, *see People v. Hamilton*, 125 A.D.2d 1000, 1002 (4th Dep't 1986), Defendants continue to challenge that authority by invoking evidentiary requirements that do not exist under New York Civil Rights Law.

Relying on their characterization of the FCC's methodology for administering a different law, Defendants repackage prior arguments asserting that the Attorney General must present evidence from every recipient to collect a statutory penalty. New York courts have emphatically rejected that argument. *See id.* (holding that Attorney General may assert claims under § 40-d on behalf of third-parties). Defendants do not acknowledge this binding precedent, let alone make any attempt to distinguish it. *See Pearson Cap. Partners LLC v. James River Ins. Co.*, 151 F. Supp. 3d 392, 411 (S.D.N.Y. 2015) (Marrero, J.) ("[F]ederal courts are bound to apply the law as interpreted

---

[1] Plaintiff does not concede that these differences are relevant for calculating statutory penalties.

by a state's intermediate appellate courts unless there is persuasive evidence that the state's highest court would reach a different conclusion.") (cleaned up).[2]

Further, it is irrelevant under § 40-c whether any of the 5,494 New York phone numbers were associated with eligible voters. The New York Civil Rights Law is not an election statute, and § 40-c is violated any time a person is "subjected to any discrimination in his or her civil rights." NYCRL § 40-c. Unlike some federal voter-protection laws, there is no requirement that those subjected to discrimination be registered or even eligible to vote. *Cf.* 52 U.S.C. § 10101(a)(1) ("All citizens of the United States who are otherwise qualified by law to vote at any election . . . shall be entitled and allowed to vote at all such elections, without distinction of race, color, or previous condition of servitude . . . .").

The evidence is clear and undisputed that Defendants repeatedly violated § 40-c by targeting Black New Yorkers to interfere with their right to participate in the political process, regardless of their voter registration status. As Plaintiff's expert Ange-Marie Hancock Alfaro made clear in her report—relied upon by the Court at summary judgment—subjecting Black New Yorkers to the discriminatory stereotypes in Defendants' Robocall caused specific harm to those individuals. *See* D.E. 216-61 at 3, 6. And both of Plaintiffs' experts will testify that those same stereotypes harmed New Yorkers of all races in their ability to engage in civic participation without invidious discrimination. *See id.* at 6; D.E. 216-60 at 2, 4–6. Just the Court ruled that Defendants discriminated on the basis of race even though the race of every call recipient was unknown,

---

[2] Defendants repeatedly invoke the irrelevant question of how the FCC investigates matters under the federal Telephone Consumer Protection Act. But the method behind the Attorney General's investigation of the Robocall is not at issue at this damages trial. Even if it were, Defendants have conceded that 5,494 calls were sent to New York area codes, rendering moot the question of how the Attorney General reached that same conclusion.

*see* D.E. 256 at 98–99, the Court should also reject Defendants' argument that Plaintiff must show that the New York phone numbers were associated with eligible voters.

### III. Conclusion

For the foregoing reasons, and those discussed in Plaintiff's motion, *see generally* D.E. 288, the Court should reject Defendants' arguments in opposition, grant Plaintiff's motion *in limine*, decide as a matter of law what constitutes a "violation" of § 40-c, and instruct the jury on the number of violations.

Dated: New York, New York
       July 14, 2023                       Respectfully submitted,

                                                **LETITIA JAMES**
                                                *Attorney General*
                                                *State of New York*

                                                By:   /*s*/ Rick Sawyer

                                                Rick Sawyer, Special Counsel
                                                Colleen K. Faherty, Assistant Attorney General
                                                28 Liberty St., 20th Floor
                                                New York, NY 10005
                                                (212) 416-8252
                                                Richard.Sawyer@ag.ny.gov
                                                Colleen.Faherty@ag.ny.gov

                                                *Attorneys for Plaintiff Attorney General*