# EXHIBIT E
## STAY REQUESTS
## DOCS. 68, 70, 77, 106

**GERSTMAN SCHWARTZ**

ATTORNEYS AT LAW

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: January 19, 2021

January 15, 2021

**VIA EMAIL**
The Honorable Victor Marrero (chambersnysdmarrero@nysd.uscourts.gov)
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, New York 10007-1312

Re: *National Coalition on Black Civil Participation et al. v. Wohl et al.*, United States
District Court, Southern District of New York, Case No. 1:20-cv-08668

Dear Judge Marrero:

We write on behalf of Defendants Jacob Wohl, Jack Burkman, J.M., Burkman & Associates, LLC, and Project 1599 (collectively, "Defendants") to respectfully request a stay of discovery in the underlying action pending the outcome of Defendants Wohl and Burkman's criminal proceedings in both Michigan and Ohio, and an extension of Defendants' time to answer.

Consonant with Your Honor's Decision and Order dated October 29, 2020, the circumstances detailed herein demonstrate that Defendants' renewed motion for a stay and application to extend their time to answer is necessary as the "threat of imposition" is now imminent. *See* ECF Docket No. 45. Currently, Defendants' deadline to file an answer is January 26, 2021. Counsel for Plaintiff does not consent to either of our requests but has failed to provide a reason.

As Your Honor may recall, Mr. Burkman and Mr. Wohl's criminal attorneys, have expressed grave concerns about the constitutional ramifications of this case proceeding concurrent with the respective criminal matters, and supported our previous application and the instant one. With these criminal cases proceeding apace, it renders these concerns all the more pressing and acute.

### A. A Stay of the Instant Matter is Necessary to Protect Defendants' Fifth Amendment Rights and to Prevent Other Prejudice.

"[I]t is undisputed that a district court has the discretion to issue [] a stay, upon consideration of the particular circumstances of the case." *United States v Certain Real Prop. & Premises*, 751 F. Supp 1060, 1062 (E.D.N.Y. 1989); *see also Brock v. Tolkow*, 109 F.R.D. 116, 119 (E.D.N.Y. 1985) ("A stay of civil proceedings is most likely to be granted where the civil and criminal actions involve the same subject matter, and is even more appropriate when both actions are brought by the government.") (citations omitted); *United States v. $557,933.89, More or Less, in United States Funds*, 1998 US Dist. LEXIS 22252, at *11-12 (E.D.N.Y. 1998) (citations omitted) (holding that a stay of a civil proceeding pending the resolution of a related criminal matter is appropriate "when the interests of justice seem…to require such action.")

# GERSTMAN SCHWARTZ LLP

### A T T O R N E Y S   A T   L A W

Reasons for granting a stay pending the resolution of a related criminal matter were articulated by the court in *Tolkow*, 109 F.R.D. at 116, *supra* (internal citations omitted and emphasis supplied):

> A stay of civil proceedings is most likely to be granted where the civil and criminal actions involve the same subject matter...**The noncriminal proceeding, if not deferred, might undermine the party's Fifth Amendment privilege against self-incrimination, expand rights of criminal discovery beyond the limits** of Federal Rule of Criminal Procedure 16(b), **expose the basis of the defense to the prosecution in advance of criminal trial, or otherwise prejudice the case. If delay of the noncriminal proceeding would not seriously injure the public interest, a court may be justified in deferring it.**

Moreover, granting a stay of a civil proceeding pending the resolution of a related criminal action is appropriate "when the interests of justice seem...to require such action." *$557,933.89, More or Less, in United States Funds*, 1998 US Dist. LEXIS at 11 (internal citations omitted). "In making this determination, the court should balance: (1) the private interest of the plaintiffs in proceeding expeditiously with the civil litigation as balanced against the prejudice to the plaintiffs if delayed; (2) the private interests of and burden on the defendant; (3) the convenience to the courts; (4) the interest of persons not parties to the civil litigation; and (5) the public interest." *Id.* at 11-12 (citing *Twenty First Century Corp. v. LaBianca*, 801 F. Supp. 1007, 1010 (E.D.N.Y. 1992).

The Second Circuit has repeatedly held that "it is clear that the fifth amendment's proscription of forced self-incrimination cannot be circumvented by the issuance of a Rule 26(c) protective order" and that "[o]nly a grant of statutory immunity can be used to abridge the fundamental fifth amendment rights of the deponent because only its protections are sufficiently co-extensive with the scope of the fifth amendment privilege." *Andover Data Servs., Div. of Players Computer, Inc. v Statistical Tabulating Corp.*, 876 F.2d 1080, 1083 (2d Cir. 1989); *see also Pillsbury Co. v. Conboy*, 459 U.S. 248 (1983) ("Unless the grant of immunity assures a witness that his incriminating testimony will not be used against him in a subsequent criminal prosecution, the witness has not received the certain protection of his Fifth Amendment privilege that he has been forced to exchange. No court has authority to immunize a witness.").

Here, this action and the Michigan and Ohio criminal proceedings against Mr. Wohl and Mr. Burkman unequivocally arise from the same facts as the instant matter. Thus, there is a significant likelihood that if this matter is not deferred, it will undermine Mr. Wohl and Mr. Burkman's Fifth Amendment privilege against self-incrimination, unfairly expand the rights of criminal discovery, and expose the basis of their respective defenses to the prosecution in advance of criminal trial. *See Tolkow*, 109 F.R.D. at 116. "While a stay...may cause some inconvenience and delay to the [Plaintiffs], protection of defendants[s'] constitutional rights against self-

2

# GERSTMAN SCHWARTZ<sup>LLP</sup>

### A T T O R N E Y S   A T   L A W

incrimination is the more important consideration." *Certain Real Prop. & Premises*, 751 F. Supp at 1063 (citations omitted) (alterations in original and supplied). Moreover, the Plaintiffs "can always move to vacate the stay if a change in circumstances makes this appropriate." *Id.*; *see also Arden Way Associates*, 660 F. Supp. 1494, 1500 (S.D.N.Y. 1987) (court may reevaluate deferral of civil discovery "if and when the balance of burdens, and private public interests so requires.").

Additionally, a prior determination in either of the pending criminal matters "could have collateral estoppel effect in this action, thereby simplifying the issues." *Mook v Homesafe Am., Inc.,* 144 A.D.3d 1116, 1117 (2d Dep't 2016); *see also SEC v Penn*, 225 F. Supp. 3d 225, 233 (S.D.N.Y. 2016) ("Under New York law, a conviction—whether based on a trial or a guilty plea— is "conclusive proof of the underlying facts upon which it rests and the defendant is estopped from relitigating those facts in any future proceeding,").

In light of the foregoing, Defendants respectfully request a stay of the instant matter until the pendency of the Ohio and Michigan criminal proceedings.

## B. Defendants' Time to File an Answer Should be Extended Pending the Resolution of the Respective Criminal Matters.

At the very least, an extension of time to answer pending the resolution of the respective criminal matters is an absolute necessity because "[f]acts admitted in an answer, as in any pleading, are judicial admissions that bind the defendant throughout this litigation." *Gibbs v. CIGNA Corp.*, 440 F.3d 571 (2d Cir. 2006); *see also Western World Ins. Co. v. Stack Oil, Inc.*, 922 F.2d 118 (2d Cir. 1990) (holding that a fact admitted by the defendant in its answer was thereby conclusively established against the defendant); *Bellefonte Re Ins. Co. v Argonaut Ins. Co.*, 757 F2d 523, 528 (2d Cir. 1985) ("A party's assertion of fact in a pleading is a judicial admission by which it normally is bound throughout the course of the proceeding.").

Therefore, because a judicial admission could likewise jeopardize Defendants' Fifth Amendment privilege against self-incrimination, unfairly expand the rights of criminal discovery, and expose the basis of their respective defenses to the prosecution in advance of criminal trial, an extension of Defendants' time to answer the Complaint until after the resolution of the pending criminal proceedings is warranted. *See Tolkow*, 109 F.R.D. at 116.

## Conclusion

We implore Your Honor, in order to protect the constitutional rights of the Defendants, to grant a stay and/or extension. We note Your Honor's October 28, 2020 decision was in part guided by *Louis Vuitton Malletier S.A. v. LY USA, Inc.*, 676 F.3d 83 (2d Cir. 2012), in which the Second Circuit wrestled with a balancing test. Here, we would argue that when weighing the equities, prudence would counsel the grant of a stay or, at the very least, an extension of Defendants' time to answer the Complaint. No material prejudice would befall the Plaintiffs should Your Honor in your discretion grant such a stay or extension. In the intervening period, if the Defendants are

3



# GERSTMAN SCHWARTZ LLP

### ATTORNEYS AT LAW

prosecuted, it certainly will not make it any more difficult for the Plaintiffs to prove their case. Added to which, the record made in those criminal trials will no doubt aid in their discovery. With this in mind, proceeding in the instant civil matter can only prejudice the Defendants.

Thank you for your consideration this application.

Respectfully Submitted,

/s/

David M. Schwartz
Randy E. Kleinman

cc:     All counsel of record (via ECF)

> Plaintiffs are hereby directed to respond to Defendants' renewed motion for a stay and extension of the time to answer within five days.
>
> **SO ORDERED.**
> January 19, 2021
> **DATE**          VICTOR MARRERO, U.S.D.J.

4



# GERSTMAN SCHWARTZ LLP

A T T O R N E Y S   A T   L A W

January 26, 2021

**<u>VIA EMAIL</u>**
The Honorable Victor Marrero (chambersnysdmarrero@nysd.uscourts.gov)
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, New York 10007-1312

Re: *National Coalition on Black Civil Participation et al. v. Wohl et al.*, United States
District Court, Southern District of New York, Case No. 1:20-cv-08668

Dear Judge Marrero:

We write on behalf of Defendants Jacob Wohl, Jack Burkman, J.M., Burkman & Associates, LLC, and Project 1599 (collectively, "Defendants") to respond to Plaintiffs' opposition to Defendants' request for a stay of discovery in the underlying action pending the outcome of Defendants Wohl and Burkman's criminal proceedings in both Michigan and Ohio, and an extension of Defendants' time to answer. As a threshold matter, Plaintiffs proffer no argument against extending Defendants' time to answer until the pendency of their criminal proceedings.

As a further threshold matter, the notion that Defendants "waived" their Fifth amendment rights against self-incrimination at the original scheduling hearing is rejected. As Your Honor may recall, the Defendants at the initial hearing attempted to apprise the Court that they were in the process of engaging counsel and were present for the sole purpose of adjourning the matter. Defendants appeared by telephone merely to avoid being held in contempt and to apprise the Your Honor that they would presently have counsel: "Your Honor, this is Jack Burkman. Unfortunately, we have not yet been able to secure counsel. We did yesterday, and counsel will be available tomorrow…We have secured counsel by the name of David Schwartz…he is a civil litigator in New York City…and we have retained him." ECF Document No. 53: 2:24-25; 3:10-22

If anything, under these described circumstances, any statements made by Defendants ostensibly against their interests should be suppressed. At the very least, such statements should not be construed as a knowing and voluntary waiver constituting an intentional relinquishment of a known right. Neither can same be construed as an express waiver, which would require a writing or a statement of waiver. Here, *<u>both</u>* Defendants have certainly not made an express waiver. Nor have *<u>both</u>* Defendants impliedly waived their right against self-incrimination as the act for an implied waiver must unequivocally indicate the desire to waive one's rights. *See, e.g., Rosenthal v. New York Life Ins. Co.*, 99 F.2d 578 (8th Cir. 1938).

**GERSTMANSCHWARTZ.COM**

1399 Franklin Avenue, Suite 200, Garden City, N.Y. 11530   OFFICE: 516.880.8170   FAX: 516.880.8171

# GERSTMAN SCHWARTZ LLP

### ATTORNEYS AT LAW

Given the circumstances—wherein Defendants were on a conference call with a Federal Court, which they believed to be for scheduling purposes only and did not have either their criminal defense counsel or their soon-to-be-retained civil defense counsel present—it is quite clear that the Defendants failed to comprehend the ramifications of speaking on the record. Defendants clearly did not understand that they could decline to answer a Federal Judge's questions in such a setting by asserting their Fifth Amendment privilege, nor were they apprised of same. (Because it was a civil setting, nobody was required to or charged with the responsibility of reading them a Miranda warning). Instead, Your Honor invited Defendants to give testimony as follows: "Let me then turn to the defendants and allow you an opportunity to say anything you wish to say on your behalf in responses to plaintiffs' allegations." ECF Document No. 53:10:23-25.

Rather than advise Defendants that they might be better served to wait for counsel to enter an appearance and briefly adjourn the matter, the Plaintiffs participated in the hearing. Respectfully, both the forum and even the telephone medium wreaked havoc on Defendants' rights. One presumes that if Defendants were in a physical court, they might have had a physical reminder of the consequences. One imagines that if Defendants were asked to answer questions with their proverbial hand on the bible, as opposed to playing at being *pro se* attorneys arguing constitutional questions, they might have better understood the nature of the proceeding. Indeed, a fair reading of the colloque is just that Mr. Burkman proffered what he believed to be legal defenses rooted in law and a request for a stay. This is not demonstrative of someone knowingly and intelligently waiving their Fifth Amendment privilege.

With this in mind, an identifiable factor denying an individual of a "free choice to admit, to deny, or to refuse to answer," that is, if the assertion of the privilege is penalized so as to "foreclos[e] a free choice to remain silent, and therefore...compe[l]...incriminating testimony," *Garner v. United States*, 424 U.S. 648, 657 (1976), then an incriminating disclosure is considered compelled, despite a failure to claim the privilege. *Id.* at 656-57.

As to Plaintiffs argument that Defendants must with specificity invoke which portions of the civil Complaint would require invocation when the Ohio and Michigan criminal matters clearly arise out of the same set of alleged facts, this is facially infirm and flies in the face of the purpose for the privilege. This is so because even a simple answer in a civil case can be used in a related criminal case as an admission.

Simply stated, the Plaintiffs cavalierly pit the Defendants' liberty interests against their hope for monetary gain. Defendants will clearly be prejudiced if a stay is not granted as every answer and every response assuredly will resurface in Defendants' related Ohio and Michigan criminal proceedings.

# GERSTMAN SCHWARTZ LLP

### A T T O R N E Y S   A T   L A W

As Plaintiff's counsel noted at the original hearing, "[w]e do understand…the Michigan A.G.'s, Attorney General's, Office does have an active criminal investigation…Discovery is ongoing in that case…" ECF Document No. 53: 8:13-18. It follows that as the Michigan and Ohio cases progress, the Plaintiffs herein will invariably benefit and no prejudice will be had. On the other hand, providing Defendants with a stay of the instant civil action will in no way prejudice Plaintiffs thereafter.

Respectfully Submitted,

/s/

David M. Schwartz
Randy E. Kleinman

cc:      All counsel of record (via ECF)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------X
NATIONAL COALITION ON BLACK CIVIC    :
PARTICIPATION, et al.,               :
                                     :
                 Plaintiffs,         :
                                     :
     - against -                     :
                                     :
JACOB WOHL, et al.,                  :
                                     :
                 Defendants.         :
-----------------------------------X

```
┌────────────────────────────────┐
│ USDC SDNY                       │
│ DOCUMENT                        │
│ ELECTRONICALLY FILED            │
│ DOC #:_____          │
│ DATE FILED: February 22, 2021   │
└────────────────────────────────┘
```

20 Civ. 8668 (VM)

**DECISION AND ORDER**

**VICTOR MARRERO, United States District Judge.**

Plaintiffs National Coalition on Black Civic Participation ("NCBCP"), Mary Winter, Gene Steinberg, Nancy Hart, Sarah Wolff, Karen Slaven, Kate Kennedy, Eda Daniel, and Andrea Sferes (collectively, "Plaintiffs") filed this action against defendants Jacob Wohl ("Wohl"), Jack Burkman ("Burkman"), J.M. Burkman & Associates, LLC ("J.M. Burkman & Associates"), Project 1599, and John and Jane Does 1 through 10 (collectively, "Defendants"). Plaintiffs allege that Defendants sent robocalls containing false information intended to scare recipients from voting by mail in violation of Section 11(b) of the Voting Rights Act ("VRA"), 52 U.S.C. § 10307(b), and Section 2 of the Ku Klux Klan Act ("KKK Act"), 42 U.S.C. § 1985(3). (See Complaint, Dkt. No. 1.)

Now before the Court is Defendants' second motion for a stay pending resolution of the criminal proceedings against them. (See "Renewed Motion for Stay," Dkt. No. 67.) For the

1

reasons set forth below, the Court DENIES the Renewed Motion for Stay.

## I.   **BACKGROUND**

A.   PROCEDURAL HISTORY

Plaintiffs brought suit against Defendants on October 16, 2020. (Dkt. No. 1.) On October 22, 2020, Plaintiffs moved for a temporary restraining order ("TRO") to enjoin Defendants from disseminating additional robocalls ahead of the November 2020 election. (Dkt. No. 12.) On October 26, 2020, the Court held a hearing (the "October 26 Hearing") on Plaintiffs' motion for a TRO at which Wohl and Burkman appeared pro se, as their secured counsel was not yet available. (See Dkt. No. 53, at 3.) The Court provided time for Burkman and Wohl to present their case pro se and gave them an opportunity to supplement their case through a submission by their counsel the following day. (Id. at 4.) At the October 26 Hearing, Burkman and Wohl made certain admissions, such as acknowledging that they had caused the robocalls to be issued. (Id. at 12.) On October 28, 2020, after reviewing Defendants' supplemental submission, this Court granted Plaintiffs' motion for a TRO. (See "TRO Decision," Dkt. No. 38.)

Defendants subsequently moved for reconsideration of the TRO Decision. (Dkt. No. 40.) As part of that motion, Defendants sought a stay pending resolution of the criminal proceedings against Burkman and Wohl pending in Michigan. (See id.)

On October 1, 2020, the Michigan Attorney General filed charges against Burkman and Wohl for one count of intimidating voters; one count of conspiracy to commit an election law violation; one count of using a computer to commit the crime of election law; and using a computer to commit the crime of conspiracy. See Press Release, Dep't of Attorney Gen., AG Nessel Files Felony Charges Against Jack Burkman, Jacob Wohl in Voter-Suppression Robocalls Investigation (Oct. 1, 2020), available at https://www.michigan.gov/ag/0,4534,7-359-92297_99936-541052--,00.html. These charges stemmed from the dissemination of the robocalls at issue here. See id.

On October 27, 2020, Burkman and Wohl were indicted in Ohio on eight counts of telecommunications fraud and seven counts of bribery, which is defined under Ohio law as "[a]ttempt[ing] by intimidation, coercion, or other unlawful means to induce such delegate or elector to register or refrain from registering or to vote or refrain from voting at a primary, convention, or election for a particular person, question, or issue." Press Release, Cuyahoga Cty. Office of

3

the Prosecutor, Virginia and California Duo Indicted as Part
of Voter Intimidation Robocall Scam that Targeted Midwestern
Minority   Communities   (Oct.   27,   2020),   available   at
http://prosecutor.cuyahogacounty.us/en-US/duo-indicted-
voter-intimidation-scam-targeted-minority-communities.aspx
(citation omitted). Like the charges in Michigan, those
charges arose from the dissemination of the robocalls at issue
in the instant action.[1] See id.

On October 29, 2020, the Court denied both requests.
(See "Reconsideration Order," Dkt. No. 41.) Defendants then
moved to dismiss the Complaint, and the Court denied that
motion as well.[2] (See Dkt. Nos. 62, 66.) On January 15, 2021,
Defendants filed the Renewed Motion for Stay. (Dkt. No. 67.

B.   THE PARTIES' ARGUMENTS

Defendants argue that a stay is warranted to protect
their Fifth Amendment rights. Because the criminal and
instant civil matters arise from the same facts, Defendants
argue that "there is a significant likelihood that if this
matter is not deferred, it will undermine Mr. Wohl and Mr.

---

[1] For unknown reasons, Defendants did not rely on the Ohio charges in
their first motion for a stay.
[2] Defendants have appealed the denial of their motion to dismiss. (Dkt.
No. 72.) However, it is well established that a denial of a motion to
dismiss is a non-appealable interlocutory order. Edrie v. Maguire, 892
F.3d 525, 532 (2d Cir. 2018). That appeal therefore does not divest this
Court of jurisdiction. U.S. Sec. & Exch. Comm'n v. Citigroup Glob. Mkts.
Inc., 827 F. Supp. 2d 336, 337 (noting that the filing of a "plainly
unauthorized notice of [interlocutory] appeal does not divest the district
court of jurisdiction" (internal quotation marks and citation omitted)).

Burkman's Fifth Amendment privilege against self-incrimination, unfairly expand the rights of criminal discovery, and expose the basis of their respective defenses to the prosecution in advance of criminal trial." (Renewed Motion for Stay at 2.) Defendants also argue that "a prior determination in either of the pending criminal matters could have collateral estoppel effect in this action, thereby simplifying the issues." (Id. at 3 (internal quotation marks and citation omitted).)

Plaintiffs respond that Defendants have waived their Fifth Amendment privilege for much of the alleged conduct by admitting to it during the October 26 Hearing. Plaintiffs also argue that Defendants have failed to specify why a stay is needed in the case. Plaintiffs explain that they intend to seek documents from Defendants, and the Fifth Amendment is inapplicable to the contents of documents. Plaintiffs contend that Defendants' concern of expanding criminal discovery is misplaced and that protective orders can alleviate such a concern. Plaintiffs further argue that they will be prejudiced by a delay because a delay could limit or eliminate any recovery of damages. As to Defendants' argument on collateral estoppel, Plaintiffs note that any potential efficiencies of waiting for the state judgments are at most negligible.

In reply, Defendants argue that any admissions made at the October 26 Hearing cannot constitute knowing and voluntary waivers of their Fifth Amendment rights. Defendants also argue that there will be no prejudice to Plaintiffs because they will benefit from the progression of the Michigan and Ohio cases.

## II.   **LEGAL STANDARD**

A stay is "an extraordinary remedy." Louis Vuitton Malletier S.A. v. LY USA, Inc., 676 F.3d 83, 98 (2d Cir. 2012) (internal quotation marks and citation omitted). "[T]he Constitution rarely, if ever, *requires* such a stay." Id. "A defendant has no absolute right not to be forced to choose between testifying in a civil matter and asserting his Fifth Amendment privilege." Id. (internal quotation marks and citation omitted). Instead, whether to grant a stay is firmly in this Court's discretion. See id. at 99-100. In coming to its decision, the Court may consider factors such as:

> 1) the extent to which the issues in the criminal case overlap with those presented in the civil case; 2) the status of the case, including whether the defendants have been indicted; 3) the private interests of the plaintiffs in proceeding expeditiously weighed against the prejudice to plaintiffs caused by the delay; 4) the private interests of and burden on the defendants; 5) the interests of the courts; and 6) the public interest.

6

Id. at 99 (citation omitted). Ultimately, the Court's decision "must rest upon a particularized inquiry into the circumstances of, and the competing interests in, the case." Id. (internal quotation marks and citation omitted).

## II.  DISCUSSION

The Court finds that a stay is not warranted at this stage of the case at hand. Although some of the factors listed above weigh in favor of Defendants, the bulk of them do not. Therefore, the Court is not persuaded that the "extraordinary remedy" of a stay is justified here.

### A.  FACTORS ONE AND TWO

The first two factors -- the overlap of issues and status of the criminal proceedings -- weigh in favor of a stay. The criminal proceedings as well as the instant suit all "arise from the same facts," that is, issuance of robocalls ahead of the November 2020 general election. The proceedings also raise similar questions of whether Defendants' conduct constituted threats or intimidation. And because Defendants have been indicted in the criminal matters, "prosecution is likely and imminent." Louis Vuitton, 676 F.3d at 100 n.14.

### B.  FACTOR THREE

The third factor -- the private interests of Plaintiffs -- weighs against granting a stay for two primary reasons. First, proceeding expeditiously in lawsuits is a matter of

importance given the evidentiary concerns stemming from delay. For instance, a stay could result in witnesses becoming unavailable or suffering from fading memories, which would hamper Plaintiffs' case. Second, Plaintiffs here seek monetary damages, and a delay could jeopardize their ability to recover from Defendants.

These concerns are compounded by the fact that the Court has no way of knowing the timeline of the state criminal proceedings. Defendants' request for a stay pending resolution of their criminal cases is thus essentially a request for an open-ended stay, which could be very costly to Plaintiffs. See Capak v. Epps, No. 18 Civ. 4325, 2018 WL 6726553, at *5 (S.D.N.Y. Dec. 21, 2018) (explaining that the plaintiff "has a strong interest in proceeding with civil discovery" because a seventeen-month stay "could lead to faded memories and/or prevent Plaintiff from recovering on his tort claim for several years after the alleged injury"); cf. Rodriguez v. Gusman, 974 F.3d 108, 112-13 (2d Cir. 2020) (noting that a years-long administrative closure can prejudice plaintiffs by making the acts of "finding witnesses and conducting discovery difficult if not impossible" (internal quotation marks and citation omitted)).

C.   FACTOR FOUR

8

The fourth factor -- the private interests and burden on Defendants -- does not support granting a stay either. At this point, any burden is minimal. Defendants raise three reasons they will be prejudiced: (1) because they will be forced to invoke their Fifth Amendment right against self-incrimination; (2) because the scope of criminal discovery will be expanded; and (3) because the bases of their criminal defenses will be exposed in advance of criminal trial. None of these reasons is persuasive.

As to the Fifth Amendment, it is entirely speculative at this stage for Defendants to argue that they will be forced to choose between self-incrimination and adverse inferences. As yet, there have been no discovery requests presenting any such dilemma for Defendants. See Sterling Nat'l Bank v. A-1 Hotels Int'l, Inc., 175 F. Supp. 2d 573, 578 (S.D.N.Y. 2001) ("[S]ince depositions have not yet taken place, there is no way of measuring with any precision what questions defendants may refuse to answer, or what damage may be done to their position in the civil case by any assertions of privilege they might choose to make."). In addition, Plaintiffs indicate that they plan to serve only document requests on Defendants, and "documents voluntarily prepared prior to the issuance of a summons [are] not compelled testimony, so there [is] no Fifth Amendment protection for the *contents* of these

records." United States v. Fridman, 974 F.3d 163, 174 (2d Cir. 2020). The Court notes that Defendants are free to make specific challenges to particular discovery requests once they have been served, and the Court has ample tools to address any meritorious challenges, including altering subpoenas or even instituting a tailored stay. See Louis Vuitton, 676 F.3d at 102.

As to concerns about expanding the scope of criminal discovery, these concerns are easily assuaged by less drastic means. To the extent any prosecutors would seek access to the evidence gleaned in civil discovery, the Court can mitigate this risk by issuing "protective orders, quashing or modifying subpoenas, [or] sealing confidential materials." See id. Defendants have not indicated why a wholesale stay of the civil matter, rather than tailored approaches such as protective orders, is necessary to protect evidence from falling into the state prosecutors' hands.

Finally, as to the risk of giving state prosecutors insight into the basis of the defense, the Court finds this risk to be overstated at present. Defendants' defense in the instant action has consistently been that the alleged conduct is protected by the First Amendment. Burkman and Wohl have also publicly asserted the First Amendment as a defense to the criminal charges. See CTRM 134 36th District Court,

10

*36thDC134,* YouTube (Oct. 8, 2020),
https://www.youtube.com/watch?v=X8KUAWLGbZA (arraignment);
see also Cory Shaffer, Right-wing Hoaxers Jacob Wohl and Jack
Burkman Hit with Felony Charges in Cleveland Tied to Multi-
state Voter Robocall Campaign, Cleveland.com (Oct. 27, 2020),
https://www.cleveland.com/court-justice/2020/10/right-wing-
hoaxers-jacob-wohl-and-jack-burkman-hit-with-felony-
charges-in-cleveland-tied-to-multi-state-voter-robocall-
campaign.html ("William Amadeo, a Michigan attorney who is
part of the legal team defending Wohl and Burkman against
criminal charges in that state, told cleveland.com Tuesday
that they believe that contents of the robocall are protected
speech under the First Amendment."). Defendants have not
asserted any other defense to either their civil or criminal
cases. Consequently, the Court fails to see what new
information prosecutors will learn from continuation of this
case, at least at this stage in the litigation.

D.    FACTOR FIVE

The fifth factor -- the interests of the courts --
likewise weighs against granting a stay. The Court has a
"well-recognized interest in disposing of the causes on its
docket with economy of time and effort." See Louis Vuitton,
676 F.3d at 104 (internal quotation marks and citation
omitted). Although Defendants suggest it will be efficient

11

for the Court to wait until verdicts have been rendered in the criminal matters due to collateral estoppel, the Court is not persuaded.

Collateral estoppel may be asserted based on a criminal conviction. See Gelb v. Royal Globe Ins. Co., 798 F.2d 38, 42 (2d Cir. 1986). But Burkman and Wohl deny engaging in any criminal conduct, and there is no certainty that they will be convicted. Additionally, collateral estoppel would apply only to "any issue determined adversely to [the defendant] in the criminal proceeding, provided that he had a full and fair opportunity to litigate the issue." Id. at 43. But because the statutes at issue in the three proceedings are all different, it is far from clear that Burkman and Wohl will have a full and fair opportunity to litigate the issues relevant to Plaintiffs' VRA and KKK Act claims. In other words, collateral estoppel might apply, at most, only to a subset of issues necessary to resolve the instant suit. As such, the Court does not consider it efficient to wait for the criminal proceedings against Wohl and Burkman to conclude.

E.   FACTOR SIX

The last factor -- the public interest -- weighs heavily against a stay. The Court previously explained that the public interest favors granting swift and effective injunctive

12

relief. That conclusion was not based solely on the upcoming election; it was reached "in light of the fundamental nature of the right at issue -- a right which, as the Court has discussed throughout its TRO Decision, underpins the democratic society upon which this nation is built." (Reconsideration Order at 12-13.) The importance of the right to vote requires that this Court address alleged interference with that right without delay.

It is also important to note that elections occur periodically. By the time Defendants' criminal proceedings have concluded, countless elections may have taken place. Prompt resolution of Plaintiffs' claims will further clarify the acceptable bounds of election-related conduct for activists, voters, and other interested parties, thereby promoting the integrity of future elections.

For these reasons, the Court denies Defendants' request for a stay. As the Court has stated before, "if there is imposition involved, the court can deal with such matters as and when there is threat of imposition." Louis Vuitton, 676 F.3d at 102. But the Court cautions Defendants to refrain from automatically requesting a stay every time one of their motions has been denied.[3] If they wish to prevail, Defendants

---

[3] The Court emphasizes that this is Defendants' third request to stay the instant suit. Defendants first suggested a stay was necessary at the October 26 Hearing, and the Court rejected that notion in the TRO

13

must carry their burden of demonstrating prejudice -- they cannot continue to merely rely on speculation. See Capak, 2018 WL 6726553, at *4 ("Where a defendant is seeking the stay and therefore bears the burden of establishing its need, the Court will not base a stay solely on speculative and uncertain risks to Defendant's interests where no showing of possible prejudice has been made." (internal quotation marks, brackets, and citations omitted)).

### III. **ORDER**

Accordingly, for the reasons stated above, it is hereby

**ORDERED** that the motion so deemed by the Court as filed by defendants Jacob Wohl, Jack Burkman, J.M. Burkman & Associates, LLC, Project 1599, and John and Jane Does 1 through 10 for a stay (Dkt. No. 67) is **DENIED**.

**SO ORDERED**

Dated:   New York, New York
         22 February 2021

_[signature]_

Victor Marrero
U.S.D.J.

---

Decision. (See Dkt. No. 38, at 22-26.) Defendants then formally moved for a stay when they moved for reconsideration of the TRO Decision. (Dkt. No. 40.)

14

```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------X
NATIONAL COALITION ON              :
BLACK CIVIC PARTICIPATION, et al., :
                                   :
                 Plaintiffs,       :
                                   :
     - against -                   :
                                   :
JACOB WOHL, et al.,                :
                                   :
                 Defendants.       :
-------------------------------------X
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:  May 20, 2021

20 Civ. 8668 (VM)

**ORDER**

**VICTOR MARRERO, United States District Judge.**

On May 19, 2021, Defendants filed a letter to "clarify" and "correct the record" in response to the Court's May 19, 2021 Decision and Order. ("May 19 Letter," Dkt. No. 105.) While setting forth the procedural history of this matter in the Court's May 19, 2021 Decision and Order, the Court stated: "On October 26, 2020, the Court held a hearing (the 'October 26 Hearing') on Plaintiffs' motion for a TRO at which Wohl and Burkman appeared pro se, as their secured counsel was not yet available." ("May 19 Order," Dkt. No. 101, at 2.) Defendants' counsel writes in the May 19 Letter: "As a point of clarification, as Mr. Burkman stated in his opening remarks at the October 26,2020 hearing, in pertinent part, 'Your Honor, this is Jack Burkman. Unfortunately, **we have not yet been able to secure counsel.** We did yesterday, and counsel will be available tomorrow . . . he will be available on the case literally within 24 hours or so . . . .'" (May 19 Letter at 1.) Counsel also writes that "we were not retained, and did not file our respective Notices of Appearance, until after the hearing." (Id.)

Having reviewed the May 19 Letter and the transcript of the October 26 Hearing, the Court observes nothing in the May 19 Letter that requires clarification of the May 19 Order. There is no discrepancy between the language at issue in the May 19 Order and the quote from Jack Burkman ("Burkman") in the May 19 Letter. Although at the October 26 Hearing Burkman did initially state "we have not yet been able to secure counsel," he subsequently added, "*We did yesterday*, and counsel *will be available tomorrow*." (Tr. at 2:25-3:1 (emphasis added).) In fact, in response to a further question from the Court as to the efforts made to seek counsel and the availability of counsel, Burkman stated, "*We have secured counsel* by the name of David Schwartz. . . . We rushed as fast as we could to get a lawyer, and *we have secured him as of yesterday, and he will be available on the case literally within 24 hours or so*." (Id. at 3:10-15 (emphasis added).) When the Court asked about "who Mr. David Schwartz is," Burkman stated, "I think a fairly well-known civil litigator in New York City, and *we have retained him*." (Id. at 3:18-22 (emphasis added).) Following this response, the Court stated, "In light of that, we're going to proceed since we have a record in the hearing. . . . I will give the defendants each an equal amount of time to present their case pro se, and I will give them an opportunity to supplement whatever they indicate now by submission by Mr. Schwartz not later than close of business tomorrow." (Id. at 3:24-4:8.)

The Court thus does not find any inconsistency between these statements of Burkman -- which clearly conveyed to the Court that

counsel had been secured and would be available the following day --
and the Court's statement in the May 19 Order that at the hearing,
"Wohl and Burkman appeared pro se, as their secured counsel was not
yet available."

To the extent the May 19 Letter takes issue with the Court's
decision to proceed with the October 26 Hearing despite Defendants'
appearances pro se, the Court has already addressed substantially
similar arguments when denying Defendants' motion for reconsideration
and first motion for a stay. (See "October 29 Order," Dkt. No. 41.)
The Court also reminds Defendants that it did accommodate Defendants'
request for time to secure counsel by scheduling the TRO hearing for
Monday, October 26, 2020 rather than earlier in response to Burkman's
request for "just a few days" to secure counsel. (See id. at 3.)

**SO ORDERED.**

Dated:     New York, New York
           20 May 2021

                                    Victor Marrero
                                       U.S.D.J.