IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| NATIONAL COALITION ON BLACK CIVIC PARTICIPATION et al., <br><br>   Plaintiffs, <br><br> -and- <br><br> People of the STATE OF NEW YORK, by its attorney general, LETITIA JAMES, ATTORNEY GENERAL OF THE STATE OF NEW YORK <br><br>   Plaintiff-Intervenor, <br><br> v. <br><br> JACOB WOHL et al., <br><br>   Defendants. | Civil Action No. 20-cv-8668 |

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR RECONSIDERATION**

**INTRODUCTION**

In March 2023, the Court granted Plaintiffs summary judgment on liability on all claims, leaving nothing for the jury to decide but damages. Now, a year later and six weeks before the damages trial, Defendants move for reconsideration to relitigate questions of liability the Court decided against them. Defendants' reconsideration motion should be denied as untimely since the Supreme Court decision they rely upon is eight months old. Defendants also have failed to demonstrate the "extraordinary circumstances" justifying the relief they seek. The issues raised in Defendants' motion were already considered and rejected by the Court when it ruled that Defendants "acted intentionally in intimidating voters with the Robocall by making threats of legal, economic, and physical harm." Dkt. No. 256 at 102–03. And Defendants have not

acknowledged or contested the Court's independent and adequate alternative theories for summary judgment that are unaffected by the Supreme Court's decision. This Court should thus deny Defendants' application.

## BACKGROUND

Plaintiffs brought this action in October 2020 under the Voting Rights Act of 1965 (VRA), 52 U.S.C. § 10307(b), and the Ku Klux Klan Act of 1870 (KKK Act), 42 U.S.C. § 1985(3), alleging that Defendants sent robocalls to over 85,000 phone numbers, spreading unlawful disinformation to intimidate Black voters from voting.[1] Plaintiffs alleged that Defendants targeted Black voters across the United States with a robocall stating that police would use vote-by-mail information to track persons with outstanding warrants, that vote-by-mail information would be used by debt collectors to collect outstanding debts, and that the Centers for Disease Control and Prevention would access vote-by-mail information to track individuals for "mandatory vaccinations." On March 8, 2023, the Court decided liability in Plaintiffs' favor on summary judgment (and denied Defendants' cross-motion for summary judgment), determining that Defendants violated the VRA's prohibition against intimidation for voting or attempting to vote; Defendants' statements were not entitled to First Amendment protection on several grounds; and Defendants violated the KKK Act and New York Civil Rights Laws, as well as New York Executive Law § 63(12), which prohibits repeated fraudulent and illegal acts in the conduct of business.

The parties are currently scheduled for a one-week jury trial on damages, set to begin on April 15, 2024.

---

[1] The New York Attorney General successfully moved to intervene as a Plaintiff in May 2021, bringing claims under the Attorney General's *parens patriae* authority and alleging violations of New York voting laws under New York Executive Law 63(12).

**LEGAL STANDARD**

Defendants filed this motion without citing any rule governing their motion for reconsideration of the Court's summary judgment decision. Assuming they move under Federal Rule of Civil Procedure 60, Defendants must show that their motion was made "within a reasonable time." Fed. R. Civ. P. 60(c)(1). Defendants also must satisfy the demanding standard of showing "extraordinary circumstances" warranting relief under Rule 60(b)(6). *Old Republic Ins. Co. v. Pac. Fin. Servs. of Am.*, 301 F.3d 54, 59 (2d Cir. 2002) (citation omitted).

**ARGUMENT**

The Court should deny Defendants' motion for reconsideration because it is untimely and because Defendants do not show the "extraordinary circumstances" necessary to alter the Court's summary judgment decision.

**I.    Defendants' motion is untimely.**

Defendants purport to rely on the Supreme Court's decision in *Counterman v. Colorado*, 600 U.S. 66 (2023), which the Supreme Court issued on June 27, 2023. Yet Defendants waited more than eight months—and until six weeks before trial—to seek their requested relief. Such delays are not "reasonable" under Rule 60. *Hunter v. Citibank, N.A.*, 862 F. Supp. 902, 906 (E.D.N.Y. 1994) (denying reconsideration as untimely because defendant waited over seven months after intervening Supreme Court decision before filing motion); *see also, e.g.*, *Barrett v. Local 804 Union (IBT)*, 18-CV-2046 (MKB), 2023 WL 4551686, at *5 (E.D.N.Y. July 14, 2023) (collecting authorities in which delays between four and one-half months and nine months were unreasonable). Accordingly, the Court should deny Defendants' motion for reconsideration as untimely.

## II. Defendants have not shown "extraordinary circumstances" warranting relief.

Defendants incorrectly assume that an intervening Supreme Court decision justifies reconsideration. But a "Rule 60 motion may not be used as a substitute for appeal and . . . a mere change in decisional law does not constitute an extraordinary circumstance for the purposes of Rule 60(b)(6)." *United Airlines, Inc. v. Brien*, 588 F.3d 158, 176 (2d Cir. 2009) (quotations omitted) (reversing reconsideration and reasoning that "a Supreme Court pronouncement" of a "new rule of federal law" is not alone an extraordinary circumstance). Thus, Defendants cannot carry their burden merely by invoking *Counterman*.

Even if it were otherwise, *Counterman* does not undermine the Court's summary judgment decision. In *Counterman*, the Supreme Court held that to criminally prosecute an individual for a threatening communication, the true-threats doctrine requires that the government establish that a criminal defendant acted at least recklessly, meaning that they consciously disregarded a substantial risk that their communications would be viewed as threatening violence. *Counterman*, 600 U.S. at 69. As Defendants recognize, Dkt. No. 325 at 3, on its face *Counterman* addresses only criminal cases, and they have not explained why it should control in this civil case.

Moreover, based on undisputed facts, dozens of exhibits, and extensive briefing, the Court already determined that Defendants "acted intentionally in intimidating voters with the Robocall by making threats of legal, economic, and physical harm." Dkt. No. 256 at 102–03; *see also id.* at 69 ("[E]ven if a showing of intent were required under [the Voting Rights Act], that element is easily satisfied. That Wohl and Burkman intended to suppress voter turnout . . . is clear."). In other words, the Court determined that there was no genuine dispute of fact that Defendants made their threats with purpose—"the most culpable level in the standard mental-state hierarchy, and the hardest to prove," *Counterman* at 78–79, and more stringent than the recklessness standard that

4

*Counterman* requires. Thus, the Court already decided that Defendants acted with sufficient *mens rea* to satisfy *Counterman*, so the case is no help to Defendants.

Despite briefing two separate motions for summary judgment and raising this new motion for reconsideration, Defendants point to no evidence that would support finding that Defendants acted with less than reckless intent. Where, as here, there is an "absence" of evidence to contradict any material fact, summary judgment was, and continues to be, appropriate. Dkt. No. 256 at 24.

Instead of raising such facts, Defendants repackage previously failed arguments about whether the robocall itself was objectively threatening. *See, e.g.*, Dkt. No. 325 at 4 (arguing that Plaintiffs "disown[ed] feeling any true sense of intimidation," "articulat[ed] no true threat," and "did not actually indicate any intimidation"). Not only did the Court reject these exact arguments in its summary judgment decision, *see* Dkt. No. 256 at 58–66, 72–75, but more importantly, *Counterman* touched only on the *mens rea* necessary in true-threats cases—not the evidence necessary to support a finding that a communication was objectively threatening, *see Counterman*, 600 U.S. at 72–73. Thus, Defendants have provided no basis for altering the summary judgment decision, let alone extraordinary circumstances.

Defendants also ignore that the Court granted summary judgment under other theories of liability—not only the true-threats doctrine that was *Counterman*'s sole focus. Beyond ruling that Defendants' communications constituted true threats, the Court also concluded that they were unprotected false speech under *United States v. Alvarez*, 567 U.S. 709 (2012) (plurality), and that prohibiting Defendants' particular communications would survive strict scrutiny. *See, e.g.*, Dkt. No. 256 at 76–81 & n.29. These other First Amendment holdings are independent bases for denying Defendants the relief they seek.

### III. Defendants have not justified the miscellaneous other relief sought in their motion.

Defendants raise other complaints that are irrelevant to their request for reconsideration under *Counterman*. Defendants argue that the Court should reconsider its decision to exclude testimony from Defendants' expert on the standard required for conviction under New York Penal Law § 215.17, which requires a "force element" not present in the statutes at issue here. Nothing in *Counterman* changed the fact that force is not an element of the civil laws at issue, or that jury confusion would result from Defendants' expert testifying about the New York Penal Law in a damages trial based on the violation of unrelated civil statutes. Nor is reconsideration the proper vehicle for considering the damages questions raised at the end of Defendants' letter. The question of "what a completed robocall means" under New York law concerns the amount of statutory damages required under New York Civil Rights Law § 40-d. That question is not relevant to the Court's liability findings at summary judgment and will be the subject of a forthcoming motion *in limine*. *See* Dkt. Nos. 287, 288, 302, 312.

### CONCLUSION

Each of these failures—Defendants' untimely application, their reliance on nothing more than a change in law without a sufficient showing of extraordinary circumstances, and Defendants' misunderstanding of *Counterman*'s relevance on the merits—warrants denying reconsideration. This case should proceed to trial on the issue of damages.

Dated: New York, New York
       March 4, 2024　　　　　　　　Respectfully submitted,

**LETITIA JAMES**
*Attorney General*
*State of New York*

By: */s/ Rick Sawyer*
Rick Sawyer, Special Counsel
Colleen Faherty, Assistant Attorney General
28 Liberty St., 20th Floor
New York, NY 10005
(212) 416-8252
Richard.Sawyer@ag.ny.gov
Colleen.Faherty@ag.ny.gov

*Attorneys for Plaintiff-Intervenor*

By:　*/s/ Amy Walsh*

Amy Walsh
Franklin Monsour Jr.
Aaron P. Brecher
ORRICK HERRINGTON & SUTCLIFFE LLP
51 West 52nd Street
New York, NY 10019-6142
(212) 506-5000
awalsh@orrick.com
fmonsour@orrick.com
abrecher@orrick.com

By: */s/ Marc Epstein*

Marc Epstein
LAWYERS' COMMITTEE FOR CIVIL RIGHTS UNDER LAW
1500 K St. NW, Suite 900
Washington, DC 20005
(202) 662-8600
mepstein@lawyerscommittee.org

*Attorneys for Private Plaintiffs*